**EXHIBIT C**



DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
www.dlapiper.com

Shirli F. Weiss
shirli.weiss@dlapiper.com
T  619.699.3650
F  619.764.6650

December 5, 2007

OUR FILE NO. 351880-5

John H. Hemann
William H. Kimball
Joseph E. Floren
Morgan Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA 94105

Re:   SEC v. Schroeder

Dear Counsel:

As you know, KLA-Tencor Corporation took serious and harsh action against its former Chief Executive Officer, Kenneth Schroeder, based on the purportedly thorough investigation of its Special Committee. The Company also mis-appropriated Mr. Schroeder's assets based on the Special Committee's investigation. The Company is also seeking large sums from Mr. Schroeder, contending that he was responsible for setting backdated option prices for which KLA-Tencor's accounting department failed to properly account. The Special Committee interview notes which KLA-Tencor produced to the SEC and which have been produced to us show that both the Chief Financial Officer during most of the relevant time, John Kispert, as well as the Company's President, Gary Dickerson, have attempted to distance themselves from the option pricing process and have stated that they had nothing to do with option pricing during the relevant time, prior to 2004.

The purported investigation of KLA-Tencor's Special Committee was incomplete, flawed and biased. The Special Committee failed to interview at least two crucial witnesses, Lisa Berry, the former General Counsel, and Tom Coffey, who served as its Vice President of Human Resources during a key portion of the relevant time. Based on its own investigation and prior to KLA-Tencor publishing its findings, Mr. Schroeder's defense informed the Special Committee of the role of Ms. Berry in working with certain non-executive members of Human Resources to the exclusion of Schroeder, to create and implement a system of backdating of options. The fact that evidence in the possession of the Special Committee was disregarded, and that the Special Committee insisted instead on blaming Mr. Schroeder, confirmed our earlier suspicions that the Special Committee had a pre-determined agenda to blame Mr. Schroeder, who no longer sat on the Board and who no longer had political power in the organization. Our firm also interviewed Mr. Coffey. Mr. Coffey informed us that during the entire period that he served as Vice President of Human Resources for KLA-Tencor, from January 2001 through April 2003, he or Joy Nyberg received the exercise prices for stock option grants from Mr. Kispert and Mr. Dickerson. He also stated that Joy Nyberg told him that she received the option pricing information from those two executives. We reviewed this information received from Mr. Coffey with him on more than one occasion, and we believe that he has now told the SEC the same thing. The statements of Mr. Coffey directly contradict the statements of Messrs. Kispert,



Counsel
December 5, 2007
Page Two

Mr. Dickerson and Ms. Nyberg, and are fundamentally at odds with the position of the Company.

At the earliest opportunity, upon the commencement of discovery in the *SEC v. Schroeder* action, we subpoenaed Mr. Coffey to appear for deposition on December 7. The SEC protested (although it had set a deposition for December 3) stating that the deposition needed to be moved because the date would interfere with the religious observance of one of its lawyers on the case. We accommodated the SEC and moved the deposition to December 13. The SEC then took the opportunity to contact Mr. Coffey (whom it had apparently overlooked in relying on the Company's investigation), for an interview outside of the presence of Mr. Schroeder's lawyers. We understand that Mr. Coffey then asked KLA-Tencor to provide him with counsel. We understand that KLA-Tencor has proposed Morgan Lewis as Mr. Coffey's counsel. Morgan Lewis promptly sought to take Mr. Coffey's December 13 deposition off calendar and the SEC is resisting a new date in December.

Morgan Lewis & Bockius has a non-waivable conflict of interest and cannot represent Mr. Coffey. Mr. Coffey's statements are directly contrary to the statements of its client Mr. Kispert, and positions that the Company has asserted all along in its investigation. We also believe that Morgan Lewis's efforts to prevent the deposition from going forward as scheduled and to reschedule it to a time convenient to Morgan Lewis operates as an interim stall tactic, inasmuch as Morgan Lewis will at some point be forced to withdraw as Mr. Coffey's counsel in any event.

Recognizing the many conflicts of interest in this matter, KLA-Tencor has provided other former Vice-Presidents and former senior and junior management with counsel of their choosing independent of the Company's counsel. Mr. Coffey must be provided with unbiased, unconflicted counsel. If the Company insists on imposing Morgan Lewis as Mr. Coffey's counsel, inasmuch as we believe that Morgan Lewis's conflict of interest threatens the fair administration of justice in the case against Schroeder, we will have no choice but to bring this matter to the attention of the court.

Very truly yours,

DLA Piper US LLP

Shirli F. Weiss
Partner

SFW/esg

cc:  Jeff Coopersmith
     David Priebe

SD\1776169.1