1 | SHIRLI FABBRI WEISS (Bar No. 079225)
DAVID PRIEBE (Bar No. 148679)
2 | JEFFREY B. COOPERSMITH (Bar. No. 252819)
STAN PANIKOWSKI III (Bar No. 224232)
3 | **DLA PIPER US LLP**
2000 University Avenue
4 | East Palo Alto, CA 94303-2248
Tel: (650) 833-2000
5 | Fax: (650) 833-2001
Email: shirli.weiss@dlapiper.com
6 | Email: david.priebe@dlapiper.com
Email: jeff.coopersmith@dlapiper.com
7 | Email: stanley.panikowski@dlapiper.com

8 | ELLIOT R. PETERS (Bar No. 158708)
STUART L. GASNER (Bar No. 164675)
9 | **KEKER & VAN NEST LLP**
710 Sansome Street
10 | San Francisco, CA 94111
Tel: (415) 391-5400
11 | Fax: (415) 397-7188
E-mail: EPeters@KVN.com
12 | E-mail: SGasner@KVN.com

13 | Attorneys for Defendant
KENNETH L. SCHROEDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. C 07 3798 JW |
| *Plaintiff*, | **DECLARATION OF SHIRLI FABBRI WEISS** |
| v. | Date: March 24, 2008<br>Time: 9:00 a.m. |
| KENNETH L. SCHROEDER, | Courtroom: 8<br>Judge: Hon. James Ware |
| *Defendant*. | |

I, Shirli Fabbri Weiss, declare as follows:

1. I am an attorney licensed to practice law in the State of California and am admitted to practice before this honorable Court. I am one of the attorneys representing Defendant Kenneth L. Schroeder in this case.

2. Attached as Exhibit 1 hereto is a true and correct copy of Katheryn Hayes Tucker, *Ex-Prosecutor Dishes Up Advice to GCs on Government Probes*, Fulton County Daily Report, Oct. 19, 2007.

3. Attached as Exhibit 2 hereto is a true and correct copy of the Complaint filed in *SEC v. Berry*, No. C 07-4431 (N.D. Cal. Aug. 28, 2007).

4. Attached as Exhibit 3 hereto is a true and correct copy of a press release issued by the Securities and Exchange Commission: SEC Charges Former KLA-Tencor CEO With Fraud For Improper Stock Options Backdating: Commission Also Settles Claims Against KLA-Tencor (July 25, 2007), obtained from the SEC's website.

5. Attached as Exhibit 4 hereto is a true and correct copy of Siobhan Hughes, *3rd UPDATE: SEC Charges Former KLA-Tencor CEO In Backdating*, Wall Street Journal Online, July 25, 2007.

6. Attached as Exhibit 5 hereto is a true and correct copy of the Consent of Defendant KLA-Tencor Corporation to Entry of Final Judgment, *SEC v. KLA-Tencor Corp.*, No. C 07-3799 (N.D. Cal. July 25, 2007).

7. Attached as Exhibit 6 hereto are true and correct excerpts of KLA-Tencor Corporation's Annual Report (Form 10-K) (Jan. 29, 2007), obtained from the 10-K Wizard website.

8. Attached as Exhibit 7 hereto is a true and correct copy of KLA-Tencor Corporation's Current Report (Form 8-K) (May 24, 2006), obtained from the 10-K Wizard website.

9. Attached as Exhibit 8 hereto is a true and correct copy of a letter from John Hemann, Morgan Lewis & Bockius LLP ("MLB"), to the SEC, dated June 29, 2007, and true and correct excerpts of a power point presentation on the stationary of MLB, which I selected from

the power point presentation enclosed with the letter. This exhibit was produced by the SEC as part of its initial disclosures under Federal Rule of Civil Procedure 26(a) on October 3, 2007, and I selected excerpts of the power point presentation to illustrate points that MLB made about the nature and extent of KLA's cooperation with the SEC in its investigation of KLA's stock option grant practices.

10. Attached as Exhibit 9 hereto is a true and correct copy of the transcript of the deposition of Stuart J. Nichols, taken January 27, 2008.

11. Attached as Exhibit 10 hereto is a true and correct copy of a letter from Joseph E. Floren, MLB, to Shirli Fabbri Weiss, dated January 24, 2008.

12. Attached as Exhibit 11 hereto is a true and correct copy of the Notice of Subpoena for Records to Skadden, Arps, Slate, Meagher & Flom LLP, dated November 12, 2007.

13. Attached as Exhibit 12 hereto is a true and correct copy of Non-Party Skadden, Arps, Slate, Meagher & Flom LLP's Responses and Objections to Defendant Kenneth L. Schroeder's Subpoena for Records, dated December 10, 2007.

14. Attached as Exhibit 13 hereto is a true and correct copy of a letter from Matthew E. Sloan, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), to Shirli F. Weiss, dated December 27, 2007, as part of the "meet and confer" process to attempt to resolve differences over Mr. Schroeder's subpoena to Skadden attorney Elizabeth Harlan requesting that she produce her original notes of KLA's Board's Special Committee's interview of defendant Kenneth Schroeder, as well as drafts of the interview memoranda created by Skadden based on the notes, the final version of which was volunteered to the SEC by the Special Committee. As to those notes, of importance, Mr. Sloan states on page 2:

> "….we will not produce any of Ms. Harlan's handwritten notes about the interviews, or any "drafts" or revisions of the interview memoranda, and we will not allow her to answer any questions on such handwritten notes or drafts, as such information is squarely protected by the attorney work product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 508."

Ms. Harlan's deposition was the first deposition noticed by the SEC in this case (and cross-noticed by Mr. Schroeder's counsel), and we sought the documents to prepare to cross-examine

Ms. Harlan. Skadden refused to produce the original interview notes of Mr. Schroeder's interview, as well as the original interview notes underlying the Interview Memoranda that KLA produced to the SEC, on grounds of privilege and work product protection.

15. Attached as Exhibit 14 hereto is a true and correct copy of a Confidentiality Agreement between KLA and the SEC, dated October 12, 2006, which was provided to me by the SEC.

16. Attached as Exhibit 15 hereto is a true and correct copy of a memorandum from Lisa Berry of KLA to Larry Sonsini and Judith Mayer O'Brien of the law firm of Wilson Sonsini Goodrich & Rosati ("WSGR"), dated November 14, 1998. This document was produced by the SEC as part of its initial disclosures under Federal Rule of Civil Procedure 26(a) on October 3, 2007. It is my understanding that KLA provided this document to the SEC. Of particular importance to the defense of this case, Ms. Berry stated in her memorandum that:

> We got approval from Pricewaterhouse Coopers to have the stock option committee meet at some time during the 30 days following August 31 and set the price for re-pricing at that time in order to maximize the value to employees. The re-pricing date ended up being August 31, but it was not determined until September 30 that the August 31 date was the correct date. The re-pricing date was also to be the date for the grant of "in lieu" options.

17. Attached as Exhibit 16 hereto is a true and correct copy of emails among Leslie Wilson of KLA, Roger Stern of WSGR and others, dated September 20-23, 1999. This document was provided by the SEC as part of its initial disclosures under Federal Rule of Civil Procedure 26(a) on October 3, 2007. It is my understanding that KLA provided this document to the SEC. The following exchange, excerpted from those emails, is very significant to this case. On September 20, 1999, Ms. Wilson asked Mr. Stern a question concerning retroactive pricing:

> If we choose to communicate that grants will be made between now and the end of the year, and that the price will be communicated after the Board (or compensation committee) action, does that mean that we will lose the opportunity to capture stock prices from August 31st to date of new employee communication?

Mr. Stern responded that:

> I'm not quite sure what is meant by "capture stock prices from August 31 to date of new employee communication." The price will be set on the date of the comp committee meeting, and will be 100% of the trading value on that day. So I think the communication sent out already captures that. I apologize if I am being obtuse, please feel free to clarify.

Ms. Wilson replied on September 21, 1999 that:

> In the past, the Compensation Committee meets on a day following the determination of the individual employee stock option allocations. For FY00, this means that they could have met or are yet to meet on any day following August 27th to set the stock price. [Note the use of the hypothetical.] I agree that the communication already clearly states this.
>
> * * *
>
> I am concerned that sending additional communication may imply that the Compensation Committee has not yet met and is yet to meet between now (e.g. September 21) and the end of the year, thereby not allowing us to price the stock grant between August 27 and today even if the committee met during that period.

Mr. Stern replied:

> I see the point. No, it is not necessary to send out an additional employee communication in this situation. The original communication seems to capture the situation appropriately. Hope this helps!

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 1, 2008.

/s/Shirli Fabbri Weiss
Shirli Fabbri Weiss

I hereby attest that I have on file all holographic signatures for any signatures indicated by a "conformed" signature (/S/) within this e-filed document.