# Exhibit 10

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel. 415.442.1000
Fax: 415.442.1001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

**Joseph E. Floren**
Partner
415.442.1391
jfloren@morganlewis.com

January 24, 2008

**VIA EMAIL AND FIRST CLASS MAIL**

Shirli Fabbri Weiss, Esq.
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101

Re:     *SEC v. Schroeder*

Dear Shirli:

This responds to your "meet and confer" correspondence dated January 8, 2008 and summarizes KLA-Tencor Corporation's ("KLA's") position as set forth in our follow-up communications concerning KLA's response to Kenneth Schroeder's third party subpoena in the above action. Additionally, this confirms our response, of which we previously advised you by telephone, to your email indicating your intention to file a motion to compel on behalf of Mr. Schroeder in this action and your request that we stipulate to your filing a single joint motion against both KLA and the Skadden Arps law firm ("Skadden") as opposed to two separate motions. Though we believe such a motion would be premature and misguided for the reasons set forth below and in our previous discussions and correspondence, we are willing to enter into an appropriate stipulation regarding combined briefing and page limit relief.

KLA, a third party to this action, has made significant efforts to respond to Mr. Schroeder's far-reaching *sixty* requests for production. KLA has produced in excess of 6,000 documents on top of the more than 75,000 KLA documents, all of which are responsive to one or more requests, that Mr. Schroeder received from the SEC in its initial disclosure in this action, a fact you neglected to share with KLA and a fact you inappropriately continue to minimize.

The KLA documents Mr. Schroeder already received represent the product of an extensive, many-months-long company-wide internal investigation covering the same issues involved in your client's current litigation with the SEC. As noted in your January 8 letter, KLA cooperated to the fullest extent with the SEC, resulting in a comprehensive production of relevant

San Francisco  Philadelphia  Washington  New York  Los Angeles  Miami  Pittsburgh  Princeton  Chicago  Minneapolis
Palo Alto  Dallas  Houston  Harrisburg  Irvine  Boston  London  Paris  Brussels  Frankfurt  Beijing  Tokyo

Shirli Fabbri Weiss, Esq.
January 24, 2008
Page 2



documents to the SEC, *all* of which we understand Mr. Schroeder now has in his possession. Despite the fact that your client already possesses these documents, Mr. Schroeder suggests that KLA should withdraw its objections relating to any documents it produced to the SEC and *re-produce* all of these documents to your client, purportedly because of a speculation that the SEC's initial disclosures to Mr. Schroeder may not be precisely co-extensive with KLA's production of documents to the SEC. KLA previously offered, as noted in my December 14, 2007 letter, to work with you and take appropriate steps to provide Mr. Schroeder with further confirmation that the documents he already has are, indeed, all of the responsive KLA documents; your correspondence has ignored that offer. That offer still stands. Otherwise, we do not believe good cause exists to require the parties to litigate and the court to consider whether KLA should be compelled to produce documents to Mr. Schroeder that Mr. Schroeder already possesses. In the highly unlikely event KLA has responsive non-privileged documents concerning its historical options grants that Mr. Schroeder does not already possess, we will promptly produce such documents upon Mr. Schroeder's consent to an appropriate protective order to safeguard the confidentiality of those materials (as discussed further below).

With regard to materials protected by the work product doctrine and/or attorney-client privileges, as you know and as we have discussed with you on numerous occasions, KLA provided protected material to the SEC under an express confidentiality agreement that production did not waive applicable privileges. Based on the circumstances of the SEC investigation, under the common-interest exception to waiver doctrine and caselaw recognizing a "selective waiver," including *In re McKesson HBOC, Inc. Sec. Litig.*, 2005 WL 934331 (N.D. Cal. Mar. 31, 2005), KLA has not intended to waive any privileges and has vigorously intended to preserve the privilege as to Mr. Schroeder and others who are adverse to the Company. Mr. Schroeder's claim that those privileges have been waived is incorrect.

Notwithstanding the parties' disagreement on privilege waiver issues, KLA has taken additional steps in its good faith effort to avoid dispute with Mr. Schroeder over privilege issues. KLA proposed that Mr. Schroeder consent to a non-waiver provision in a protective order, which would allow KLA to provide Mr. Schroeder with copies of certain attorney-client and/or work product privileged materials – items to which he had access within the privilege when he was a KLA employee – without such production now being deemed a waiver of any privilege. Mr. Schroeder would not consent, clearly trying to force a fight on privilege issues even at the expense of obtaining documents.

With respect to Mr. Schroeder's remaining requests for production, we have explained that Mr. Schroeder no doubt already has the vast majority of the documents that could possibly be relevant in his case with the SEC. Your letter does not quibble with this. Nor has Mr. Schroeder cited a single document request among the 60 largely redundant demands for which he has not received responsive KLA documents, either from KLA directly or by way of the SEC. When

Shirli Fabbri Weiss, Esq.
January 24, 2008
Page 3



one sifts through Mr. Schroeder's categorical unspecified accusations of KLA violating the
subpoena and waiving the attorney-client privilege, your letter comes down to requests for the
following documents:

- Power point presentations and other summaries, particularly those that reflected the
  Special Committee's findings in its own investigation of KLA's historical options grants,
  made to the SEC that KLA did not physically left with the SEC.

- Document productions previously made to the Department of Justice, the NASDAQ,
  KLA's auditors, and the press.[1]

- Documents regarding the Special Litigation Committee that KLA created to determine
  whether the Company should pursue claims against your client and others in relation to
  the shareholder derivative litigation in which Mr. Schroeder is a defendant.[2]

As we have made clear from the beginning, KLA will consider the production of further
documents provided that Mr. Schroeder and KLA can agree on the terms of an appropriate
protective order ultimately to be entered by the court. The documents Mr. Schroeder seeks are of
a confidential and proprietary nature, including private and confidential personnel,
compensation, and salary information of KLA officers and employees, as well as material non-
public information related to the details of the Company's restatement, financial accounting
judgments applied, and personnel actions taken in connection therewith. Your letter ignores our
request for a protective order, a perfectly reasonable request of a third party in matters such as
this, and you have indicated that Mr. Schroeder will not consent to any broad confidentiality
protective order and will instead insist upon a document-by-document designation – even though
there are well over 80,000 documents at issue – limited to materials that are actually trade secrets
or protected by third party privacy rights. As noted, KLA's confidentiality interests extend
beyond trade secrets and privacy rights, and there is no appropriate purpose to be served by an
unduly narrow protective order and burdensome designation process in this case.

Mr. Schroeder's unwillingness to stipulate to a reasonable confidentiality order betrays the real
reason for his overreaching subpoena. Matters such as the Special Committee investigation and

---

[1]    With regard to stock-option related documents supposedly provided to the press by KLA, I
       have previously advised you that KLA believes it has no such documents.

[2]    We have previously advised you that all such Special Litigation Committee materials are
       absolutely privileged, and obviously so, and that any use of the subpoena process in this
       action to invade the privileges of Mr. Schroeder's adversary's counsel in other litigation
       would be obviously improper. We are not aware of any disagreement with you on this
       point.

Shirli Fabbri Weiss, Esq.
January 24, 2008
Page 4



KLA's statements to the press have no relevance to the claims or defenses in this case and marginal, if any, potential discovery relevance. Rather, Mr. Schroeder plainly wants these documents for his collateral litigation against the Company – in order to help him build his threatened case against the KLA for breach of contract, defamation, and other torts, and to aid his attempts to undermine the determinations of KLA's Special Litigation Committee in the shareholder derivative litigation – all matters in which Mr. Schroeder has no right to discovery at present. Those other litigation matters and Mr. Schroeder's plan to sue KLA do not provide a proper basis for him to seek discovery from KLA in this action. Under the circumstances, his subpoena is nothing less than harassment.

Finally, with regard your comments about KLA's privilege log and its claims of privilege with respect to the documents listed on the log, we fail to understand why Mr. Schroeder requires a more detailed privilege log than the one provided, and believe that further effort on this score would only create burdensome, expensive, and wholly unnecessary work for KLA.[3] The purpose of a privilege log is to provide a party *that does not possess the privileged documents themselves* with enough information about the documents to enable that party to challenge assertions of privilege that do not appear to be warranted. Here, Mr. Schroeder, KLA's former CEO, saw most of the privileged documents at issue during his employment and now has copies of all of them because the SEC provided them to him. Every document in the Bates range KT ACWP 00000001 - KT ACWP 00005220 is labeled "F.O.I.A. Confidential Treatment Requested," "Attorney/Client Privilege," and "Work Product Privilege." We understand that Mr. Schroeder has *all* of these documents. Given that, he does not need a log to assist him in asserting any privilege challenge that he deems warranted. Particularly given that your client already has the core documents at issue, there appears to be little purpose in further debating the merits of our respective positions at this stage. However, if you believe that there is authority supporting your position that a more detailed privilege log is required under these circumstances, we are prepared to consider it.

---

[3]    We do not understand Mr. Schroeder's demand for a privilege log to encompass documents sent or received by counsel to the Company in connection with its representation of the Company following the commencement of the Special Committee investigation and through the presently ongoing litigation and negotiations with your client; such matters are obviously privileged and it is not customary for privilege log demands to encompass documents created in connection with the dispute at issue, as opposed to historical documents.

Shirli Fabbri Weiss, Esq.
January 24, 2008
Page 5



Let me reiterate KLA's desire to work with Mr. Schroeder to avoid needless dispute on these issues. If Mr. Schroeder reconsiders his position on a protective order, KLA will be in a position to produce additional documents. I look forward to discussing these issues with you further in an effort to narrow, if not eliminate entirely, the issues on which we are in disagreement.

Very truly yours,

/s/
Joseph E. Floren
1-SF/7655418.2