# EXHIBIT A



DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
www.dlapiper.com

Shirli F. Weiss
shirli.weiss@dlapiper.com
T  619.699.3650
F  619.764.6650

January 8, 2008

OUR FILE NO. 351880-5

Matthew E. Sloan
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144

Re:   SEC v. Schroeder

Dear Mr. Sloan:

Thank you for your letter of December 27 and your efforts at clarification of Skadden's position regarding the subpoenas served on it and its lawyers by Mr. Schroeder.

The responses served by Skadden and the Skadden lawyers to Mr. Schroeder's subpoenas indicate that there are documents that you are willing to produce, requiring solely a stipulation and protective order to protect the trade secrets of KLA-Tencor Corporation ("KLA") and the confidential personal information of employees of KLA. As we said weeks ago, we are willing to execute a stipulation and proposed protective order narrowly drawn to protect such documents and information. KLA must of course have the burden of proof, if challenged, regarding confidentiality of the trade secrets that it asserts. Please send us this proposed stipulation and order promptly as we would like no further delay to Skadden's production of the documents it is willing to produce under such a stipulation. Please also produce promptly all electronic Meta-Data concerning the Interview Memoranda turned over to the SEC and the requested Skadden billing entries and calendar entries.

As to the distinction you draw in your letter between production by the Special Committee and production by KLA-Tencor Corporation, we think it is a distinction without a difference in these circumstances. KLA produced arguably attorney client privileged and work product documents to the government, including the witness memoranda, without action by either Skadden or the Special Committee to prevent the production. Indeed, since Skadden presumably was, in the first instance, in possession of the interview memoranda, it had to facilitate the production to the government in order for production to occur. In addition, both Skadden and KLA have known for weeks that the SEC produced the final interview memoranda as well as formerly attorney client privileged communications of KLA's attorneys to Schroeder and took no action to demand the return of the documents from either the government or Schroeder. Clearly the SEC does not share your opinion that any of these documents have retained a privilege, not that its views are determinative of the issue.

As we have said before, we have no obligation to sign Skadden's proposed Confidentiality Agreement previously forwarded to us. Your position with respect to the testimony of Ms. Harlan and presumably other Skadden lawyers in responses to our Inquiry categories Nos. 1, 2 and 3 contemplate that Skadden will allow Ms. Harlan and other attorneys to respond to the


**DLA PIPER**

Matthew E. Sloan
January 8, 2008
Page Two

SEC's questions at deposition about witness interviews, but that it will instruct those attorneys not to answer cross-examination questions from Mr. Schroeder's attorneys. That position is untenable.

We expect to file our motion to compel compliance with Mr. Schoroder's subpoenas shortly.

Very truly yours,

DLA Piper US LLP

Shirli F. Weiss
Partner

Admitted to practice in California

SFW/esg

SD\1776914.1

# EXHIBIT B

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600

DIRECT DIAL
(213) 687-5276
DIRECT FAX
(213) 687-5600
EMAIL ADDRESS
MATTHEW.SLOAN@SKADDEN.COM

FIRM/AFFILIATE OFFICE
-----
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
PRAGUE
SINGAPORE
SYDNEY
TOKYO
TORONTO

CONFIDENTIAL

January 25, 2008

**BY U.S. MAIL AND E-MAIL**

Shirli Fabbri Weiss
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101

RE: SEC v. Schroeder, Case No. C-07-3798-JW

Dear Ms. Weiss:

I am writing in response to your letters to me, dated January 8 and January 15, 2008, seeking further clarification about Skadden's responses to the records subpoenas you served on Skadden and the Skadden Attorneys[1] on behalf of Mr. Schroeder, and about what instructions we will give to Skadden attorneys in connection with your planned depositions of Elizabeth Harlan and other current and former Skadden Attorneys.

Summary of Skadden's Discovery Positions

You have essentially asked for three categories of documents and information: (1) documents reflecting internal communications between Skadden Attorneys – or communications between Skadden and LECG,

---

[1] The "Skadden Attorneys" include the following current or former Skadden lawyers: Galen Bellamy, Jack DiCanio, Zvi Gabbay, Elizabeth Harlan, Victoria Holstein-Childress, Cale Keable, Morgan Lopez, Richard Marmaro, Thomas McDonald, Lanelle Meidan, Jonah Van Zandt and Sheryl Wu.

Shirli Fabbri Weiss
January 25, 2008
Page 2

PricewaterhouseCoopers, or Morgan Lewis – regarding the Special Committee's investigation; (2) the "Interview Memoranda" of privileged witness interviews conducted and prepared by Skadden in the course of the investigation; and (3) assorted historical documents gathered by Skadden during the investigation, which Skadden or KLA-Tencor Corporation ("KLA" or the "Company") subsequently produced to the Securities and Exchange Commission ("SEC") or the United States Attorney's Office ("USAO").

As you know from Skadden's Rule 45 responses and from my prior communications with you, it is Skadden's position that the first two categories of documents are protected from discovery by the attorney-client privilege or the work product doctrine, and neither Skadden, the Special Committee nor the Company has taken any actions to waive those protections. We vehemently disagree with your apparent argument that Skadden or the Company waived these protections by producing the Interview Memoranda and certain other historically privileged documents to the government. The Company produced the Interview Memoranda and other documents to the SEC and the USAO pursuant to confidentiality agreements, which expressly provided that the SEC and the USAO were to maintain the confidentiality of such documents and that the production would not operate as a waiver of either the attorney-client privilege or the work product doctrine.[2] Accordingly, there has been no waiver of either the attorney client privilege or the work product doctrine, and these documents are protected from disclosure. *See In re McKesson HBOC, Inc. Securities Litigation*, 2005 WL 934331, at *10 (N.D. Cal. 2005) (no waiver of work product doctrine where McKesson produced documents to government pursuant to confidentiality agreement that provided that McKesson did not waive any applicable privileges by agreeing to produce special committee report and back-up materials to the government).[3]

---

[2] In the event you do not already have copies of KLA's confidentiality agreements with the SEC and the USAO, we are willing to provide them to you for your review.

[3] In your letter of January 8, 2008, you continue to argue that Skadden and the Special Committee waived any applicable privileges or work product protection in the Interview Memoranda or other documents produced to the government by failing to object to (1) KLA's production of these privileged documents to the government or (2) the SEC's subsequent production of such documents to Mr. Schroeder. Your argument is incorrect as a matter of law as set forth in Judge Whyte's decision in *McKesson*.

Your argument that Skadden and KLA waived such privileges by failing to demand that Schroeder and the government return the documents after learning that the SEC had produced them to Schroeder is also without merit. As an initial matter, the SEC's production of these documents to Schroeder cannot be considered a waiver by KLA because it was not an action by KLA. More importantly, because the confidentiality agreement with the SEC contained an express re-disclosure provision, neither the initial production to the SEC nor the SEC's re-production to Mr. Schroeder gave

Shirli Fabbri Weiss
January 25, 2008
Page 3

Notwithstanding our position that categories (1) and (2) above are protected from discovery, in the spirit of compromise, I proposed to you that Skadden would produce to Mr. Schroeder all the Interview Memoranda and related exhibits protected by attorney-client privilege or attorney work product that the Company previously produced to the government on the condition that Mr. Schroeder enter into a stipulated confidentiality order providing, among other things, that the production of such documents would not constitute a waiver of either the attorney-client privilege or the work product doctrine. (*See, e.g.*, E. Harlan's Responses to Schroeder Subpoena, Resp. No. 1, at 4-5). You rejected this proposal out of hand. Accordingly, Skadden has no choice but to decline to produce any of the Interview Memoranda and related exhibits on both privilege and work product grounds.

With respect to the third category of documents, namely historical documents gathered by Skadden during the investigation which were subsequently produced to the government, we have previously taken the position that we will not produce any such documents because we believe, on the basis of the SEC's Initial Disclosures, that the SEC has already produced substantially all of these documents to you. In addition, several of these documents are also protected from disclosure by the attorney-client privilege or the work product doctrine. In the spirit of compromise and in order to streamline your anticipated discovery motions, however, we are now willing to modify our initial objections and will agree to produce any non-privileged, non work product historical documents that Skadden or the Company produced to the government on the condition that Schroeder agree to a confidentiality order that prohibits the disclosure of any such documents containing confidential or competitively sensitive business information or trade secrets to unauthorized third parties and prevents Mr. Schroeder from using such information for any purposes other than in connection with this litigation. Providing you are now willing to sign such a protective order, we anticipate that we will be able to produce these documents to you as soon we can come to an agreement on the form of such an order. We will work with the Company's counsel at Morgan Lewis to draft such an order and send it to you for your review as expeditiously as possible.

---

rise to a waiver. Judge Whyte addressed this issue in *McKesson*, which involved a nearly identical re-disclosure provision: "Although the agreements permitted re-disclosure of the Skadden Report and Back-up Materials pursuant to the SEC regulatory duties and as otherwise required by law, the extent of the re-disclosure is no broader than required to make voluntary disclosure by McKesson useful to the government." *Id.* at *10. Thus, found Judge Whyte, "[t]he re-disclosure provisions are logical preconditions for the government's agreeing to treat the materials as privileged and confidential." *Id.*

Shirli Fabbri Weiss
January 25, 2008
Page 4

Responses to Specific Questions in Your January 2008 Letters

Now that I have explained Skadden's position on the key discovery issues raised by your subpoenas, let me briefly address the specific questions you raise in your January 8 and January 15 letters to me. First, you argue that Skadden previously agreed to produce certain confidential documents to Mr. Schroeder based solely on Mr. Schroeder's willingness to execute a "narrowly drawn" confidentiality order which would only protect "trade secrets" and other "confidential personal information" of KLA employees from disclosure. (*See* Letter from S. Weiss to M. Sloan, dated January 8, 2008.) As you are no doubt aware, this significantly mischaracterizes the position which Skadden has consistently taken in its discovery responses and in our conversations. As set forth in Skadden's Rule 45 responses and objections, we will agree to produce certain confidential, but non-privileged, non work product documents to Mr. Schroeder, but only on the condition that Mr. Schroeder agrees to sign, and the court enters, a broadly worded protective order that prevents the unauthorized disclosure of "any trade secrets *or confidential or competitively sensitive business information*" to third parties for purposes other than for use in this litigation. (*See, e.g.,* Skadden Response to Subpoena for Records, Resp. No. 2, at 7) (emphasis added). Skadden's proposed protective order for confidential documents and information is thus substantially broader than you have indicated in your January 8 and January 15 letters to me, and broader than you have previously indicated you are willing to sign. If you are now willing to sign such a protective order, however, Skadden will be willing to produce to you all non-privileged, non-work product documents that Skadden or the Special Committee produced to the government (regardless of whether the SEC has already produced such documents to you) as set forth in more detail on page 3, above.

Second, you have also asked us to provide you with certain billing records and "calendar entries" for Skadden attorneys who worked on the Special Committee investigation. As you know, we have agreed to produce "final versions of billing records and certain calendar items, which have been redacted to remove information protected by the attorney-client privilege, the work product doctrine, the right of privacy" and certain other confidential information that is not responsive to your document requests. (*See* Skadden's Responses to Schroeder's Subpoena for Records, Responses to Request No. 8, at 13.) We are in the process of gathering and redacting these documents and will produce them to you as expeditiously as possible. It is a time consuming process, but we hope to be able to produce these documents to you in the next two weeks.

Shirli Fabbri Weiss
January 25, 2008
Page 5

Third, you have also asked us to produce "all electronic MetaData concerning the Interview Memoranda turned over to the SEC." In our responses to your discovery requests, we represented only that Skadden would produce certain metadata concerning the Interview Memoranda, "which reflect information such as 'date last modified,' 'date created,' and 'date printed,' but do not disclose information protected by the work product doctrine, or any other applicable privileges, doctrines or immunities, such as the substance of any revisions or amendments made to the Interview Memoranda." (*See* Skadden's Responses to Schroeder's Subpoena for Records, Response to Request No. 7, at 12.) Your letter of January 8, 2008, substantially overstates the scope and type of metadata that Skadden has previously agreed to produce to Mr. Schroeder. We will produce the metadata described in Skadden's discovery response referenced above, but no more than that. We are in the process of gathering such metadata and will produce it to you as expeditiously as possible, and hopefully within the next two weeks.

Finally, you complain that Skadden is unfairly discriminating against Mr. Schroeder, and in favor of the SEC, because Skadden will purportedly "allow Ms. Harlan and other attorneys to respond to the SEC's questions at deposition about witness interviews, but that it will instruct those attorneys not to answer cross-examination questions from Mr. Schroeder's attorneys." This is flatly incorrect and does not reflect any of our previous discussions on this issue. As I stated in my letters to you dated December 3 and December 27, 2007, we <u>will</u> allow Ms. Harlan and other Skadden attorneys to testify with respect to the statements that Mr. Schroeder or other witnesses made to Skadden during the Special Committee interviews (as long as the Skadden deponent was present at the subject witness interview, and you do not seek to depose multiple Skadden attorneys about the same witness interview) contingent upon the entry of a stipulated confidentiality order among the SEC, Mr. Schroeder, the Company and Skadden, which provides, among other things, that Ms. Harlan's or the other Skadden attorneys' testimony about the interviews will not constitute a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities. Our position holds true whether the questions originate from the SEC or from Mr. Schroeder's attorneys.

As we have previously informed you, we will allow Ms. Harlan and the other Skadden attorneys to testify to a limited set of questions about the witness interviews conducted during the investigation in order to permit you to test the applicability of the attorney-client privilege and work product doctrine, including when and where the interview took place; who was present at the interview; how long it lasted; whether the attorney took notes by hand or on a computer; and the time he or she spent drafting the interview memo and the number of drafts he or she prepared. In the spirit of compromise, on the condition that you enter into a confidentiality order

Shirli Fabbri Weiss
January 25, 2008
Page 6

providing that such testimony would not constitute a waiver of the attorney-client privilege or the work product doctrine, we will also permit the attorney to testify to the attorney's personal recollection of what the witness said at the interview. We will instruct Ms. Harlan and the other Skadden attorneys not to answer any other questions that call for information protected by the attorney-client privilege or work product doctrine including, without limitation, any questions about their conversations with other Skadden attorneys regarding the interviews, the substance of any revisions they made to the interview memoranda, or their personal impressions or observations about the witnesses. In addition to disclosing confidential attorney-client communications, testimony on these topics would reveal the "mental impressions, conclusions, opinions or legal theories" of the deponents or other Skadden attorneys, which are protected by the attorney work product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947).

I hope that this clarifies all of your remaining questions. If not, please do not hesitate to call me to discuss this further. As I have informed you, however, I am currently on a family vacation and would therefore greatly appreciate if we can wait to resolve any further questions about this matter until after I return to the office on January 29.

Very truly yours,

*Matthew Sloan / RHC*

Matthew Sloan

cc: James E. Lyons
     Raymond Cho