1 electronic or magnetic storage media, and all other matter, printed, recorded or photographic

2 matter or sound reproductions, including video and audio tapes, however produced or reproduced.

3      7.      "DOJ" shall mean and refer to the United States Department of Justice, including

4 its FBI agents or other custodians, attorneys, expert consultants, paralegals, representatives, or

5 other persons acting under the United States Department of Justice's direction or control.

6      8.      "LECG" shall mean and refer to LECG, LLC, including its employers, agents,

7 custodians, representatives, or other persons acting under LECG's direction or control.

8      9.      "MORGAN LEWIS" shall mean and refer to the law firm of Morgan Lewis &

9 Bockius, LLP.

10      10.      "NASDAQ" shall mean and refer to the NASDAQ stock exchange, including its

11 agents, custodians, attorneys, expert consultants, representatives, or other persons acting under

12 the NASDAQ's direction or control.

13      11.      "PWC" shall mean and refer to PricewaterhouseCoopers International Limited,

14 including its member firms, predecessor firms, and their agents, custodians, attorneys, expert

15 consultants, representatives, or other persons acting under their direction or control.

16      12.      "RESTATEMENT" shall mean and refer to the Restatement announced in THE

17 COMPANY's Form 10-K filed with the Securities & Exchange Commission on January 29,

18 2007.

19      13.      "SEC" shall mean and refer to the United States Securities and Exchange

20 Commission, including its agents, custodians, attorneys, paralegals, expert consultants,

21 representatives, or other persons acting under the United States Securities and Exchange

22 Commission's direction or control.

23      14.      "SLC INVESTIGATION" shall mean and refer to the investigation conducted by

24 the SPECIAL LITIGATION COMMITTEE, its legal counsel and other advisors concerning

25 possible claims relating to KLA-TENCOR's historical stock option practices.

26      15.      "SPECIAL COMMITTEE" shall mean and refer to the Special Committee of

27 KLA-TENCOR's Board of Directors appointed on or about May 23, 2006 to investigate THE

28 COMPANY's historical stock option granting practices.

-2-

16.   "SPECIAL LITIGATION COMMITTEE" shall mean and refer to the Special Litigation Committee appointed by KLA-TENCOR's Board of Directors to conduct an investigation of the possible claims of KLA-TENCOR relating to its historical stock option practices.

17.   "SPECIAL COMMITTEE INVESTIGATION" shall mean and refer to the internal investigation (including any follow-up activities) conducted by the SPECIAL COMMITTEE and its legal counsel, accounting experts, consultants, and other advisors, which investigation was initiated by KLA-TENCOR's Board of Directors on or about May 23, 2006 to examine the historical stock option practices of THE COMPANY.

## INSTRUCTIONS

1.   If any DOCUMENTS described in these Demands are not produced as demanded, then with respect to each such DOCUMENT please state:

(a)   The name, present or last known address, telephone number, present or last known business affiliation and location, job title and job responsibilities of the DOCUMENT's author, drafter or originator, each PERSON who edited, corrected, revised, amended or reviewed the DOCUMENT, each PERSON who entered any initials, comments or notations into the DOCUMENT, and each recipient of the DOCUMENT or a copy thereof;

(b)   The DOCUMENT date;

(c)   A description of the DOCUMENT's subject matter or general nature (i.e., opinion of counsel, report, letter);

(d)   The basis for not producing the DOCUMENT or a copy thereof; and

(e)   The present location of the DOCUMENT and every copy thereof, and the name of the PERSON in each location having custody or control of the DOCUMENT or a copy.

2.   This Demand for production requires that the DOCUMENTS be produced in the same form and in the same order in which they existed prior to production.

3.   This Demand for production is a continuing demand for all DOCUMENTS which are described herein which may hereafter come into YOUR possession, custody, or control.

-3-

DLA PIPER US LLP
ATTACHMENT A TO SUBPOENA TO SKADDEN ARPS, SLATE, MEAGHER & FLOM LLP    C07-3798-JW

4.    In the event that any DOCUMENTS referred to in YOUR response are not in YOUR possession, custody, or control, please specify what disposition was made of them and by whom the DOCUMENTS are now possessed, held in custody, or controlled.

5.    Wherever it is necessary to bring within the scope of these Demands DOCUMENTS that might otherwise be construed to be outside its scope:

(a)    The words "and" and "or" shall be construed both disjunctively and conjunctively;

(b)    The words "any" and "all" shall be construed to mean "any and all;"

(c)    The singular shall include the plural, and vice versa; and

(d)    The words "include(s)" and "including" shall be construed to mean "including without limitation."

6.    These Demands require that YOU make available for inspection and copying each responsive DOCUMENT or tangible thing that is within YOUR actual or constructive possession, custody, care or control, including DOCUMENTS that YOU have a right to secure from any other source. These sources include, but are not limited to, YOUR agents, attorneys, accountants, consultants, advisors or other PERSONS acting or purporting to act on YOUR behalf.

7.    Each category of DOCUMENTS in these Demands seeks production of each responsive DOCUMENT in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

8.    If a portion of an otherwise responsive DOCUMENT contains information subject to a claim of privilege, only those portions of the DOCUMENT subject to the claim of privilege shall be deleted or redacted from the DOCUMENT, and the rest of the DOCUMENT shall be produced.

9.    Any DOCUMENT responsive to any category of these Demands that was, but no longer is, in YOUR possession, custody or control, whether actual or constructive, shall be described as completely as possible, and the following information shall be provided:

(a)    The manner of disposal, including destruction, loss, discarding, or any other means of disposal;

1       (b)    The date of disposal;

2       (c)    The reason for disposal;

3       (d)    The PERSON authorizing disposal;

4       (e)    The PERSON disposing of the DOCUMENT; and

5       (f)    The name and address of the most recent custodian of the DOCUMENT.

6     10.    Time Period of Demand: Unless otherwise specified, the time period covered by

7 these Demands is May 1, 2006 through the present.

8      **DEMAND FOR PRODUCTION OF DOCUMENTS AND THINGS**

9 **PRODUCTION DEMAND NO. 1**

10    All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION

11 and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized,

12 presented to or received from the SEC.

13 **PRODUCTION DEMAND NO. 2**

14    All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION

15 and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized,

16 presented to or received from the DOJ.

17 **PRODUCTION DEMAND NO. 3**

18    All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION

19 and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized,

20 presented to or received from the NASDAQ.

21 **PRODUCTION DEMAND NO. 4**

22    All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION

23 and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized,

24 presented to or received from PWC.

25 **PRODUCTION DEMAND NO. 5**

26    All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION

27 and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized,

28

1  presented to or received from LECG.

2  **PRODUCTION DEMAND NO. 6**

3      All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION

4  and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized,

5  presented to or received from MORGAN LEWIS.

6  **PRODUCTION DEMAND NO. 7**

7      All DOCUMENTS CONCERNING notes and/or memoranda of witness interviews

8  WHICH YOU conducted on behalf of the SPECIAL COMMITTEE, including but not limited to:

9  (1) YOUR handwritten notes; (2) all drafts of interview memoranda, whether dictated,

10  handwritten, typed or otherwise memorialized; (3) the metadata of any electronically created and

11  edited electronic DOCUMENTS showing when they were edited; (4) all exhibits or other

12  DOCUMENTS referenced in any such memoranda or notes; and (5) all DOCUMENTS showing

13  edits of such memoranda or notes.

14  **PRODUCTION DEMAND NO. 8**

15      YOUR calendars and billing time records which reference or describe the dates, length

16  and content of: (1) witness interviews YOU attended conducted by the SPECIAL COMMITTEE

17  or SKADDEN; (2) meetings or telephone calls YOU attended with any agency of the government

18  CONCERNING the SPECIAL COMMITTEE INVESTIGATION; (3) meetings or telephone

19  calls YOU attended with PWC CONCERNING the SPECIAL COMMITTEE INVESTIGATION

20  and/or RESTATEMENT; (4) meetings or telephone calls YOU attended with LECG

21  CONCERNING the SPECIAL COMMITTEE INVESTIGATION and/or RESTATEMENT; (5)

22  meetings YOU attended with the NASDAQ CONCERNING the SPECIAL COMMITTEE

23  INVESTIGATION and/or RESTATEMENT; (6) time YOU spent on the SPECIAL

24  COMMITTEE INVESTIGATION and/or RESTATEMENT other than that specified in (1)

25  through (5) above.

26  **PRODUCTION DEMAND NO. 9**

27      All DOCUMENTS summarizing any interactions which YOU attended with

28

DLA PIPER US LLP

ATTACHMENT A TO SUBPOENA TO SKADDEN ARPS, SLATE, MEAGHER & FLOM LLP    C07-3798-JW

1    representatives of the SEC, DOJ and/or NASDAQ concerning the SPECIAL COMMITTEE

2    INVESTIGATION and/or RESTATEMENT including notes or memoranda of any such

3    interaction and any presentations that YOU made therein.

4    **PRODUCTION DEMAND NO. 10**

5          All DOCUMENTS CONCERNING statements which YOU transmitted, read from (in

6    whole or in part), summarized or presented to, or received from, any member of the press or news

7    media or made to attendees at any seminars, CONCERNING the SPECIAL COMMITTEE

8    INVESTIGATION and/or SCHROEDER.

9    **PRODUCTION DEMAND NO. 11**

10         All DOCUMENTS CONCERNING the COMPANY'S SEC filings that refer to or discuss

11   the SPECIAL COMMITTEE INVESTIGATION and/or RESTATEMENT, including drafts

12   which YOU prepared, edited or commented upon.

13   **PRODUCTION DEMAND NO. 12**

14         All DOCUMENTS CONCERNING the SLC INVESTIGATION which YOU transmitted

15   to, read from (in whole or in part), summarized, presented to or received from any governmental

16   agency.

17   **PRODUCTION DEMAND NO. 13**

18         All DOCUMENTS CONCERNING the SLC INVESTIGATION which YOU transmitted

19   to, read from (in whole or in part), summarized, presented to or received from, PWC.

20   **PRODUCTION DEMAND NO. 14**

21         All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION

22   which YOU created or edited, which related to the findings of the SPECIAL COMMITTEE.

23   **PRODUCTION DEMAND NO. 15**

24         All DOCUMENTS CONCERNING meetings and/or telephone calls which YOU had with

25   representatives of the press or other news media CONCERNING SCHROEDER, the SPECIAL

26   COMMITTEE INVESTIGATION and/or the SLC INVESTIGATION, including billing records

27   and calendar entries showing any such meetings or telephone calls.

28
DLA Piper US LLP    ATTACHMENT A TO SUBPOENA TO SKADDEN ARPS, SLATE, MEAGHER & FLOM LLP    C07-3798-JW

1  **PRODUCTION DEMAND NO. 16**

2    All DOCUMENTS CONCERNING any investigation CONCERNING SCHROEDER or

3  KLA-TENCOR's historical stock option practices (other than the SPECIAL COMMITTEE

4  INVESTIGATION, RESTATEMENT, and SLC INVESTIGATION) which YOU gave, read

5  from (in whole or in part), summarized, presented to or received from any of the following

6  entities: SEC, DOJ, NASDAQ or news media.

7  **PRODUCTION DEMAND NO. 17**

8    All DOCUMENTS that relate to any ownership interest in KLA-TENCOR securities held

9  during the time period May 1, 2006 to the present by any SKADDEN attorney(s) who worked on

10  the SPECIAL COMMITTEE INVESTIGATION.

11  Dated: November 12, 2007.          DLA PIPER US LLP

12

13                          By
                                SHIRLI F. WEISS
14                              DAVID A. PRIEBE
                                JEFFREY B. COOPERSMITH
15                              Attorneys for Defendant
                                Kenneth L. Schroeder
16  SD\1773757.1

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the City and County of San Diego, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within-entitled action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101-4297.

On November 12, 2007, I served the following document(s):

**NOTICE OF SUBPOENA FOR RECORDS TO SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

On the interested parties in the subject action by placing a true copy of the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

Marc J. Fagel
Susan F. La Marca
Mark P. Fickes
Elena Ro
Securities and Exchange Commission
44 Montgomery Street, Suite 2600
San Francisco, CA 94101
fagelm@sec.gov
lamarcas@sec.gov
fickesm@sec.gov
pendreyi@sec.gov
roe@sec.gov

James E. Lyons
Skadden Arps Slate Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111
jlyons@skadden.com

Elliot R. Peters
Stuart L. Gasner
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
epeters@kvn.com
sgasner@kvn.com

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 12, 2007, at San Diego, California.

_____
Emiko S. Gonzales

# Exhibit 12

1  JAMES E. LYONS (Cal. Bar No. 112582)
   RAYMOND H. CHO (Cal Bar No. 240556)
2  Skadden, Arps, Slate, Meagher & Flom LLP
   Four Embarcadero Center, Suite 3800
3  San Francisco, California 94111-4144
   (415) 984-6400
4  (415) 984-2698 (fax)
   jlyons@skadden.com
5  rcho@skadden.com

6  MATTHEW E. SLOAN (Cal. Bar No. 165165)
   Skadden, Arps, Slate, Meagher & Flom LLP
7  300 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-3144
8  (213) 687-5000
   (213) 687-5600 (fax)
9  masloan@skadden.com

10 Attorneys for Non-Party
   Skadden, Arps, Slate, Meagher & Flom LLP

11

12               UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14
   SECURITIES AND EXCHANGE           )   CASE NO. C 07-3798 (JW)
15 COMMISSION,                       )
                                     )   NON-PARTY SKADDEN, ARPS, SLATE,
16               Plaintiff,          )   MEAGHER & FLOM LLP'S RESPONSES
                                     )   AND OBJECTIONS TO DEFENDANT
17      vs.                          )   KENNETH L. SCHROEDER'S
                                     )   SUBPOENA FOR RECORDS
18 KENNETH L. SCHROEDER,             )
                                     )
19               Defendant.          )
                                     )
20

21      Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Skadden, Arps,

22 Slate, Meagher & Flom LLP ("Skadden"), by and through undersigned counsel, hereby objects and

23 responds to the Subpoena Duces Tecum (the "Subpoena") served by defendant Kenneth L.

24 Schroeder ("Schroeder") in the above-captioned litigation ("Litigation") as follows:

25

26

27

28

---

NON-PARTY SKADDEN'S RESPONSES AND OBJECTIONS TO
DEFENDANT KENNETH L. SCHROEDER'S SUBPOENA FOR RECORDS

1 <u>**GENERAL OBJECTIONS**</u>

2        1.     Skadden incorporates by reference each and every General Objection set

3 forth below into each and every specific response.

4        2.     Skadden objects to the Subpoena to the extent that it seeks the production of

5 documents that are within Schroeder's possession, custody or control, or that are equally as

6 accessible to Schroeder as to Skadden, including documents produced to Schroeder by the

7 Securities and Exchange Commission ("SEC"), as outlined in its Initial Disclosures pursuant to

8 F.R.C.P. 26(a)(1).

9        3.     Skadden objects to the Subpoena to the extent that it is vague, overbroad,

10 unduly burdensome and/or calls for the production of documents not relevant to the issues raised

11 nor reasonably calculated to lead to the discovery of admissible evidence. Skadden does not

12 concede the relevance of any document produced in response to the Subpoena.

13        4.     Skadden objects to the Subpoena to the extent it would require Skadden to

14 conduct an unreasonably broad and burdensome search for documents that would only have

15 marginal relevance.

16        5.     Skadden objects to the Subpoena insofar as it requests documents that are

17 protected from discovery by the attorney-client privilege, the work-product doctrine, or any other

18 applicable privilege or immunity. By producing documents in response to the Subpoena, Skadden

19 does not waive, intentionally or otherwise, any privilege, doctrine or immunity protecting its

20 communications, transactions or records from disclosure. Any production of documents

21 inconsistent with the foregoing is wholly inadvertent and shall not constitute a waiver of any such

22 privilege or protection.

23        6.     Skadden objects to the Subpoena to the extent it seeks confidential,

24 proprietary or competitively sensitive information, or information concerning past or present

25 employees of Skadden or KLA-Tencor Corporation ("KLA") which is protected by the right of

26 privacy under Article I, Section 1 of the California Constitution or other applicable law. Absent

27

28

1 the entry of a suitable protective order in this case to safeguard the confidentiality of the documents

2 sought, no such documents will be produced.

3        7.     Skadden objects to the Subpoena to the extent it purports to require Skadden

4 to comply with requirements beyond those imposed by the Federal Rules of Civil Procedure and

5 the Local Rules of the United States District Court for the Northern District of California, or which

6 exceed the permissible scope of discovery under said rules.

7        8.     Skadden objects to the term "DOCUMENT(S)" as defined in the Subpoena

8 as overly broad and unduly burdensome to the extent that this definition is broader than and

9 deviates from the commonly understood definition of that term.

10        9.     Skadden objects to the Subpoena on the ground that it makes no provision

11 for reimbursement of the substantial expenses that Skadden may incur in complying with the

12 Subpoena. Skadden's response to the Subpoena is subject to its claim for reimbursement of the

13 reasonable costs and expenses incurred in connection with the Subpoena as provided in Federal

14 Rule of Civil Procedure 45(c)(1).

15       10.     Skadden objects to the Subpoena to the extent it seeks documents or

16 information primarily to harass or annoy KLA, for use in other litigation, or to release to third

17 parties.

18       11.     Without waiving any of the foregoing General Objections, Skadden responds

19 to the Subpoena, subject to the following additional express reservations of rights:

20          a.     Skadden expressly reserves the right to object, on the grounds of

21 competency, privilege, relevance, burden or materiality, or any other proper ground, to the use of

22 these responses or documents produced in response to the Subpoena for any purpose, in whole or

23 in part, in any subsequent stage or proceeding in the Litigation;

24          b.     Skadden does not concede the relevancy of any document or

25 information being produced in response to the Requests and expressly reserves the right to object

26 to the introduction into evidence or any other use of such documents or information on relevance or

27 any other grounds; and

28

c.      Skadden expressly reserves the right to revise, amend, correct, add to

or clarify any of the responses or objections propounded herein.

## SPECIFIC RESPONSES AND OBJECTIONS

Without waiving or departing from its General Objections, and specifically

incorporating the General Objections into each of the specific responses below, Skadden makes the

following additional objections and responses to specific document requests in the Subpoena.

## REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS CONCERNING the SPECIAL COMMITTEE

INVESTIGATION and/or RESTATEMENT which YOU transmitted to, read from (in whole or in

part), summarized, presented to or received from the SEC.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Skadden incorporates by reference its General Objections as though fully set forth

herein.  Skadden additionally objects to this Request to the extent that it seeks the production of

documents that are within Schroeder's possession, custody or control, or that are equally as

accessible to Schroeder as to Skadden.  Skadden further objects to this Request to the extent that it

seeks the discovery of information that is neither relevant to the subject matter of this action nor

reasonably calculated to lead to the discovery of admissible evidence.  Skadden additionally

objects to this Request to the extent that it is overbroad and unduly burdensome.  Skadden further

objects to this Request to the extent that it seeks the production of documents that are subject to

any applicable privilege, doctrine or immunity, including without limitation the attorney-client

privilege, the attorney work product doctrine or the right of privacy.  Skadden additionally objects

to this Request to the extent that it is vague and ambiguous with respect to the terms

"CONCERNING," "transmitted", "read from", "summarized", "presented" and "received."

Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request

requires Skadden to speculate as to the nature and scope of the documents sought.  Requiring

Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not

reasonably calculated to lead to the discovery of admissible evidence.

1       Based on Skadden's review of the SEC's Initial Disclosures, the SEC has already

2   produced substantially all of the documents responsive to this Request to Schroeder, pursuant to

3   F.R.C.P. 26(a)(1). Because these documents are already in Schroeder's possession, custody or

4   control, it would be unduly burdensome and an improper use of the discovery process to compel

5   Skadden to produce such documents in this case. Accordingly, Skadden will not produce any

6   documents responsive to this Request which the SEC has already produced to Schroeder as such

7   documents are already in Schroeder's possession, custody or control, and therefore are equally

8   accessible to Schroeder as to Skadden.    Skadden also refuses to produce many of these responsive

9   documents on the additional grounds that they are protected by the attorney client privilege, the

10  work product doctrine, and/or other applicable privileges.

11      To the extent that Skadden has any responsive documents that were not included in

12  the SEC's Initial Disclosures to Schroeder, and are not protected by the attorney-client privilege,

13  the work product doctrine or some other applicable privilege, Skadden will produce such

14  documents to Schroeder to the extent that they do not contain any trade secrets or confidential or

15  competitively sensitive business information. To the extent that such responsive, non-privileged

16  documents do contain any trade secrets or confidential or competitively sensitive business

17  information, Skadden will produce them to Schroeder subject to the entry by the court of a

18  confidentiality order prohibiting the parties from disclosing such documents or information to third

19  parties or using them for purposes unrelated to this Litigation.  However, Skadden currently

20  believes that all non-privileged responsive documents that were produced to the SEC have already

21  been produced to Schroeder pursuant to the SEC's Initial Disclosures.

22  **REQUEST FOR PRODUCTION NO. 2:**

23      All DOCUMENTS CONCERNING the SPECIAL COMMITTEE

24  INVESTIGATION and/or RESTATEMENT which YOU transmitted to, read from (in whole or in

25  part), summarized, presented to or received from the DOJ.

26

27

28

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

2          Skadden incorporates by reference its General Objections as though fully set forth

3  herein.  Skadden additionally objects to this Request to the extent that it seeks the production of

4  documents that are within Schroeder's possession, custody or control, or that are equally as

5  accessible to Schroeder as to Skadden.  Skadden further objects to this Request to the extent that it

6  seeks the discovery of information that is neither relevant to the subject matter of this action nor

7  reasonably calculated to lead to the discovery of admissible evidence.  Skadden additionally

8  objects to this Request to the extent that it is overbroad and unduly burdensome.  Skadden further

9  objects to this Request to the extent that it seeks the production of documents that are subject to

10 any applicable privilege, doctrine or immunity, including without limitation the attorney-client

11 privilege, the attorney work product doctrine or the right of privacy.  Skadden additionally objects

12 to this Request to the extent that it is vague and ambiguous with respect to the terms

13 "CONCERNING," "transmitted", "read from", "summarized", "presented" and "received."

14 Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request

15 requires Skadden to speculate as to the nature and scope of the documents sought.  Requiring

16 Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not

17 reasonably calculated to lead to the discovery of admissible evidence.

18          Based on Skadden's review of the SEC's Initial Disclosures, the SEC has already

19 produced substantially all of the documents responsive to this Request to Schroeder, pursuant to

20 F.R.C.P. 26(a)(1).  Because these documents are already in Schroeder's possession, custody or

21 control, it would be unduly burdensome and an improper use of the discovery process to compel

22 Skadden to produce such documents in this case.  Accordingly, Skadden will not produce any

23 documents responsive to this Request which the SEC has already produced to Schroeder as such

24 documents are already in Schroeder's possession, custody or control, and are therefore equally

25 accessible to Schroeder as to Skadden.   Skadden also refuses to produce many of these responsive

26 documents on the additional grounds that they are protected by the attorney client privilege, the

27 work product doctrine, and/or other applicable privileges.

28

1    To the extent that Skadden has any responsive documents that were not included in

2 the SEC's Initial Disclosures to Schroeder, and are not protected by the attorney-client privilege,

3 the work product doctrine or some other applicable privilege, Skadden will produce such

4 documents to Schroeder to the extent that they do not contain any trade secrets or confidential or

5 competitively sensitive business information.  To the extent that such responsive, non-privileged

6 documents do contain any trade secrets or confidential or competitively sensitive business

7 information, Skadden will produce them to Schroeder subject to the entry by the court of a

8 confidentiality order prohibiting the parties from disclosing such documents or information to third

9 parties or using them for purposes unrelated to this Litigation.   However, Skadden currently

10 believes that all non-privileged responsive documents that were produced to the DOJ have already

11 been produced to Schroeder pursuant to the SEC's Initial Disclosures.

12 **REQUEST FOR PRODUCTION NO. 3:**

13    All DOCUMENTS CONCERNING the SPECIAL COMMITTEE

14 INVESTIGATION and/or RESTATEMENT which YOU transmitted to, read from (in whole or in

15 part), summarized, presented to or received from the NASDAQ.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

17    Skadden incorporates by reference its General Objections as though fully set forth

18 herein.  Skadden further objects to this Request to the extent that it seeks the discovery of

19 information that is neither relevant to the subject matter of this action nor reasonably calculated to

20 lead to the discovery of admissible evidence.  Skadden additionally objects to this Request to the

21 extent that it is overbroad and unduly burdensome.  Skadden additionally objects to this Request to

22 the extent that it is vague and ambiguous with respect to the terms "CONCERNING", transmitted",

23 "read from", "summarized", "presented" and "received."  Skadden objects that the use of these

24 vague and ambiguous terms in conjunction with this Request requires Skadden to speculate as to

25 the nature and scope of the documents sought.  Requiring Skadden to so speculate renders the

26 Request overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the

27 discovery of admissible evidence.

28

1    Subject to and without waiving any of the above objections, Skadden will produce

2  documents responsive to this Request, to the extent that such documents are not subject to any

3  applicable privilege, doctrine or immunity.

4  **REQUEST FOR PRODUCTION NO. 4:**

5    All DOCUMENTS CONCERNING the SPECIAL COMMITTEE

6  INVESTIGATION and/or RESTATEMENT which YOU transmitted to, read from (in whole or in

7  part), summarized, presented to or received from the PWC.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

9    Skadden incorporates by reference its General Objections as though fully set forth

10 herein.  Skadden additionally objects to this Request to the extent that it seeks the production of

11 documents that are within Schroeder's possession, custody or control, or that are equally as

12 accessible to Schroeder as to Skadden.  Skadden further objects to this Request to the extent that it

13 seeks the discovery of information that is neither relevant to the subject matter of this action nor

14 reasonably calculated to lead to the discovery of admissible evidence.  Skadden additionally

15 objects to this Request to the extent that it is overbroad and unduly burdensome.  Skadden further

16 objects to this Request to the extent that it seeks the production of documents that are subject to

17 any applicable privilege, doctrine or immunity, including without limitation the attorney-client

18 privilege, the attorney work product doctrine or the right of privacy.  Skadden additionally objects

19 to this Request to the extent that it is vague and ambiguous with respect to the terms

20 "CONCERNING," "transmitted", "read from", "summarized", "presented" and "received."

21 Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request

22 requires Skadden to speculate as to the nature and scope of the documents sought.  Requiring

23 Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not

24 reasonably calculated to lead to the discovery of admissible evidence.

25    Skadden will not produce documents responsive to this Request because any such

26 documents are protected by the work product doctrine and/or the attorney-client privilege.

27

28

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized, presented to or received from LECG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Skadden incorporates by reference its General Objections as though fully set forth herein. Skadden additionally objects to this Request to the extent that it seeks the production of documents that are within Schroeder's possession, custody or control, or that are equally as accessible to Schroeder as to Skadden. Skadden further objects to this Request to the extent that it seeks the discovery of information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Skadden additionally objects to this Request to the extent that it is overbroad and unduly burdensome. Skadden further objects to this Request to the extent that it seeks the production of documents that are subject to any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the attorney work product doctrine or the right of privacy. Skadden additionally objects to this Request to the extent that it is vague and ambiguous with respect to the terms "CONCERNING," "transmitted", "read from", "summarized", "presented" and "received." Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request requires Skadden to speculate as to the nature and scope of the documents sought. Requiring Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence.

Skadden will not produce documents responsive to this Request because any such documents are protected by the work product doctrine and/or the attorney-client privilege.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS CONCERNING the SPECIAL COMMITTEE INVESTIGATION and/or RESTATEMENT which YOU transmitted to, read from (in whole or in part), summarized, presented to or received from MORGAN LEWIS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Skadden incorporates by reference its General Objections as though fully set forth herein. Skadden additionally objects to this Request to the extent that it seeks the production of documents that are within Schroeder's possession, custody or control, or that are equally as accessible to Schroeder as to Skadden. Skadden additionally objects to this Request to the extent that it seeks the production of documents that are within Schroeder's possession, custody or control, or that are equally as accessible to Schroeder as to Skadden. Skadden further objects to this Request to the extent that it seeks the discovery of information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Skadden additionally objects to this Request to the extent that it is overbroad and unduly burdensome. Skadden further objects to this Request to the extent that it seeks the production of documents that are subject to any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the attorney work product doctrine or the right of privacy. Skadden additionally objects to this Request to the extent that it is vague and ambiguous with respect to the terms "CONCERNING," "transmitted", "read from", "summarized", "presented" and "received." Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request requires Skadden to speculate as to the nature and scope of the documents sought. Requiring Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence.

Skadden will not produce documents responsive to this Request because any such documents are protected by the attorney-client privilege and/or the work product doctrine.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS CONCERNING notes and/or memoranda of witness interviews WHICH YOU conducted on behalf of the SPECIAL COMMITTEE, including but not limited to: (1) YOUR handwritten notes; (2) all drafts of interview memoranda, whether dictated, handwritten, typed or otherwise memorialized; (3) the metadata of any electronically created and edited electronic DOCUMENTS showing when they were edited; (4) all exhibits or other DOCUMENTS

1  referenced in any such memoranda or notes; and (5) all DOCUMENTS showing edits of such

2  memoranda or notes.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

4          Skadden incorporates by reference its General Objections as though fully set forth

5  herein. Skadden additionally objects to this Request to the extent that it seeks the production of

6  documents that are within Schroeder's possession, custody or control, or that are equally as

7  accessible to Schroeder as to Skadden. Skadden further objects to this Request to the extent that it

8  seeks the discovery of information that is neither relevant to the subject matter of this action nor

9  reasonably calculated to lead to the discovery of admissible evidence. Skadden additionally

10 objects to this Request to the extent that it is overbroad and unduly burdensome. Skadden further

11 objects to this Request to the extent that it seeks the production of documents that are subject to

12 any applicable privilege, doctrine or immunity, including without limitation the attorney-client

13 privilege, the attorney work product doctrine or the right of privacy. Skadden additionally objects

14 to this Request to the extent that it is vague and ambiguous with respect to the terms

15 "CONCERNING," "notes", "memoranda", "conducted", "on behalf of", "drafts", "memorialized",

16 "metadata", "electronic", "edited", "referenced" and "showing." Skadden objects that the use of

17 these vague and ambiguous terms in conjunction with this Request requires Skadden to speculate

18 as to the nature and scope of the documents sought. Requiring Skadden to so speculate renders the

19 Request overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the

20 discovery of admissible evidence.

21         Based on Skadden's review of the SEC's initial disclosures to Schroeder, pursuant to

22 F.R.C.P. 26(a)(1), the SEC has already produced the final version of all witness interview

23 memoranda prepared by Skadden (the "Interview Memoranda") as well as all the document or

24 exhibits referenced therein. Because such documents are already in Schroeder's possession,

25 custody or control, it would be unduly burdensome and an improper use of the discovery process to

26 compel Skadden to produce such documents in this case. Accordingly, Skadden will not produce

27 any of the Interview Memoranda or the documents or exhibits referenced therein to Schroeder as

28

1  the SEC has already produced such documents to Schroeder and they are, accordingly, equally

2  accessible to Schroeder as to Skadden.  Skadden also refuses to produce any of the Interview

3  Memoranda, or any of the privileged documents or exhibits attached thereto, on the additional

4  grounds that such documents are protected from discovery by the attorney client privilege, the

5  work product doctrine, or other applicable privileges.

6  Skadden will produce the electronic document metadata concerning the Interview

7  Memoranda, which reflect information such as "date last modified," "date created," and "date

8  printed," but do not disclose information protected by the work product doctrine, or any other

9  applicable privileges, doctrines or immunities, such as the substance of any revisions or

10  amendments made to the Interview Memoranda.

11  Skadden will refuse to produce all other documents responsive to this Request on

12  the grounds that they are protected by the attorney client privilege, the work product doctrine or

13  other applicable privileges or immunities.

14  **REQUEST FOR PRODUCTION NO. 8:**

15  YOUR calendars and billing time records which reference or describe the dates,

16  length and content of: (1) witness interviews YOU attended conducted by the SPECIAL

17  COMMITTEE or SKADDEN; (2) meetings or telephone calls YOU attended with any agency of

18  the government CONCERNING the SPECIAL COMMITTEE INVESTIGATION; (3) meetings or

19  telephone calls YOU attended with PWC CONCERNING the SPECIAL COMMITTEE

20  INVESTIGATION and/or RESTATEMENT; (4) meetings or telephone calls YOU attended with

21  LECG CONCERNING the SPECIAL COMMITTEE INVESTIGATION and/or

22  RESTATEMENT; (5) meetings YOU attended with the NASDAQ CONCERNING the SPECIAL

23  COMMITTEE INVESTIGATION and/or RESTATEMENT; (6) time YOU spent on the SPECIAL

24  COMMITTEE INVESTIGATION and/or RESTATEMENT other than that specified in (1) through

25  (5) above.

26

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Skadden incorporates by reference its General Objections as though fully set forth herein. Skadden further objects to this Request to the extent that it seeks the discovery of information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Skadden additionally objects to this Request to the extent that it is overbroad and unduly burdensome. Skadden further objects to this Request to the extent that it seeks the production of documents that are subject to any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the attorney work product doctrine or the right of privacy. Skadden additionally objects to this Request to the extent that it is vague and ambiguous with respect to the terms "CONCERNING," "calendars", "time records", "reference", "describe", "attended", "conducted" and "meetings." Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request requires Skadden to speculate as to the nature and scope of the documents sought. Requiring Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any of the above objections, Skadden will produce certain documents responsive to this Request, including final versions of billing records and certain calendar items, which have been redacted to remove information protected by the attorney-client privilege, the work product doctrine, the right of privacy and confidential information that is not responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS summarizing any interactions which YOU attended with representatives of the SEC, DOJ and/or NASDAQ concerning the SPECIAL COMMITTEE INVESTIGATION and/or RESTATEMENT including notes or memoranda of any such interaction and any presentations that YOU made therein.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Skadden incorporates by reference its General Objections as though fully set forth herein. Skadden further objects to this Request to the extent that it seeks the discovery of information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Skadden additionally objects to this Request to the extent that it is overbroad and unduly burdensome. Skadden further objects to this Request to the extent that it seeks the production of documents that are subject to any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the attorney work product doctrine or the right of privacy. Skadden additionally objects to this Request to the extent that it is vague and ambiguous with respect to the terms "CONCERNING," "summarizing", "interactions", "attended", "representatives", "notes", "memoranda" and "presentations." Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request requires Skadden to speculate as to the nature and scope of the documents sought. Requiring Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any of the above objections, Skadden will produce any documents responsive to this Request, to the extent they exist, which are not protected by the work product doctrine, the attorney client privilege, or any other applicable privilege or immunity. However, Skadden believes that substantially all, if not all, responsive documents, if any, will be protected by the work product doctrine, the attorney client privilege, or other applicable privileges, and will not produce any such documents.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS CONCERNING statements which YOU transmitted, read from (in whole or in part), summarized or presented to, or received from, any member of the press or news media or made to attendees at any seminars, CONCERNING the SPECIAL COMMITTEE INVESTIGATION and/or SCHROEDER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

1    Skadden incorporates by reference its General Objections as though fully set forth

2 herein. Skadden further objects to this Request to the extent that it seeks the discovery of

3 information that is neither relevant to the subject matter of this action nor reasonably calculated to

4 lead to the discovery of admissible evidence. Skadden additionally objects to this Request to the

5 extent that it is overbroad and unduly burdensome. Skadden further objects to this Request to the

6 extent that it seeks the production of documents that are subject to any applicable privilege,

7 doctrine or immunity, including without limitation the attorney-client privilege, the attorney work

8 product doctrine or the right of privacy. Skadden additionally objects to this Request to the extent

9 that it is vague and ambiguous with respect to the terms "CONCERNING," "statements",

10 "transmitted", "read from", "summarized", "presented", "received", "member", "press", "news

11 media", "attendees" and "seminars." Skadden objects that the use of these vague and ambiguous

12 terms in conjunction with this Request requires Skadden to speculate as to the nature and scope of

13 the documents sought. Requiring Skadden to so speculate renders the Request overbroad, unduly

14 burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible

15 evidence.

16    Subject to and without waiving any of the above objections, Skadden will produce

17 documents responsive to this Request, if any, to the extent that such documents are not subject to

18 any applicable privilege, doctrine or immunity. However, Skadden does not believe it has any such

19 documents.

20 **REQUEST FOR PRODUCTION NO. 11:**

21    All DOCUMENTS CONCERNING the COMPANY'S SEC filings that refer to or

22 discuss the SPECIAL COMMITTEE INVESTIGATION and/or RESTATEMENT, including

23 drafts which YOU prepared, edited or commented upon.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

25    Skadden incorporates by reference its General Objections as though fully set forth

26 herein. Skadden additionally objects to this Request to the extent that it seeks the production of

27 documents that are within Schroeder's possession, custody or control, or that are equally as

28

1 | accessible to Schroeder as to Skadden. Skadden further objects to this Request to the extent that it

2 | seeks the discovery of information that is neither relevant to the subject matter of this action nor

3 | reasonably calculated to lead to the discovery of admissible evidence. Skadden additionally

4 | objects to this Request to the extent that it is overbroad and unduly burdensome. Skadden further

5 | objects to this Request to the extent that it seeks the production of documents that are subject to

6 | any applicable privilege, doctrine or immunity, including without limitation the attorney-client

7 | privilege, the attorney work product doctrine or the right of privacy. Skadden additionally objects

8 | to this Request to the extent that it is vague and ambiguous with respect to the terms

9 | "CONCERNING," "filings", "refer", "discuss", "drafts", "prepared", "edited" and "commented."

10 | Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request

11 | requires Skadden to speculate as to the nature and scope of the documents sought. Requiring

12 | Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not

13 | reasonably calculated to lead to the discovery of admissible evidence.

14 |         Subject to and without waiving any of the above objections, Skadden will produce

15 | any documents responsive to this Request which are not protected by the work product doctrine,

16 | the attorney-client privilege, or any other applicable privilege or immunity. However, Skadden

17 | does not believe it has any such non-privileged documents.

18 | **REQUEST FOR PRODUCTION NO. 12:**

19 |         All DOCUMENTS CONCERNING the SLC INVESTIGATION which YOU

20 | transmitted to, read from (in whole or in part), summarized, presented to or received from any

21 | government agency.

22 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

23 |         Skadden incorporates by reference its General Objections as though fully set forth

24 | herein. Skadden additionally objects to this Request to the extent that it seeks the production of

25 | documents that are within Schroeder's possession, custody or control, or that are equally as

26 | accessible to Schroeder as to Skadden. Skadden further objects to this Request to the extent that it

27 | seeks the discovery of information that is neither relevant to the subject matter of this action nor

28 |

1 reasonably calculated to lead to the discovery of admissible evidence. Skadden additionally
2 objects to this Request to the extent that it is overbroad and unduly burdensome. Skadden further
3 objects to this Request to the extent that it seeks the production of documents that are subject to
4 any applicable privilege, doctrine or immunity, including without limitation the attorney-client
5 privilege, the attorney work product doctrine or the right of privacy. Skadden additionally objects
6 to this Request to the extent that it is vague and ambiguous with respect to the terms
7 "CONCERNING," "transmitted", "read from", "summarized", "presented" and "received."
8 Skadden objects that the use of these vague and ambiguous terms in conjunction with this Request
9 requires Skadden to speculate as to the nature and scope of the documents sought. Requiring
10 Skadden to so speculate renders the Request overbroad, unduly burdensome, oppressive and not
11 reasonably calculated to lead to the discovery of admissible evidence.

12           Subject to and without waiving any of the above objections, Skadden will produce
13 documents responsive to this Request, if any, to the extent that such documents are not subject to
14 any applicable privilege, doctrine or immunity.

15 **REQUEST FOR PRODUCTION NO. 13:**

16           All DOCUMENTS CONCERNING the SLC INVESTIGATION which YOU
17 transmitted to, read from (in whole or in part), summarized, presented to or received from, PWC.

18 **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

19           Skadden incorporates by reference its General Objections as though fully set forth
20 herein. Skadden further objects to this Request to the extent that it seeks the discovery of
21 information that is neither relevant to the subject matter of this action nor reasonably calculated to
22 lead to the discovery of admissible evidence. Skadden additionally objects to this Request to the
23 extent that it is overbroad and unduly burdensome. Skadden further objects to this Request to the
24 extent that it seeks the production of documents that are subject to any applicable privilege,
25 doctrine or immunity, including without limitation the attorney-client privilege, the attorney work
26 product doctrine or the right of privacy. Skadden additionally objects to this Request to the extent
27 that it is vague and ambiguous with respect to the terms "CONCERNING," "transmitted", "read

28

1  from", "summarized", "presented" and "received."  Skadden objects that the use of these vague and

2  ambiguous terms in conjunction with this Request requires Skadden to speculate as to the nature

3  and scope of the documents sought.  Requiring Skadden to so speculate renders the Request

4  overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery

5  of admissible evidence.

6      Skadden will not produce documents responsive to this Request because any such

7  documents are protected by the work product doctrine and/or attorney-client privilege.

8  **REQUEST FOR PRODUCTION NO. 14:**

9      All DOCUMENTS CONCERNING the SPECIAL COMMITTEE

10  INVESTIGATION which YOU created or edited, which related to the findings of the SPECIAL

11  COMMITTEE.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

13      Skadden incorporates by reference its General Objections as though fully set forth

14  herein.  Skadden additionally objects to this Request to the extent that it seeks the production of

15  documents that are within Schroeder's possession, custody or control, or that are equally as

16  accessible to Schroeder as to Skadden.  Skadden further objects to this Request to the extent that it

17  seeks the discovery of information that is neither relevant to the subject matter of this action nor

18  reasonably calculated to lead to the discovery of admissible evidence.  Skadden additionally

19  objects to this Request to the extent that it is overbroad and unduly burdensome.  Skadden further

20  objects to this Request to the extent that it seeks the production of documents that are subject to

21  any applicable privilege, doctrine or immunity, including without limitation the attorney-client

22  privilege, the attorney work product doctrine or the right of privacy.  Skadden additionally objects

23  to this Request to the extent that it is vague and ambiguous with respect to the terms

24  "CONCERNING," "created", "edited" and "findings."  Skadden objects that the use of these vague

25  and ambiguous terms in conjunction with this Request requires Skadden to speculate as to the

26  nature and scope of the documents sought.  Requiring Skadden to so speculate renders the Request

27

28

1  overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery
2  of admissible evidence.

3          Subject to and without waiving any of the above objections, Skadden will produce
4  any documents responsive to this Request, which are not protected by the work product doctrine,
5  the attorney client privilege, or any other applicable privilege or immunity.

6  **REQUEST FOR PRODUCTION NO. 15:**

7          All DOCUMENTS CONCERNING meetings and/or telephone calls which YOU
8  had with representatives of the press or other news media CONCERNING SCHROEDER, the
9  SPECIAL COMMITTEE INVESTIGATION and/or the SLC INVESTIGATION, including billing
10  records and calendar entries showing any such meetings or telephone calls.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

12          Skadden incorporates by reference its General Objections as though fully set forth
13  herein. Skadden further objects to this Request to the extent that it seeks the discovery of
14  information that is neither relevant to the subject matter of this action nor reasonably calculated to
15  lead to the discovery of admissible evidence. Skadden further objects to this Request to the extent
16  that it seeks the production of documents that are subject to any applicable privilege, doctrine or
17  immunity, including without limitation the attorney-client privilege, the attorney work product
18  doctrine or the right of privacy. Skadden additionally objects to this Request to the extent that it is
19  vague and ambiguous with respect to the terms "CONCERNING," "meetings", "representatives",
20  "press", "news media", "billing records" and "calendar entries." Skadden objects that the use of
21  these vague and ambiguous terms in conjunction with this Request requires Skadden to speculate
22  as to the nature and scope of the documents sought. Requiring Skadden to so speculate renders the
23  Request overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the
24  discovery of admissible evidence.

25          Subject to and without waiving any of the above objections, Skadden will produce
26  documents responsive to this Request, if any, to the extent that such documents are not subject to
27
28

1  any applicable privilege, doctrine or immunity.  However, Skadden does not believe it has any such

2  documents.

3  **REQUEST FOR PRODUCTION NO. 16:**

4          All DOCUMENTS CONCERNING any investigation CONCERNING

5  SCHROEDER or KLA-TENCOR's historical stock option practices (other than the SPECIAL

6  COMMITTEE INVESTIGATION, RESTATEMENT, and SLC INVESTIGATION) which YOU

7  gave, read from (in whole or in part), summarized, presented to or received from any of the

8  following entities: SEC, DOJ, NASDAQ or news media.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

10          Skadden incorporates by reference its General Objections as though fully set forth

11  herein.  Skadden additionally objects to this Request to the extent that it seeks the production of

12  documents that are within Schroeder's possession, custody or control, or that are equally as

13  accessible to Schroeder as to Skadden.  Skadden further objects to this Request to the extent that it

14  seeks the discovery of information that is neither relevant to the subject matter of this action nor

15  reasonably calculated to lead to the discovery of admissible evidence.  Skadden additionally

16  objects to this Request to the extent that it is overbroad and unduly burdensome.  Skadden further

17  objects to this Request to the extent that it seeks the production of documents that are subject to

18  any applicable privilege, doctrine or immunity, including without limitation the attorney-client

19  privilege, the attorney work product doctrine or the right of privacy.  Skadden additionally objects

20  to this Request to the extent that it is vague and ambiguous with respect to the terms

21  "CONCERNING," "historical", "practices", "other than", "gave", "read from", "summarized",

22  "presented", "received" and "news media."  Skadden objects that the use of these vague and

23  ambiguous terms in conjunction with this Request requires Skadden to speculate as to the nature

24  and scope of the documents sought.  Requiring Skadden to so speculate renders the Request

25  overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery

26  of admissible evidence.

27

28

1        Subject to and without waiving any of the above objections, Skadden will produce

2  documents responsive to this Request, if any, to the extent that such documents are not subject to

3  any applicable privilege, doctrine or immunity. However, Skadden does not believe it has any such

4  documents.

5  **REQUEST FOR PRODUCTION NO. 17:**

6        All DOCUMENTS that relate to any ownership interest in KLA-TENCOR

7  securities held during the time period May 1, 2006 to the present by any SKADDEN attorney(s)

8  who worked on the SPECIAL COMMITTEE INVESTIGATION.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

10        Skadden incorporates by reference its General Objections as though fully set forth

11  herein. Skadden further objects to this Request on the ground that it seeks the production of

12  documents subject to a constitutional, statutory or common law right of privacy. *See, e.g., Whittall*

13  *v. Henry Schein, Inc.*, No. CIVS051629 WBS GGH, 2006 WL 902571, at *4 (E.D. Cal. Apr. 5,

14  2006) ("Personal financial information comes within the zone of privacy protected by article I,

15  section 1 of the California Constitution"). A non-party's personal financial information is

16  irrelevant to this action, and therefore this Request is inapplicable, harassing, and seeks information

17  that is not reasonably calculated to lead to the discovery of admissible evidence. Skadden

18  additionally objects to this Request to the extent that it is vague and ambiguous with respect to the

19  terms "CONCERNING," "relate", "ownership" and "securities."

20        Notwithstanding the foregoing objections, no current or former Skadden associate,

21  counsel or partner who attended a witness interview, authored an interview memorandum, or

22  billed more than 50 hours in connection with the Special Committee investigation, has any

23  documents responsive to this request, with the possible exception of documents relating to mutual

24  funds. Skadden will not produce any such documents relating to attorneys' mutual fund holdings,

25  to the extent they exist, as it would be unduly burdensome to find such documents and the

26  information contained therein would be irrelevant, not reasonably calculated to lead to the

27

28

1  discovery of admissible evidence, and would be protected by the constitutional, statutory and/or

2  common law right of privacy of the individual Skadden attorneys involved in this case.

3  Dated: December 10, 2007                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4

5                                              By: _____
                                                          Matthew E. Sloan
6

7                                                    Attorneys for Non-Party
                                              Skadden, Arps, Slate, Meagher & Flom LLP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

201576-San Francisco Server 1A - MSW

# Exhibit 13

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144
—
TEL: (213) 687-5000
FAX: (213) 687-5600

DIRECT DIAL
(213) 687-5276
DIRECT FAX
(213) 687-5600
EMAIL ADDRESS
MATTHEW.SLOAN@SKADDEN.COM

FIRM/AFFILIATE OFFICE
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
PRAGUE
SINGAPORE
SYDNEY
TOKYO
TORONTO

CONFIDENTIAL

December 27, 2007

BY U.S. MAIL AND E-MAIL

Shirli F. Weiss
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101

RE:     SEC v. Schroeder, Case No. C 07-3798-JW
        Areas of Inquiry for Deposition of E. Harlan

Dear Ms. Weiss:

     Thank you for your letter of December 5, 2007. This letter responds to your various requests for clarification as presented in that letter.

**Questions Re: Responses to Inquiries Nos. 1 and 2:**

     You have asked us to clarify, with regard to your Inquiry Nos. 1 and 2 from your November 30, 2007 email, whether Skadden will allow Ms. Harlan to "testify with respect to the non-Schroeder interview memoranda which Skadden turned over to the SEC, in the event [you] were to sign the confidentiality/non-waiver agreement ... [we] have proposed."

     As an initial matter, we note that we believe it was KLA Tencor Corporation ("KLA" or "the Company") that produced the final witness interview memoranda (the "Interview Memoranda") to the SEC, not Skadden or KLA's Special Committee. That being said, we agree that the major "stumbling block" here is your unwillingness to sign a reasonable confidentiality agreement or protective order, which provides, among other things, that Ms. Harlan's — or other current or prior Skadden attorneys' — testimony about the interviews conducted by Skadden on

Shirli F. Weiss
December 27, 2007
Page 2

behalf of the Special Committee would not constitute a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. ("Confidentiality Order") (*See* Letter from M. Sloan to S. Weiss, dated December 3, 2007).

Providing you agree to sign such a Confidentiality Order, and it is entered by the court, we will allow Ms. Harlan to testify with respect to the statements that Mr. Schroeder and other witnesses made to Skadden during the interviews as long as Ms. Harlan was present at the witness interview. Additionally, we will allow Ms. Harlan to answer certain questions about the final interview memoranda produced to the SEC, which she authored or edited, providing you do not ask her any questions which call on her to discuss her or other Skadden attorneys' "mental impressions, conclusions, opinions or legal theories," which are protected by the work product doctrine. For example, we would allow you to ask Ms. Harlan her recollection of particular statements reflected in the Interview Memoranda, and to ask her whether she has any additional memory of the witness's statements besides those reflected in the Interview Memorandum.

As previously stated, however, we will not produce any of Ms. Harlan's handwritten "notes" about the interviews, or any "drafts" or revisions of the interview memoranda, and we will not allow her to answer any questions on such handwritten notes or drafts, as such information is squarely protected by the attorney work product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947).

**Questions Re: Responses to Inquiry No. 3:**

You have also asked whether your refusal to sign a Confidentiality Order, along the lines outlined above, is the principal reason we will not allow Ms. Harlan (or other Skadden attorneys) to answer questions about their "methodology for taking notes" and editing of interview memoranda, as requested in Inquiry No. 3 from your November 30, 2007 email to me. This is only partially correct.

As I indicated in my December 3, 2007 letter to you, we would allow Ms. Harlan to answer certain basic questions about her methodology for taking notes for the Schroeder interview, and certain "generic questions about her approach to taking notes and preparing interview memoranda in connection with other witness interviews," even without a Confidentiality Order. You are correct, however, that if you sign a Confidentiality Order, and it is entered by the Court, we would allow Ms. Harlan (or other Skadden attorneys) to answer more specific questions about the note-taking methodology they employed at the interviews of witnesses other than Mr. Schroeder.

However, even if the Court enters a Confidentiality Order, we will instruct Ms. Harlan and other potential Skadden witnesses not to answer any questions about the substance of their "notes" or about any corrections, revisions or amendments that they or other Skadden attorneys made or suggested to be made to the Interview Memoranda as such information is protected by the work product doctrine.

Shirli F. Weiss
December 27, 2007
Page 3

**Questions Re: Responses to Inquiry Nos. 4, 5 and 8:**

With regard to your Inquiry Nos. 4, 5, and 8, you have asked us to clarify whether we would allow Ms. Harlan to testify regarding the substance of her conversations with other Skadden attorneys about the witness interviews and the Special Committee's investigation -- and about the earlier (i.e., non-final) drafts of the Interview Memoranda -- in the event that a Confidentiality Order is entered.

You are correct that we will instruct Harlan not to testify about any of these topics, even if a Confidentiality Order is entered, on the grounds that these topics are protected by the attorney work product doctrine, and in some instances may also be protected by the attorney-client privilege. (*See* Letter from M. Sloan to S. Weiss, dated December 3, 2007).

**Questions Re: Responses to Inquiry No. 6:**

You have asked us to confirm that our response to Inquiry No. 6 is unqualified, i.e., that we would instruct Ms. Harlan not to answer any questions about her communications with the KLA Special Committee even if you were to sign a Confidentiality Order. You are correct. Ms. Harlan's communications with the Special Committee are protected by both the attorney-client privilege and/or the work product doctrine, and have not been divulged to the SEC or any other government entity. Therefore we would instruct Ms. Harlan not to answer any questions about such communications even if the Court entered a Confidentiality Order similar to the one outlined above.

**Questions Re: Responses to Inquiry No. 7:**

You have also asked for further clarification about our response to Inquiry No. 7 from your November 30 email which, in turn, asked for further clarification about Ms. Harlan's response to Request No. 1 in the document subpoena directed to her. Request No. 1 seeks documents concerning the witness interviews conducted by the Special Committee, including all of Ms. Harlan's notes, her final Interview Memoranda, drafts of interview memoranda, and all exhibits referenced in the Interview Memoranda. Based on the SEC's Initial Disclosures, the SEC has already produced to you every responsive document that the Special Committee or the Company produced to the SEC pursuant to the Company's confidentiality agreement with the government, including copies of (1) all final Interview Memoranda and (2) all exhibits or other documents referenced in the Interview Memoranda. Because the SEC has already produced these documents to you, we will not produce them again because they are already within your possession and control, and it would therefore be unduly burdensome and thus an abuse of the discovery process to compel Skadden or the Skadden Attorneys to produce them to you again. This position is not contingent on your agreement to enter a suitable Confidentiality Order. We are willing, however, to meet and confer further to confirm that you, in fact, have the final version of all responsive Interview Memoranda and other documents that were previously produced to the SEC by the Special Committee or the Company.

Shirli F. Weiss
December 27, 2007
Page 4

We will also continue to object to the production of Ms. Harlan's "handwritten notes" regarding the interviews, as well as to the production of any drafts or documents showing edits made by Ms. Harlan or other Skadden attorneys or personnel to the Interview Memoranda. These document are squarely protected by the work product doctrine and the attorney-client privilege, and we will object to their production even if you agree to enter our proposed Confidentiality Order.

We will, however, produce certain electronic meta-data concerning the Interview Memoranda, which reflect information such as "date last modified," "date created," and "date printed," but do not disclose information protected by the work product doctrine, or any other applicable privileges, doctrines or immunities, such as the substance of any revisions or amendments.

With regard to billing records and calendar entries, we direct you to Skadden's response to Request No. 8 in the document subpoena directed to Skadden, which states that Skadden will produce final versions of billing records and certain calendar items, which have been redacted to remove information protected by the attorney-client privilege, the work product doctrine, the right of privacy and other confidential information which is not relevant to this matter even without your agreement to enter into a Confidentiality Order.

**Miscellaneous Questions**

You have also asked whether the "additional documents" referenced in the last paragraph of Ms. Harlan's response to your Demand No. 1 are identified on the privilege log. We can confirm that they are.

At your request, we have treated the term "concerning" as a capitalized, defined term in our responses and objections to both the subpoenas to Skadden and to the individual Skadden Attorneys.

Very truly yours,

*Matthew E. Sloan* /KSH

Matthew E. Sloan

cc:     James E. Lyons
        Raymond Cho

501280-Los Angeles Server 2A - MSW

# Exhibit 14

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
www.morganlewis.com

# Morgan Lewis
### COUNSELORS AT LAW

John H. Hemann
Partner
415.442.1355
jhemann@morganlewis.com

October 12, 2006

**PRIVILEGED & CONFIDENTIAL**

**VIA HAND DELIVERY**

Marc J. Fagel, Esq.
United States Securities and Exchange Commission
Division of Enforcement
44 Montgomery Street, Suite 2600
San Francisco, CA  94104

Re:     In the Matter of KLA-Tencor Corporation

Dear Mr. Fagel:

KLA-Tencor Corporation (the "Company"), through a Special Committee authorized by the Board of Directors, commenced a review of the company's stock options granting practices on or about May 24, 2006. In the course of its investigation, the Special Committee collected confidential corporate records and communications, including records and communications that may be protected by the attorney-client privilege and work product doctrine. In light of the interest of the Staff of the U.S. Securities and Exchange Commission (the "Staff") in determining whether there have been any violations of the federal securities laws, and the Company's common interest in investigating and analyzing the circumstances and people involved in the events at issue, KLA-Tencor and the Special Committee will voluntarily provide to the Staff copies of documents that may be protected by the attorney-client privilege and work product doctrine ("Confidential Materials").

Please be advised that by producing the Confidential Materials pursuant to this agreement, KLA-Tencor and the Special Committee do not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other privilege applicable as to third parties. The Company believes that the Confidential Materials warrant protection from disclosure.

Mark J. Fagel, Esq.
October 12, 2006
Page 2

**Morgan Lewis**
COUNSELORS AT LAW

The Staff will maintain the confidentiality of the Confidential Materials pursuant to this agreement and will not disclose them to any third party, except to the extent that the Staff determines that disclosure is otherwise required by law or would be in furtherance of the Commission's discharge of its duties and responsibilities.

The Staff will not assert that the production of the Confidential Materials to the Commission constitutes a waiver of the protection of the attorney work product doctrine, the attorney-client privilege, or any other privilege applicable as to any third party. The Staff agrees that production of the Confidential Materials provides the Staff with no additional grounds to subpoena testimony, documents or other privileged materials from the Company or the Special Committee, although any such grounds that may exist apart from such production shall remain unaffected by this agreement.

The Staff's agreement to the terms of this letter is signified by your signature on the line provided below.

Sincerely,

John Hemann

AGREED AND ACCEPTED:
United States Securities and Exchange Commission

By:
    _____
    Division of Enforcement
    MARK J. FAGEL

Exhibit 15

Via Facsimile

To:     **Larry W. Sonsini, Esq.**              cc:Judith Mayer O'Brien
        **Wilson Sonsini Goodrich & Rosati**

From: **Lisa C. Berry**
        **Vice President, General Counsel**

Date:   **November 14, 1998**

Re:     **November 17, 1998 Board Meeting**

---

As discussed on November 6, the following is a summary of what has occurred at the last couple of board meetings. As you know, the outside directors will be meeting from 8:00 am until 10:00 am on Tuesday, November 17 and they would like for you to be present during that discussion. I expect to be in Milpitas during that time in case there are any questions that arise but do not expect to participate in the meeting of the outside directors.

## 1.   August and October Board Meetings and Subsequent Actions Regarding Repricing of Options

The Compensation Committee and Board approved repricing for regular employees and excluded those Section 16 employees that would be likely to be included in the "top five" for the current fiscal year. Those excluded employees were to be granted additional options that approximated the "value" lost by not being able to reprice. I refer to these additional options as the "in-lieu" options.

In order to avoid certain adverse accounting consequences, those employees repricing options had to turn in the requisite paperwork by a set date (August 31). We got approval from PricewaterhouseCoopers to have the Stock Option Committee meet at some time during the 30 days following August 31 and set the price for repricing at that time in order to maximize the value to employees. The repricing date ended up being August 31 but it was not determined until September 30 that the August 31 date was the correct date. The repricing date was also to be the date for the grant of "in-lieu" options.

Between the August 7 Board meeting and September 30, a decision was made to approach the Compensation Committee and Board with the question of letting the excluded executives reprice their options as well. Apparently, Ken Levy has been under the mistaken impression (probably left by Gray Cary) that if executive officers reprice then

F.O.I.A. Confidential Treatment Requested
Morgan, Lewis & Bockius LLP
(415) 442-1000

Larry W. Sonsini, Esq.
November 14, 1998
Page 2

the proxy disclosure is required for ten years running (as opposed to a one-time disclosure with ten years worth of data). That misunderstanding came to light during the 30-day period associated with repricing the other employees. In addition, the FASB has indicated that it will require a charge in the event of repricing in the future and as a result, there was a feeling that this is the last time that repricing would even be feasible.

I prepared a ten year repricing chart and provided it to Ken Levy showing him what the disclosure would look like along with a memo explaining the proxy requirements and a copy of a survey from Roger Stern showing what other companies had done. That information along with some additional alternatives (providing for an increase in the number of in-lieu options based on different models) was presented to both the Compensation Committee and the Board at the October 19 meeting. The Compensation Committee approved a repricing (primarily because the number of shares which would be granted to make up for the lost "value" was close to being the equivalent of a double grant of existing options). The potential fallout from a repricing seemed less problematic than such significant additional grants to executive officers. We also already have an evergreen in our stock option plan so the chance of having a problem with increases to the plan was not an issue.

The question was raised about the impact of repricing on the existing Retention Agreements between the Company and each of Ken Levy, Ken Schroeder and Jon Tompkins. Ken Levy told the Compensation Committee that he did not think that a windfall should result from the repricing. He also wanted to address the issue of part time employment and the rate at which options vest under these agreements under those circumstances. The Compensation Committee agreed that if the terms of the agreement are invoked then the repriced options would only vest at a rate of 50%. The Committee further determined that beginning July 1, 1999 if the person were to work less than full time then the options repriced would only vest at that same rate (which would result in an additional reduction in the vesting schedule). The Compensation Committee recognized that there would need to be some adjustment in the section of the agreement which provides that only options granted more than 12 months prior to invoking the agreement will continue to vest.

At the Board meeting itself, Jon argued that the part-time requirements were directed only at him and that he had an agreement as to retirement and this was contrary to that agreement. Ken Levy indicated that he was not thinking about Jon when the discussions were raised regarding the impact of the repricing on the retention agreements; in fact he said his concern was what actions Ken Schroeder might take in a year if he is not happy with the succession plan. Ken Schroeder was also unhappy with the proposed arrangement. He wanted the repricing date to be the August 31 ($21.25 closing price). At that point in the meeting, Art Schnitzer (VP of HR) and I were excused from the meeting. Later Ken explained to me that the Board determined that Jon's agreement would remain

MLB/KLA-SEC00011612

Larry W. Sonsini, Esq.
November 14, 1998
Page 3

unchanged and the terms otherwise proposed by the Compensation Committee would be applicable to him and Ken Schroeder. The Board agreed that if Jon repriced his options then the repriced options would be deemed to have been granted more than 12 months prior to the October 23 date. The reason for this particular requirement is that the agreements provide that only those options granted more than 12 months prior to the end of the Full-Time Employment Period will vest over the 36 months of the payout under the Agreement. Since Jon's arrangement has been to retire effective July 1, 1999 (succession plan) these repriced options would not have continued to vest and it would impact the previously agreed upon retirement arrangement. As part of the discussion relating to retirement, the Board asked that management look into some kind of retirement arrangement in general.

In order to address the potential accounting problems, the Board agreed that the officers would have to return the required paperwork by the October 23 which would be the date of repricing. As fate would have it, the stock price rose from $27.63 to $33.94 between October 19 and October 23. There was significant complaining by certain officers about the repricing date being October 23 rather than October 19. As a result, Ken Levy presented to each of the Board members a compromise that would not cost the company a charge to its P&L (if we were to have used the October 19 date, the charge would have been approximately $3.5 million). The Board subsequently approved the following arrangement - the previously granted "in-lieu" options would be granted as previously approved and the repricing of options would be at a less than one for one arrangement such that the total options before and after the repricing would be the same. I have attached to this summary the information for each of the officers that have repriced options.

## 2.    October Board Meeting Summary of Events Leading to the Outside Directors Meeting on November 17

At the October meeting, I provided a memo (requested by Sam Rubinovitz, the unofficial "chairman of the outside directors") to each of the outside members which asked when they would like to meet as a group of outside directors, if at all, and any agenda items. I also provided a memo to Dean Morton and Ned Barnholt (nominating committee outside members) indicating that our guidelines provide that the nominating committee is supposed to assess the Board's performance.

At the end of the October meeting, the outside directors met separately briefly and asked me to set aside time at the next meeting for the outside directors to meet independently. The agenda items are described in the memo I sent out (a copy of which is attached to this summary). These items include the matters which both the outside directors as a group want to discuss and the board performance assessment by the nominating committee.

F.O.I.A. Confidential Treatment Requested
Morgan, Lewis & Bockius LLP
(415) 442-1000

MLB/KLA-SEC00011613

Larry W. Sonsini, Esq.
November 14, 1998
Page 4

I don't think the outside directors have any particular "agenda" in having this meeting other than performing their obligations as outside directors. I am not sure how the directors feel about the substance and timing of the succession plan, although I think they have given Ken Levy and Jon Tompkins the benefit of the doubt when it comes to the arrangement that was presented to the Board in April.

As a separate matter, Sam Rubinovitz asked that you provide the Board comfort that its decision with respect to the changes to the retention agreements is "ok." The retention agreements were amended in January to provide a three year package when exercised. The deal is for the executive to be a "part-time employee" for a total period of three years during which time any options granted at any time more than 12 months before invoking the agreement will continue to vest. For the first 24 months of the three year period, full salary and bonus will be paid. The bonus is determined assuming that the executive met 100% of his objectives and the only adjustment to be made is to be based on the Company's performance for the applicable year. The salary for that 24-month period is based on the executive's last full-time salary prior to invoking the agreement. During the last 12 months of the three year period a nominal amount is paid. The changes associated with the actions at the October meeting are rather minimal. With respect to Jon, repriced options are deemed to have been granted more than 12 months prior to invocation of the agreement. With respect to Ken and Ken, if either should decide to go part-time then the repriced options will vest in a pro-rated manner. The remainder of the terms are unchanged. I told Sam that I did not believe that the Board's liability was increased by the changes to the agreements but that I would ask you. I assume that if Sam wants to ask you about this issue, he will do so at the meeting. The Board did ask that you participate in the closed session.

I think Ken, Jon and Ken would like to have the outside directors report on their meeting but such a report is obviously at the outside directors' discretion. I suggested to Sam that someone might want to take notes. If the outside directors would like to report to the full Board, that can be done at the end of the outside director session on Tuesday or at the January meeting (or any time that the outside directors think appropriate). I would be happy to prepare a report from any notes that may be taken.

If you have any questions, please give me a call at (408) 875-2423. I plan to be at the Board meeting but will not attend the outside directors' session. I look forward to seeing you on Tuesday.

F.O.I.A. Confidential Treatment Requested
Morgan, Lewis & Bockius LLP
(415) 442-1000

MLB/KLA-SEC00011614

# Exhibit 16

| From: | Kahn, Mike |
| --- | --- |
| Sent: | Thursday, September 23, 1999 5:37 AM |
| To: | Lamb, Maureen |
| Cc: | Nyberg, Joy; Wilson, Leslie |
| Subject: | Peak Performance Grant Dates, etc. |
| | |
| Attachments: | RE: Stock Options |

Maureen, here is the message from WSGR (at the bottom) and several messages back and forth for clarification. Let me know if you have questions or want to discuss.

Mike

⌐|

RE: Stock Options

1

F.O.I.A. CONFIDENTIAL TREATMENT REQUESTED    ATTORNEY-CLIENT / WORK-PRODUCT PRIVILEGE

MK-PRIV000039

| From: | rstern@wsgr.com |
|---|---|
| Sent: | Tuesday, September 21, 1999 4:53 PM |
| To: | Wilson, Leslie |
| Cc: | Kahn, Mike; Nyberg, Joy |
| Subject: | RE: Stock Options |

ATTORENY=CLIENT PRIVILEGED & CONFIDENTIAL

Hi Leslie:

    I see the point.  No, it is not necessary to send out an additional employee communication in this situation.  The original communication seems to capture the situation appropriately.  Hope this helps!

                        Regards,

                        Roger


Roger Stern
Wilson Sonsini Goodrich & Rosati
Employee Benefits & Compensation Group
650-320-4818 (direct)
650-496-4088 (fax)
rstern@wsgr.com


-----Original Message-----
From: "Wilson; Leslie" <LESLIE.WILSON@kla-tencor.com> at Internet
Sent: Tuesday, September 21, 1999 9:36 AM
To: Stern, Roger
Cc: "Kahn; Mike" <Mike.Kahn@kla-tencor.com> at Internet; "Nyberg; Joy"
<Joy.Nyberg@kla-tencor.com> at Internet
Subject: RE: Stock Options


Roger,

In the past, the Compensation Committee meets on a day following the determination of the individual employee stock option allocations.  For FY00, this means that they could have met or are yet to meet on any day following August 27th to set the stock price.  I agree that the communication already clearly states this.  My question was based on the following comment in your email:

       "On the HR side, the employee communication can specify that the grants
> > will be made between now and the end of the year, and that the price
> > and number of shares will be communicated to the employees after the
> > Board
> (or
> > compensation committee) action.  However, vesting will be
> > retroactive to the usual grant date."
>
I am concerned that sending additional communication may imply that the Compensation Committee has not met and is yet to meet between now (e.g.
September 21) and the end of the year, thereby not allowing us to price the stock grant between August 27th and today even if the committee met during that period.

Leslie Wilson
Director, Global Compensation, Benefits and HRIS Records KLA-Tencor Corporation One Technology Drive Milpitas, CA  95035 Direct Phone (408) 875-7107 Fax (408) 571-2737
e-mail: leslie.wilson@kla-tencor.com

> ----------

F.O.I.A. CONFIDENTIAL TREATMENT REQUESTED   ATTORNEY-CLIENT / WORK-PRODUCT PRIVILEGE

MK-PRIV000040

```
> From:            rstern@wsgr.com[SMTP:rstern@wsgr.com]
> Sent:            Monday, September 20, 1999 6:45 PM
> To:    Wilson; Leslie
> Cc:    Kahn; Mike; Nyberg; Joy
> Subject:         RE: Stock Options
>
>       Hi Leslie:
>
>            I'm not quite sure what is meant by "capture stock prices
> from August
> 31 to date of new employee communication."  The price will be set on
> the date of the comp committee meeting, and will be 100% of the
> trading value on that day.
> So I think the communication sent out already captures that.  I
> apologize if I am being obtuse, please feel free to clarify.
>
>                                      Regards,
>
>                                      Roger
>
>
> Roger Stern
> Wilson Sonsini Goodrich & Rosati
> Employee Benefits & Compensation Group
> 650-320-4818 (direct)
> 650-496-4088 (fax)
> rstern@wsgr.com
>
>
> -----Original Message-----
> From: "Wilson; Leslie" <LESLIE.WILSON@kla-tencor.com> at Internet
> Sent: Monday, September 20, 1999 3:38 PM
> To: Stern, Roger
> Cc: "Kahn; Mike" <Mike.Kahn@kla-tencor.com> at Internet; "Nyberg; Joy"
> <Joy.Nyberg@kla-tencor.com> at Internet
> Subject: FW: Stock Options
>
>
> Roger,
>
> I would like to clarify my understanding of your email below.
>
> The information that we have already communicated to employees is as
> follows:
>
> *       # of shares
> *       4 year vesting beginning on the date of grant (25% cliff then
> 1/36th
> per month)
> *       Grant price to be determined as of the next meeting of the Stock
> Option Committee
> *       Exercise price and grant date will be available through the
> electronic stock system in early October
>
> Per your email below, I understand that we can issue another
> communication to employees informing them that the stock option
> committee meeting will be held between now  (i.e. new date of employee
> communication) and the end of the calendar year. At that time the
> price will be set and the vesting commencement date can be retroactive
> prior to the date of grant, such as August 31st (to clarify, although
> we used the August 31st date last year, it has not been a standard
> grant or vesting date from prior years).
>
> If we choose to communicate that grants will be made between now and
> the end of the year, and that the price will be communicated after the
> Board (or compensation committee) action, does that mean that we will
> lose the opportunity to capture stock prices from August 31st to date
> of new employee communication?
```

2

F.O.I.A. CONFIDENTIAL TREATMENT REQUESTED   ATTORNEY-CLIENT / WORK-PRODUCT PRIVILEGE

MK-PRIV000041

>
> Thanks for your assistance.
>
> Leslie Wilson
> Director, Global Compensation, Benefits and HRIS Records KLA-Tencor
> Corporation One Technology Drive Milpitas, CA  95035 Direct Phone
> (408) 875-7107 Fax (408) 571-2737
> e-mail: leslie.wilson@kla-tencor.com
>
> > ----------
> > From:        Kahn, Mike
> > Sent:        Monday, September 20, 1999 10:58 AM
> > To:    Wilson, Leslie
> > Subject:     FW: Stock Options
> >
> > Here is the response from Wilson Sonsini.
> >
> > Mike
> >
> > -----Original Message-----
> > From: rstern@wsgr.com [SMTP:rstern@wsgr.com]
> > Sent: Thursday, September 16, 1999 2:28 PM
> > To:    Kahn; Mike
> > Cc:    gortega@wsgr.com
> > Subject:       RE: Stock Options
> >
> > ATTORNEY-CLIENT PRIVILEGED & CONFIDENTIAL Here's the memo that you
> > requested:
> > BACKGROUND
> > KLA-Tencor is interested in delaying its annual performance option
> grants,
> > normally made around the end of September, until later in the year.
> > We were asked for our advice on structuring the delayed grant to
> > help minimize HR and financial accounting problems.
> > RECOMMENDATION
> > KLA-Tencor may make the option grants later in the year and have
> > vesting commencement retroactive to the usual grant date.  Because
> > the options will be granted with an exercise price equal to 100% of
> > the fair market value on the date of grant, and because vesting will
> > be tied to the continued vesting will be based on the continued
> > employment of
> optionees,
> > there will be no compensation expense for financial accounting purposes.
> > This is true even though the vesting commencement date precedes the
> actual
> > date of grant.
> > On the HR side, the employee communication can specify that the
> > grants will be made between now and the end of the year, and that
> > the price and number of shares will be communicated to the employees
> > after the Board
> (or
> > compensation committee) action.  However, vesting will be
> > retroactive to the usual grant date.
> > Feel free to contact me with any additional questions.
> >                              Regards,
> >
> >                       Roger
> >
> >
> >
> > Roger Stern
> > Wilson Sonsini Goodrich & Rosati
> > Employee Benefits & Compensation Group
> > 650-320-4818 (direct)
> > 650-496-4088 (fax)
> > rstern@wsgr.com
> >
> >
> > -----Original Message-----

3

F.O.I.A. CONFIDENTIAL TREATMENT REQUESTED   ATTORNEY-CLIENT / WORK-PRODUCT PRIVILEGE

MK-PRIV000042

> > From: "Kahn, Mike" <Mike.Kahn@kla-tencor.com> at Internet
> > Sent: Thursday, September 16, 1999 1:21 PM
> > To:    Stern, Roger
> > Subject:        Stock Options
> >
> >
> >                          Roger,
> >
> > Here is the message to remind you about the email regarding stock
> > option grant and vesting dates.
> > Mike
> > Michael E. Kahn
> > Vice President, Human Resources
> > KLA-Tencor
> > (650) 875-5300
> >
> >
> >
> >
> > This email may contain confidential and privileged material for the
> > sole use of the intended recipient. Any review or distribution by
> > others is strictly prohibited.  If you are not the intended
> > recipient please
> contact
> > the sender and delete all copies.
> >
> > This email was not encrypted. See www.wsgr.com and select "About the
> Firm"
> > for instructions on how to receive encrypted email from WSGR.
> >
> >
>
>
>
>
> This email may contain confidential and privileged material for the
> sole use of the intended recipient. Any review or distribution by
> others is strictly prohibited.  If you are not the intended recipient
> please contact the sender and delete all copies.
>
>
> This email was not encrypted. See www.wsgr.com and select "About the Firm"
> for instructions on how to receive encrypted email from WSGR.
>
>

This email may contain confidential and privileged material for the sole use of the intended
recipient. Any review or distribution by others is strictly prohibited.  If you are not the
intended recipient please contact the sender and delete all copies.

This email was not encrypted. See www.wsgr.com and select "About the Firm" for instructions on
how to receive encrypted email from WSGR.

4

F.O.I.A. CONFIDENTIAL TREATMENT REQUESTED    ATTORNEY-CLIENT / WORK-PRODUCT PRIVILEGE