# Exhibit 6

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144
TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5276
DIRECT FAX
(213) 687-5600
EMAIL ADDRESS
MATTHEW.SLOAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

CONFIDENTIAL

December 3, 2007

**VIA US MAIL AND E-MAIL**
Shirli Fabbri Weiss
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101

RE: SEC v. Schroeder, Case No. C 07-3798-JW
Areas of Inquiry for Deposition of E. Harlan

Dear Ms. Weiss:

This letter responds to your e-mail to me on November 30, 2007, regarding your client, defendant Kenneth Schroeder's proposed areas of inquiry to Elizabeth Harlan ("Harlan") in connection with your document and deposition subpoenas directed to Ms. Harlan. You indicated that you would agree to ask the SEC to postpone Ms. Harlan's deposition, now scheduled for November 7, 2007, providing we were able to provide detailed answers as to whether we would allow Ms. Harlan to answer questions regarding the ten "areas of inquiry" outlined in your e-mail.

As we indicated in Ms. Harlan's Responses and Objections to your document subpoena, and in our meet and confer on November 29, 2007, we would allow Ms. Harlan to answer questions about all the witness interviews she attended subject to the entry of a stipulated confidentiality order which provided, among other things, that (1) you would not release her testimony to third parties or use it for purposes unrelated to this litigation; and (2) the production of the interview memoranda and

Ms. Harlan's testimony about these interviews would not be deemed to be a waiver of the attorney-client privilege or the work product doctrine. Because you have refused this reasonable request for the protection of Mr. Harlan's testimony and the underlying documents memorializing the interviews which she attended, we have no choice but to substantially narrow the scope of questions we will allow Ms. Harlan to answer in order to maintain the confidentiality of this information and to avoid waiving the protection afforded by the attorney-client privilege and the work product doctrine.

Assuming that you are still unwilling to enter into such a stipulated confidentiality order, our responses to your inquiries are as follows:

**Inquiry No. 1:**

"We plan to examine Ms Harlan with respect to portions of each of the interview memoranda and Exhibits referenced therein, which the SEC produced to us, and which she is shown on the face of the memoranda to have authored."

**Our response to Inquiry No. 1:**

We will allow Ms. Harlan to testify about the interview of Mr. Schroeder conducted by Skadden (on behalf of KLA's Special Committee) on September 1, 2006, and about certain details of the interview memorandum Ms. Harlan prepared concerning the Schroeder interview (the "Schroeder memorandum"). In particular, we will allow Ms. Harlan to testify, among others things, about what she recalls Mr. Schroeder saying during the interview; the specific questions put to Mr. Schroeder and by whom; and Mr. Schroeder's responses to such questions. In addition, to the extent that the Schroeder memorandum is unclear or ambiguous or incomplete about certain statements made by Mr. Schroeder, we will allow Ms. Harlan to testify, based on her personal recollection and her review of the Schroeder memorandum, about such statements.

We will also allow you to question Ms. Harlan about her methodology for taking notes at the Schroeder interview and preparing the Schroeder memorandum. You may, for instance, ask her whether she took handwritten notes; how she converted these into the Schroeder memorandum; how many drafts she prepared of the Schroeder memorandum; who commented on these drafts; and whether she made changes in response to suggestions from others, including other Skadden attorneys.

We will, however, instruct Ms. Harlan not to answer any questions that would call on her to testify about any information that might encompass her "mental

impressions, conclusions, opinions or legal theories," or those of any other Skadden attorneys, as such information would clearly constitute protected attorney work product under *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). Accordingly, for example, we will not allow Ms. Harlan to answer questions about the substance of any communications she had with other Skadden attorneys about the Schroeder interview or the Schroeder memorandum; the substance of any changes or revisions she made to the Schroeder memorandum; or any observations in the Schroeder memorandum which reflect her "mental impressions, conclusions, opinions or legal theories," as opposed to merely her recollection of what Mr. Schroeder or others said during the interview.

In addition, because you have refused to sign the proposed confidentiality order, stipulating that Ms. Harlan's testimony will not be deemed to be a waiver of the attorney client privilege or the work product doctrine, we will instruct Ms. Harlan not to answer any questions regarding any of the other interview memorandums she authored, edited, or commented on, or about any of the other witness interviews she attended. These communications and the resulting memorandums that were prepared remain protected by both the attorney-client privilege and the work product doctrine, and because Mr. Schroeder was not a party to these communications, he has no basis to claim access to such privileged communications.

**Inquiry No. 2:**

"We plan to examine Ms Harlan with respect to portions of each of the interview memoranda and Exhibits referenced therein which the SEC produced to us which she is shown on the face of the memoranda to have attended."

**Our response to Inquiry No. 2:**

As set forth above, we will not allow Harlan to testify about any witness interviews or interview memorandum, other than the Schroeder memorandum, on the grounds that any such communications or documents are protected by the attorney-client privilege and/or the work production doctrine. *See* Response to Inquiry No. 1, above.

**Inquiry No. 3:**

"We plan to examine Ms Harlan on her methodology for taking notes at each of the interviews at which she took notes; her methodology and practice regarding the editing of the interview memoranda on successive drafts as shown by the privilege logs or otherwise, and her knowledge regarding the editing of the interview memoranda by other Skadden lawyers."

**Our response to Inquiry No. 3:**

As set forth in our response to Inquiry No. 1, above, Ms. Harlan will answer certain basic questions about her methodology for taking notes and preparing interview memoranda in connection with the Schroeder interview and the preparation of the Schroeder memorandum, but we will instruct her not to answer any questions that would call for her to testify about her "mental impressions, conclusions, opinions or legal theories," pursuant to *Hickman v. Taylor*, 329 U.S. 495, 508, 511 (1947). In addition, we will allow Ms. Harlan to answer some generic questions about her approach to taking notes and preparing interview memoranda in connection with other witness interviews, but we will not allow her to answer any specific questions regarding any of the other interview memoranda she may have authored.

**Inquiry No. 4:**

"We plan to examine [Harlan] on her conversations with other Skadden lawyers about the interviews, interview notes and the Special Committee work."

**Our response to Inquiry No. 4:**

As set forth in the response to Inquiry No. 1, above, Harlan will not testify about the topics referenced in this inquiry on the ground that the information sought would encompass the "mental impressions, conclusions, opinions or legal theories" of Ms. Harlan and other current or former Skadden attorneys, and would therefore constitute protected attorney work product under *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). In addition, such conversations may reflect confidential attorney-client communications which are protected by the attorney client privilege.

**Inquiry no. 5:**

"We plan to examine her on each of the entries on the privilege log."

**Our response to Inquiry No. 5:**

We will allow Ms. Harlan to testify about the efforts she took to search for documents responsive to your document subpoena, and to her role, if any, in preparing the privilege log, to the extent that such testimony does not encompass her "mental impressions, conclusions, opinions or legal theories," *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). However, we believe that any questions regarding the contents of the documents on the privilege log, or the reason we decided to include specific documents on the privilege log, would be improper to direct to Ms. Harlan, and we would, accordingly, direct her not to answer such questions.

**Inquiry No. 6:**

"We plan to examine her on communications with the Special Committee to which she has knowledge."

**Our response to Inquiry No. 6:**

Harlan will not testify about the topics referenced in this inquiry on the grounds that the information sought is protected by the attorney-client privilege and/or the work product doctrine.

**Inquiry No. 7:**

"We will establish at her deposition that She and Skadden are refusing to produce the documents requested in the subpoena to her that do exist, regardless of any protective order, except for the documents identified in response to Demand #1, and that Skadden would produce those documents only under the terms of a stipulated protective order re confidentiality."

**Our response to Inquiry No. 7:**

This inquiry is vague and confusing, and we are not exactly sure what testimony you are seeking. To the extent you are contending that we have refused to produce any responsive documents except those specified in response to Request for Production No. 1, you are wrong. *See, e.g.*, Response to Request No. 2 (agreeing to produce redacted copies of Harlan's calendars and billing records, subject to the entry of a protective order). We direct you to Ms. Harlan's specific responses and objections to your subpoena for a more accurate statement of Harlan's responses to your document subpoena.

**Inquiry No. 8:**

"We plan to examine her on all aspects of earlier drafts of the final interview memoranda produced to the government."

**Our response to Inquiry No. 8:**

As set forth in response to Inquiry No. 1, above, Ms. Harlan will answer limited questions about her methodology for preparing the Schroeder memorandum, including questions about how many drafts she prepared, over what length of time, and who may have commented upon the drafts. We will not allow Ms. Harlan to answer any questions about the substance of corrections she or other attorneys made to the Schroeder memoranda, however, as this would reflect "mental impressions,

conclusions, opinions or legal theories," of Ms. Harlan or other Skadden attorneys. *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). In addition, we will instruct Ms. Harlan not to answer any questions about her preparation of other interview memoranda (besides the Schroeder memorandum) she may have authored. *See* Response to Inquiry No. 1, above.

**Inquiry No. 9:**

"We plan to examine her on the steps she took to search for documents."

**Our response to Inquiry No. 9:**

We will allow Ms. Harlan to testify about the efforts she took to search for documents responsive to your document subpoena, including limited questions regarding the methodology she employed in searching for said documents, to the extent that such testimony does not encompass her "mental impressions, conclusions, opinions or legal theories," *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). However, we believe that any questions regarding the substance of her communications with other Skadden attorneys regarding these documents would be improper, and will therefore instruct her not to answer such questions.

**Inquiry No. 10:**

"We will ask her to personally affirm each of the responses where the response states no documents exist and her response to Demand No. 10."

**Our response to Inquiry No. 10:**

We expect that Harlan will testify that, consistent with her responses and objections to the Schroeder subpoena, she is not aware of any documents responsive to document requests numbers 3 through 6. Ms. Harlan will also answer certain questions regarding document request number 10, while preserving her right to object to this line of inquiry on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and because it unjustifiably invades on her constitutional, statutory and common law right of privacy.

Harlan and Skadden expressly reserve the right to amend, modify, or supplement these responses at a later date. We believe that this letter provides sufficient detail about the likely scope of Ms. Harlan's testimony, and the areas about which she will assert privilege or work product, to obviate the need to go forward with her deposition on December 5. As we expressed in the meet and confer, we

believe that the best interests of the parties would be furthered by resolving the outstanding privilege and work product issues before commencing the depositions of Ms. Harlan or any other Skadden witnesses. If you do not take this course, and choose to commence Ms. Harlan's deposition on December 5, we will object to any future attempts to depose her. Please let me know if you have any additional questions or concerns. In the event you do not, please let me know at your earliest convenience whether you will agree to ask the SEC to vacate Ms. Harlan's December 5, 2007 deposition.

Very truly yours,

Matthew Sloan
Skadden, Arps, Slate, Meagher & Flom LLP

Attorneys for Elizabeth Harlan

cc: James Lyons, Esq.
Raymond Cho, Esq.