1  MARC J. FAGEL (Cal. Bar No. 154425)
   MARK P. FICKES (Cal Bar No. 178570)
2    fickesm@sec.gov
   SUSAN F. LA MARCA (Cal. Bar No. 215231)
3    lamarcas@sec.gov
   ELENA RO (Cal. Bar No. 197308)
4    roe@sec.gov

5  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
6  44 Montgomery Street, Suite 2600
   San Francisco, California  94104
7  Telephone:  (415) 705-2500
   Facsimile:  (415) 705-2501

8

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13

14  SECURITIES AND EXCHANGE COMMISSION,      Case No. C-07-3798 JW (HRL)

15            Plaintiff,

16      vs.                                   SECURITIES AND EXCHANGE
                                              COMMISSION'S OPPOSITION TO
17  KENNETH L. SCHROEDER,                     DEFENDANT'S MOTION TO DISMISS

18            Defendant.                      Date:  March 24, 2008
                                              Time:  9:00 a.m.
19                                            Location:  Courtroom 8, 4th Floor
                                                         Honorable James Ware
20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................ 1

II.   ISSUE TO BE DECIDED.............................................................................................. 2

III.  STATEMENT OF FACTS ............................................................................................ 2

    A.   DEFENDANT WAS PROVIDED ALL DOCUMENTS DESCRIBED IN THE COMPLAINT ...................... 3

    B.   DEFENDANT'S DISPUTE CAUSES SEC NOTICED DEPOSITION TO BE POSTPONED ...................... 4

    C.   SUNDAY DEPOSITION BILLED AS FINAL STEP BEFORE MOTION AGAINST KLA ...................... 5

    D.   DEFENSE REPRESENTATIONS TO THE COURT ABOUT PRIVILEGE ISSUES .................................. 5

IV.  ARGUMENT .................................................................................................................. 7

    A.   DISMISSAL OF A COMPLAINT IS A HARSH SANCTION RATHER THAN A "REMEDY" ................. 7

    B.   THERE IS NO BASIS FOR DISMISSAL OF THE COMMISSION'S ENFORCEMENT ACTION
        DUE TO A THIRD PARTY'S ASSERTION OF PRIVILEGE ................................................................ 8

    C.   THE FAIRNESS DOCTRINE DOES NOT APPLY WHERE THE COMMISSION HAS NEITHER
        RELIED ON, NOR PREVENTED ACCESS TO, ANY PRIVILEGED INFORMATION ........................... 11

    D.   DEFENDANT FAILS TO ARTICULATE ANY DEPRIVATION OF DUE PROCESS ............................. 14

    E.   THE COURT SHOULD REQUIRE DEFENDANT TO PURSUE HIS DISCOVERY MOTION
        WITHOUT FURTHER DELAY, OR ABANDON ANY COMPLAINTS ABOUT PRIVILEGE.................. 16

V.   CONCLUSION.............................................................................................................. 18

1

## TABLE OF AUTHORITIES

2

**CASES**

3
*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) ................................................................. 11

4
*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992) ............................................... 11

5
*Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L. Ed.2d 494 (1985)..... 14

6
*Ellsberg v. Mitchell,* 709 F.2d 51 (D.C. Cir. 1983) .................................................................. 11

7
*Fitzgerald v. Penthouse Intern., Ltd.*, 776 F.2d 1236 (4th Cir. 1985) ................................... 7, 8

8
*Frost v. Perry*, 919 F. Supp. 1459 (D. Nev. 1996) ................................................................... 9

9
*Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) ......................................................... 12

10
*Henry v. Gill Industries,* 983 F.2d 943 (9th Cir. 1993).............................................................. 7

11
*In re Occidental Petroleum Corp.*, 217 F.3d 293 (5th Cir. 2000) .......................................... 13

12
*Industrial Bldg. Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336 (9th Cir. 1970) .......... 7

13
*Johnson v. United States Dep't of the Treasury,* 939 F.2d 820 (9th Cir. 1991).......................... 7

14
*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) ................................................................... 8

15
*Martin v. Reynolds Metals Corp.*, 297 F.2d 49 (9th Cir. 1961) ............................................. 17

16
*McDermott, Will & Emery v. Superior Court*, 89 Cal. App. 4th 451 (2000)............................... 12, 13

17
*McHenry v. Renne,* 84 F.3d 1172 (9th Cir. 1996).................................................................... 7

18
*Murdoch v. Castro*, 365 F.3d 699 (9th Cir. 2004) ................................................................. 13

19
*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) ........................................ 17

20
*Nelson v. Adams USA, Inc.*, 529 U.S. 460, 120 S.Ct. 1579, 146 L. Ed.2d 530 (2000)...................... 15

21
*Raiford v. Pounds,* 640 F.2d 944 (9th Cir. 1981)..................................................................... 7

22
*Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers,*
       357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)...................................................... 7

23
*Solin v. O'Melveny & Meyers, LLP*, 89 Cal. App. 4th 451 (2001)............................................. 12, 13

24
*Television Signal Corp. v. City and County of San Francisco*, 193 F.R.D. 645 (N.D. Cal. 2000)........ 7

25
*Thompson v. Housing Authority of the City of Los Angeles,* 782 F.2d 829 (9th Cir. 1986) ............... 7

26
*Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381 (9th Cir. 1988) ....................................... 7

27
*United States v. Amlani*, 169 F.3d 1189 (9th Cir. 1999)............................................................ 11, 12

28

*United States v. Bieganowski*, 313 F.3d 264 (5th Cir. 2002) ................................................................ 15

*United States v. Moore*, 682 F.2d 853 (9th Cir. 1982) ........................................................................ 15

*United States v. Patterson,* 819 F.2d 1495 (9th Cir. 1987) ................................................................ 15

*United States v. Reynolds*, 345 U.S 1 (1953) ............................................................................. 8, 11

*United States v. Trejo-Zembrano*, 582 F.2d 460 (9th Cir. 1978) ........................................................ 15

*United States v. W.R. Grace*, 439 F. Supp.2d 1125 (D. Mont. 2006) ...................................... 12, 13, 16

*Yourish v. California Amplifier,* 191 F.3d 983 (9th Cir. 1999) ........................................................... 7

**RULES**

Fed. R. Civ. Proc. 37(a) ............................................................................................................. 16

## I.    INTRODUCTION

The Commission's complaint, filed in July 2007, alleges a years-long stock options backdating scheme by defendant Kenneth L. Schroeder, the former chief executive officer and director of KLA-Tencor Corp., in which he falsified the company's financial statements and misrepresented to shareholders the company's compensation to employees and executives, including to Schroeder himself.  As the Commission's complaint describes in detail, Schroeder used a concealed practice of selecting with hindsight dates and prices for stock option grants in order to award undisclosed "in-the-money" options to executives and employees, and he caused KLA to hide from investors, for several years, millions of dollars in expenses and report significantly overstated income.  Defendant now asks the Court to ignore his fraud, to disregard the merits of the Commission's enforcement action, and to instead dismiss the complaint due to easily resolvable problems he has encountered obtaining select information from a third party.

Defendant answered the Commission's complaint in September 2007, and the parties have been conducting discovery, which is scheduled to continue through March 2009.  In early December 2007, defendant ran across an obstacle in seeking certain discovery, when third-party KLA invoked the attorney-client privilege as to certain communications by potential witnesses in the case.  Rather than address this discovery issue with the persons invoking the privilege, as he repeatedly promised both the Court and the Commission he would do, defendant filed the instant "motion to dismiss" as a purportedly alternative "remedy."  Dismissal of the Commission's enforcement action against him for fraud and related illegal conduct is not, however, a "remedy" to defendant's discovery disputes with KLA.

Based on Schroeder's long discussion of purported "facts" about the Commission's case against him, one might think that his motion complained of conduct by the Commission.  Schroeder, however, does not present the Court with any conduct by the Commission that is "unfair," deprives him of any information, or otherwise hampers his ability to participate fully in this litigation.  Instead, his arguments are entirely with third-party KLA.  In an effort to cloud the issue by suggesting – without any basis – some conspiracy between the Commission and KLA to deprive him of his rights, Schroeder cites to a confidentiality agreement the Commission entered into during the investigation

1  preceding this case.  The agreement makes clear that it applies only to KLA's production to the

2  Commission of certain documents, each of which was provided to Schroeder several months ago.

3  The agreement permitted KLA, if it so chose, to argue that production of documents to the

4  Commission would not constitute a "waiver" of privileges that the company might assert over those

5  documents, and the Commission agreed not to argue that KLA's production to the Commission

6  constituted a waiver.  Notably, the agreement does not preclude the Commission from claiming that

7  the documents are not privileged or that they fall within an exception to the privilege.  There are no

8  other promises or obligations under the agreement.  Importantly, defendant admits he has been

9  provided all documents provided to the Commission under the agreement.  Thus, the agreement is

10  simply irrelevant to any challenge Schroeder might make to KLA's privilege claims.

11      More fundamentally, however, Schroeder refuses to even use the processes afforded him

12  under the Federal Rules to make any arguments about information he claims is being withheld from

13  him by a third party.  Consequently, he has no basis for arguing any cognizable "deprivation" of due

14  process.  He offers the Court no legal basis for his motion, and misinforms the Court of the

15  procedural positions the Commission has taken.  Accordingly, defendant's groundless motion should

16  be rejected.  To prevent defendant from injecting further delay and inefficiency into the discovery

17  process, the Court should direct defendant to either bring his discovery motion directed to the persons

18  asserting the privilege within ten days, or prohibit him in this litigation from again raising any

19  arguments related to those privilege assertions.

20  **II.      ISSUE TO BE DECIDED**

21      Whether defendant has been "deprived" by the Commission of due process, where defendant

22  has not attempted to avail himself of the processes he is due under the Federal Rules to air his dispute

23  over a third party's assertion of privilege?

24  **III.     STATEMENT OF FACTS**

25      Since early December 2007, defendant Schroeder has been promising to present to the Court

26  through a motion to compel an issue he has with a third-party:  KLA's (and its counsel's) assertion of

27  privilege over certain communications by or with its employees.  The defense went so far as to obtain

28  permission from Magistrate Judge Lloyd to file a 40-page brief in support of the motion to compel

1    during the Discovery Conference held just days before defendant filed the instant motion.  Then, at a

2    hearing on KLA's motion for a protective order to stay discovery that implicated the company's

3    privilege claims, counsel for the defense admitted to Magistrate Judge Lloyd that defendant made a

4    tactical choice not to file his motion to compel because he believes it would hurt his chances of

5    winning the instant motion.  He is correct – such a motion would entirely moot defendant's claim

6    here that he has been deprived of "due process."

7         Defendant asserts as the critical "fact" an argument that he makes without support and a point

8    on which he equivocates:  namely, that the Commission "made *privileged* communications the

9    cornerstone of its Complaint against Mr. Schroeder."  Motion at 7 (emphasis added).  As defendant

10   concedes in his brief, however, he has in his possession all communications described in the

11   complaint, and he does not believe the company continues to consider them "privileged."  Moreover,

12   defendant ultimately degrades his description of these communications to "allegedly" and

13   "purported" privileged communications.  *Id*. at 21, 22.  His wavering references are no error – while

14   defendant recognizes there is no basis to describe these documents as "privileged," this fact nullifies

15   his motion.  The events preceding this motion clarify the actual dispute.

16        **A.    Defendant Was Provided All Documents Described In The Complaint**

17        Without requiring the defendant to serve formal discovery requests pursuant to Rule 34,

18   before formal discovery even began in this matter, the Commission produced to defendant each and

19   every document described in its complaint, along with the other documents the Commission received

20   during its investigation.  Indeed, by September 2007, the Commission provided to defendant (at no

21   additional copying cost) the vast majority of the documents in an electronically searchable format.

22        Defendant has, for instance, the documents he cites from in his motion, including the March

23   19, 2001 "Stock Options Pricing" Memorandum he received from the former General Counsel of

24   KLA (Stuart Nichols).  Motion at 17, n.10.  That 2001 memo to Schroeder provides reasons why

25   backdating of stock options was inconsistent with the law, describing, among other things, that "[a]ny

26   attempt to set a price before such a grant is made raises substantial risks under securities and tax laws

27   [and] accounting rules and gives rise to disclosure obligations," and that "the Board and its

28   committees are limited in their ability to grant options at a retroactive price without exposing the

1    company to risk of an accounting charge." Comp., ¶¶ 31-32.  Defendant also has the email he

2    authored in response to the General Counsel in which he rebuked Nichols for telling him what he

3    could not do, and told Nichols the defendant needed a "war time counselor" instead.  *Id*., ¶ 33.[1]

4    Defendant also has interview memoranda of approximately 55 KLA employees, prepared by a private

5    law firm, Skadden Arps, Slate, Meagher & Flom LLP ("Skadden"), which KLA hired to investigate

6    the company's stock option practices.  Motion at 17, n.10.  At the deposition of Stuart Nichols,

7    defense counsel introduced into the record the first of these documents without objection from KLA.

8    Ex. 9 to Weiss Decl. at 108, 199-200 (introduction of memo from Nichols to Schroeder as Deposition

9    Exhibit 77).  As defendant's moving papers state, defendant also does not believe that privileges have

10   been asserted over those documents.  *See* Motion at 17-18, n.10 ("because KLA has never tried to

11   protect or prevent disclosure of the documents it produced to the SEC, Mr. Schroeder sees no need to

12   file Exhibits 15 and 16, or any other documents accompanying this motion, under seal").[2]

13        **B.       Defendant's Dispute Causes SEC Noticed Deposition To Be Postponed**

14        On November 1, 2007, the Commission sent the first Notice of Deposition served in this case,

15   seeking to depose Elizabeth Harlan.  Ms. Harlan is an attorney with the law firm of Skadden Arps

16   who interviewed Schroeder for KLA-Tencor's internal investigation, in 2006; because she was about

17   to begin a maternity leave, Ms. Harlan's deposition was supposed to occur in early December 2007.

18   Days before the scheduled deposition, due to defendant's dispute with Skadden over the scope of the

19   deposition and Skadden's expected invocation of privilege (on behalf of KLA-Tencor) with respect to

20   certain areas of inquiry, defense counsel suggested a delay in the deposition – for several months

21   given the witness's upcoming leave – so that Schroeder could litigate his privilege issue in a motion

22   _____

23   [1]  Defendant spends page after page of his motion describing how badly he needs discovery into a
     conversation to which *he* was a party.  Motion at 10-14, 16-17.  Importantly, defendant has
24   steadfastly refused to provide discovery into this conversation to the Commission, asserting his own
     privilege against self-incrimination.  Of course, if there were any basis to defendant's argument that
25   the assertion of a privilege that prevents a party from obtaining information determines the outcome
     of the case, the Commission would have a stronger basis for moving against defendant for his failure,
26   to date, to provide the Commission with this discovery.

27   [2]  Indeed, if Schroeder's counsel believed there was a valid privilege clam over the documents, she
28   would have been ethically compelled to file them under seal pursuant to Local Rule 79-5.

1    to compel. *E.g.*, Joint Status Report Regarding Discovery at 3, filed Jan. 22, 2008 (Docket No. 35)

2    ("The Harlan deposition has been delayed until April 2008, as counsel for Ms. Harlan interposed

3    objections on privilege grounds *and defendant informed the Commission that he would be filing a*

4    *motion to address Skadden Arp's claims of privilege*") (emphasis supplied).  The Commission agreed

5    to the delay, based on defense representations, including defense counsel's observation that "the court

6    might be annoyed if we make the witness appear only to be instructed not to answer when we could

7    state the positions at issue on paper."  LaMarca Decl., ¶ 4.  On February 10 and again on February

8    22, defendant's counsel again suggested that the Commission should postpone – indefinitely – Ms.

9    Harlan's deposition because of "privilege issues."  *Id.*, ¶ 5.

10         **C.**       **Sunday Deposition Billed As Final Step Before Motion Against KLA**

11         On Sunday, January 27, 2008, Stuart Nichols – the former General Counsel of KLA – was

12    deposed for approximately seven hours, all questions having been posed by Schroeder's counsel.

13    Before the deposition, it was clear to the parties in discussions with KLA's counsel that KLA would

14    assert the attorney-client privilege over certain communications Nichols made or was privy to during

15    his tenure at KLA.  Although the Commission's counsel questioned the need for the deposition

16    before the privilege issues were resolved, we were assured by defense counsel that the purpose of

17    going forward with a Sunday deposition of a third party was to "make a deposition record" for the

18    defendant's intended motion to compel against KLA.  LaMarca Decl., ¶ 6.  According to the defense,

19    KLA had been unwilling to provide the type of clear statement of its position that Skadden had

20    provided, purportedly making the Sunday deposition unavoidable.  *Id.*  At this same time, defense

21    counsel requested, and obtained, from the Commission's counsel our availability on specific dates for

22    a hearing on defendant's intended twin "motions to compel" documents and testimony against KLA

23    and Skadden.  *Id.*  As is clear from the transcript the defendant attached to his moving papers, less

24    than two hours of the deposition was actually devoted to questions regarding communications over

25    which KLA asserted a privilege.  Weiss Decl., Ex. 9.

26         **D.**       **Defense Representations To The Court About Privilege Issues**

27         On December 17, 2007, the parties attended the initial Case Management Conference, where

28    significant areas of disagreement on the scope and length of discovery in this case were brought to

1  the Court's attention.  In advocating for a discovery cut-off in July 2009, defense counsel informed

2  the Court that defendant anticipated lengthy and hard fought litigation with KLA over privilege

3  issues, which would necessitate more time for discovery.  The Court established a discovery cut-off

4  of March 31, 2009, and referred the parties to Magistrate Judge Lloyd for preparation of a discovery

5  plan.

6          On January 29, 2008, the parties attended a discovery conference with Magistrate Judge

7  Lloyd, in order to prepare a Stipulated Discovery Plan.  During the conference, the Commission's

8  counsel raised the concern that, although defendant had been promising to bring a motion to compel

9  to address KLA's privilege assertions since December 2007, defendant still had not filed the motion

10  but was pressing forward with depositions where the privilege issues would be raised; the

11  Commission believed this would cause needless delay and the unnecessary potential for repetition of

12  depositions.  Defense counsel informed Magistrate Judge Lloyd and the Commission that the motion

13  to compel had not yet been filed because KLA had been "equivocal" about its assertion of privilege,

14  and further informed the Court that a motion would be filed very soon and sought, and was granted,

15  permission to file a single, 40-page brief, rather than two 25-page briefs directed at KLA and

16  Skadden.  LaMarca Decl., ¶ 9.  *See also*, Order Granting KLA-Tencor's Motion for Protective Order,

17  filed Feb. 20, 2008 (Docket No. 65) at 4.

18          On Friday, February 1, 2008, defendant filed the instant motion without ever meeting and

19  conferring with the Commission's counsel about the basis for the motion.  Then, on February 12,

20  2008, Magistrate Judge Lloyd heard the motion for a protective order filed by third-party KLA

21  (joined in by various other third parties) to delay depositions of present and former KLA employees

22  and directors until after this Court rules on the defendant's instant motion to dismiss.  During the

23  hearing, Magistrate Judge Lloyd asked counsel for Schroeder whether he intended to file a motion to

24  compel against KLA to litigate his privilege issues with the company.  Defendant's counsel stated

25  that he would not file such a motion any time before this Court rules on his motion to dismiss, since a

26  ruling on a motion to compel might well impact his motion to dismiss.  *See* Order dated Feb. 20,

27  2008 at 4.

28

1  **IV.    ARGUMENT**

2          **A.    Dismissal Of A Complaint Is A Harsh Sanction Rather Than A "Remedy"**

3          Public policy strongly favors adjudication of cases on their merits.  *Yourish v. California*

4  *Amplifier,* 191 F.3d 983, 990 (9th Cir. 1999).  Dismissal of a complaint for reasons other than the

5  failure to state a claim is considered a harsh and drastic sanction.  *Henry v. Gill Industries,* 983 F.2d

6  943, 948 (9th Cir. 1993); *Johnson v. United States Dep't of the Treasury,* 939 F.2d 820, 825 (9th Cir.

7  1991); *Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1385 (9th Cir. 1988); *Thompson v. Housing*

8  *Authority of the City of Los Angeles,* 782 F.2d 829, 831 (9th Cir. 1986) (citing *Henderson v. Duncan,*

9  779 F.2d 1421, 1423 (9th Cir. 1986)); *Raiford v. Pounds,* 640 F.2d 944, 945 (9th Cir. 1981) (per

10  curiam); *Industrial Bldg. Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1339 (9th Cir. 1970);

11  *Television Signal Corp. v. City and County of San Francisco,* 193 F.R.D. 645 (N.D. Cal. 2000).  *See*

12  *also, Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S.

13  197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (explaining that due process prohibits sanctioning a party,

14  whose failure to comply with court order regarding discovery was due to inability and not willfulness,

15  with the ultimate sanction of dismissal).  Moreover, dismissal may only be considered after less

16  drastic means are explored, and must be weighed against the strength of a plaintiff's case.  *McHenry*

17  *v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996); *see Fitzgerald v. Penthouse Intern., Ltd.*, 776 F.2d

18  1236, 1242 (4th Cir. 1985) ("denial of the forum provided under the Constitution for the resolution of

19  disputes, U.S. Const. art. III, § 2, is a drastic remedy that has rarely been invoked.").  "Only when no

20  amount of effort and care on the part of the court and the parties will safeguard privileged material is

21  dismissal warranted."  *Id*. at 1244.

22          Dismissal is therefore not a "remedy" to be elected by a defendant over other available

23  alternatives, such as an appropriate discovery motion.  Defendant has cited no case for this spurious

24  position (Motion at 23), and the case law in so many realms dictates otherwise.  If defendant could

25  "elect" to move to dismiss every time he met an obstacle, or disagreed with his adversary or a third

26  party, he could effectively craft a "motion to dismiss" out of every discovery dispute, motion in

27  limine, or evidentiary question that he would rather avoid litigating on its own merits.  Courts,

28  however, require that litigants address the actual questions at hand and litigate cases on their merits.

1

**B.    There Is No Basis For Dismissal Of The Commission's Enforcement Action Due To A Third Party's Assertion Of Privilege**

2

3        In an effort to dispense with having to defend against fraud claims brought against him by the

4  Commission, based on his unlawful conduct while CEO of KLA, defendant contends that a private

5  party's assertion of privilege should simply result in dismissal.  Defendant cites to *Kasza v. Browner*,

6  133 F.3d 1159, 1166 (9th Cir. 1998) and *Fitzgerald*, 776 F.2d at 1244, both interpreting the

7  government's assertion of the state secrets privilege, as the sole authority for dismissal of a

8  government action.  However, it is not clear that the dismissal required in the rare case where "the

9  very subject of th[e] litigation is itself *a state secret*" can be safely analogized to the assertion of any

10  other privilege, particularly by a private party.  *Id*. (emphasis added).  The state secrets privilege is far

11  more absolute than any other common law privilege or protection, and for instance, cannot be

12  overcome by "even the most compelling necessity."  *Id*. at 1240.  Yet, the potential for dismissal

13  based on the valid assertion of this privilege in a civil case is exceedingly rare, even if the

14  government is a party to such a civil action.  *United States v. Reynolds*, 345 U.S 1 (1953).   Dismissal

15  is simply not warranted where there is any alternative.  *Id*. at 534 ("Here, necessity was greatly

16  minimized by an available alternative, which might have given respondents the evidence to make out

17  their case without forcing a showdown on the claim of privilege. By their failure to pursue that

18  alternative, respondents have posed the privilege question for decision with the formal claim of

19  privilege set against a dubious showing of necessity.").

20        In any event, if the state secrets paradigm is applied, prior to finding that the privilege

21  assertion by a government agency deprives a defendant of access to information necessary to his

22  case, there must first be a determination of an actual and valid assertion of privilege, and then a

23  finding that the action cannot continue based on the asserted privilege.  *Reynolds*, 345 U.S at 11.

24  Thus, in *Kasza v. Browner*, the Ninth Circuit affirmed the grant of summary judgment to the

25  government agencies that had been sued, after finding the district court had properly determined that

26  the state secrets privilege had been invoked, 133 F.2d at 1169, and further determined that the case

27  could not proceed in light of the invocation.  *Id*. at 1170.  *See Frost v. Perry*, 919 F. Supp. 1459, 1466

28

1  (D. Nev. 1996) (district court below weighed alternatives to summary judgment once finding proper

2  invocation of privilege).

3      Of course, there has been *no* assertion of privilege by the Commission, an important

4  distinction between the instant case and every other federal case to which defendant has cited.  This

5  fact alone defeats defendant's argument, and defendant's failure to cite any case for his bold

6  proposition that a private party's assertion of privilege should result in dismissal of a federal

7  enforcement action should sound the death knell for his motion.

8      Furthermore, contrary to defendant's unsubstantiated assertion, the Commission has not

9  "agreed" with any other person's assertion of any privilege.  *See* Motion at 17, n.10 ("The prejudice

10  to Mr. Schroeder addressed by this motion is not that he does not have these documents, but rather

11  that the Company, *with the SEC's agreement*, is preventing Mr. Schroeder from making any inquiry

12  of witnesses with respect to the documents") (emphasis added).  Defendant's claim that the

13  Commission has in any way weighed in on a private party's assertion of a privilege is an utter fiction.

14  Defendant acknowledges, as he must, that he has all documents that were produced to the

15  Commission.  Certain of those documents were produced under a confidentiality agreement between

16  KLA and the Commission in which the Commission retained the right to "use" the documents –

17  including by providing them to the defendant in litigation.  Of course, the Commission did so, and

18  likewise, defendant is free to use those documents as he sees fit.  KLA has not asserted a privilege to

19  the defense's introduction of those documents at depositions.  Weiss Decl., Ex. 9 at 199.  The

20  Commission has no agreement with KLA regarding the privilege status of any other communications.

21  The confidentiality agreement defendant attached (Weiss Decl., Ex. 14) does not cover any

22  communications other than the documents that defendant has already been provided.  It does not

23  suggest any ongoing "agreement" by the Commission to any further privilege assertions by KLA, and

24  it does not even suggest any agreement with KLA that any privileges or protections apply to

25  documents produced as "Confidential Materials."  Defendant's attempt to make anything more out of

26  the agreement is simply misleading.

27      While relying on the *Kasza v. Browner* decision, defendant here also asks the Court to skip

28  the important and necessary analysis required by that case and instead assume that there is a privilege

1  properly invoked, and that the proper scope of the privilege prevents him from pursuing a defense.

2  Defendant skips the analysis because he does not believe that there is a valid assertion of privilege by

3  KLA that prevents him from obtaining any useful information.  Indeed, defendant's motion concedes

4  that no privilege attaches to any of the materials that have been provided to him by the Commission

5  in the course of this litigation, including the memorandum and email between the defendant and the

6  company's General Counsel, Nichols, described in the complaint, and the 55 interview memoranda

7  prepared by KLA's counsel.  Motion at 17, n.10.  Defendant notes that "KLA has never tried to

8  protect or prevent disclosure of the documents it produced to the SEC," and cites to correspondence

9  from KLA's counsel instructing defendant that he has received all documents the company produced

10  to the Commission.  *Id.*  Far from hindering access by defendant to information, the confidentiality

11  agreement to which the defendant refers has only had the opposite affect – allowing defendant access

12  to information over which the company may have otherwise asserted a privilege.

13        Moreover, as defendant has protested since late November 2007, he believes that KLA

14  waived whatever privilege may have originally attached to any of the communications at issue when

15  KLA-Tencor provided materials on the same subject matter to the Commission or to the United

16  States Department of Justice.  Weiss Decl., Ex. 10 at page 2 of letter (referencing "Mr. Schroeder's

17  claim that those privileges have been waived").  Indeed, defendant has significantly delayed the

18  Commission's discovery in this action, and otherwise caused the Commission and third parties to

19  rearrange their schedules, based on defendant's promise to file a motion to compel against KLA (and

20  Skadden Arps), purportedly to resolve the privilege issues.  Defendant cannot be heard to cry foul

21  from a theoretical, secondary effect from the assertion of a privilege – a purported inability to use the

22  information in support of a defense – when he does not even believe that the privilege would

23  withstand scrutiny.[3]

24  _____

25  [3]  Although arguing in the most favorable terms he can conjure how "helpful" the information he
    claims he hasn't had access to would be, defendant admits he has the documents, and he has the
26  record of the Special Committee's interviews with the persons who prepared or received the
    documents.  Schroeder was also the author, recipient or participant in, the emails or other
27  communications he focuses on.  In short, defendant has the information.  If he has any complaint, it is
    that he fears he won't be able to use it at trial.  In that regard, his claim is simply not ripe, as the
28  **Footnote continued on next page**

1  Defendant therefore fails to demonstrate why this action cannot be pursued notwithstanding

2  any privilege assertions he has heard from KLA.  If defendant is correct that the information he seeks

3  was waived because it is so closely related to the subject matter of information provided, then any

4  privilege assertions by the company over any communications on these subjects not yet provided to

5  the defendant will fail.  If defendant is not correct because the information he has been denied turns

6  out to be unrelated, then he has no argument that he is being foreclosed from any information about

7  these subjects.  In either event, defendant's ability to present any relevant evidence would be entirely

8  resolved by a motion to compel, and this litigation could be readily be pursued without in any way

9  encroaching on his ability to present a defense.  *Cf. Reynolds*, 345 U.S. at 11; *see Ellsberg v.*

10 *Mitchell,* 709 F.2d 51, 65 (D.C. Cir. 1983) (remanded for determination whether plaintiff's suit could

11 be pursued without access to information over which defendant asserted state secrets privilege).

12

13 **C.    The Fairness Doctrine Does Not Apply Where The Commission Has Neither Relied On, Nor Prevented Access To, Any Privileged Information**

14 Defendant relies on cases finding an "implied waiver" of a privilege where the privilege

15 holder puts in issue otherwise privileged information by relying on it in defense or pursuit of a claim.

16 *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003); *United States v. Amlani*, 169 F.3d 1189 (9th Cir.

17 1999); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992).  Each of these cases addresses

18 a *party's* invocation of privilege while relying on the purportedly privileged information to prove his

19 claim or defense.  Under the "fairness doctrine" described in those cases, a *party* impliedly waives

20 privilege to the extent the party relies on the privileged information.  *Chevron*, 974 F.2d at 1162-63.

21 In those situations – as fairness dictates – the party is given a choice of either waiving the privilege or

22 ceasing his reliance on the privileged information, and if he chooses not to abandon his reliance, the

23 implied waiver is "closely tailored" to the needs of the opposing party in litigating the question.

24 *Bittaker*, 331 F.3d at 720.

25 Indeed, defendant only arrives at his specious "remedy" of dismissal in this case by grossly

26 misstating the precedent on which he claims to rely.  Defendant thus cites to *United States v. Amlani*,

27 admissibility of potential evidence over any objection based on privilege would be for the Court to

28 determine.

1   169 F.3d at 1195, purportedly for a "test" of the circumstances when "fairness requires dismissal."

2   Specifically, defendant states: "To determine whether a party's claims are so intertwined with

3   privileged information that fairness requires dismissal in the absence of a waiver by the holder of the

4   privilege, the Ninth Circuit applies a three-part test that considers . . .." Motion at 21. In fact, the

5   Ninth Circuit's three factor test set forth in *Amlani* (and in the case quoted in *Amlani*) is for the very

6   different purpose of determining whether there is an "implied waiver" of an attorney-client privilege.

7   This is the very analysis that defendant thinks he should be permitted to avoid by bringing the instant

8   motion rather than his long-promised motion to compel against KLA.

9        Unable to find any federal law in support of his argument for precluding a federal

10  enforcement action based on a private party's assertion of privilege, defendant reaches out to two

11  California state cases, construing privilege assertions under very different state evidentiary rules. In

12  the first, an attorney who is under a duty created by state law to uphold client confidences is

13  foreclosed from using those client confidences to pursue an action against another person. *Solin v.*

14  *O'Melveny & Meyers, LLP*, 89 Cal. App. 4th 451 (2001). In contrast, the Commission is not aware

15  of any confidential information the Commission has received that either the Commission or

16  defendant would not be able to introduce at trial due to an assertion of privilege.[4] In the second state

17  court case defendant cites, a shareholder was prevented, *under California law*, from pursuing claims

18  of legal malpractice by a third party law firm for the corporation, because under California law a

19  shareholder may not waive the corporation's privileges. *McDermott, Will & Emery v. Superior*

20  *Court*, 89 Cal. App. 4th 451 (2000). However, the *McDermott* decision addressed the very different

21  result that federal courts have reached in applying the common law of privilege. *Id.* at 385

22  (distinguishing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-1104 (5th Cir. 1970)). *See In re*

23

24  [4] In addition, California law as described in *Solin* forecloses balancing the attorney-client privilege

25  against the needs of a litigant, while federal courts may balance those competing interests. *Compare id.* at 457 ("In sum, there can be no balancing of the attorney-client privilege against the right to

26  prosecute a lawsuit to redress a legal wrong."); *with United States v. W.R. Grace*, 439 F. Supp.2d

27  1125, 1142 (D. Mont. 2006) (defendants "submitted documents that may, depending on the proof at trial, be of such probative and exculpatory value as to compel admission of the evidence over

28  [another defendant's] objection as the attorney-client privilege holder").

*Occidental Petroleum Corp.*, 217 F.3d 293, 297 (5th Cir. 2000) ("a corporation may invoke only a limited attorney-client privilege against the discovery demands of a shareholder. After all, 'management is not managing for itself,' but rather on behalf of the shareholder."). Moreover, nothing in the reasoning of the *McDermott* decision suggests why a federal enforcement action should not go forward where a third party invokes a privilege. Rather than support defendant's position, his reliance on state case law to interpret the application and consequences of asserting common law privileges in a federal court leads only to error.[5]

       Finally, defendant tries to invent a "fairness" issue where there is none, by attributing to the Commission a position that the Commission has never taken, and inventing facts that never occurred. Defendant thus repeatedly asserts that the Commission relies on "*privileged* communications" in its complaint, and further contends that "*privileged* communications" are the "cornerstone" or the "heart" of the Commission's claims. *E.g.*, Motion at 15, 23, 24 (emphasis added). Defendant's contention is false. The communications quoted or relied on in the Commission's complaint have been provided to defendant, and KLA has not asserted privilege over those communications. It is, of course, defendant's own desire to explore beyond the communications the Commission relies on that creates an issue. Defendant further declares that the Commission "decided to selectively use communications subject to privilege claims against Mr. Schroeder while creating the opportunity through the Confidentiality Agreement for the Company to preclude Mr. Schroeder from exploring

_____

[5] California law departs from the federal interpretation of the common law attorney-client privilege in numerous other ways. For instance, quoting from California state precedent, the *McDermott* decision emphasizes that the privilege, as codified in the state's evidence code, "is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case." 89 Cal. App. 4th at 457 (citations omitted). Where actual constitutional concerns can be alleviated by requiring a limited waiver, federal courts in the Ninth Circuit have ordered disclosure. *See Murdoch v. Castro*, 365 F.3d 699 (9th Cir. 2004) (if criminal defendant's confrontation rights conflict with an assertion of attorney-client privilege, the privilege will give way); *United States v. W.R. Grace*, 439 F. Supp.2d 1125 (legitimate invocation of attorney-client privilege required to yield to criminal defendants' right to present evidence in their defense). *Compare id.* at 1142 (defendants "submitted documents that may, depending on the proof at trial, be of such probative and exculpatory value as to compel admission of the evidence over [another defendant's] objection as the attorney-client privilege holder"); *with Solin v. O'Melveny*, 89 Cal. App. 4th at 457 ("In sum, there can be no balancing of the attorney-client privilege against the right to prosecute a lawsuit to redress a legal wrong.").

these facts." Motion at 18-19. His contention is baseless. The Commission has provided defendant *all* documents provided to the Commission by KLA pursuant to the confidentiality agreement, as defendant concedes. There is therefore no merit to his inventive "selective[] use" theory. Because the documents that were produced under the confidentiality agreement to the Commission have already been provided to defendant, the agreement is simply irrelevant to any questions of privilege that may remain. Defendant has not, in fact, provided the Court with *any* facts suggesting that KLA is refusing to provide him information based on the confidentiality agreement. Moreover, as defendant admits, numerous documents he claims to be seeking have never been provided to the Commission. The confidentiality agreement is defendant's red herring.[6]

In short, there is no unfairness that the defendant faces, and the fairness doctrine is not applicable here. The Commission has not asserted any privilege, relied on or injected privileged information in this case, nor prevented defendant's access to any information.

### D.    Defendant Fails To Articulate Any Deprivation Of Due Process

Defendant's motion begs the question: What has defendant been deprived of where he refuses to avail himself of the processes provided him? As the cases defendant cites in his moving papers make clear, the Court's role in considering a claimed deprivation of due process is to first determine what the liberty or property interest is, and then to assess whether the process provided is adequate. *See Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L. Ed.2d 494 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due.") (internal quotations and citation omitted). Here, defendant claims that he is being deprived of his right to present a defense to the Commission's enforcement action. Motion at

---

[6]  Defendant goes so far as to suggest that there is some conspiracy between the Commission and KLA to deprive him of a defense. Motion at 16 ("KLA and the SEC's strategy is fairly transparent. In order to enable the SEC to prosecute its case against Mr. Schroeder through the use of privileged communications, KLA undoubtedly will, at a time of its choosing most advantageous to itself and the SEC, and disadvantageous to Mr. Schroeder, waive privilege or selectively waive privilege to allow the SEC to present privileged testimony and documents against Schroeder at trial."). Aside from being patently offensive to the Commission's counsel, the flaw in his theory is that any such compact would be readily undone if defendant simply filed his long-promised motion to compel, rather than wasting his time, our time, and the Court's time, with the instant motion.

24.  Of course, defendant's purported "constitutional" claim is not ripe, as this case has not proceeded

to trial and defendant has not even attempted to obtain certain information he claims he would like to

present at trial.  *E.g.*, Motion at 7, 17-18 (describing information regarding Lisa Berry, whom

defendant has not even noticed for deposition).  More fundamentally, Schroeder himself suggests that

at any point KLA could "waive" its privilege and provide him with the information he says he needs.

*Id.* at 16.

Courts are loathe to assume a due process violation from the invocation of a privilege by a

third party that prevents a defendant from presenting evidence under far more dire circumstances –

the trial of a criminal defendant.  For instance, to show a due process violation from the invocation of

a Fifth Amendment privilege by a witness at a criminal trial, courts will require a defendant to

demonstrate a causal connection between the witness's choice not to testify and any actions by the

government.  *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982); *United States v. Trejo-*

*Zembrano*, 582 F.2d 460, 464 (9th Cir. 1978); *United States v. Bieganowski*, 313 F.3d 264, 291-92

(5th Cir. 2002).  Though the government has the means, through the grant of immunity, to remove the

obstacle to the defendant's obtaining the evidence in such situations, the determination not to grant

immunity will stand unless the defendant shows that the prosecution engineered the witness's

unavailability or the fact finding process was grossly distorted.  *United States v. Patterson,* 819 F.2d

1495, 1506 (9th Cir. 1987) (citing *United States v. Disla,* 805 F.2d 1340, 1353 (9th Cir. 1986)).  The

defendant in this civil case should be held to no less stringent a showing when a third party invokes a

privilege, in circumstances so common that they may be present in nearly every securities case.

Where the Federal Rules provide for processes that may be followed, and where those

processes do not deprive a defendant of his due process rights, the defendant does not suffer a "due

process" deprivation.  As the Supreme Court has held, the Federal Rules of Civil Procedure are

designed to "further the due process of law that the Constitution guarantees."  *Nelson v. Adams USA,*

*Inc.*, 529 U.S. 460, 465, 120 S.Ct. 1579, 1583, 146 L. Ed.2d 530 (2000).  Rule 37(a) allows for a

party who believes that a privilege is being asserted inappropriately to deprive him of information

vital to his claim or defense, to seek an order from the Court requiring disclosure.  Fed. R. Civ. Proc.

37(a).[7]  Defendant knows well this process to which he is due as a litigant.  His counsel conceded that he considered moving to compel against KLA, but he decided not to pursue this remedy.  *See* Order filed Feb. 20, 2008 (Docket No. 65).  As Magistrate Judge Lloyd described in his recent Order in this case, the defendant has in fact long suggested he would be pursuing such a motion but made the strategic decision not to do so, out of fear that it would negatively impact the instant motion. Defendant provides no explanation for why his refusal to avail himself of this process does not defeat his due process argument.

Finally, even if defendant availed himself of the processes under the Federal Rules, and after doing so could show that there was, indeed, a privilege in conflict with evidence he would otherwise offer, it is a giant leap to assume that he would be deprived of due process.  As myriad cases reveal (such as those cited above where a criminal defendant seeks to call a person who invokes his privilege against self-incrimination), the fact that evidence is unavailable does not end a case. Moreover, courts have the power to fashion numerous remedies to preserve a litigant's rights.  Thus, defendant cites in his own moving papers to *United States v. W.R. Grace*, 439 F. Supp.2d 1125, in which individual criminal defendants were permitted to present evidence of their reliance on advice of counsel, over objections by the company that had invoked the attorney-client privilege over communications between counsel and the defendants.  Motion at 24.  However, not having presented the Court with the right motion, it is not yet possible to assess whether Schroeder has any basis for requesting that any accommodations be made for him.

### E. The Court Should Require Defendant To Pursue His Discovery Motion Without Further Delay, Or Abandon Any Complaints About Privilege

The Commission asks that the Court enter an order that will halt defendant's inappropriate use of third-party KLA's privilege assertion as a mechanism to further delay this case.  As described above, defendant has asserted at several junctures in this litigation that these privilege issues would entail much time and attention.  He has sought to ensure that this would be the case, by dragging out

---

[7]  Of course, the party must certify that he has first attempted, in good faith, to secure the information without court action.  *Id*.

1     the dispute long after he had whatever "foundational" information from KLA or Skadden, which he

2     may have needed to present the issue to the Court.  In the meantime, his dilatory conduct has resulted

3     in the stay of deposition discovery from several persons associated with the company (*see* Order filed

4     Feb. 20, 2008), the several-month delay of the Commission's first noticed deposition of Elizabeth

5     Harlan, and the threat of repeated depositions of witnesses due to the present assertion of privileges

6     by the company.[8]

7          The Court has "has broad discretion in its resolution of discovery problems that arise in cases

8     pending before it," particularly where a party has "ample opportunity" to address discovery issues but

9     does not do so for strategic reasons.  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir.

10     1983).  The Court may exercise its power to fashion orders regarding when or how discovery may

11     occur, and generally "to take the sporting element out of litigation."  *Martin v. Reynolds Metals*

12     *Corp.*, 297 F.2d 49, 56 (9th Cir. 1961) (upholding district court's order permitting deposition

13     testimony, taking air, water, feed and soil samples, and providing for notice of the death or sale of

14     any livestock, to preserve evidence before the institution of a lawsuit).  "The variety of factual

15     situations that may come before the courts approaches the infinite, as does the variety of things that

16     may be evidence in a case. Of necessity, then, there must be a wide discretion lodged in the trial

17     judge in making orders such as that now before us."  *Id*. at 57.  Accordingly, to put to rest defendant's

18     claimed need for information over which KLA-Tencor (and its counsel at Skadden) have asserted

19     privileges to "prepar[e] and conduct[] a defense," the Court should order defendant to immediately

20     pursue a motion to compel or to otherwise abandon any complaints about the company's assertion of

21     privilege.

22

23

24

25

_____

26     [8]  Most recently, the defense has suggested that the Harlan deposition should continue to be delayed
until some indeterminate time due to "privilege issues."  LaMarca Decl., ¶ 5.  See the Nichols
27     deposition for an example of defendant's request to re-depose witnesses.  Weiss Decl., Ex. 9 at 226-
28     27.

1  **V.    CONCLUSION**

2          For the foregoing reasons, the Commission requests that the Court deny defendant's motion.

3  The Commission further requests that the Court require the defendant to either pursue his discovery

4  motion against the parties asserted any contested privilege now, or to abandon any further complaints

5  about the use of privilege information in this litigation.

6

7  Dated:  March 3, 2008                    Respectfully submitted,

8

9

10                                   /s/ Susaan F. LaMarca
                                    Susan F. LaMarca

11                                   Mark P. Fickes
                                    Elena Ro

12                                   Attorneys for Plaintiff
                                    SECURITIES AND EXCHANGE COMMISSION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28