SHIRLI FABBRI WEISS (Bar No. 079225)
DAVID PRIEBE (Bar No. 148679)
JEFFREY B. COOPERSMITH (Bar No. 252819)
STAN PANIKOWSKI III (Bar No. 224232)
**DLA PIPER US LLP**
2000 University Avenue
East Palo Alto, CA 94303-2248
Tel:  (650) 833-2000
Fax:  (650) 833-2001
Email:  shirli.weiss@dlapiper.com
Email:  david.priebe@dlapiper.com
Email:  jeff.coopersmith@dlapiper.com
Email: stanley.panikowski@dlapiper.com

ELLIOT R. PETERS (Bar No. 158708)
STUART L. GASNER (Bar No. 164675)
**KEKER & VAN NEST LLP**
710 Sansome Street
San Francisco, CA  94111
Tel:  (415) 391-5400
Fax:  (415) 397-7188
E-mail:  EPeters@KVN.com
E-mail:  SGasner@KVN.com

Attorneys for Defendant
KENNETH L. SCHROEDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       *Plaintiff*,<br><br>   v.<br><br>KENNETH L. SCHROEDER,<br><br>       *Defendant*. | No. C 07 3798 JW<br><br>**REPLY MEMORANDUM OF KENNETH L. SCHROEDER IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**<br><br>Date:       March 24, 2008<br>Time:      9:00 a.m.<br>Courtroom:  8<br>Judge:    Hon. James Ware |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     ARGUMENT .................................................................................................................. 5

    A.      Mr. Schroeder Has Been Deprived of Information Vital To His Defense.............. 5

    B.      The SEC Is No Ordinary Civil Litigant:  It Has A Heightened Obligation
        To Act Fairly And Justly....................................................................................... 7

    C.      Where The SEC Has Built Its Case On Privileged Communications
        And Mr. Schroeder Has Not Been Allowed To Defend Against The
        Allegations Because Of KLA's Assertion of Privilege, The Appropriate
        Remedy Is Dismissal, Not Forcing Mr. Schroeder To Litigate The
        Privilege Issues ..................................................................................................... 9

    D.      Dismissal Also Is Proper Because The Government Has Joined Forces
        With A Third Party To Unfairly Deprive A Defendant Of His Defense .............. 12

III.    CONCLUSION ............................................................................................................ 14

1

**TABLE OF AUTHORITIES**

2

**Page**

3
*American Surety Co. v. Baldwin*,
    287 U.S. 156 (1932) ................................................................................................. 7

4
*Fitzgerald v. Penthouse Int'l, Ltd.*,
    776 F.2d 1236 (4th Cir. 1985) ............................................................................... 10

5

6
*In re Herndon*, 188 B.R. 562 (Bankr. E.D. Ky. 1995),
    169 F.3d 1189 (9th Cir. 1999) ............................................................................... 10

7
*In re InfoSonics Corp. Deriv. Litig.*,
    No. 06 cv 1336 BTM (Wmc), 2007 WL 2572276 (S.D. Cal. Sept. 4, 2007) ................. 7-8

8

9
*Kasza v. Browner*,
    133 F.3d 1159 (9th Cir. 1998) ............................................................................... 10

10
*McDermott, Will & Emery v. Superior Court*,
    83 Cal. App. 4th 378 (2000) ............................................................................... 9, 10

11

12
*Neer v. Pelino*,
    389 F. Supp. 2d 648 (E.D. Pa. 2005) ....................................................................... 7-8

13
*SEC v. Heartland Advisors, Inc.*,
    No. 03-C-1427, 2006 WL 2547090 (E.D. Wis. Aug. 31, 2006) .................................. 3, 8

14

15
*Solin v. O'Melveny & Myers, LLP*,
    89 Cal. App. 4th 451 (2001) ............................................................................... 9, 10

16
*United States v. Kojayan*,
    8 F.3d 1315 (9th Cir. 1993) ..................................................................................... 8

17

18
*United States v. Stein*,
    435 F. Supp. 2d 330 (S.D.N.Y. 2006) ...................................................................... 13

19
*United States v. Stein*,
    440 F. Supp. 2d 315 (S.D.N.Y. 2006) ...................................................................... 13

20

21
*United States v. Stein*,
    495 F. Supp. 2d 390 (S.D.N.Y. 2007) ...................................................................... 13

22

23

24

25

26

27

28

1    Defendant Kenneth L. Schroeder respectfully submits this Reply Memorandum in support

2    of his Motion to Dismiss the Complaint (the "Motion").  The SEC's central premise — that it is

3    Mr. Schroeder's burden to attempt to ameliorate the Due Process violations created by the SEC's

4    reliance on privileged communications in the complaint and KLA's assertion of privilege, by

5    litigating privilege issues with KLA-Tencor Corporation ("KLA") for months or years — should

6    be rejected by this Court.  The burden should be placed on the SEC to show that the assertion of

7    privilege is invalid or the privilege has been waived.  Because the SEC has intentionally and

8    effectively disabled itself by contract from challenging KLA's assertion of privilege, the

9    Complaint should be dismissed with prejudice.

10   **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

11   As shown in Mr. Schroeder's moving papers, the facts germane to his Motion are these:

12   First, the SEC's Complaint for securities fraud against Mr. Schroeder, a former CEO of

13   KLA, alleges and relies on attorney-client privileged communications, selected and given to the

14   SEC by KLA, to support the essential element of scienter.  Specifically, the SEC quotes

15   selectively from portions of communications between Mr. Schroeder and KLA's former General

16   Counsel, Stuart Nichols, and alleges that Mr. Schroeder subsequently disregarded Mr. Nichols'

17   supposed advice and engaged in stock options backdating.  *See* Complaint ¶¶ 29-34.  Mr.

18   Schroeder contends that the SEC wrenches these communications from their context, and then

19   misinterprets the selected material to urge the inference that Mr. Schroeder intended to violate the

20   securities laws.

21   Second, Mr. Schroeder is being precluded by KLA from defending against the SEC's false

22   and misleading interpretations of the Nichols communications, and from placing them in their

23   proper context of other communications involving Mr. Nichols, by KLA's pervasive privilege

24   objections and instructions to the numerous witnesses to those communications—including

25   Mr. Schroeder himself—not to any answer ***any*** deposition questions about them.

26   Third, Mr. Schroeder is being precluded from taking testimony of other attorney-related

27   communications that show it was a former KLA General Counsel, Lisa Berry, perhaps with other

28   executives (but decidedly not Mr. Schroeder), who, with the actual or perceived blessing of

1    outside counsel, created a system of backdating stock options at KLA (which Human Resources

2    personnel implemented)—an allegation the SEC itself makes against Ms. Berry. *See* Motion at 7

3    & n.6; *id.* at 17 (quoting Complaint, *SEC v. Berry*, No. C 07-4431 RMW (N.D. Cal. Aug. 28,

4    2007)); *see also* Declaration of Shirli Fabbri Weiss, dated February 1, 2008 and filed with the

5    Motion ("Weiss Decl.") ¶ 16.

6          <u>Fourth</u>, to facilitate KLA's assertion of privilege, the SEC entered into a "Confidentiality

7    Agreement" with KLA, under which KLA selectively produced privileged information and

8    documents to the SEC (which the SEC plans to use with witnesses at trial whom Mr. Schroeder

9    cannot depose or cross-examine on privileged communications), and which precludes the SEC

10   from asserting that KLA's production to the SEC of privileged communications constitutes a

11   waiver of privilege.[1]  The Confidentiality Agreement has provided KLA with a license –

12   notwithstanding its disclosure of privileged materials to the SEC – to block Mr. Schroeder's

13   defense through broad assertions of privilege.

14                                              *   *   *

15         The SEC's opposition brief ("Opp.") admits that the agency entered into the non-waiver

16   agreement (the Confidentiality Agreement) with KLA, *see* Opp. at 9, but argues that Mr.

17   Schroeder is not seriously affected by KLA's broad assertions of privilege because Mr. Schroeder

18   has the privileged documents the SEC intends to use at trial.  This argument posits that a

19   defendant has means to defend if he possesses documents ***but is not able to ask any questions***

20   ***about them***, and as such must be rejected out of hand.  Mr. Schroeder's defense cannot be

21   restricted to making arguments based on the documents KLA selected and produced to the SEC.

22   Rather, Mr. Schroeder needs the testimony of the witnesses, including Mr. Nichols and all the

23   people who interacted with the issues raised in the communications that the SEC relies on, to

24   refute the SEC's misinterpretation of the documents and communications.  Moreover, the SEC's

25   

26   [1] The SEC also states without explanation that the Confidentiality Agreement it signed with KLA
     "does not preclude the Commission from claiming that the documents are not privileged or that
27   they fall within an exception to the privilege."  Opp. at 2.  However, if the SEC believes it is in a
     position to show that KLA's assertion of the privilege is invalid without having to argue waiver, it
28   should do so.

1  statement that it is unaware that it has received confidential information that Mr. Schroeder

2  cannot introduce at trial due to assertions of privilege, *see* Opp. at 12, is simply untrue.[2]

3  Furthermore, the SEC ignores the importance of the testimony and documents surrounding Ms.

4  Berry (and her consultation with outside counsel), notwithstanding its own allegations against

5  Ms. Berry. Mr. Schroeder is entitled to probe these matters, too, but has been blocked by

6  assertions of privilege. *See* Motion at 17-18.

7       The SEC also argues that dismissal is unwarranted because the burden must be placed on

8  Mr. Schroeder to bring a motion to compel discovery.[3] At the most fundamental level, the idea

9  that Mr. Schroeder has the burden of moving to compel discovery to address a miscarriage of

10  justice that ***the SEC itself set in motion*** is fundamentally wrong. The SEC is no ordinary civil

11  plaintiff, and a securities fraud lawsuit is no ordinarily lawsuit: the government has obligations

12  not shared by civil litigants to proceed fairly and justly. S*ee, e.g.*, *SEC v. Heartland Advisors,*

13  *Inc.*, No. 03-C-1427, 2006 WL 2547090, *5 n.4 (E.D. Wis. Aug. 31, 2006). Moreover, Mr.

---

15  [2] Mr. Schroeder showed that during the SEC's investigation, KLA affirmatively instructed former General Counsel Mr. Nichols to provide privileged communications to the SEC, which he did.

16  *See* Motion at 6 & n.5 (quoting Transcript of the Deposition of Stuart J. Nichols ("Nichols Tr."), at 24-26 (Weiss Decl. Ex. 9)). When Mr. Schroeder tried to ask questions on the same topics at

17  Mr. Nichols' deposition, KLA's counsel instructed him not to answer, and asserted that it would continue to preclude Mr. Nichols from testifying to these topics. *See* Motion at 10-14. KLA's

18  privilege assertions would also preclude ***Mr. Schroeder*** from testifying on topics that are subject to these matters. *See* Nichols Tr. at 201:23-202:2 ("MS. WEISS: Okay, so is the company's

19  position that none of these people will be permitted to testify with respect to Exhibit 77 should they be called as witnesses, including Mr. Schroeder? MS. HEINTZ: Yes.").

20

21  [3] As a threshold matter, the SEC's procedural complaints that Mr. Schroeder "promised" to file a motion to compel and then filed a motion to dismiss, are baseless. The history of this is recited in

22  the Supplemental Declaration of Shirli F. Weiss, dated March 10, 2008 ("Supp. Weiss Decl."). It was at Mr. Nichols deposition (held on Sunday, January 27, 2008, at Mr. Nichol's request) that

23  KLA took an expansive privilege position leading to concerns by Mr. Schroeder that his defense was being fundamentally blocked. Mr. Schroeder filed the Motion five days later. Upon further

24  review of the facts and the law, Mr. Schroeder decided to file the instant motion, and Magistrate Judge Lloyd already rejected the SEC's complaint that there is something wrong with

25  Mr. Schroeder changing his strategy. *See* Order Granting KLA-Tencor's Motion For Protective Order, *SEC v. Schroeder*, No. 07-03798 JW (HRL) (N.D. Cal. Feb. 20, 2008) ("Feb. 20 Order"),

26  at 4. The SEC also castigates counsel for not meeting and conferring prior to filing the Motion. Opp. at 6. However, the Local Rules require parties to meet and confer on hearing dates for

27  motions; Mr. Schroeder's counsel did. *See* Supp. Weiss Decl. ¶ 11. There is no rule requiring counsel to meet and confer on the ***substance*** of motions to dismiss prior to filing.

28

1    Schroeder has the same right of Due Process that would be accorded a defendant in a criminal

2    proceeding.  *Id.*  Furthermore, the SEC is not a passive actor in this drama.  Rather, it

3    affirmatively elicited and obtained attorney communications from KLA by entering into the

4    Confidentiality Agreement, and then featured those communications in its complaint against

5    Mr. Schroeder.  Having obtained what it needed from KLA by reason of its immense power to

6    sanction KLA for not cooperating (with the SEC as judge and jury over the meaning of

7    cooperation), the SEC is now seeking to capitalize on the circumstances facilitated by its

8    agreement with KLA, under which the SEC utilizes privileged materials it obtained from KLA as

9    its key evidence but Mr. Schroeder cannot question any witnesses about those materials.

10          The law is clear that Due Process principles require that Mr. Schroeder must have the

11    opportunity to defend himself fully against the SEC's complaint.  The government presumably

12    knew this; and thus when it filed a complaint that placed such heavy reliance on attorney

13    communications, it knew that Mr. Schroeder would have a Due Process right to defend himself by

14    not only obtaining the documents relied upon by the SEC, but by being able to ask questions

15    about them.  In these circumstances, it does not comport with Due Process, and it is

16    fundamentally unfair, to place the burden on Mr. Schroeder of protracted litigation with KLA and

17    its Special Committee lawyers for months or years[4] over privilege issues.  Rather, the SEC—

18    which worked hand in hand with KLA to prepare the case against Mr. Schroeder, seeks moneys

19    from Mr. Schroeder under Section 304 of the Sarbanes-Oxley Act that if recovered will be

20    handed over to KLA, and knows that KLA is now working through the use of privilege to thwart

21    Mr. Schroeder's defense—has the burden to show the invalidity of privilege or to obtain a waiver.

22          Where a defendant is precluded from a full opportunity to defend because of claims of

23    privilege, the remedy is dismissal.  In addition, and separately, where the government has acted

24    with a third party in a manner that has compromised a defendant's ability to defend, the remedy is

25    dismissal.  *See* Section II(D), *infra*.  Here, the SEC bound itself by agreement not to challenge

26    _____

27    [4] When asked (at a conference call attended by counsel for Mr. Schroeder, KLA, and the SEC) if
he thought a ruling by Magistrate Lloyd would resolve the privilege issues asserted by KLA,
counsel for KLA responded, "Not unless Judge Lloyd is the Supreme Court," strongly suggesting

28    that a ruling against KLA on privilege issues would result in appeals.  Supp. Weiss Decl. ¶ 13.

REPLY MEMORANDUM OF KENNETH L. SCHROEDER IN SUPPORT OF MOTION TO DISMISS
NO. C 07 3798 JW

1   privilege based on KLA's production of documents to it, thereby foregoing a waiver argument or

2   waiver request that would have avoided the gross unfairness at issue.  The Complaint should be

3   dismissed.

4   **II.    ARGUMENT**

5   **A.    Mr. Schroeder Has Been Deprived of Information Vital To His Defense**

6   KLA's flawed options granting practices occurred during a multi-year period, and were

7   heavily impacted by communications from its two former inside counsel (Mr. Nichols and

8   Ms. Berry), as well as by their communications with outside counsel (the law firm of Wilson,

9   Sonsini, Goodrich and Rosati ("WSGR")).  As Mr. Schroeder demonstrated, the SEC's complaint

10  relies heavily on its interpretation of privileged attorney-client communications to support

11  allegations that Mr. Schroeder acted with scienter in allegedly violating the securities laws.  *See,*

12  *e.g.*, Motion § II(D) (quoting Complaint ¶¶ 29-34).  Mr. Schroeder also demonstrated that

13  numerous communications involving Ms. Berry and WSGR were integral to his defense.  Motion

14  at 17-18.[5]

15  Thus, attorney-related communications are integral to both the Complaint and the defense,

16  and Mr. Schroeder requires testimony and documents concerning these and other privileged

17  communications to defend himself.  Mr. Schroeder promptly and repeatedly sought document

18  discovery about privileged communications alleged in the Complaint and integral to the defense

19  from KLA and the attorneys for KLA's Special Committee (Skadden).  He also sought deposition

20  discovery from former General Counsel Mr. Nichols.  Mr. Schroeder and the SEC both noticed

21  the deposition of attorney Elizabeth Harlan, who took notes of KLA's Special Committee

22  interviews of Mr. Schroeder, and Mr. Schroeder sought the original notes of all of the Special

23  Committee witness interviews.  Mr. Schroeder further noticed the depositions of several

24  witnesses to critical conversations concerning the Nichols memorandum—including KLA's Chief

25  Financial Officer, John Kispert, and the Vice President of Finance, Maureen Lamb.

26

27  ───────────────
    [5] While the SEC does not cite these communications in the Complaint in this case, it points to Ms.
28  Berry as the architect of flawed KLA options processes indirectly in this case, and explicitly in its
    separate case against Ms. Berry.  Motion at 7 & n.7 (quoting SEC complaints in both cases).

1  Mr. Schroeder also plans to take the testimony of its other General Counsel (Ms. Berry) and

2  WSGR lawyers, all of whom he and the SEC listed in their Rule 26(a)(1)(A) witness disclosures,

3  and to notice the depositions of other Nichols-related witnesses (including Joy Nyberg, the

4  Director of Compensation).

5          In response, KLA has persistently refused to permit any such discovery on these matters,

6  asserting the grounds of the attorney-client privilege and the work product doctrine.  KLA also

7  moved for a protective order delaying the depositions of all witnesses noticed by Mr. Schroeder

8  on these topics, which was granted.  *See* Feb. 20 Order.  The contrast could not be more stark to

9  KLA's response when the SEC asked for the same information.  <u>With the express blessing of</u>

10  <u>KLA</u>, the SEC was able to ask Mr. Nichols anything it wished when it interviewed him during the

11  investigative phase of these proceedings, and the SEC published portions of privileged

12  communications in the Complaint in this case and another complaint it filed against Ms. Berry.

13  *See* Motion at 6 & § II(D).

14          In its opposition, the SEC does not deny its reliance on Nichols' communications; indeed,

15  highlighting their importance, the SEC again puts its spin on them.  Opp. at 3-4.  Instead, the SEC

16  claims that there is simply no fairness issue because Mr. Schroeder has the specific documents

17  that the SEC wishes to use against him.  *Id.* at 13 ("It is, of course, defendant's own desire to

18  explore beyond the communications the Commission relies on that creates an issue."); *see also id*.

19  at 10 n.3, 14 (asserting that it suffices that Mr. Schroeder has documents).  As a fallback, the SEC

20  attempts to minimize the significance of the information that is being denied to Mr. Schroeder.

21  *Id.* at 16 ("[T]he fact that evidence is unavailable does not end a case.").[6]

22  ---

[6]  The SEC also asserts that Mr. Schroeder has misrepresented to the Court that the KLA
23  attorney-client communications cited in the Complaint — most notably, a March 19, 2001
memorandum from Mr. Nichols — are "privileged," and it asserts that KLA is not, in fact,
24  claiming privilege over those communications.  *See* Opp. at 13.  This assertion is misleading, if
not outright false.  Although KLA has not sought the return of documents Mr. Schroeder received
25  from the SEC, KLA claims privilege over the communications.  As quoted at length in the
Motion without refutation by the SEC, during Mr. Nichols' deposition, KLA instructed
26  Mr. Nichols not to answer *any* questions concerning this memorandum on the basis of the
attorney-client privilege.  What this episode shows is that  KLA has not *enforced* its privilege
27  claims against the SEC—it has done so only against Mr. Schroeder.  The SEC further avers that
Mr. Schroeder needs no discovery concerning the Nichols communications cited in its Complaint
28  because Mr. Schroeder authored or received many of them.  *See* Opp. at 4 n.1, 10 n.3.  But even
as to these communications, KLA asserts that Mr. Schroeder himself, let alone the other

1    The SEC's view, however, runs counter to the fundamental principles of our legal system.

2    It is not, and has never been, sufficient that a defendant be given access to only the specific

3    privileged information a plaintiff intends to use against it.  Rather, the defendant must be given

4    access to sufficient information to permit it to *fairly defend* against the plaintiff's claims.

5    Moreover, if it were enough for a party to simply provide its opponent with the documents it

6    wishes to use (as the SEC asserts), there would be no reason for the basic principle that

7    evidentiary privileges cannot be used as both a sword and a shield.

8    Effectively limiting the defense to attempting to draw inferences from privileged

9    documents introduced by the SEC to counter the SEC's inflammatory rhetoric, without the ability

10    to get testimony, would be a clear violation of Mr. Schroeder's Due Process rights.  Among other

11    things, the defense requires examination and cross-examination of the numerous witnesses who

12    received the March 2001 memorandum and interacted regarding its subject matter, as set forth

13    above.  Fairness and Due Process require that this case cannot proceed where Mr. Schroeder is

14    not permitted to inquire concerning the attorney-client communications that the SEC relies upon

15    in its complaint.  *See Am. Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932) ("Due process requires

16    that there be an opportunity to present every available defense").

17
18    **B.    The SEC Is No Ordinary Civil Litigant:  It Has A Heightened Obligation To Act Fairly And Justly**

19    The SEC accuses Mr. Schroeder of securities fraud and seeks the full panoply of

20    draconian remedies against him, including monetary penalties, a bar preventing him from acting

21    as a director or officer of a public company, and injunctive relief.  The SEC also includes a claim

22    under the relatively newly enacted and untested Section 304 of the Sarbanes-Oxley Act, seeking

23    to deprive Mr. Schroeder of salary, benefits and other equity compensation earned while he was

24    CEO of KLA—which would then be remitted to KLA.[7]  Beyond this, the very filing of the SEC's

25
26    participants, cannot testify.  *See* p.1, *supra*.  Moreover, Mr. Schroeder has pointed to critical communications between Ms. Berry and others, and WSGR and others, which the SEC ignores.  *See* Motion at 2; *id.* at 5-6; *id* § III(G).

27
28    [7] Every court that has considered Section 304 has held that only the SEC, and not the issuer, may use this statute to recover money for an issuer.  *See, e.g., In re InfoSonics Corp. Deriv. Litig.*, No.

1   lawsuit has irretrievably sullied Mr. Schroeder's heretofore spotless reputation in the industry.

2   Pressing its formidable advantage as a government agency, the SEC has sought to capitalize upon

3   the impression it has created with its unproven allegations against Mr. Schroeder, by repeatedly

4   accessing the press to tell its story and pointedly, even gleefully, referencing its interpretation of

5   privileged communications alleged in the complaints. *See* Motion at 3.

6          A securities fraud lawsuit filed by the SEC is no ordinary civil lawsuit.  It is more akin to

7   a criminal proceeding.  And the SEC is no ordinary civil litigant.  The SEC is a government

8   agency with a concomitant responsibility that ordinary civil plaintiffs do not have — to proceed

9   fairly and justly.  *See, e.g.*, *Heartland Advisors,* 2006 WL 2547090 at *5 ("[A] suit by the SEC is

10  akin to a criminal prosecution in that it is accusing a[] private individual of wrong-doing.  In such

11  cases, the SEC acts as 'the representative not of an ordinary party to a controversy, but of a

12  sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at

13  all; and whose interest, therefore, . . . is not that it shall win a case, but that justice shall be

14  done'.") (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)); *United States v. Kojayan*,

15  8 F.3d 1315, 1323 (9th Cir. 1993) ("Prosecutors are subject to constraints and responsibilities that

16  don't apply to other lawyers.  While lawyers representing, private parties may — indeed, must —

17  do everything ethically permissible to advance their clients' interests, lawyers representing the

18  government in criminal cases serve truth and justice first.  The prosecutor's job isn't just to win,

19  but to win fairly, staying well within the rules.") (internal citations omitted).

20         It is through the prism of these obligations that the Court should view the SEC's main

21  argument:  that the burden should be placed on Mr. Schroeder, not the SEC, to engage in what is

22  clearly months or years of litigation with KLA and its law firms and committees over privilege

23  issues.

24

25

26

27  06 cv 1336 BTM (Wmc), 2007 WL 2572276, **8-9 (S.D. Cal. Sept. 4, 2007); *Neer v. Pelino,* 389
    F. Supp. 2d 648 (E.D. Pa. 2005).

28

1

2

3

**C.    Where The SEC Has Built Its Case On Privileged Communications And Mr. Schroeder Has Not Been Allowed To Defend Against The Allegations Because Of KLA's Assertion Of Privilege, The Appropriate Remedy Is Dismissal, Not Forcing Mr. Schroeder To Litigate The Privilege Issues**

4

5

6

7

8

The SEC contends that Mr. Schroeder's remedy here is a motion to compel discovery under Federal Rule of Civil Procedure 37, not dismissal of the Complaint.  Thus, the SEC seeks to place on Mr. Schroeder the burden of ameliorating the unfairness resulting from the SEC's solicitation and use of privileged material against him, and KLA's taking full advantage of the Confidentiality Agreement.  This argument seeks to place the burden on the wrong party.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

No principle of law or case saddles a defendant with the responsibility of litigating privilege issues where the *plaintiff's claims* have injected privileged communications into the case.  *Solin v. O'Melveny & Myers, LLP*, 83 Cal. App. 4th 451 (2001), and *McDermott, Will & Emery v. Superior Court*, 83 Cal. App. 4th 378 (2000), are clear examples of this.  In both cases, the courts held that dismissal of the case was the appropriate remedy where a non-party's privilege claims prevented the defendant from fairly presenting its defense.  *Solin*, 89 Cal App. 4th at 463-64; *McDermott, Will & Emery*, 83 Cal. App. 4th at 383-84.  In neither case, moreover, did the court so much as suggest that dismissal would be inappropriate unless the defendant first made a motion to compel discovery in the face of the non-party's assertion of the privilege.[8]  Nor does any "exhaustion of remedies" argument apply.  A defendant who is involuntarily brought into a lawsuit and forced to face claims that he cannot adequately defend against because they implicate privileged information should not be further burdened by being forced into ancillary litigation over whether the privilege has been validly invoked or whether there has been a waiver.  Relegating defendant to the burden of months or years of motion practice and appeals does not provide Due Process.  Rather, it is an invalid attempt to *condition* the defendant's Due Process right to defend himself.  Where, as here,  a defendant establishes that he has been denied

25

26

27

28

---

[8] The SEC attempts to distinguish *Solin* and *McDermott* by asserting that, under federal common law, unlike California law, the attorney-client privilege will yield where it conflicts with a defendant's right to present a defense.  The cases that the SEC cites, however, involve criminal, rather than civil, matters.  But, more fundamentally, the SEC's argument misses the point, which is simply that it is the SEC, the party that put privileged communications at issue, that must bear the burden of showing that the case can fairly proceed, whether because the privilege is invalid or must yield or for some other reason.

1    information that is vital to its defense on the basis of a *prima facie* claim of privilege, fairness

2    requires that the plaintiff, the party whose claims created the privilege issue, bear the burden of

3    demonstrating that the case can continue because the privilege claim is invalid or the privilege has

4    been waived.  The fact that the SEC has already precluded itself by contract (the Confidentiality

5    Agreement) from doing so does not allow the SEC to shift the burden to Mr. Schroeder.[9]

6        In  addition to cases focusing on attorney-client privilege, Mr. Schroeder has cited cases

7    involving the assertion of the state secrets privilege, where the result has been to deprive the

8    defendant of information needed for his defense. In those cases, courts have ordered dismissal of

9    the complaint rather than requiring the defendant to defend at a disadvantage. The SEC attempts

10   to distinguish those cases, arguing that in them, courts have required evidence that the state

11   secrets privilege is *validly* asserted, and that Mr. Schroeder has not shown that KLA's assertions

12   of privilege are valid.  The SEC's use of the state secrets cases is unavailing, however.  In those

13   cases, the burden of establishing the privilege is on the government.  *See Fitzgerald v. Penthouse*

14   *Int'l, Ltd.*, 776 F.2d 1236, 1243 (4th Cir. 1985).

15       In any event, Mr. Schroeder has done all that is or should be required of him.  He has

16   submitted a record that shows unequivocally that KLA and Skadden, as well as PWC (deferring

17   to KLA), have asserted the attorney-client and work product privileges to preclude Mr. Schroeder

18   from receiving both testimony and documents critical to his defense.  In their subpoena responses

19   KLA, Skadden and PWC cite to privilege in their refusal to produce documents.  Mr. Schroeder

---

[9] Moreover, although the SEC suggests that dismissal is appropriate only as a sanction for discovery violations, as the authorities cited in the Motion establish, dismissal is also required where the exercise of a privilege prevents a party from obtaining the information necessary to establish its defenses or to refute the plaintiff's allegations.  *See, e.g.*, *Kasza v. Browner*, 133 F.3d 1159, 1166-67, 1170 (9th Cir. 1998); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1243 & n.11 (4th Cir. 1995); *Solin*, 89 Cal. App. 4th at 463-64; *McDermott, Will & Emery*, 83 Cal. App. 4th at 378.  The SEC also apparently suggests that dismissing the Complaint would deny it Due Process.  Opp. at 7.  However, the Due Process Clause does not apply to the government.  *See In re Herndon*, 188 B.R. 562, 565 n.8 (Bankr. E.D. Ky. 1995) ("The Fifth Amendment accords Due Process of law to persons.  A governmental entity is not a "person."  The Fifth Amendment protects persons from the government; it does not necessarily protect one branch of government from actions of another branch.").  Moreover, it is difficult to see how the SEC could even begin to complain. When the SEC has wanted to use privilege material, KLA has not enforced the privilege; KLA acted only to prevent Mr. Schroeder from defending himself.

1   also made and produced the detailed record of KLA's position at Mr. Nichols' deposition, which

2   makes clear that KLA has and will assert privilege to prevent any former counsel, employee

3   (including Mr. Schroeder), director or outside lawyer from testifying to the privileged

4   communications that Mr. Schroeder seeks.  The communications at issue are between company

5   counsel and their client, and all of the attorneys asserting privilege are under strict Rule 11

6   obligations which require that they not assert a privilege without basis.  KLA and Skadden also

7   have cited case law in their letters in support of their positions.  Both the SEC and Mr. Schroeder

8   may disagree with these positions, but what the SEC is really saying here is that it is Mr.

9   Schroeder's burden to establish that these asserted privileges are either erroneously asserted or

10  have been waived.  Mr. Schroeder's obligation does not go that far.  In this circumstance, it is fair

11  for the court to place that burden on the SEC instead.

12      However, here, the SEC has disabled itself by contract from challenging KLA's position

13  based on KLA's production of documents to it.  Since it unfair to place the burden on Schroeder

14  of litigating the privilege issues that have been raised because of the SEC's claims, and the SEC

15  is effectively disabled itself from litigating them, dismissal is the only proper remedy.

16      The SEC wrongly seeks to impose the burden on Mr. Schroeder to compel the testimony

17  he needs to defend himself.  A ruling that fixes the burden on Mr. Schroeder under the

18  circumstances of this case would be oppressive and unfair.  The SEC has the power and authority

19  to ask that a company under investigation waive the attorney-client privilege and the work

20  product protection as a part of its cooperation with the SEC's investigation.[10]  The SEC easily

21  could have made such a request of KLA in this case, either in lieu of the Confidentiality

22  Agreement, or even later, once it decided that it wanted to use KLA's attorney-client

23  communications as the very basis for its claims against Mr. Schroeder.  It did not.  Instead, the

24  SEC signed an agreement pledging that it would not challenge KLA's assertion of privilege based

---

[10] *See* Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions, Exchange Act Release No. 44969, (October 23, 2001).  Known as the "Seaboard factors" this SEC release is the basis upon which the SEC frequently obtains waivers of privilege by cooperating companies.

1    on KLA's production to the SEC, and the SEC has argued no other grounds for the inapplicability

2    of privilege for any of the documents it uses in its Complaint or that Mr. Schroeder seeks in his

3    defense.  Having gotten what it wanted from KLA by means of the Confidentiality Agreement,

4    the SEC's indifference or hostility to Mr. Schroeder's Due Process rights and his inability to

5    defend himself is unconscionable.  In the SEC's view, Mr. Schroeder should now be required to

6    spend months, or even years, litigating the issue of whether KLA has waived the attorney-client

7    privilege, an issue that the SEC could, and should, have addressed before it brought this action

8    against Mr. Schroeder on the basis of privileged documents it obtained from KLA from a one-

9    sided Confidentiality Agreement.[11]

10   
11            **D.      Dismissal Also Is Proper Because The Government Has Joined Forces With A
                        Third Party To Unfairly Deprive A Defendant Of His Defense**

12           Moreover, there is another, independent reason why the Court should dismiss the

13   Complaint and why, contrary to the SEC's arguments, the remedy is not too drastic, but rather, is

14   clearly warranted.  That is because, in view of the government's great power and its correlating

15   special obligations as a litigant, courts look with great displeasure when the government joins

16   forces with a non-party to disadvantage the right of a defendant to a fair trial, and courts have

17   punished such actions with dismissal.  As shown above, the SEC has the same obligations of

18   fairness in pursuing a civil claim for securities fraud that the government would have in pursuing

19   a criminal case.  Here, the SEC has ignored those obligations.  No innocent bystander, the SEC

20   created the state of affairs that gave the SEC privileged communications but precludes

21   
---

22   [11] The SEC's reliance on case law involving the Fifth Amendment privilege against self
     incrimination is also unavailing.  The SEC attempts to distinguish this case, brought by a
23   government plaintiff, from ordinary civil litigation, by noting that courts will not dismiss a
     criminal prosecution on the ground that a defense witness has refused to testify on the basis of the
24   Fifth Amendment privilege unless the defendant shows that the government "engineered the
     witness's unavailability."  Opp. at 15.  But even if the Fifth Amendment analogy were
25   appropriate to this case, those cases do not help the SEC, since, by virtue of the non-waiver
     provision in its Confidentiality Agreement with KLA, the SEC has effectively facilitated KLA's
26   ability to continue to assert the privilege as to Mr. Schroeder's requests for discovery.  The SEC's
     analogy is inapposite for other reasons.  Unlike this case, the Fifth Amendment authorities on
27   which the SEC relies are not cases in which the government has affirmatively relied on the
     privileged information that the defendant is being prevented from using.

28   

REPLY MEMORANDUM OF KENNETH L. SCHROEDER IN SUPPORT OF MOTION TO DISMISS
                                                                 NO. C 07 3798 JW

1    Mr. Schroeder from accessing privileged material necessary for his defense.  The SEC's

2    relationship with KLA must be seen for what it is: KLA has acted as the agent for the SEC, and

3    the SEC and KLA have collaborated impermissibly to prevent Mr. Schroeder from accessing the

4    information and documents necessary for its defense.

5          The government's overreaching and heavy-handed tactics in connection with the

6    prosecution of KPMG employees is a case in point with striking parallels with this case.  *See*,

7    generally, *United States v. Stein*, 495 F. Supp. 2d 390 (S.D. N.Y. 2007); *United States v. Stein*,

8    440 F. Supp. 2d 315 (S.D.N.Y. 2006); *United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y.

9    2006).  In the KPMG matter, an accountancy firm, KPMG, sought leniency from the government

10   for its role in a tax shelter debacle.  Offering the government cooperation in a strategy to save

11   itself from indictment and penalties, KPMG was willing, even eager, to sacrifice its partners' Due

12   Process rights and throw them "under the bus."[12]  Once the government communicated to

13   KPMG's counsel (Skadden) that it thought KPMG should not pay the defense fees of its partners

14   under investigation and indictment, KPMG swiftly cut off their defense (apparently figuring it

15   would worry about its breach of indemnification obligations later).  Thus, KPMG and the

16   government acted together to put the government at an advantage in the litigation and the

17   defendants at a disadvantage.  The government, by its leniency to KPMG, encouraged this result

18   and benefited from it.  Placed at a disadvantage by the government's collaboration with a third

19   party, their former employer, the KPMG individual defendants moved to dismiss the

20   government's indictment against them. They claimed a violation of their Constitutional Due

21   Process rights resulting from this unholy collaboration.  In stinging opinions rebuking the

22   government, the court wasted little time ruling that the government had impermissibly impinged

23   upon the individuals' Due Process rights to a fair trial.  The court sternly excoriated the

24   government and non-party KPMG and then took the "drastic," but warranted, step of dismissing

25   criminal indictments against defendants who had been adversely affected.

26         Here, the remedy of dismissal of a civil complaint is certainly less drastic than that of a

27   _____
     [12] As noted in Mr. Schroeder's opening papers, the "find someone and throw him under the bus"
28   tactic is a common strategy followed by some defense ex-prosecutors to save companies from
     indictment.  *See* Motion at 2 n.1.

1  criminal indictment, but KLA and the SEC's conduct is worse than that of the government in
2  KPMG.  Similar to the events that played out in the KPMG tax matter discussed in *Stein*, KLA,
3  desperate to save itself, and as part of its "cooperation," packaged the SEC's case for it and
4  conveniently offered up Mr. Schroeder as its designated "wrongdoer."  KLA then stripped Mr.
5  Schroeder of his retirement benefits, breaching all of its contracts with him and saving itself tens
6  of millions of dollars doing so, so as to impress the government with its "cooperation."  *See*
7  Motion at 9.  KLA then produced selected privileged information and documents to the
8  government, which it used in the investigation to form the very heart of the Complaint.  The
9  government bound itself by contract not to claim KLA had waived any privilege by producing
10  privileged documents and interview notes to it, thus facilitating the present untenable and grossly
11  unfair circumstances.

12  ## III.    CONCLUSION

13          For the foregoing reasons, and for the reasons stated in Memorandum of Points and
14  Authorities in support of the Motion to Dismiss, Mr. Schroeder respectfully requests that the
15  Court dismiss the SEC's Complaint with prejudice.

16

17  Dated:  March 10, 2008              DLA PIPER US LLP

18                                      Respectfully submitted,

19

20  By: /s/ Shirli Fabbri Weiss
    SHIRLI FABBRI WEISS (Bar No. 079225)
21  DAVID PRIEBE (Bar No. 148679)
    JEFFREY B. COOPERSMITH (Bar No. 252819)
22  STAN PANIKOWSKI III (Bar No. 224232)

23                                      Attorneys for Defendant KENNETH L. SCHROEDER

24

25          I hereby attest that I have on file all holographic signatures for any signatures indicated by
26  a "conformed" signature (/S/) within this e-filed document.

27

28

DLA PIPER US LLP    14