# Exhibit 1



**THE WALL STREET JOURNAL.**
*O N L I N E*

July 25, 2007 7:18 p.m. EDT

# 3rd UPDATE: SEC Charges Former KLA-Tencor CEO In Backdating

DOW JONES NEWSWIRES
*July 25, 2007 7:18 p.m.*

(Adds comment from Schroeder lawyer in fifth, 10th and 11th paragraphs; background on executive departures in 12th paragraph.)

By Siobhan Hughes
OF DOW JONES NEWSWIRES

WASHINGTON (Dow Jones)—The U.S. Securities and Exchange Commission on Wednesday charged the former chief executive of KLA-Tencor Corp. (KLAC) with engaging in a scheme to backdate stock option grants even after he was told by the company's top lawyer that it was improper to do so without telling investors.

The SEC filed civil-fraud charges against Kenneth Schroeder, 61 years old, of Los Altos Hills, Calif., accusing him of repeatedly backdating options between 1999 and 2002. The SEC also said he backdated in 2005, after passage of the Sarbanes-Oxley Act limited backdating opportunities by requiring companies to disclose stock-options awards within two days.

""We've all heard executives say that they didn't know how to properly account for stock options pre-Sarbanes-Oxley," said Michael Dicke, assistant regional director in the SEC's San Francisco office. "At least here, the CEO was correctly advised not to backdate, and how to properly disclose the company's stock options practices. He chose to ignore that advice."

Stock options give the holder the right to buy stock at a price determined on the date of the grant. Backdating involves pretending the options were granted on an earlier date when the price was lower. The practice can land executives and companies in hot water with the SEC, the Internal Revenue Service and the Justice Department if it isn't

disclosed.

Schroeder plans to fight the SEC charges. "When Mr. Schroeder became CEO in mid-1999, he inherited a process that appeared to him to be working properly," his lawyer, Shirli Weiss, said in a statement. "The company's failure to properly account for its option grants is the proper responsibility of those at the company charged with implementing its internal accounting controls. For his part, Mr. Schroeder has always been clear about his understanding of the matter."

The SEC separately accused KLA-Tencor of concealing more than $200 million in stock option compensation over eight years starting in 1998 by backdating the grants to avoid reporting expenses to investors. The San Jose semiconductor company wasn't fined, and settled without admitting or denying wrongdoing. KLA-Tencor said in a statement that the settlement resolves the SEC's investigation into its options-granting practices.

From July 1999 until mid-2002, KLA-Tencor's human-resources department was instructed to create a list of newly hired employees, wait several weeks, obtain a list of the company's closing stock price for the past several weeks, highlight the three or four lowest prices, and forward the list to the stock option committee, the SEC said. It was "a recipe for backdating that was followed for years," Dicke said.

Schroeder sat on the stock-option committee, and month after month routinely signed backdated option grant approvals without ever ensuring the grants were accounted for appropriately, the SEC said. He made the approvals even after receiving a March 2001 memo from KLA-Tencor's general counsel saying that selecting options-grant dates after the fact would require the company to take a compensation charge and that doing so without disclosure could violate the law, the SEC said. Stuart Nichols was general counsel of KLA-Tencor at the time.

In an email back to the general counsel cited by the SEC, Schroeder wrote: "the compensation committee has given the stock option committee (Gary, Ken and I) power to set the price of stock options... Please don't take away some of my best tools for attracting and retaining people. We need those people to win the battle. Help me, don't just tell me how to follow a strict interpretation of the rules. I need a 'war time counselor,' not someone who can recite page and verse."

The SEC alleged that Schroeder, besides wanting to attract and retain workers, was motivated in part by personal gain because he knew that he and other officers received options backdated to the same dates that the employees' options were. Schroeder's lawyer claims that his client didn't exercise the options granted while he was CEO, and made only $26,000 from the backdated portion of one option granted to him while he was CEO.

"Other KLA-Tencor executives, some of whom are still with the company, made hundreds of thousands of dollars from the backdated portion of their options," Weiss said in a statement. "What the SEC is attempting to do is to recover gain from non-backdated

options granted to Mr. Schroeder in the 1990s when he was COO."

Schroeder; Nichols; and KLA-Tencor's chairman and founder, Kenneth Levy, resigned last year as the company acknowledged that some of its options were backdated. The SEC said in a release that its investigation is continuing.

KLA-Tencor shares rose 20 cents to $59.51 on Wednesday.

-By Siobhan Hughes, Dow Jones Newswires; 202-862-6654;
siobhan.hughes@dowjones.com

# Exhibit 2



U.S. Securities and Exchange Commission

## U.S. SECURITIES AND EXCHANGE COMMISSION

**Litigation Release No. 20207 / July 25, 2007**

*Securities and Exchange Commission v. Kenneth L. Schroeder,* **Case No. C07 3798 JW (N.D. Cal. filed July 25, 2007)**

*Securities and Exchange Commission v. KLA-Tencor Corp.,* **Case No. C07 3799 HRL (N.D. Cal. filed July 25, 2007)**

**SEC Charges Former KLA-Tencor CEO With Fraud For Improper Stock Options Backdating**

**Commission Also Settles Claims Against KLA-Tencor**

The Securities and Exchange Commission today filed charges against Silicon Valley semiconductor company KLA-Tencor Corporation (KLA) and its former Chief Executive Officer, Kenneth L. Schroeder, alleging that they engaged in an illicit scheme to backdate stock option grants.

The Commission alleges that, since 1997, KLA concealed more than $200 million in stock option compensation by providing employees and executives with potentially lucrative "in-the-money" options while secretly backdating the grants to avoid reporting the expenses to investors. The Commission further alleges that Schroeder, of Los Altos Hills, Calif., repeatedly backdated options between 1999 and 2002, and once in 2005 - even after he received advice from company counsel that retroactively selecting grant dates without adequate disclosure was improper.

The Commission's complaint against KLA, filed in federal district court in San Jose, Calif., alleges that former company executives routinely used hindsight to issue options to employees priced at or near KLA's lowest stock price of the preceding weeks. Although pricing the options below current prices required the company to report a compensation charge under well-settled accounting principles, former KLA officials avoided reporting the charges by falsely documenting that the options had been granted on an earlier date. The backdated grants resulted in materially misleading disclosures, with the Company overstating its net income in fiscal years 1998 through 2005 by as much as 156 percent.

In a separate complaint filed against Schroeder, the Commission charges that he repeatedly engaged in backdating after becoming CEO in 1999, including pricing large awards of options to himself that were "in the money" by millions of dollars - a potential windfall never disclosed to KLA-Tencor's shareholders. According to the complaint, Schroeder received a legal memorandum in March 2001 cautioning that "the Board and its committees are limited in their ability to grant options at a retroactive price

without exposing the company to risk of an accounting charge." The memo further warned that "[a]ny attempt to set a price before such a grant is made raises substantial risks under securities and tax laws [and] accounting rules and gives rise to disclosure obligations." The Commission alleges that Schroeder nonetheless continued to backdate options.

KLA-Tencor, without admitting or denying the allegations in the Commission's complaint, agreed to settle the matter by consenting to a permanent injunction from further violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder.

Schroeder is charged with violating Section 17(a) of the Securities Act of 1933 and Sections 10(b), 13(b)(5), and 16(a) of the Securities Exchange Act of 1934 and Rules 10b-5, 13a-14, 13b2-1, 13b2-2, and 16a-3 thereunder, and Schroeder is charged with aiding and abetting violations of Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Securities Exchange Act of 1934 and Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 14a-9 thereunder. The Commission is seeking injunctive relief, disgorgement of ill-gotten gains, and monetary penalties against Schroeder, in addition to an order barring him from serving as an officer or director of a public company. In addition, the complaint seeks reimbursement of bonuses and profits from stock sales pursuant to Section 304 of the Sarbanes-Oxley Act.

➤ Complaints in this matter: Schroeder, KLA-Tencor


http://www.sec.gov/litigation/litreleases/2007/lr20207.htm

**Exhibit 3**

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-K

(Mark One)

☒  **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the Fiscal Year Ended June 30, 2006

OR

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the Transition Period from          To

Commission File No. 0-9992

# KLA-TENCOR CORPORATION
(Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| Delaware<br>(State or Other Jurisdiction of<br>Incorporation or Organization) | 04-2564110<br>(I.R.S. Employer<br>Identification Number) |
| 160 Rio Robles, San Jose, California<br>(Address of Principal Executive Offices) | 95134<br>(Zip Code) |

Registrant's Telephone Number, Including Area Code: (408) 875-3000
Securities Registered Pursuant to Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock, $0.001 Par Value<br>Common Stock Purchase Rights | The Nasdaq<br>Stock Market, Inc. |

Securities Registered Pursuant to Section 12(g) of the Act:
None
(Title of Class)

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):
Large accelerated filer ☒          Accelerated filer ☐          Non-accelerated filer ☐

Indicate by checkmark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

The aggregate market value of the voting and non-voting common stock held by non-affiliates of the registrant based upon the closing price of the registrant's stock, as of December 31, 2005, was $5,554,245,988. Shares of common stock held by each officer and director and by each person or group who owns 5% or more of the outstanding common stock have been excluded in that such persons or groups may be deemed to be affiliates. This determination of affiliate status is not necessarily a conclusive determination for other purposes.

The registrant had 199,725,957 shares of common stock outstanding as of December 31, 2006.

### DOCUMENTS INCORPORATED BY REFERENCE

None

Source: KLA TENCOR CORP, 10-K, January 29, 2007

Table of Contents

## INDEX

|  |  | Page |
|---|---|---|
| | Special Note Regarding Forward-Looking Statements | ii |
| | Explanatory Note Regarding Restatements | ii |

### PART I

| | | |
|---|---|---|
| Item 1. | Business | 1 |
| Item 1A. | Risk Factors | 13 |
| Item 1B | Unresolved Staff Comments | 21 |
| Item 2. | Properties | 22 |
| Item 3. | Legal Proceedings | 23 |
| Item 4. | Submission of Matters to a Vote of Security Holders | 28 |

### PART II

| | | |
|---|---|---|
| Item 5. | Market for the Registrant's Common Stock, Related Stockholder Matters and Issuer Purchases of Equity Securities | 29 |
| Item 6. | Selected Financial Data | 30 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 33 |
| Item 7A. | Quantitative and Qualitative Disclosure About Market Risk | 50 |
| Item 8. | Financial Statements and Supplementary Data | 51 |
| | Consolidated Balance Sheets at June 30, 2006 and June 30, 2005 | 52 |
| | Consolidated Statements of Operations for each of the three years in the period ended June 30, 2006 | 53 |
| | Consolidated Statements of Stockholders' Equity for each of the three years in the period ended June 30, 2006 | 54 |
| | Consolidated Statements of Cash Flows for each of the three years in the period ended June 30, 2006 | 55 |
| | Notes to Consolidated Financial Statements | 56 |
| | Report of Independent Registered Public Accounting Firm | 101 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 103 |
| Item 9A. | Controls and Procedures | 103 |
| Item 9B. | Other Information | 109 |

### PART III

| | | |
|---|---|---|
| Item 10. | Directors and Executive Officers of the Registrant | 110 |
| Item 11. | Executive Compensation | 117 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 122 |
| Item 13. | Certain Relationships and Related Transactions | 124 |
| Item 14. | Principal Independent Registered Public Accounting Firm Fees and Services | 127 |

### PART IV

| | | |
|---|---|---|
| Item 15. | Exhibits and Financial Statement Schedule | 128 |
| | Signatures | 131 |
| | Schedule II Valuation and Qualifying Accounts | 132 |
| | Exhibit Index | 133 |

i

Source: KLA TENCOR CORP, 10-K, January 29, 2007

Table of Contents

| Location | Type | Principal use | Square Footage | Ownership |
|---|---|---|---|---|
| Bundang, South Korea | Office | Sales and Service | 7,508 | Leased |
| Hsinchu, Taiwan | Office | Sales and Service | 93,601 | Leased |
| Tainan, Taiwan | Office | Sales and Service | 7,294 | Leased |
| Taipei, Taiwan | Office | Sales and Service | 6,914 | Leased |
| Shanghai, China | Office and R&D | Sales, Service, Engineering and Warehouse | 58,886 | Leased |
| Beijing, China | Office | Sales and Service | 5,716 | Leased |
| Chennai, India | Office | Engineering | 149,121 | Owned |

(1)   Certain properties in San Jose, California and Livermore, California have been placed for sale in the quarter ended December 31, 2006.

We also lease office space for other, smaller sales and service offices in several locations throughout the world. Our operating leases expire at various times through June 30, 2015 with renewal options at the fair market value for additional periods up to five years. Additional information regarding these leases is incorporated by reference from Note 12 to Consolidated Financial Statements found under Item 8, "Financial Statements and Supplementary Data" in this Annual Report on Form 10-K. We believe our properties are adequately maintained and suitable for their intended use and that our production facilities have capacity adequate for our current needs.

**ITEM 3.     LEGAL PROCEEDINGS**

*Special Committee Investigation of Historical Stock Option Practices*

On May 22, 2006, the Wall Street Journal published an article about stock option backdating that questioned the stock option practices at several companies, including KLA-Tencor. On May 23, 2006, we received a subpoena from the United States Attorney's Office for the Northern District of California ("USAO") and a letter of inquiry from the United States Securities and Exchange Commission ("SEC") regarding our stock option practices. Later on May 23, 2006, our Board of Directors appointed a Special Committee composed solely of independent directors to conduct a comprehensive investigation of our historical stock option practices. The Special Committee promptly engaged independent legal counsel and accounting experts to assist with the investigation. The investigation included an extensive review of our historical stock option practices, accounting policies, accounting records, supporting documentation, email communications and other documentation, as well as interviews of a number of current and former directors, officers and employees. On September 27, 2006, the Special Committee reported the bulk of its findings and recommendations to our Board of Directors.

*Findings and Remedial Actions*

On September 28, 2006, we announced that we would have to restate our previously issued financial statements to correct our past accounting for stock options. As a result of the Special Committee investigation, we discovered that certain of our stock options, primarily those granted from July 1, 1997 to June 30, 2002, had been retroactively priced for all employees who received these grants. This means that the option exercise price was not the market price of the option shares on the actual grant date of the option, but instead was a lower market price on an earlier date. The actual grant date—when the essential actions necessary to grant the option were completed, including the final determination of the number of shares to be granted to each employee and the exercise price—is the correct measurement date to determine the market price of the option shares under the accounting rules in effect at the time. More than 95% of the total in-the-money value (market price on the actual grant date minus exercise price) of all of our retroactively priced options was attributable to those granted from July 1, 1997 to June 30, 2002.

We previously applied Accounting Principles Board ("APB") Opinion No. 25, "Accounting for Stock Issued to Employees," and its related Interpretations and provided the required pro forma disclosures under Statement of

23

Source: KLA TENCOR CORP, 10-K, January 29, 2007

Table of Contents

Financial Accounting Standards ("SFAS") No. 123, "Accounting for Stock-Based Compensation," through our fiscal year ended June 30, 2005. Under APB Opinion No. 25, a non-cash, stock-based compensation expense was required to be recognized for any option for which the exercise price was below the market price on the actual grant date. Because each of our retroactively priced options had an exercise price below the market price on the actual grant date, there should have been a non-cash charge for each of these options under APB Opinion No. 25 equal to the number of option shares, multiplied by the difference between the exercise price and the market price on the actual grant date. That expense should have been amortized over the vesting period of the option. Starting in our fiscal year ended June 30, 2006, we adopted SFAS No. 123(R), "Share-Based Payment." As a result, beginning in fiscal year 2006, the additional stock-based compensation expense required to be recorded for each retroactively priced option is equal to the incremental fair value of the option on the actual grant date, amortized over the remaining vesting period of the option. We did not record these stock-based compensation expenses under APB Opinion No. 25 or SFAS No. 123(R) related to our retroactively priced options in our previously issued financial statements, and that is why we are restating them in this filing. To correct our past accounting for stock options, we recorded additional pre-tax, non-cash, stock-based compensation expense of (a) $348 million for the periods July 1, 1994 to June 30, 2005 under APB Opinion No. 25 and (b) $22 million for the year ended June 30, 2006 under SFAS No. 123(R). We expect to amortize an additional $6 million of such pre-tax charges under SFAS No. 123(R) in future periods to properly account for past retroactively priced stock options.

By October 16, 2006, the Special Committee had substantially completed its investigation. The Special Committee concluded that (1) there was retroactive pricing of stock options granted to all employees who received options, primarily during the periods from July 1, 1997 to June 30, 2002 (less than 15% of these options were granted to executive officers), (2) the retroactively priced options were not accounted for correctly in our previously issued financial statements, (3) the retroactive pricing of options was intentional, not inadvertent or through administrative error, (4) the retroactive pricing of options involved the selection of fortuitously low exercise prices by certain former executive officers, and other former executives may have been aware of this conduct, (5) the retroactive pricing of options involved the falsification of Company records, resulting in erroneous statements being made in financial and other reports previously filed with the SEC, as well as in information previously provided to our independent registered public accounting firm, and (6) in most instances, the retroactive pricing of options violated the terms of our stock option plans. Because virtually all holders of retroactively priced options issued by the Company were not involved in or aware of the retroactive pricing, the Board of Directors decided that we should continue to honor the options that violated the terms of our stock option plans, except in certain individual cases as described below.

The Special Committee concluded that, with a few immaterial exceptions, the retroactive pricing of stock options stopped after June 30, 2002. After that time, there were procedures in place designed to provide reasonable assurance that stock options were priced on the grant date. The Special Committee also concluded that none of our independent Directors was involved in or aware of the retroactive pricing of stock options. Based on the Special Committee's report, our Board of Directors concluded that no current members of management were involved in the retroactive pricing of stock options. During its investigation of our historical stock option practices, the Special Committee did not find evidence of any other financial reporting or accounting issues.

As a result of the Special Committee investigation, on October 16, 2006, we terminated our employment relationship and agreement with Kenneth L. Schroeder, and we announced our intent to cancel all outstanding stock options held by Mr. Schroeder that were retroactively priced or otherwise improperly granted. Those options were canceled in December 2006. Mr. Schroeder was the Company's Chief Executive Officer and a member of its Board of Directors from mid-1999 until January 1, 2006, and was a member of the Company's stock option committee from 1994 until December 31, 2005. From January 1, 2006 to October 16, 2006, Mr. Schroeder was employed as a Senior Advisor to the Company. On November 10, 2006, Mr. Schroeder's counsel informed us that Mr. Schroeder contests our right to terminate his employment relationship and agreement and to cancel any of his options. We intend to vigorously defend any claims that may be made by Mr. Schroeder regarding these matters, which could involve a material amount.

24

Source: KLA TENCOR CORP, 10-K, January 29, 2007

Table of Contents

Also on October 16, 2006, Stuart J. Nichols, Vice President and General Counsel, resigned. Mr. Nichols and we entered into a Separation Agreement and General Release under which Mr. Nichols' outstanding retroactively priced stock options have been re-priced by increasing the exercise price to the market price of the option shares on the actual grant date. Under SFAS No. 123(R), no incremental charge will be recognized in the financial statements for the quarter ended December 31, 2006.

On October 16, 2006, Kenneth Levy, Founder and Chairman of the Board of Directors of the Company, retired as a director and employee, and was named Chairman Emeritus by our Board of Directors. Mr. Levy and we entered into a Separation Agreement and General Release under which Mr. Levy's outstanding retroactively priced stock options have been re-priced by increasing the exercise price to the market price of the option shares on the actual grant date. Under SFAS No. 123(R), no incremental charge will be recognized in the financial statements for the quarter ended December 31, 2006. Mr. Levy was the Company's Chief Executive Officer from 1975 until mid-1997 (with the exception of mid-1997 to mid-1998), was a member of the Company's Board of Directors from 1975 until his retirement, was Chairman of the Board of Directors from 1999 until his retirement, and was a member of the Company's stock option committee from 1994 until use of that committee was suspended in the fall of 2006.

On December 21, 2006, Jon D. Tompkins resigned as a director of the Company, and we agreed to modify the outstanding options held by Mr. Tompkins (all of which were fully vested) to extend the post-termination exercisability period to December 31, 2007, which is the last day of the calendar year in which those options would have terminated in the absence of such extension. Mr. Tompkins, the Chief Executive Officer of Tencor Instruments before its merger into the Company in mid-1997, was the Company's Chief Executive Officer from mid-1997 to mid-1998, was a member of the Company's stock option committee from mid-1997 until mid-1999, and was a member of the Company's Board of Directors from mid-1997 until his resignation.

Although the Board of Directors concluded that John H. Kispert, our President and Chief Operating Officer, was not involved in and was not aware of the improper stock option practices, based on the Special Committee's recommendation, his outstanding retroactively priced options have been re-priced because he served as Chief Financial Officer during part of the period in question. This re-pricing involved increasing the exercise price to the market price of the option shares on the actual grant date. Under SFAS No. 123(R), no incremental charge will be recognized in the financial statements for the quarter ended December 31, 2006.

After the Special Committee substantially completed its investigation, a number of follow-up activities continued, especially in connection with the preparation of this Annual Report on Form 10-K and our Quarterly Report on Form 10-Q for the quarter ended September 30, 2006. The Special Committee also continues to assist the Company in connection with the government inquiries described below. Additional follow-up activities may be required.

*Government Inquiries Relating to Historical Stock Option Practices*

On May 23, 2006, we received a subpoena from the USAO requesting information relating to our past stock option grants and related accounting matters. Also on May 23, 2006, we received a letter from the SEC making an informal inquiry and request for information on the same subject matters. We are cooperating fully with the USAO and SEC inquiries and intend to continue to do so. These inquiries likely will require us to expend significant management time and incur significant legal and other expenses, and could result in civil and criminal actions seeking, among other things, injunctions against the Company and the payment of significant fines and penalties by the Company, which may adversely affect our results of operations and cash flow.

We have also responded to inquiries from the U.S. Department of Labor, which is conducting an examination of our 401(k) Savings Plan. We are cooperating fully with this examination and intend to continue to do so.

We cannot predict how long it will take to or how much more time and resources we will have to expend to resolve these government inquiries, nor can we predict the outcome of these inquiries. Also, there can be no assurance that other inquiries, investigations or actions will not be started by other United States federal or state regulatory agencies or by foreign governmental agencies.

25

Table of Contents

*Late SEC Filings and Nasdaq Delisting Proceedings*

Due to the Special Committee investigation and the resulting restatements, we did not file on time this Annual Report on Form 10-K and our Quarterly Report on Form 10-Q for the quarter ended September 30, 2006. As a result, we received two Nasdaq Staff Determination letters, dated September 14, 2006 and November 14, 2006, respectively, stating that we were not in compliance with the filing requirements of Marketplace Rule 4310(c)(14) and, therefore, that our stock was subject to delisting from the Nasdaq Global Select Market. We appealed this determination and requested a hearing before a Nasdaq Listing Qualifications Panel. On October 26, 2006, we attended a hearing, at which we sought appropriate exceptions to the filing requirements from the Panel pending completion and filing of our delinquent reports. On January 3, 2007, the Panel granted our request for continued listing of our stock on the Nasdaq Global Select Market, subject to the condition that we file this Report and our Quarterly Report on Form 10-Q for the quarter ended September 30, 2006 on or before January 31, 2007.

With the filing of this Report and our Quarterly Report on Form 10-Q for the quarter ended September 30, 2006, we believe we have returned to full compliance with SEC reporting requirements and Nasdaq listing requirements, and, therefore, that the Nasdaq delisting matter is now closed. However, we cannot predict whether the SEC will review these Reports and, if so, whether the SEC will have comments on these Reports (or other reports that we previously filed) that may require us to file amended reports with the SEC. In addition, we cannot predict whether the Nasdaq Listing Qualifications Panel will concur that we are in compliance with all relevant listing requirements. If either of those events occurs, we might be unable to remain in compliance with SEC reporting requirements and Nasdaq listing requirements, and, therefore, we might be unable to maintain an effective listing of our common stock on the Nasdaq Global Select Market or any other national securities exchange.

*Shareholder Derivative Litigation Relating to Historical Stock Option Practices*

Beginning on May 22, 2006, several persons and entities identifying themselves as shareholders of KLA-Tencor filed derivative actions purporting to assert claims on behalf of and in the name of the Company against various of our current and former directors and officers relating to our accounting for stock options issued from 1994 to the present. The complaints in these actions allege that the individual defendants breached their fiduciary duties and other obligations to the Company and violated state and federal securities laws in connection with our historical stock option granting process, our accounting for past stock options, and historical sales of stock by the individual defendants. Three substantially similar actions are pending, one in the U.S. District Court for the Northern District of California (which consists of three separate lawsuits consolidated in one action); one in the California Superior Court for Santa Clara County; and one in the Delaware Chancery Court.

The plaintiffs in the derivative actions have asserted claims for violations of Sections 10(b) (including Rule 10b-5 thereunder), 14(a) and 20(a) of the Securities Exchange Act of 1934, unjust enrichment, breach of fiduciary duty and aiding and abetting such breach, negligence, misappropriation of information, abuse of control, gross mismanagement, waste of corporate assets, breach of contract, constructive fraud, rescission, and violations of California Corporations Code section 25402, as well as a claim for an accounting of all stock option grants made to the named defendants. KLA-Tencor is named as a nominal defendant in these actions. On behalf of KLA-Tencor, the plaintiffs seek unspecified monetary and other relief against the named defendants. The plaintiffs are James Ziolkowski, Mark Ziering, Alaska Electrical Pension Fund, Jeffrey Rabin, and Benjamin Langford. The individual named defendants are current directors and officers; Edward W. Barnholt, H. Raymond Bingham, Robert T. Bond, Jeffrey L. Hall, Stephen P. Kaufman, John H. Kispert, Lida Urbanek and Richard P. Wallace; and former directors and officers; Robert J. Boehlke, Leo Chamberlain, Gary E. Dickerson, Richard J. Elkus, Jr., Dennis J. Fortino, Kenneth Levy, Michael E. Marks, Stuart J. Nichols, Arthur P. Schnitzer, Kenneth L. Schroeder and Jon D. Tompkins. Current director David C. Wang and former director Dean O. Morton were originally named as defendants in one of the derivative actions filed in the U.S. District Court for the Northern District of California, but were dropped as named defendants as of December 22, 2006 upon the filing of a consolidated complaint in that action.

26

Table of Contents

The derivative actions are at an early stage. Discovery has not commenced, and the defendants are not yet required to respond to the complaints. Our Board of Directors has appointed a Special Litigation Committee ("SLC") composed solely of independent directors to conduct an independent investigation of the claims asserted in the derivative actions and to determine the Company's position with respect to those claims. The SLC's investigation is in progress. We cannot predict whether these actions are likely to result in any material recovery by or expense to KLA-Tencor.

*Shareholder Class Action Litigation Relating to Historical Stock Option Practices*

KLA-Tencor and various of our current and former directors and officers were named as defendants in a putative securities class action filed on June 29, 2006 in the U.S. District Court for the Northern District of California. Two similar actions were filed later in the same court, and all three cases have been consolidated into one action. The complaints allege claims under the Securities Exchange Act of 1934 as a result of our past stock option grants and related accounting and reporting, and seek unspecified monetary damages and other relief. The plaintiffs seek to represent a class consisting of purchasers of KLA-Tencor stock between February 13, 2001 and May 22, 2006 who allegedly suffered losses as a result of material misrepresentations in KLA-Tencor's SEC filings during that period. The lead plaintiffs, who seek to represent the class, are the Police and Fire Retirement System of the City of Detroit, the Louisiana Municipal Police Employees' Retirement System, and the City of Philadelphia Board of Pensions and Retirement. The defendants are KLA-Tencor, Edward W. Barnholt, H. Raymond Bingham, Robert J. Boehlke, Robert T. Bond, Gary E. Dickerson, Richard J. Elkus, Jr., Jeffrey L. Hall, Stephen P. Kaufman, John H. Kispert, Kenneth Levy, Michael E. Marks, Kenneth L. Schroeder, Jon D. Tompkins, Lida Urbanek and Richard P. Wallace.

This litigation is at an early stage. Discovery has not commenced, the court has not yet determined whether the plaintiffs may sue on behalf of any class of purchasers, and the defendants are not yet required to respond to the complaints. The Company intends to vigorously defend this litigation.

As part of a derivative lawsuit filed in the Delaware Chancery Court on July 21, 2006 (described above), a plaintiff claiming to be a KLA-Tencor shareholder also asserted a separate putative class action claim against KLA-Tencor and certain of our current and former directors and officers alleging that shareholders incurred damage due to purported dilution of KLA-Tencor common stock resulting from historical stock option granting practices. The Company intends to vigorously defend this litigation.

We cannot predict the outcome of the shareholder class action cases (described above), and we cannot estimate the likelihood or potential dollar amount of any adverse results. However, an unfavorable outcome in this litigation could have a material adverse impact upon our financial position, results of operations or cash flows for the period in which the outcome occurs and in future periods.

*Indemnification Obligations*

Subject to certain limitations, we are obligated to indemnify our current and former directors, officers and employees in connection with the investigation of our historical stock option practices and related government inquiries and litigation. These obligations arise under the terms of our certificate of incorporation, our bylaws, applicable contracts, and Delaware and California law. The obligation to indemnify generally means that we are required to pay or reimburse the individuals' reasonable legal expenses and possibly damages and other liabilities incurred in connection with these matters. We are currently paying or reimbursing legal expenses being incurred in connection with these matters by a number of our current and former directors, officers and employees. Although the maximum potential amount of future payments KLA-Tencor could be required to make under these agreements is theoretically unlimited, the Company believes the fair value of this liability is adequately covered within the reserves it has established for currently pending legal proceedings.

27

Table of Contents

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

KLA-Tencor Corporation

January 26, 2007
(Date)

By:    /s/   RICHARD P. WALLACE
             Richard P. Wallace
             Chief Executive Officer

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/   RICHARD P. WALLACE<br>Richard P. Wallace | Chief Executive Officer and Director (principal executive officer) | January 26, 2007 |
| /s/   JEFFREY L. HALL<br>Jeffrey L. Hall | Senior Vice President and Chief Financial Officer (principal financial officer and principal accounting officer) | January 26, 2007 |
| /s/   EDWARD W. BARNHOLT<br>Edward W. Barnholt | Chairman of the Board and Director | January 26, 2007 |
| /s/   H. RAYMOND BINGHAM<br>H. Raymond Bingham | Director | January 26, 2007 |
| /s/   ROBERT T. BOND<br>Robert T. Bond | Director | January 26, 2007 |
| /s/   STEPHEN P. KAUFMAN<br>Stephen P. Kaufman | Director | January 26, 2007 |
| /s/   LIDA URBANEK<br>Lida Urbanek | Director | January 26, 2007 |
| /s/   DAVID C. WANG<br>David C. Wang | Director | January 26, 2007 |

131

Source: KLA TENCOR CORP, 10-K, January 29, 2007

**Exhibit 4**

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

### FORM 8-K

### CURRENT REPORT
#### Pursuant To Section 13 or 15(d) of
#### The Securities Exchange Act of 1934

Date of report (Date of earliest event reported): May 22, 2006

# KLA-TENCOR CORPORATION
(Exact Name of Registrant as Specified in Charter)

Delaware
(State or Other Jurisdiction of
Incorporation)

000-09992
(Commission File Number)

04-2564110
(IRS Employer Identification No.)

160 Rio Robles
San Jose, California 95134
(Address of Principal Executive Offices)
Registrant's telephone number, including area code: (408) 875-3000

N/A
(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Source: KLA TENCOR CORP, 8-K, May 24, 2006

**Item 8.01 Other Events.**

KLA-Tencor Corporation announced today that its Board of Directors has appointed a Special Committee of independent directors to conduct an internal investigation relating to past stock option grants, the timing of such grants and related accounting and documentation. The Special Committee will be assisted by outside legal counsel and accounting experts. KLA-Tencor also said that it has received subpoenas from the U.S. Attorney's Offices for the Eastern District of New York and Northern District of California requesting information relating to its past stock option grants. KLA-Tencor said that it will cooperate fully with any government or regulatory investigation into these matters. KLA-Tencor further disclosed that on May 22, 2006, it was served with a complaint relating to a lawsuit filed in the United States District Court for the Northern District of California filed by the Theodore R. Kornreich Revocable Trust, derivatively on behalf of KLA-Tencor.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

KLA-TENCOR CORPORATION

Date:  May 24, 2006

By:  /s/Stuart J. Nichols

Name:  Stuart J. Nichols
Title:  Vice President and General Counsel

Created by 10K Wizard    www.10KWizard.com

**Exhibit 5**

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  415.442.1000
Fax:  415.442.1001
www.morganlewis.com



**Matthew Michael Haut**
Paralegal
415.442.1426
matthew.haut@morganlewis.com

June 29, 2007

**FOIA CONFIDENTIAL TREATMENT REQUESTED
BY KLA-TENCOR CORPORATION
PURSUANT TO 17 C.F.R. 200.83**

Office of Freedom of Information
and Privacy Act Operations
U.S. Securities and Exchange Commission
Operations Center
100 F Street, N.E.
Washington, DC  20549

Re:    In the Matter of KLA-Tencor Corp. (SF-3120)

Dear Sir or Madam:

On behalf of our client, KLA-Tencor Corporation, we made a presentation to the Staff of the San
Francisco, California Offices of the U.S. Securities and Exchange Commission (the
"Commission") which consisted of PowerPoint slides [copy of slides attached] and certain
supporting materials (the "Materials") on June 8, 2007.  The Materials, and the information
contained therein, represent information that is privileged and confidential within the
contemplation of the applicable provisions of the Freedom of Information Act ("FOIA"), and the
rules of the Commission implementing that Act, 17 C.F.R. Sections 200.80 & .83, and is
furnished solely for the use of the Commission.  Accordingly, we request that the Materials and
the information contained therein be afforded confidential treatment pursuant to FOIA and the
rules of the Commission implementing the Act.

We also request confidential treatment of the letters transmitting the Materials because they
relate to information that is itself privileged and confidential.

1-SF/7570089.1

**Morgan Lewis**
COUNSELORS AT LAW

June 29, 2007

FOIA CONFIDENTIAL TREATMENT REQUESTED
BY KLA-TENCOR CORPORATION
PURSUANT TO 17 C.F.R. 200.83
Page 2

Please acknowledge receipt of this letter by signing in the space provided on the enclosed
duplicate copy of this letter and returning it to me in the enclosed self-addressed, postage pre-
paid envelope.

Sincerely,

Matthew Michael Haut

Enclosures
cc: Ms. Elena Ro
    John H. Hemann (w/o encl.)
    William H. Kimball (w/o encl.)

RECEIPT ACKNOWLEDGED:

_____

FOIA Officer

1-SF/7570089 1





- Cooperation has been exemplary by all accounts and was designed to expedite SEC investigation

  - Immediately shared attorney-client privileged information pursuant to confidentiality agreement

  - Immediately shared results of Special Committee investigation with SEC staff

  - Immediately provided critical documents in manner designed to assist SEC staff

  - Promptly responded to every request for documents or information

Morgan Lewis

F.O.I.A. Confidential Treatment Requested



- Critical information voluntarily provided to SEC that would not otherwise have been uncovered and available

  - Privileged Special Committee documents

  - Privileged Company documents

  - Privileged witness interviews

Morgan Lewis

F.O.I.A. Confidential Treatment Requested



## Privileged Special Committee Documents

- Interview memoranda of over 60 witnesses

- Presentations to SEC and DOJ

- PowerPoint presentations

  • To Board of Directors

  • To Auditors



Morgan Lewis

F.O.I.A. Confidential Treatment Requested



- Privileged Company Documents
  - Stu Nichols memorandum and related e-mail
  - Lisa Berry memoranda and related e-mail
  - E-mail and other documents prepared by outside counsel

Morgan Lewis

F.O.I.A. Confidential Treatment Requested



**KLA Tencor**

## Privileged and Confidential

Date:   March 19, 2001
To:     Ken Schroeder
From:   Stu Nichols
cc:     Maureen Lamb, John Kispert, Joy Nyberg
Re:     Stock Option Pricing

Recently, several questions have been raised regarding the mechanics behind stock option pricing, both generally and specifically with respect to officer option grants. The purpose of this memo is clarify and set forth the basis for the rules regarding stock option pricing of option grants to company officers.

Morgan Lewis

F.O.I.A. Confidential Treatment Requested

**Via Facsimile**

To:    Larry W. Sonsini, Esq.
       Wilson Sonsini Goodrich & Rosati

cc:    Judith Mayer O'Brien

From:  Lisa C. Berry
       Vice President, General Counsel

Date:   November 14, 1998

Re:    November 17, 1998 Board Meeting

*    *    *    *    *

In order to avoid certain adverse accounting consequences, those employees repricing options had to turn in the requisite paperwork by a set date (August 31). We got approval from PricewaterhouseCoopers to have the Stock Option Committee meet at some time during the 30 days following August 31 and set the price for repricing at that time in order to maximize the value to employees. The repricing date ended up being August 31 but it was not determined until September 30 that the August 31 date was the correct date. The repricing date was also to be the date for the grant of "in-lieu" options.

F.O.I.A. Confidential Treatment Requested

Morgan Lewis



**From:** Stern, Roger
**Sent:** Sunday, March 7, 2004 1:26 PM
**To:** DiMarco, Bret
**Subject:** Old KLA Option timing e-mail

## REDACTED

Bret:

I thought it would be handy if I could track down that old e-mail/memo that you ghost-wrote for Stu on the option grant cherrypicking issues (when they were using the time machine to pick low strike prices).

Roger Stern
Employee Benefits & Compensation Group
Wilson, Sonsini, Goodrich & Rosati
Ph: 650-320-4818 (direct)
Fax: 650-493-6811

Morgan Lewis

F.O.I.A. Confidential Treatment Requested



- Company Document Productions Designed to Assist and Expedite SEC Investigation
  - Witness binders highlighting relevant documents
  - Productions made on timely basis as requested
- Witness Availability
  - All requested witnesses made available on timely basis, including current and former employees
- Privileged Witness Interviews

Morgan Lewis

F.O.I.A. Confidential Treatment Requested