1   MORGAN, LEWIS & BOCKIUS LLP
    JOHN H. HEMANN (SBN 165823)
2   JOSEPH E. FLOREN (SBN 168292)
    THOMAS R. GREEN (SBN 203480)
3   MATTHEW S. WEILER (SBN 236052)
    One Market, Spear Street Tower
4   San Francisco, CA 94105-1126
    Tel: 415.442.1000
5   Fax: 415.442.1001
    Email: jhemann@morganlewis.com
6          jfloren@morganlewis.com
           tgreen@morganlewis.com
7          mweiler@morganlewis.com

8   Attorneys for Non Party KLA-Tencor Corporation

9

10                  UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

12

| 13 | SECURITIES AND EXCHANGE COMMISSION, | Case No. C-5:07-cv-3798-JW (HRL) |
|---|---|---|
| 14 | Plaintiff, | **NON PARTY KLA-TENCOR CORPORATION'S OPPOSITION TO** |
| 15 | v. | **KENNETH L. SCHROEDER'S MOTION TO COMPEL** |
| 16 | | |
| 17 | KENNETH L. SCHROEDER, | Date:       September 9, 2008 |
| | Defendant. | Time:       10:00 a.m. |
| 18 | | Dept.:      Courtroom 2, 5th Floor |
| | | Judge:     Magistrate Judge Howard R. Lloyd |
| 19 | | Trial Date: |

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6

KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   SCOPE OF SCHROEDER'S JOINT MOTION AND SEPARATE RESPONSES
      BY KLA AND SKADDEN .......................................................................... 1

III.  RELEVANT BACKGROUND AND MEET AND CONFER PROCESS .................. 3

      A.    The Wall Street Journal Article and the Proliferation of Lawsuits Relating
            to the Alleged Backdating of Stock Option Grants at KLA.................................. 3

      B.    Government and Company Inquiries Into Historical Stock Option Grants at
            KLA and the SEC's Civil Complaint Against Schroeder ..................................... 3

            1.    USAO and SEC Policies Compel KLA To Cooperate with the
                  Federal Investigators, Who Shared KLA's Interest in Uncovering
                  Any Option Granting Improprieties............................................................. 3

            2.    The SEC Files Civil Actions Against Ken Schroeder and Lisa Berry ........ 5

      C.    Schroeder Seeks Discovery From KLA and the Special Committee in this
            Action and Begins the Meet and Confer Process................................................ 5

      D.    Schroeder Files a Motion to Dismiss the SEC's Complaint and Disengages
            from the Meet and Confer Process.................................................................... 6

      E.    KLA Makes Significant Progress Resolving Much of the Backdating
            Litigation, Including Settling With Schroeder ................................................... 7

      F.    Schroeder Files His Motion to Compel and Rejects All Meet and Confer
            Efforts, Including an Offer to Allow the Discovery Sought by this Motion........... 8

IV.   ARGUMENT ............................................................................................ 10

      A.    Schroeder's Motion to Compel Production and Testimony Relating to
            KLA's Historical Documents Should Be Denied Because it is Moot ................. 10

      B.    Schroeder's Motion Should Be Denied Because He Failed to Abide by His
            Meet and Confer Obligations.......................................................................... 13

      C.    As a Former Officer and Director of KLA Schroeder Can Obtain Privileged
            and Confidential Communications................................................................... 15

      D.    Ninth Circuit Law Does Not Support Finding Waiver of the Attorney
            Client Privilege Under the Circumstances of this Case ..................................... 17

            1.    KLA Did Not Voluntarily Waive the Privilege Because It Had No
                  Choice But to Cooperate and Produce Privileged Documents to the
                  Government .......................................................................................... 18

            2.    KLA and the Federal Investigators Shared a Common Interest in
                  Uncovering Any Stock Option Improprieties. .......................................... 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                          i                 KLA'S OPPOSITION TO SCHROEDER'S
                                                          MTN TO COMPEL CASE NO. C-07-3798 JW

1

## TABLE OF CONTENTS
### (continued)

Page

3.    The Selective Waiver Doctrine Allowed KLA to Share Privileged Documents Without Waiving the Privilege as to Third Parties. ............... 23

V.    CONCLUSION .......................................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6

KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bittaker v. Woodford,*
331 F.3d 715 (9th Cir. 2003) .......................................................................... 23

*Byrnes v. IDS Realty Trust,*
85 F.R.D. 679 (S.D.N.Y. 1980) ..................................................................... 24

*Dellwood Farms, Inc. v. Cargill. Inc.,*
128 F.3d 1122 (7th Cir. 1997) ........................................................................ 24

*Ellis v. Woodford,*
No. C-05-2110 SI, 2007 WL 1033477 (N.D. Cal. April 4, 2007) ................ 14

*Gottlieb v. Wiles,*
143 F.R.D. 241 (D. Colo. 1992) ............................................................. 12, 16

*Howard v. Rustin,*
No. 06-00200, 2008 WL 2008937 (W.D. Pa. May 2, 2008) ........................ 11

*In re Cardinal Health, Inc. Sec. Litig.,*
No. 04 Civ. 575, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007) ..................... 23

*In re Grand Jury Subpoena (Dated July 13, 1979),*
478 F. Supp. 368 (E.D. Wis. 1979) ............................................................... 24

*In re M&L Bus. Mach. Co.,*
161 B.R. 689 (D. Colo. 1993) ....................................................................... 24

*In re McKesson HBOC, Inc. Sec. Litig.,*
No. C-99-20743, 2005 U.S. Dist.
LEXIS 7098 (N.D. Cal. March 31, 2005) ........................................... 4, 24, 25

*In re Mortgage & Realty Trust,*
195 B.R. 740 (Bankr. C.D. Cal. 1996) .......................................................... 17

*In re Qwest Commc'ns Int'l Sec. Litig.,*
450 F.3d 1179 (10th Cir. 2006) ............................................................... 19, 20

*In re Sealed Case,*
676 F.2d 793 (D.C. Cir. 1982) ...................................................................... 24

*In re Subpoenas Duces Tecum,*
738 F.2d 1367 (D.C. Cir. 1984) .................................................................... 24

*In re Syncor Erisa Litig.,*
229 F.R.D. 636 (C.D. Cal. 2005) .................................................................. 18

*Modesto Irrigation District v. Gutierrez,*
No. 1:06-cv-00453 OWW DLB,
2007 WL 763370 (E.D. Cal. March 9, 2007) .............................................. 23

# TABLE OF AUTHORITIES
### (continued)

**Page**

*People ex. rel. Spitzer v. Greenberg*,
   851 N.Y.S.2d 196 (N.Y.App.Div. 2008) ................................................................ 12, 16, 17

*Pucket v. Hot Springs School District No. 23-2*,
   239 F.R.D. 572 (D. S.D. 2006) ............................................................................................ 11

*Regents of the Univ. of Cal. v. Sup. Ct.*,
   2008 WL 2908123, No. D051364 (Cal. Ct. App. July 30, 2008) ................................ 19, 21, 22

*Renda Marine, Inc. v. U.S.*,
   58 Fed.Cl. 57 (Fed. Cl. 2003) ............................................................................................ 11

*Saito v. McKesson HBOC, Inc.*,
   Civ.A. 18553, 2002 WL 31657622 (Del. Ch. Nov. 13, 2002),
   *aff'd*, 818 A.2d 970 (Del. 2003) ......................................................................................... 24

*Schmidt v. Levi Strauss & Co.*,
   No. C-04-01025 RMV (HRL),
   2007 WL 518600 (N.D. Cal. Feb. 13, 2007) ....................................................................... 10

*Transamerica Computer Co., Inc. v. Int'l Bus. Mach. Corp.*,
   573 F.2d 646 (9th Cir. 1978)................................................................................................ 19

*U.S. v. Reyes*,
   239 U.S. 591 (N.D. Cal. 2006)............................................................................................. 24

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) .......................................................................................... 22

*United States v. Ary*,
   518 F.3d 775 (10th Cir. 2008).............................................................................................. 20

*United States v. O'Hagan*,
   521 U.S. 642 (1997)............................................................................................................. 17

*United States v. Stein (Stein I)*,
   435 F. Supp. 2d 330 (S.D.N.Y. 2006).................................................................................. 22

*United States v. Stein (Stein II)*,
   No. S1 05 Crim. 0888, 2006 WL 2060430 (S.D.N.Y, July 25, 2006).................................... 22

*US v. Bergonzi*,
   403 F.3d 1048 (9th Cir. 2005)................................................................................ 11, 18, 23, 24

**Proposed Regulation**

Attorney-Client Privilege Protection Act of 2008,
   S. 3217, § 3, 110th Cong. (2008)......................................................................................... 21

Attorney-Client Protection Act of 2007,
   H.R. 3013, 110th Cong. (2007)............................................................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6        iv        KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

Page

**Other Authorities**

2 AM. JUR. PROOF OF FACTS 3D 189 *Proof of Waiver of Attorney-Client Privilege,* 1
   (July 2008) ................................................................................................................ 19

Brian W. Walsh, *What We Have Here Is Failure to Cooperate: The Thompson
   Memorandum and Federal Prosecution of White-Collar Crime*, LEGAL
   MEMORANDUM, Nov. 6, 2006, 1 ............................................................................. 18

*The Thompson Memorandum's Effect on the Right to Counsel in Corporate
   Investigations: Hearing Before the S. Comm. on the Judiciary,* 109th Cong. (2006) ............. 20

William R. McLucas et al., *The Decline of the Attorney-Client Privilege in the
   Corporate Setting*, 96 J. CRIM. L. & CRIMINOLOGY, no. 2, 621, 631 (2006) ........................... 20

**Rules**

Federal Rule of Civil Procedure
   37.................................................................................................................... 13, 14

Northern District Local Rule
   1-5(n)....................................................................................................................... 14

Northern District Local Rule
   37(a)(1)................................................................................................................. 6, 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1    **I.    INTRODUCTION**

2          Defendant Kenneth L. Schroeder ("Schroeder") should have never filed this motion as it

3    relates to KLA-Tencor Corporation's ("KLA") historical communications.  In the first instance,

4    Schroeder's motion is moot as to KLA.  He moves for the production of KLA's historical

5    documents which he already possesses, as the SEC produced them to him as part of its initial

6    disclosures in this action; similarly, he seeks testimony from KLA witnesses about certain

7    privileged communications, but KLA has repeatedly informed Schroeder that he can examine

8    KLA witnesses about such communications as long as he agrees to reasonable confidentiality

9    provisions.  Had Schroeder met and conferred with KLA prior to filing his motion, as he was

10   required to do, he would have learned that KLA would not stand in the way of his defending

11   himself.  Accordingly, this Court should deny Schroeder's mooted motion, and at most should

12   order Schroeder to abide by his meet and confer obligations he has all but ignored.

13         Despite having been offered the relief he seeks from the Company, Schroeder asks this

14   Court to find that KLA has waived the privilege with respect to its historic attorney-client

15   privileged communications relating to its stock option practices.  In doing so, Schroeder ignores

16   the fundamental dynamic that existed when KLA received requests for the production of

17   documents from the United States Attorneys' Office ("USAO") and the SEC.  Schroeder is

18   correct that KLA produced documents to the federal agencies, but he neglects to describe how

19   KLA had no choice but to express its "cooperation" by producing privileged materials.  The

20   coercive effect of the Department of Justice's Thompson Memorandum, which was in full effect

21   at the time of KLA's production, is now widely recognized, and KLA's production does not

22   constitute a waiver because it had no effective choice but to produce the privileged materials.  But

23   this Court need not address Schroeder's waiver argument, or his oversimplified analysis of the

24   common interest and selective waiver doctrines, because KLA has offered to provide Schroeder

25   with the discovery he seeks from the Company.

26   **II.    SCOPE OF SCHROEDER'S JOINT MOTION AND SEPARATE RESPONSES BY
           KLA AND SKADDEN**

27

28         Schroeder's Motion to Compel encompasses multiple subpoenas of different parties

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                                  1                    KLA'S OPPOSITION TO SCHROEDER'S
                                                                    MTN TO COMPEL CASE NO. C-07-3798 JW

1    seeking different discovery on different theories.  Schroeder served separate subpoenas on KLA

2    and Skadden, Arps, Slate, Meagher & Flom and many of its attorneys (collectively "Skadden"),

3    as counsel for the Special Committee and the Special Litigation Committee ("SLC") to KLA's

4    Board of Directors.  KLA and Skadden have filed separate oppositions to this joint Motion so that

5    the Court can address the distinct issues, documents, and testimony that are raised by the separate

6    subpoenas.

7         Schroeder's Motion seeks documents and testimony relating to five categories of

8    information: (1) documents that were contemporaneously created, i.e. documents that pre-date the

9    existence of the Special Committee ("KLA historical documents" or "KLA documents") that

10   concern granting and approving KLA stock option grants and testimony about such documents;

11   (2) Skadden's interview notes and early drafts of the Final Interview Memoranda which were

12   produced to the SEC; (3) Special Committee documents produced or shown to the SEC, the DOJ,

13   or the NASD; (4) documents and testimony relating to the Special Committee investigation,

14   including Skadden's communications with the Special Committee; and (5) documents provided to

15   KLA's outside auditors.  *See* Motion to Compel at 21:16-22:2; Statement in Compliance with

16   Civil Local Rule 37-2 Regarding Documents Sought from KLA-Tencor Corporation, Docket No.

17   77.  The first category is the only category of discovery sought by this motion that concerns KLA

18   documents and testimony, as opposed to Special Committee documents and testimony.[1]  The

19   remaining requests seek documents and testimony exclusively from the Special Committee or its

20   counsel.  The requests relating to the Special Committee and Skadden are not addressed by this

21   opposition, and are instead addressed by Skadden's separate opposition brief filed concurrently

22   with this one.

23

24

25

26

27

28

---

[1] The only documents in Category Five referenced in Schroeder's moving papers are Special Committee documents disclosed to Price Waterhouse Coopers ("PWC"), KLA's outside auditor.  Conceivably, Schroeder also seeks KLA historical documents, but Schroeder has never clarified what, if anything, he wants from KLA relating to PWC's work.

III.    **RELEVANT BACKGROUND AND MEET AND CONFER PROCESS**

  A.    **THE *WALL STREET JOURNAL* ARTICLE AND THE PROLIFERATION OF LAWSUITS RELATING TO THE ALLEGED BACKDATING OF STOCK OPTION GRANTS AT KLA**

On May 22, 2006 the *Wall Street Journal* published an article suggesting that KLA, and numerous other companies, had "backdated" certain stock option grants between 1994 and 2001. Relying exclusively on historical financial data from years earlier, the article analyzed stock options granted to three executives and concluded that certain historical stock options granted to each individual probably had been backdated. This article unleashed a flood of lawsuits in federal and state courts asserting various derivative and class action claims. Within months, two primary lawsuits coalesced relating to KLA stock options, a consolidated federal securities class action, and a consolidated federal derivative action. These lawsuits name KLA and several current and former KLA officers and directors as defendants, including Schroeder, who served as a director and the Chief Executive Officer at KLA from 1999 through 2005.

  B.    **GOVERNMENT AND COMPANY INQUIRIES INTO HISTORICAL STOCK OPTION GRANTS AT KLA AND THE SEC'S CIVIL COMPLAINT AGAINST SCHROEDER**

Within hours after publication of the *Wall Street Journal* article, the KLA Board of Directors, the SEC and the USAO had initiated inquiries into the circumstances surrounding KLA's historical stock option grants. The KLA Board of Directors immediately formed a committee comprised solely of independent directors (the "Special Committee"), providing the Special Committee with the full authority and resources necessary to conduct a comprehensive investigation.

  1.    **USAO and SEC Policies Compel KLA To Cooperate with the Federal Investigators, Who Shared KLA's Interest in Uncovering Any Option Granting Improprieties**

With a mission to uncover any improprieties involving KLA's historical granting of stock options, the Special Committee hired outside counsel and consultants to investigate the facts and circumstances surrounding past stock option grants by the Company. The SEC and USAO also tasked personnel to investigate KLA's historical option granting processes, who in turn requested KLA to produce all documents relating to the stock option grants called into question. KLA had

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                                3                    KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

1    little choice but to produce all relevant documents to the federal investigators, including any

2    privileged materials it would uncover in its investigation.  For one, KLA and the government

3    shared a common interest in discovering whether any KLA personnel had placed the Company

4    and its stockholders at risk, and sharing any factual evidence the Special Committee could find

5    was entirely consistent with their joint objective.  But more importantly, USAO and SEC policies,

6    as reflected in the DOJ's Thompson Memorandum,[2] effectively required KLA to reflect its

7    cooperation by agreeing to produce privileged materials.  *See* Thompson Memorandum, Attached

8    to the Declaration of John H. Hemann in Support of Non-Party KLA's Opposition to Schroeder's

9    Motion to Compel ("Hemann Decl."), ¶¶ 2-3, Ex. 1.

10        The Thompson Memorandum, which described DOJ policy in place at the time of the

11   KLA investigations, made it mandatory for federal prosecutors tasked with determining whether

12   or not to charge a corporation with a crime to consider "the willingness of a corporation to

13   ['voluntarily'] waive such [attorney client and work product] protection when 'necessary' to

14   provide timely and complete information as one factor in evaluating the corporation's

15   cooperation."  *Id.*, ¶ 3, Ex. 1 (internal quotations added).[3]  As a public company that could be

16   destroyed by a criminal indictment, KLA had no effective choice but to "cooperate" and provide

17   the government with the relevant privileged materials.  *Id.*, ¶¶ 2-5, Exs. 1-2.

18        The Company did what it could to minimize the effect of such "voluntary cooperation" by

19   first entering into confidentiality agreements with each agency that extracted as strong a

20   guarantee of confidentiality as either agency would allow, predicated on the common interest

21   KLA shared with the SEC and USAO in investigating and uncovering any wrong doing, and

22   under the "selective waiver" doctrine recognized in *In re McKesson HBOC, Inc. Sec. Litig.*, No.

23   C-99-20743, 2005 U.S. Dist. LEXIS 7098, at *33-34 (N.D. Cal. March 31, 2005).  *Id.*, ¶6.  In

24   response to the two inquiries, KLA produced thousands of pages of documents, subject to the

---

25   [2] The SEC operated under the guidelines announced in the Seaboard Report at the time of its investigation into
26   KLA's option granting processes, which similarly equated cooperation with producing privileged materials.  Hemann
     Decl., ¶ 4, Ex. 2.

27   [3] As described more fully in Section IV(D)(1) below, the DOJ has since rescinded this policy under pressure from
     legislators, the bar association and countless other organizations troubled by the coercive effect of the Thompson
28   Memorandum.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                    4                    KLA'S OPPOSITION TO SCHROEDER'S
                                                       MTN TO COMPEL CASE NO. C-07-3798 JW

terms of the confidentiality agreements. *Id.*, ¶ 7. The confidentiality agreements precluded disclosure to third parties except to the extent necessary for the two agencies to carry out their prosecutorial duties, a condition each agency required to enter into the confidentiality agreements. *Id.*, ¶ 6, Ex. 3-4. KLA produced the same documents to the SEC as it did to the USAO. *Id.*, ¶ 7.

KLA's compelled cooperation enabled the federal agencies to conduct expedient investigations. The USAO never informed KLA that it was a target or a subject of the Grand Jury Subpoena. *Id.*, ¶ 11. Similarly, the SEC never filed an action alleging securities fraud against KLA and did not fine or seek any penalty or disgorgement from KLA. *Id.*, ¶ 10. KLA and the SEC entered into a Consent to Entry of Final Judgment on July 25, 2007. In this agreement, KLA voluntarily entered into a permanent injunction prohibiting it from violating the books and record provisions of the federal securities laws. No findings of fact or conclusions of law were made against the Company.

### 2.    The SEC Files Civil Actions Against Ken Schroeder and Lisa Berry.

Following its investigation the SEC initiated the present action against Ken Schroeder. It also brought an action against Lisa Berry, KLA's General Counsel during the late 1990s. Contrary to the suggestion in Schroeder's moving papers, neither KLA nor the Special Committee "placed the blame almost entirely on Mr. Schroeder." *Id.*, ¶ 12. Neither KLA nor the Special Committee placed any blame on anyone, or bears any responsibility for the independent determinations the SEC or DOJ made in terms of whether to bring or not bring any action(s) against anyone, including Schroeder. KLA received no commitment or guarantee from the government that it would receive any leniency or special treatment as a result of its "cooperation." *Id.*

### C.    SCHROEDER SEEKS DISCOVERY FROM KLA AND THE SPECIAL COMMITTEE IN THIS ACTION AND BEGINS THE MEET AND CONFER PROCESS.

Schroeder served KLA and Skadden with separate subpoenas for the production of documents in October of 2007. KLA and Skadden objected to many of the requests, primarily on the ground that they discovered Schroeder had already received Company documents relating to KLA stock option grants and processes by way of Initial Disclosures from the SEC. Hemann

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6

5

KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

1   Decl., ¶ 13, Ex. 7.  The SEC's Initial Disclosures, apparently served on October 3, 2007, confirm

2   the production, with the SEC stating that it "has produced for inspection and copying …

3   documents produced to the Commission during its investigation preceding this case, as identified

4   in Exhibit A," producing over *sixty thousand* pages of KLA and Special Committee documents

5   to Schroeder.  SEC's Initial Disclosures at 19; Hemann Decl., Ex. 7.  Schroeder neglected to

6   share this fact with KLA, feigning a need for documents he already processed.  The SEC's initial

7   disclosures also reveal that it has produced over ten thousand documents it received from PWC.

8   *Id.*  These documents include external and electronic working papers for the fiscal years 1998

9   through 2005, and emails from various KLA employees.  *Id.*

10          As referenced in the Rule 37(a)(1) certification attached to the end of Schroeder's moving

11   papers, the parties engaged in limited meet and confer efforts regarding KLA's objections at

12   times between November 2007 and January 2008.  Critically, counsel for Schroeder does not

13   represent that she made *any additional effort* to meet and confer with counsel for KLA in the

14   months prior to filing her motion to compel.  Rather, the meet and confer process stopped when

15   Schroeder filed his motion to dismiss.

16          **D.    SCHROEDER FILES A MOTION TO DISMISS THE SEC'S COMPLAINT
                     AND DISENGAGES FROM THE MEET AND CONFER PROCESS.**

17

18          Schroeder filed a motion to dismiss the instant action on February 1, 2008, arguing that

19   dismissal was required because Schroeder's purported inability to access attorney-client

20   privileged documents and communications impaired his ability to defend himself in this SEC

21   action.  As part of his strategy, Schroeder discontinued the meet and confer process on his

22   subpoena to KLA, because the last thing Schroeder wanted to do was obtain the discovery he

23   purportedly lacked and eliminate the basis for his motion to dismiss.  This Court noted

24   Schroeder's strategic decision in its Order Granting KLA's Motion for Protective Order dated

25   February 20, 2008:

26                  Defendant Schroeder has the ability to move the court now to
                    clarify the privilege issues which impact [its] depositions.  (At a
27                  recent discovery conference, Schroeder indicated to the court that
                    he would be filing such a motion shortly.  According to the SEC,
28                  Schroeder has stated since December that he would be bringing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                        6                    KLA'S OPPOSITION TO SCHROEDER'S
                                                          MTN TO COMPEL CASE NO. C-07-3798 JW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

such a motion, and the SEC says that it agreed to postpone the deposition of Skadden attorney Elizabeth Harlan for that reason.) But Schroeder has now changed his mind.  He just told this court at oral argument that he has no intention of seeking relief as to KLA's asserted privilege until after his motion to dismiss is resolved. Indeed, he indicated **that he made a deliberate and conscious decision not to challenge KLA's asserted privilege now so that he could pursue that request for dismissal**.

*Id.* at 4 (emphasis added).

On May 22, 2008, the Court denied Schroeder's motion to dismiss without prejudice, but noted "the Court finds that KLA's assertion of privilege, if later confirmed by the Court, may prevent Defendant from asserting potentially viable defenses."  May 22 Order at 6.  Seemingly wanting to keep alive his hope that he would ultimately be denied the discovery and would have grounds to renew his motion to dismiss, Schroeder neglected to make any effort to resolve the dormant discovery issues prior to filing this motion.  Declaration of Thomas R. Green ("Green Decl."), ¶ 2.

> ### E.    KLA MAKES SIGNIFICANT PROGRESS RESOLVING MUCH OF THE BACKDATING LITIGATION, INCLUDING SETTLING WITH SCHROEDER.

Since the meet and confer process came to a standstill in January 2008, KLA has made significant progress resolving much of the backdating related litigation it and the individual KLA defendants have faced over the past two years.

The consolidated federal class action has now been settled, subject only to final court approval.  On June 5, 2008, Judge Charles Breyer of the United States District Court for the Northern District of California entered an order granting preliminary approval of the class action settlement and providing for notice to the class.  Final approval of the settlement will be considered at the Settlement Fairness Hearing on September 26, 2008.  An order granting final approval of the stipulated settlement will resolve the option backdating related claims of all shareholders who purchased KLA stock between June 30, 2001 and January 29, 2007.

KLA is also closer to a potential resolution of the derivative actions.  On March 25, 2008, the SLC filed a motion to terminate the consolidated federal shareholder derivative action and approve the settlements the SLC reached with four of the individual defendants in that matter.

1   The hearing on the motion to terminate is set for October 6, 2008, before Judge Ware.  KLA also

2   anticipates that the two state court derivative actions, *Rabin*, venued in Santa Clara County, and

3   *Langford*, venued in the Delaware Court of Chancery, shall be dismissed in the event Judge Ware

4   grants the SLC's motion to terminate the federal derivative action.  Pending the resolution of the

5   Motion to Terminate, the *Rabin* state court action is effectively stayed.  Similarly, the Delaware

6   Court of Chancery has set a hearing date of August 13, 2008, for KLA's motion to stay the

7   *Langford* action.

8        Most significantly, KLA and Schroeder entered into two settlement agreements which

9   provide for the mutual releases of all claims between Schroeder and the Company, including

10  numerous employment-related claims Schroeder maintained against KLA.  The two settlement

11  agreements resulted from many months of negotiation among Schroeder, KLA, and the SLC.

12  Green Decl., ¶ 5.  The two agreements were reduced to their essential terms in March of 2008,

13  and executed on June 3, 2008, less than a week prior to Schroeder filing this motion.  *Id.*

14       **F.    SCHROEDER FILES HIS MOTION TO COMPEL AND REJECTS ALL
              MEET AND CONFER EFFORTS, INCLUDING AN OFFER TO ALLOW**
15            **THE DISCOVERY SOUGHT BY THIS MOTION.**

16       Schroeder filed the instant motion on June 9, 2008, having made no effort to meet and

17  confer with counsel for KLA since January of 2008.  Green Decl., ¶ 2.  In response to Judge Ware

18  denying Schroeder's motion to dismiss, and Schroeder's resulting renewed interest in KLA

19  documents and testimony, KLA has made several efforts to resolve this motion, which have been

20  all but ignored by Schroeder.

21       Counsel for KLA first broached the idea of allowing Schroeder to examine current and

22  former KLA employees regarding privileged material with counsel for Schroeder in or around

23  early June.[4]  *Id.*, ¶ 3.  Specifically, KLA counsel suggested that there could be a legal basis to

24  disclose privileged communications to its former officer and CEO and that KLA did not want to

25  deny Schroeder the ability to defend himself.  *Id.*  Counsel for Schroeder initially expressed a

26

27  _____
    [4] Schroeder's motion as it relates to KLA's historical documents is really a motion to compel testimony regarding
    those documents, as Schroeder already possesses KLA's responsive documents because the SEC produced those
28  documents to him as part of its initial disclosures.  SEC's Initial Disclosures; Hemann Decl., Ex. 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                          8                KLA'S OPPOSITION TO SCHROEDER'S
                                                         MTN TO COMPEL CASE NO. C-07-3798 JW

1   general willingness to work with KLA and suggested that Schroeder would be willing to agree

2   that disclosing communications to Schroeder does not constitute a waiver of the privilege.  *Id.*

3   KLA subsequently performed legal research regarding disclosures to former officers and directors

4   and drafted a confidentiality agreement intended to minimize the risk of any disclosure or waiver

5   of privileged communications.  *Id.*

6        KLA counsel sent a draft confidentiality agreement to Schroeder's counsel on June 23,

7   2008.  *Id.*  The draft provides a mechanism for Schroeder to examine current and former KLA

8   witnesses regarding certain privileged communications without objection by KLA.  Schroeder's

9   initial responses was to object to the entry of a protective order, a position that is clearly at odds

10  with backdating cases involving sensitive Company and employee personal financial information,

11  to say nothing of Schroeder's ongoing fiduciary duty to preserve the confidentiality of KLA's

12  privileged and confidential materials.  In an email on July 12, Schroeder's counsel gave zero

13  indication of how the draft was lacking, other than to say that Schroeder viewed "the production

14  to Schroeder of Skadden's withheld documents as an integral part of a potential agreement."  *Id.*,

15  ¶ 4.  In subsequent conversations since that time, Schroeder's counsel has continued to attempt to

16  leverage KLA's willingness to permit the discovery requested of KLA to induce Skadden to cave

17  on its discovery position with respect to Skadden's interview notes and draft interview

18  memoranda.  *Id.*  KLA's efforts to explain that Schroeder's demands of Skadden have no bearing

19  on Schroeder's demands of KLA, have only recently resonated with Schroeder.[5]  *Id.*

20       Counsel for Schroeder has also rebuffed KLA's attempts to meet and confer on the

21  grounds that Schroeder would be in a better position if he lost his motion to compel than if he

22  agreed to the entry of a protective order in order to obtain the information he seeks from KLA.

23  *Id.*  Thus, Schroeder appears to be adopting the same strategy he did in his motion to dismiss: his

24  motion to compel is a stratagem, not a genuine effort to obtain the ability to fully defend himself

25

26  [5] In recent conversations Schroeder seems to have accepted that his inability to resolve his dispute with the Special Committee does not absolve his responsibility to meet and confer with KLA.  Since sending Schroeder a draft

27  confidentiality agreement on June 23 KLA has repeatedly requested Schroeder to provide KLA with a revised draft to his liking.  Schroeder finally provided his suggested revisions on July 29, 2008, a mere two days before the instant

28  Opposition was due, implicitly acknowledging that the parties had more progress to make prior to filing his motion.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                                        9                KLA'S OPPOSITION TO SCHROEDER'S
                                                                      MTN TO COMPEL CASE NO. C-07-3798 JW

1    in this action, relief which has already been offered by KLA.

2    **IV.    ARGUMENT**

3           **A.    SCHROEDER'S MOTION TO COMPEL PRODUCTION AND
                    TESTIMONY RELATING TO KLA'S HISTORICAL DOCUMENTS
4                   SHOULD BE DENIED BECAUSE IT IS MOOT.**

5           Schroeder seeks documents and testimony KLA has already agreed to permit him to

6    discover, making the continued pressing of his motion as it relates to KLA's historical documents

7    improper and unnecessary. This Court has recognized that where a party has agreed to produce

8    categories of documents that are the subject of a motion to compel, the motion should be denied

9    as moot as to those categories of documents. *See Schmidt v. Levi Strauss & Co.*, No. C-04-01025

10   RMV (HRL), 2007 WL 518600, *1 (N.D. Cal. Feb. 13, 2007). As KLA has offered to produce

11   its historical documents, and allow testimony with respect to those documents, Schroeder's

12   motion should be denied as moot with respect to KLA's historical documents and related

13   testimony.

14          As for the KLA documents that are the subject of his motion, Schroeder already possesses

15   everything he seeks. In or around October 2007, the SEC produced in excess of 60,000 pages of

16   documents to Schroeder as part of its initial disclosures, producing to Schroeder <u>every document</u>

17   KLA had previously turned over to the government as part of its production of the universe of

18   documents it could locate relating to its historical stock option grants. Hemann Decl., ¶ 13, Ex. 7.

19   There is no document that this Court could order KLA to produce that Schroeder does not already

20   possess.

21          Schroeder also seeks testimony from witnesses with respect to the documents he already

22   possesses. But again, there is no issue for the Court to rule upon because KLA has repeatedly

23   assured counsel for Schroeder that it will not assert attorney client privilege objections should he

24   attempt to elicit testimony from current and former KLA witnesses regarding KLA's option

25   practices. Green Decl., ¶ 3. KLA even offered to enter into a written agreement, verifying that it

26   would not prevent witnesses from responding to Schroeder's questions regarding stock option

27   practices and communications. *Id.*, ¶¶ 3-4. To that end, KLA counsel sent counsel for Schroeder

28   a draft agreement more than a month ago. *Id.* Schroeder has yet to provide a substantive

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                                      10            KLA'S OPPOSITION TO SCHROEDER'S
                                                                MTN TO COMPEL CASE NO. C-07-3798 JW

1    response to KLA's initial draft agreement.  *Id.*

2         The fact that KLA previously asserted privilege objections in January 2008 when

3    Schroeder deposed Stuart Nichols, KLA's former General Counsel, does not entitle Schroeder to

4    an unnecessary advisory opinion on the merits of his motion.  *Pucket v. Hot Springs School*

5    *District No. 23-2*, 239 F.R.D. 572, 579 n.1 (D. S.D. 2006) (noting courts are reluctant to render

6    "advisory opinions" regarding documents previously labeled privileged when the issue has not

7    been properly put before the court). As soon as KLA offered to allow Nichols and other KLA

8    witnesses to testify, Schroeder's motion became moot.  *US v. Bergonzi*, 403 F.3d 1048, 1050 (9th

9    Cir. 2005) (dismissing appeal as moot where documents had already been produced and

10   privilege-holder did not seek to reverse order disclosing documents); *Renda Marine, Inc. v. U.S.*,

11   58 Fed.Cl. 57, 64 n.10 (Fed. Cl. 2003) (motion to compel response to interrogatory became moot

12   by plaintiff's agreement to respond); *Howard v. Rustin*, No. 06-00200, 2008 WL 2008937, at *2

13   (W.D. Pa. May 2, 2008) (holding motion to compel response to document request is mooted in

14   part by responding party's representation that they will comply with certain requests).  Moreover,

15   though the reasons for KLA's change of heart are irrelevant, it is not difficult to see how changed

16   circumstances place KLA in a different position today than existed in January 2008.  A number of

17   reasons support allowing Schroeder to conduct the discovery he seeks today, that did not exist

18   since he filed his motion to dismiss in early February.

19        First, KLA had no reason to produce documents over the past many months because

20   Schroeder never asked for the documents.  Schroeder chose to file a motion to dismiss instead of

21   a motion to compel.  And Schroeder chose to not pursue the documents he claims are necessary to

22   his defense until after his motion to dismiss was denied.  Even today, as addressed more fully in

23   the following section, Schroeder seems more interested in preserving the ability to renew his

24   motion to dismiss than he seems interested in discovering the information KLA has offered to

25   provide.

26        Second, a firm legal basis exists, that was not previously explored, to support production

27   to Schroeder without waiving the privilege.  As discussed more fully below, courts have

28   recognized a "joint client exception" that allows former officers or directors to access privileged

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                    11                    KLA'S OPPOSITION TO SCHROEDER'S
                                                       MTN TO COMPEL CASE NO. C-07-3798 JW

1   documents created when they were directors.  *See, e.g. Gottlieb v. Wiles*, 143 F.R.D. 241, 247 (D.

2   Colo. 1992); *see also People ex. rel. Spitzer v. Greenberg*, 851 N.Y.S.2d 196, 201-02

3   (N.Y.App.Div. 2008) (finding under New York and Delaware law that former directors "are

4   within the circle of persons entitled to view privileged materials without causing a waiver of the

5   attorney-client privilege.").  KLA has expressed to Schroeder that it does not want to stand in the

6   way of his ability to defend himself in this action, and that it will allow him the discovery he

7   seeks predicated on the basis that production to him under his unique circumstances does not

8   constitute a waiver.  Yet Schroeder still insists on trying to compel testimony he has already been

9   offered.

10          Third, KLA does not face the same risks of disclosing privileged communications that it

11   faced in January 2008 because it has since resolved much of the litigation stemming from the

12   alleged backdating of its stock option grants.  Critically, the Company has entered into a

13   Stipulation of Settlement to resolve the consolidated federal class action lawsuit before Judge

14   Breyer.  Judge Breyer has granted preliminary approval of the settlement and Final Approval

15   could be granted as soon as September 26, 2008 at the Settlement Fairness Hearing.  Equally

16   important, KLA has entered into two settlement agreements with Schroeder, which resolve all

17   claims between KLA and Schroeder, conditioned only on the granting of the Special Litigation

18   Committee's motion to terminate the consolidated federal derivative action before Judge Ware.

19   KLA is also hopeful that the state court derivative actions will also be dismissed if Judge Ware

20   grants the Special Litigation Committee's motion to terminate.  For a variety of reasons, KLA is

21   much more comfortable permitting Schroeder to take documentary and testimonial discovery now

22   under the terms of a protective order and agreement than it did in January 2008.

23          KLA only asks for the entry of a reasonable protective order to allow it to minimize the

24   risk of the unnecessary disclosure of confidential, privileged and personal financial information of

25   the Company and hundreds of its current and former employees.  The fact that the parties have

26   not been able to stipulate to the terms of a protective order yet does not create a sufficient basis to

27   consider Schroeder's mooted motion.  Schroeder should be ordered to meet and confer in good

28   faith over the terms of a reasonable protective order to submit to the court, a process Schroeder

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                    12                    KLA'S OPPOSITION TO SCHROEDER'S
                                                        MTN TO COMPEL CASE NO. C-07-3798 JW

1    has oddly, and improperly, avoided ever since KLA suggested it would be willing to work with

2    him regarding his discovery demands.

3    **B.    SCHROEDER'S MOTION SHOULD BE DENIED BECAUSE HE FAILED TO ABIDE BY HIS MEET AND CONFER OBLIGATIONS.**

4

5        Since taking former KLA General Counsel Stu Nichols' deposition in January 2008

6    Schroeder has not made one meaningful effort to meet and confer with KLA to see if there was a

7    way for Schroeder to obtain the discovery he claims is necessary to defend himself in this case.

8    Instead, Schroeder followed the January 27 deposition of Mr. Nichols with a February 1 motion

9    to dismiss, arguing that "KLA's selective use of the privilege against him with the aid of the SEC

10    worked to deprive Mr. Schroeder of his Constitutional Due Process right to a fair trial."

11    Schroeder then sat and waited to see if KLA's assertion of the privilege would provide him with

12    the get out jail free card he sought.  Having just entered into a settlement agreement with KLA,

13    one would think that Schroeder would have reached out to resolve the discovery dispute with

14    KLA after he learned that his motion to dismiss had been denied.  Instead, he fired off the instant

15    motion to compel, and has rejected all efforts by KLA to provide him with the very discovery he

16    seeks.

17        KLA's willingness to work with Mr. Schroeder is not a new event.  By early June 2008,

18    counsel for KLA informed counsel for Schroeder that KLA would likely be willing to allow its

19    former director and CEO to conduct the discovery he needed as long as the parties could agree on

20    a methodology to minimize the risk of unnecessary disclosures.  Green Decl., ¶ 3.  Counsel for

21    Schroeder understood KLA's position well enough to state that Schroeder was amenable to

22    agreeing that production to Schroeder, as a former officer and director who needs the discovery to

23    defend himself, would not constitute a waiver of any privilege.  *Id.*  Schroeder finally offered his

24    first suggested revision to the draft agreement KLA sent Schroeder on July 29, more than a month

25    after KLA sent Schroeder the initial draft.  *Id.*, ¶ 4.

26        In failing to meet and confer with KLA *prior to* filing his motion, and then ignoring

27    KLA's offer to allow the testimony he allegedly seeks, Schroeder has fallen woefully short of his

28    meet and confer obligations under both Federal and Local Rules.  Federal Rule of Civil Procedure

1    37 requires a party to make a good faith effort to obtain disputed discovery without court action

2    *prior to* filing a motion to compel.  Schroeder made no such effort in this case, verified by his

3    counsel's Rule 37(a)(1) certification, which, though signed on the June 9 filing date of this

4    motion, refers exclusively to meet and confer efforts between November 2007 and January 2008.

5          Local rules go even farther than the Federal Rules of Civil Procedure to assure that this

6    Court does not waste its time considering and ruling upon unnecessary motions to compel.  Local

7    Rule 37-1(a) states:  "The Court *will not entertain* a request or motion to resolve a disclosure of

8    discovery dispute unless, pursuant to FRCivP 37, counsel have previously conferred for the

9    purpose of attempting to resolve *all* disputed issues."  N.D. L.R. 37-1(a) (emphasis added).

10    Under the Northern District Local Rules, the "meet and confer" obligation requires a party to

11    engage, in good faith, in a "direct dialogue or discussion."  N.D. L.R. 1-5(n).  Schroeder has not

12    only failed to engage in such a dialogue, he has affirmatively avoided KLA's efforts to resolve

13    the matter.

14          When a party files a motion without fully satisfying its meet and confer obligations, the

15    Court should deny its motion to compel.  *See Ellis v. Woodford*, No. C-05-2110 SI, 2007 WL

16    1033477, *1 (N.D. Cal. April 4, 2007) (denying a motion to compel when plaintiff had failed to

17    meet and confer, and noting that the goal of the meet and confer process was to force parties to

18    present "very specific disagreements").  Had Schroeder engaged in a good faith meet and confer

19    dialogue with KLA before filing his motion, he would have found that there was *no substantial*

20    *disagreement* regarding KLA's willingness to allow Schroeder to access KLA's historic

21    privileged communications relating to its option granting process.  At a bare minimum, the scope

22    of issues for this Court to rule upon would have been significantly reduced had Schroeder abided

23    by his affirmative obligations.

24          Any dispute that existed back in January 2008 does not justify Schroeder's failure to meet

25    and confer prior to filing his motion.  As referenced above, at least three significant events

26    transpired between January and June of 2008 that bear on Schroeder's request.  First, Schroeder

27    and KLA entered into a settlement agreement and mutual release of claims.  This event

28    fundamentally changed the dynamic of KLA and Schroeder's positions.  Where prior to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                          14                    KLA'S OPPOSITION TO SCHROEDER'S
                                                             MTN TO COMPEL CASE NO. C-07-3798 JW

1   settlement the parties reasonably anticipated that they would soon be engaged in direct adversarial

2   litigation, their interests are now aligned and focused on bringing closure to the various

3   backdating related cases.  Second, KLA, Schroeder and the other defendants in the consolidated

4   class action have entered into a Stipulation of Settlement to resolve the nationwide shareholder

5   class action.  This settlement significantly decreases the risk of damage from the wider disclosure

6   of KLA's attorney-client privileged documents.  Third, Jude Ware ruled that Schroeder needed to

7   undertake other remedies—such as bringing a motion to compel—before the merits of his motion

8   to dismiss could be ultimately resolved.  Prior to the ruling on Schroeder's motion to dismiss,

9   Schroeder had little incentive to file a motion to compel, and in turn, KLA had no incentive to

10  provide Schroeder with unfettered access to the once disputed documents and testimony.

11  Schroeder's admitted failure to re-engage with KLA at any time after January of 2008, despite

12  KLA's expressed willingness to allow further discovery, violates the letter and spirit of both the

13  Federal and Local Rules. This Court should deny his motion and order Schroeder to meet and

14  confer in good faith with KLA over the appropriate terms of a confidentiality agreement and

15  protective order.

16      Schroeder's rejection of KLA's offer to allow him to conduct the discovery he purportedly

17  requires constitutes gamesmanship of the worst kind.  KLA's proposal would significantly

18  minimize the remaining issues for this Court to decide.  In fact, with respect to KLA, there would

19  be *no remaining issue* for this Court to decide.  Indeed, obtaining access to the documents at

20  issue does not appear to be the objective of Schroeder's motion.  Rather, Schroeder appears to be

21  holding out hope that this Court will deny him the documents so that he can renew his motion to

22  dismiss.  This Court should not reward Schroeder's gamesmanship by ruling on the discovery

23  requests that KLA has already agreed to provide.

24  **C.    AS A FORMER OFFICER AND DIRECTOR OF KLA SCHROEDER CAN
        OBTAIN PRIVILEGED AND CONFIDENTIAL COMMUNICATIONS.**

25

26      Even were KLA not willing to provide Schroeder with the discovery he seeks, and the

27  Court needed to determine whether or not he should be permitted to conduct the requested

28  discovery, the Court need not, and should not, reach the waiver issue Schroeder raises in his

Morgan, Lewis &
Bockius LLP
Attorneys At Law
New York

DB2/20774290.6                    15                    KLA'S OPPOSITION TO SCHROEDER'S
                                                       MTN TO COMPEL CASE NO. C-07-3798 JW

1    motion.  The court should not rule on the waiver issue because the complex circumstances of this

2    case, where KLA produced documents under the terms of confidentiality agreements to two

3    government agencies when faced with being labeled "uncooperative" under *then* USAO and SEC

4    policy if it chose not to selectively waive the privilege, do not merit consideration of the waiver

5    issue where it is not necessary.  The court need not rule on the waiver issue because an alternative

6    basis exists to provide Schroeder with his requested discovery.

7        Schroeder has argued forcefully, and persuasively, that he has a due process right and

8    need to access KLA's privileged communications to prepare his defense in this action.  As

9    someone who served as an officer and director at the time the privileged communications were

10   made, and in many cases participated in such communications, Schroeder has a unique ability,

11   and some courts have held, authority, to obtain the communications he seeks.  The "joint client

12   exception" operates to allow former directors to continue to access privilege communications that

13   transpired under their watch.  *See, e.g. Gottlieb*, 143 F.R.D. at 247.  This is particularly the case

14   where, as is the case here, a former director needs the discovery to aid in his defense.  In *People

15   ex. rel. Spitzer v. Greenberg*, former officers and directors of insurer American International

16   Group ("AIG") moved to compel the discovery of privileged communications made during their

17   tenure.  *People ex. rel. Spitzer v. Greenberg*, 851 N.Y.S.2d at 198.  The former directors faced

18   claims by the New York Attorney General that they had defrauded investors by painting an

19   unduly positive picture of AIG's underwriting performance.  *Id*.  The trial court denied the former

20   directors' motion, which argued unsuccessfully that the former directors should be granted access

21   to the privileged communications to prepare an effective defense.  *Id*. at 198.  The appellate court

22   reversed.  Importantly, it neglected to rule on the directors' argument that AIG had waived the

23   privilege by producing the privileged documents to the SEC *without even requesting that the

24   documents be treated as confidential at the time of the production*.  *Id*. at 201-202.  Instead, the

25   appellate court overruled the trial court on the basis that the former directors, as persons who had

26   access to the documents while serving at AIG, should be permitted to use the documents to

27   prepare their defense, holding:

28       Nevertheless, whether or not it is determined that AIG waived its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1
2

> privilege, we hold that on the facts of this case, Greenberg and
> Smith have the unequivocal right to review relevant materials
> generated by or for AIG counsel while serving as AIG's directors
> and officers.

3

*Id*. at 202. Schroeder sits in the same place as Greenberg and Smith, facing allegations of

4

defrauding investors and needing to access privileged communications, many of which he

5

participated in, to conduct his defense.  Judge Ware has already ruled that Schroeder's inability to

6

discover the privileged communications "may prevent Defendant from asserting potentially

7

viable defenses."  May 22 Order at 6.  As such, the circumstances are ripe to rule that KLA

8

should be permitted to produce the requested discovery without waiving its privilege.

9

10

> The flip side of the coin of course, is that Schroeder, as a former officer of KLA, has an

ongoing duty to protect the confidentiality of KLA's privileged and confidential communications.

11

*In re Mortgage & Realty Trust*, 195 B.R. 740, 750 n.9 (Bankr. C.D. Cal. 1996) ("The rule [that

12

the fiduciary duty of loyalty of a corporate director includes a duty to preserve the confidentiality

13

of confidential information received from the corporation during service as a director] is not

14

limited to the protection of information subject to the attorney-client privilege."); *see also United*

15

*States v. O'Hagan*, 521 U.S. 642, 654 (1997) ("A company's confidential information ... qualifies

16

as property to which the company has a right of exclusive use. The undisclosed misappropriation

17

of such information, in violation of a fiduciary duty ... constitutes fraud akin to embezzlement-the

18

fraudulent appropriation to one's own use of the money or goods entrusted to one's care by

19

another.").  It is contrary to Schroeder's ongoing duties to KLA for him to argue, and the court to

20

rule, that there has been a subject-matter waiver, especially when KLA has offered to permit the

21

discovery in question.

22

> **D.    NINTH CIRCUIT LAW DOES NOT SUPPORT FINDING WAIVER OF THE ATTORNEY CLIENT PRIVILEGE UNDER THE CIRCUMSTANCES OF THIS CASE.**

23

24

> For the many reasons argued above, the Court should not even reach Schroeder's

25

argument that KLA waived the privilege when it produced certain privileged documents to the

26

USAO and the SEC under the confidentiality agreements KLA negotiated with the two

27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                                                17                           KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

1    investigating bodies.[6]  But even if the Court were to reach the merits of Schroeder's waiver

2    argument, the Court should deny his motion.  Only two days ago, a California appellate court

3    seemingly became the first court to rule on the issue of whether the production of privileged

4    documents to the government under the coercive threat of DOJ policy under the Thompson

5    Memorandum constitutes a voluntary waiver of the privilege.  The appellate court denied the

6    motion to compel, holding that the Thompson Memorandum did not provide any meaningful

7    choice, that the production to the government had been coerced, and that the privilege had not

8    been waived.  And contrary to Schroeder's contention that courts have "almost universally

9    rejected" the common interest exception and selective waiver doctrine, a review of case law

10   reveals a very mixed bag, with some cases finding no waiver upon producing documents to the

11   government, and some cases holding the opposite.  The range of results only emphasizes the

12   unsettled nature of the law in this area and buttresses the notion that courts should tread lightly

13   before finding a waiver of the privilege.

14          **1.**      **KLA Did Not Voluntarily Waive the Privilege Because It Had No**

15                      **Choice But to Cooperate and Produce Privileged Documents to the**
                   **Government.**

16        When the SEC and USAO began their investigations into possible backdating at KLA, the

17   Company knew that it would soon face a "choice" of either cooperating with federal investi-

18   gators, by producing privileged documents, or risk criminal indictment as a non-cooperator.

19   Hemann Decl. ¶ 5.  With criminal indictment a potential death sentence for a public company,[7]

20   KLA "chose" to cooperate.  *Id.*

---

[6] Schroeder concedes that KLA's historical attorney client communications, "such as those of Mr. Nichols, Ms. Berry and WSGR," were at one time privileged, and instead merely argues that KLA waived the privilege with respect to its historical communications.  *See* Motion at 24-25  (arguing that Special Committee documents *alone* were not privileged upon creation and admitting that "historical attorney-client communications . . . may at some point had an attorney client privilege").  Yet many of the cases he relies upon in support of his waiver argument, including *United States v. Bergonzi*, 216 F.R.D. 487, 492 (N.D. Cal 2003) and *In re Syncor Erisa Litig.*, 229 F.R.D. 636 (C.D. Cal. 2005), among others, are predicted in large part on a finding that no privilege ever attached to the documents in the first place because they were created by a special committee with the original intention of producing the committee documents to the government.

[7] As the DOJ investigation into Arthur Anderson demonstrated, even overturning a conviction cannot erase the stigma and cost of an "uncooperative" branding.  *See* Brian W. Walsh, *What We Have Here Is Failure to Cooperate: The Thompson Memorandum and Federal Prosecution of White-Collar Crime*, LEGAL MEMORANDUM, Nov. 6, 2006, 1, 2-3 (noting in the wake of the Arthur Anderson scandal that "every business leader and business attorney knows that the mere decision to prosecute can destroy the company.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                       18                    KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

1    The Ninth Circuit has long recognized the "general principle" that an involuntary or

2  compelled disclosure of protected communications does not constitute a waiver of the attorney-

3  client privilege. *See Transamerica Computer Co., Inc. v. Int'l Bus. Mach. Corp.,* 573 F.2d 646,

4  650-52 (9th Cir. 1978) (recognizing that a "disclosure of confidential material constitutes a

5  waiver of the attorney-client privilege only if it is voluntary and not compelled."); *see also* 32

6  AM. JUR. PROOF OF FACTS 3D 189 *Proof of Waiver of Attorney-Client Privilege,* 1, 20 (July 2008)

7  (noting that "to constitute a waiver of the attorney-client privilege, a client's disclosure of

8  protected communications usually must be voluntary; a compelled disclosure generally is not

9  deemed a waiver of the privilege."). Documents produced under the pressure of the Thompson

10  Memorandum constitute just such an involuntary disclosure.

11    In a recently minted California Court of Appeals opinion, the Fourth District specifically

12  held that a group of corporate defendants' production of privileged material to federal

13  investigators operating under the Thompson Memorandum constituted coercion under California

14  law, and thus did not waive the attorney-client privilege. *See Regents of the Univ. of Cal. v. Sup.*

15  *Ct.*, 2008 WL 2908123, No. D051364, at *1, 7 (Cal. Ct. App. July 30, 2008). In *Regents,*

16  plaintiffs argued that defendants had waived their attorney-client privilege by producing

17  documents to the DOJ as part of a government investigation. *Id.* at *2 The Fourth District

18  disagreed, and upheld the trial court's decision that the production was "coerced" and not

19  voluntarily produced. *Id.* at *7. As the court observed:

20        If Government agents come into a place of business and ask or
        demand to see files and records, and in a spirit of cooperation, the
21        files and records are turned over to the agents by the business, it
        does not, in the opinion of this Court, constitute a voluntary turning
22        over of records which can be claimed by the Government as a
        waiver. There is at least an implied coercion in that request or
23        demand made by government agents.

24  *Id.* at *4 (*quoting United States v. New Wrinkle, Inc.*, Trade Case P67,833 (S.D. Ohio 1954)).

25  The *Regents* court also distinguished the authorities Schroeder will rely upon to argue that KLA's

26  production was voluntary. *Id.* at *7 (noting "the coercion exerted by the federal government's

27  policies takes this case well outside [their] holdings…"). In particular, the Tenth Circuit's

28  decision in *Qwest* is distinguishable on three grounds. *See In re Qwest Commc'ns Int'l Sec.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                          19                      KLA'S OPPOSITION TO SCHROEDER'S
MTN TO COMPEL CASE NO. C-07-3798 JW

1  *Litig.*, 450 F.3d 1179, 1199 (10th Cir. 2006).  First, unlike here, the Thompson Memorandum,

2  issued in January 2003, was not in effect at the time Qwest produced its privileged material to the

3  DOJ in the summer of 2002.  *Id.* at 1181.  Second, the Tenth Circuit dismissed Qwest's claim that

4  it should recognize a doctrine of selective waiver to help curb "the culture of waiver" primarily

5  because the "anecdotal material" Qwest and amici provided as evidence was not supported by the

6  record.  *Id.* at 1199.  In contrast, the record here demonstrates that KLA felt it had no choice but

7  to play the game according to the rules imposed by the Thompson Memorandum.  *See* Hemann

8  Decl., ¶¶ 2-7.  Third, at oral argument Qwest disclaimed any argument that its production of

9  privileged documents to the federal investigators was involuntary, relying exclusively on a

10  selective waiver argument.  *Qwest*, 450 F.3d at 1181 n.1.  Indeed, the Tenth Circuit has since

11  clarified that its decision in *Qwest* did not address involuntary production.  *United States v. Ary*,

12  518 F.3d 775, 783 n.5 (10th Cir. 2008).

13  The *Regents* decision reflects what is now widely recognized – the DOJ Thompson

14  Memorandum and SEC Seaboard Report coerced companies under federal investigation into

15  turning over privileged material.[8]  In a hearing before the Senate Judiciary Committee in

16  September 2006, called specifically to address concerns posed by the Thompson Memorandum,

17  former ABA President Karen Mathis summarized the problem, noting:

18  From a practical standpoint, companies have no choice but to waive
19  when requested to do so, as the government's threat to label them as
   "uncooperative" will have a profound effect not just on charging
   and sentencing decisions, but on each company's public image,
20  stock price, and credit worthiness as well.[9]

21  Facing increasing pressure from a coalition of prominent legal organizations, legislators

22  and former prosecutors, the DOJ replaced the Thompson Memorandum with the McNulty

23  Memorandum in December 2006, only weeks after KLA had produced its documents under the

24  Thompson policies.  Memorandum from Paul J. McNulty, Deputy Attorney General, U.S. Dep't

25  of Justice to of Dep't Components, U.S. Attorneys, Principles of Federal Prosecution of Business

26  [8] *See, e.g.,* William R. McLucas et al., *The Decline of the Attorney-Client Privilege in the Corporate Setting*, 96 J. CRIM. L. & CRIMINOLOGY, no. 2, 621, 631 (2006).

27  [9] *The Thompson Memorandum's Effect on the Right to Counsel in Corporate Investigations: Hearing Before the S. Comm. on the Judiciary,* 109th Cong. (2006) (statement of Karen J. Mathis, President of the Am. Bar Ass'n at 4).

1    Organizations Dated December 12, 2006; Hemann Decl., ¶ 8, Ex. 5.  The McNulty Memorandum

2    significantly reduces the pressure on a company to produce privileged materials.[10]  Hemann

3    Decl., ¶ 8.  It implemented the following changes to reduce the pressure on corporations to

4    produce privileged communication: (1) it deleted the reference to the waiver of the attorney client

5    privilege in the list of nine factors a prosecutor should consider in making a charging decision; (2)

6    it affirmatively described the "extremely important function" of the attorney client privilege and

7    work product protections "in the observance of law and administration of justice"; (3) it

8    affirmatively stated that: "Waiver of attorney-client privilege and work product protection is not a

9    prerequisite to a finding that a company has cooperated in the government's investigation; and (4)

10   it required all local prosecutors to obtain written permission from the United States Attorney to

11   even seek the production of privileged materials, with the United States Attorney unable to

12   provide written authorization until after consulting with the Assistant Attorney General for the

13   Criminal Division.  *Id.*

14        Recognizing that the McNulty policy still did not go far enough, the DOJ is now on the

15   verge of rewriting its policy again.  A July 9, 2008 letter from Deputy Attorney General Mark

16   Filip recently informed the Senate Judiciary Committee that the DOJ expects to revise its policy

17   and make it explicit that the DOJ may not even request a corporation to produce privileged

18   material. Letter from Deputy Attorney General Mark Filip to Patrick J. Leahy et al. Dated July 9,

19   2008; Hemann Decl., ¶ 9, Ex. 6.

20        If the DOJ does not promptly change its policy, Congress may beat the DOJ to the punch.

21   On June 27, 2008, Senator Arlen Specter (R-Pa.) reintroduced in the Senate the Attorney-Client

22   Privilege Protection Act, which passed the House before the close of term in 2007.[11]  The Act

23   would prevent federal agencies, as they did under the Thompson/Seaboard policies, from either

24

---

25   [10] The McNulty Memorandum also notes that effective November 2006 the United States Sentencing Guidelines no
     longer contain a reference to considering a corporation's waiver of attorney-client privilege and work product

26   protections in reducing a corporation's culpability score.  *See McNulty Memorandum*, Hemann Decl., Ex. 5.

27   [11] Attorney-Client Protection Act of 2007, H.R. 3013, 110th Cong. (2007).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                                           21                    KLA'S OPPOSITION TO SCHROEDER'S
                                                                              MTN TO COMPEL CASE NO. C-07-3798 JW

1    seeking privilege waivers or considering the assertion of privilege in charging decisions.[12]

2         In addition to the *Regents* court, at least one district court has recognized the coercive

3    effect of the Thompson Memorandum.  In a couple of related opinions, the Southern District of

4    New York blasted the DOJ for its coercive cooperation policy.[13]  The controversy arose after

5    KPMG, out of fear of being labeled "uncooperative," only partially covered attorney's fees for

6    employees facing prosecution.  The court held that the Thompson Memorandum, coupled with

7    specific conduct of the federal prosecutors, violated the Fifth and Sixth Amendment rights of the

8    former KPMG employees.  As Judge Kaplan put it, KPMG abided by the cooperation factor, in

9    this case refusing to pay employees' legal fees, "because the government held the proverbial gun

10   to its head."[14]

11        Here, the record demonstrates that KLA, like the defendants in *Regents*, produced

12   privileged documents to the government because it "believed there would be severe regulatory or

13   criminal consequences if it was labeled uncooperative by the government."[15]  Specifically, in

14   view of the requirements of the Thompson Memorandum and Seaboard Report, the KLA

15   determined that it was required to produce documents protected by the attorney-client privilege

16   and attorney work product doctrine, or be deemed not to be cooperating with the SEC and USAO

17   investigations.  Hemann Decl., ¶ 5.  Having produced privileged documents with the proverbial

18   gun to its head, KLA's production to the government should be recognized as the involuntary

19   production that it was.  As such, KLA never waived the privilege.

20            **2.    KLA and the Federal Investigators Shared a Common Interest in
                      Uncovering Any Stock Option Improprieties.**

21

22        If two parties share a common interest, a party does not waive the privilege by disclosing

23   documents.  *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980) (finding

24   _____

25   [12] Attorney-Client Privilege Protection Act of 2008, S. 3217, § 3, 110th Cong. (2008); *see also* Statement of The H. Arlen Specter (June 26, 2008) *available at* http://www.acc.com/public/attyclntprvlg/specteraccpa2008floorstmnt.pdf

26   [13] *United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006) (*Stein I*); *United States v. Stein*, No. S1 05 Crim. 0888, 2006 WL 2060430 (S.D.N.Y, July 25, 2006) (*Stein II*).

27   [14] *Stein I*, 435 F. Supp. 2d at 336 (emphasis added).

28   [15] *Regents*, 2008 WL 2908123 at *7; Hemann Decl.¶ 5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                                22                    KLA'S OPPOSITION TO SCHROEDER'S
                                                                   MTN TO COMPEL CASE NO. C-07-3798 JW

1   that, since "MCI shares common interests with the United States," MCI did not waive the work

2   product privilege by sharing documents with the government).  Schroeder argues that the

3   "adversarial nature of the relationship between KLA and the SEC while KLA was providing

4   cooperation was clear and forecloses any claim of common interest."  Motion at 32.  However, a

5   common interest can occur even where parties' interests are adverse in "substantial respects."

6   *See, e.g. Modesto Irrigation District v. Gutierrez*, No. 1:06-cv-00453 OWW DLB, 2007 WL

7   763370 (E.D. Cal. March 9, 2007) ("The [common interest] privilege does not require a complete

8   unity of interests among the participants, and it may apply where the parties' interests are adverse

9   in substantial respects.").

10          Here, KLA and the government shared a common interest in locating any wrongdoers in

11  connection with the "backdating" that had occurred at the Company.  *See In re Cardinal Health,*

12  *Inc. Sec. Litig.*, No. 04 Civ. 575, 2007 WL 495150, at *9 (S.D.N.Y. Jan. 26, 2007) (holding there

13  was no waiver due to disclosure because of a "common interest in developing legal theories and

14  analyzing information concerning potential financial irregularities at Cardinal").  Even Schroeder

15  seems convinced that KLA and the federal agencies shared an interest in analyzing information

16  and identifying any potential wrongdoers, stating, among other things, that "KLA cooperated with

17  the SEC by essentially preparing the SEC's case for it," and that "KLA stands to be a direct

18  beneficiary of a portion of the SEC's recovery in this case."  Motion at 3:18-19 and 9:13-23.  In

19  fact, it is Schroeder's theory of the case that the SEC "outsourced" its investigation to the

20  Company.  Schroeder's admissions in this regard distinguish the cases he relies upon when he

21  later concludes to the contrary that KLA and the SEC lacked a common interest.

22                  **3.      The Selective Waiver Doctrine Allowed KLA to Share Privileged
                              Documents Without Waiving the Privilege as to Third Parties.**
23

24          The Ninth Circuit has expressly held open the possibility that a party can "selectively

25  waive" the attorney-client privilege by "allow[ing] a corporation to disclose the results of an

26  internal investigation to an investigating government agency without waiving attorney client

27  privilege or work product protection as to the outside world."  *US v. Bergonzi*, 403 F.3d at 1050;

28  (*see also Bittaker v. Woodford*, 331 F.3d 715, 720 n. 5 (9th Cir. 2003) ("[T]he law [regarding

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1   selective waiver] is not ... settled.").  If ever there was a case where the selective waiver doctrine

2   should apply, this would seem to be the case.  First, no Court in this Circuit appears to have faced

3   the circumstances and argument where the corporation's production was compelled during the

4   three plus year life of the Thompson Memo.  Second, unlike many of the cases Schroeder relies

5   upon in arguing that the selective waiver doctrine has been rejected,[16] KLA is not attempting to

6   apply the doctrine to documents created by a special committee with the express intent of

7   producing the documents to the government at the time of creation.  And third, KLA negotiated

8   as strong of a confidentiality agreement as was possible with two federal agencies holding all the

9   cards with the Thompson Memo and the Seaboard Report.[17]  Hemann Decl., ¶ 6.

10          Though no case presents this combination of factors under which to consider the efficacy

11   of the selective waiver doctrine, numerous cases have upheld a selective waiver on nothing more

12   than the policy rationale of encouraging parties to cooperate with government entities.  *See, e.g.*

13   *In re Grand Jury Subpoena (Dated July 13, 1979)*, 478 F. Supp. 368, 372-73 (E.D. Wis. 1979)

14   ("[V]oluntary cooperation with [a government] investigation would be substantially curtailed if

15   such cooperation were deemed to be a waiver of a corporation's attorney-client privilege.");

16   *Byrnes v. IDS Realty Trust*, 85 F.R.D. 679, 688-89 (S.D.N.Y. 1980) ("voluntary submissions to

17   [Government] agencies in separate, private proceedings should be a waiver only as to that

18   proceeding"); *Saito v. McKesson HBOC, Inc.*, Civ.A. 18553, 2002 WL 31657622, at *11 (Del.

19   Ch. Nov. 13, 2002), *aff'd*, 818 A.2d 970 (Del. 2003) (adopting selective waiver rule with respect

20   to Report and Interview Memoranda based on the "strong public interest such a rule would

21   serve").

---

22   [16] *See, e.g. U.S. v. Bergonzi*, 216 F.R.D. 487, 494 n.8 (N.D. Cal. 2003); *see also U.S. v. Reyes*, 239 U.S. 591, 599
23   (N.D. Cal. 2006) (considering a privilege claim made by two law firms who had created materials in assistance with a
     company's internal investigation).

24   [17] *See In re M&L Bus. Mach. Co.*, 161 B.R. 689, 696-97 (D. Colo. 1993) (bank's disclosures to Government did not
25   waive attorney-client privilege where bank took "substantial steps to ensure that its disclosures to the United States
     Attorney would be kept confidential"); *Dellwood Farms, Inc. v. Cargill. Inc.*, 128 F.3d 1122, 1127 (7th Cir. 1997)
26   (suggesting that disclosure to third party should not be deemed waiver of analogous "investigatory privilege" where
     disclosing party takes steps to preserve confidentiality); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1375 (D.C.
27   Cir. 1984) (finding that party could avoid waiver by "insist[ing] on a promise of confidentiality before disclosure to
     the SEC"); *In re Sealed Case*, 676 F.2d 793, 823-24 (D.C. Cir. 1982) (recognizing that explicit confidentiality
28   agreement with SEC or other Government agency may prevent waiver).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/20774290.6                              24                KLA'S OPPOSITION TO SCHROEDER'S
                                                             MTN TO COMPEL CASE NO. C-07-3798 JW

1    At least one District Court in the Ninth Circuit has held that a corporation does not waive

2    attorney-client privilege by disclosure to an investigating government agency. *In re McKesson*

3    *HBOC, Inc. Sec. Litig.*, No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS 7098 (N.D. Cal. March

4    31, 2005) ("*Aaronson*"). In *Aaronson*, Judge Whyte held that the disclosure privileged materials

5    to the government was only a "selective waiver" that did not waive privilege as to all future

6    adversaries. *Id.* at *46. The court in *Aaronson,* "taking into consideration the benefit to the

7    public of permitting disclosure of work product to the government," found that disclosure to the

8    government did not effect a broader waiver. *Id*. at *46-47. This rationale is stronger here

9    because Schroeder seeks historical documents, not just an audit report created to share with the

10   government. Schroeder attempts to distinguish *Aaronson* by arguing that the Company is

11   attempting to use the privileged materials "as both a sword and a shield." Motion at 35. No such

12   facts are presented here, however, as KLA is a ***third party*** to the instant litigation. KLA is not

13   asserting any affirmative claims against Schroeder in this or in any other forum. In fact, KLA and

14   Schroeder have entered into a settlement, which mutually releases all claims. Green Decl., ¶ 5.

15   **V.    CONCLUSION**

16        For the foregoing reasons, this Court should deny Schroeder's Motion to Compel.

17

18

19   Dated:  August 1, 2008              **MORGAN, LEWIS & BOCKIUS LLP**
20                                        JOHN H. HEMANN
                                          JOSEPH E. FLOREN
21                                        THOMAS R. GREEN

22                                        By _____/s/_____
23                                            Thomas R. Green

24                                        Attorneys for Non Party KLA-Tencor
                                          Corporation
25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
New York

DB2/20774290.6          25          KLA'S OPPOSITION TO SCHROEDER'S
                                    MTN TO COMPEL CASE NO. C-07-3798 JW