# TAB 7

# TAB 7

Westlaw.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2008 WL 2908123 (Cal.App. 4 Dist.)
**2008 WL 2908123 (Cal.App. 4 Dist.)**

Page 1

REGENTS OF UNIVERSITY OF CALIFORNIA
V. SUPERIOR COURT
Cal.App. 4 Dist.,2008.
Only the Westlaw citation is currently available.
Court of Appeal, Fourth District, Division 1, Cali-
fornia.
The REGENTS OF the UNIVERSITY OF CALI-
FORNIA et al., Petitioners,

v.

The SUPERIOR COURT of San Diego County, Re-
spondent;
Aquila Merchant Services, Inc., et al., Real Parties
in Interest.
**No. D051364.**

July 30, 2008.

Cotchett, Pitre & McCarthy, Joseph W. Cotchett,
Nancy L. Fineman, Steven N. Williams and Nanci
E. Nishimura for Petitioners.

No appearance for Respondent.

Quinn Emanuel Urquhart Oliver & Hedges, A. Wil-
liam Urquhart, Kathleen M. Sullivan, Kristen Bird
and Roxanna A. Manuel; Fulbright & Jaworski,
Peter H. Mason and Joshua D. Lichtman for Real
Party in Interest Coral Energy Resources.

Pillsbury, Winthrop, Shaw, Pittman, Douglas T.
Tribble and Michael J. Kass for Real Parties in In-
terest Dynegy Inc., West Coast Power and Dynegy
Marketing and Trade.

Hall, Estill, Hardwick, Gable, Golden & Nelson,
Graydon Dean Luthey, Jr., and Sarah Jane Gillett;
English & Gloven and Donald A. English for Real
Parties in Interest The Williams Companies, Inc.
and Williams Gas Marketing, Inc., formerly known
as Williams Energy Marketing and Trading Co.

Hogan & Hartson and David R. Singer for AEP En-
ergy Services, Inc., as Amicus Curiae on behalf of
Real Parties in Interest Coral Energy Resources,
Duke Energy Corporation, Duke Energy Trading
and Marketing, Dynegy Power Companies, Inc.,
The Williams Companies, Inc ., and Williams En-
ergy Marketing and Trading Co.

BENKE, J.

**\*1** Evidence Code section 912, subdivision (a),
provides that the attorney-client privilege is waived
when "without coercion" a holder of the privilege
has either disclosed or consented to the disclosure
of a significant part of an otherwise privileged com-
munication. In this writ proceeding we consider
whether disclosure of privileged communications is
free of coercion when, as a matter of policy, the
federal government advised corporations under
criminal and regulatory investigation that they
might avoid indictment or regulatory sanctions if
they fully cooperated in the government's investiga-
tion and among other matters waived the attorney-cli-
ent and attorney work product privileges.

Although no California cases have considered this
issue directly, the cases which have discussed
waiver of the privileges have found that the holder
of a privilege need only take "reasonable steps" to
protect privileged communications. No case has re-
quired that the holder of a privilege take extraordin-
ary or heroic measures to preserve the confidential-
ity of such communications. Here, the threat of reg-
ulatory action and indictment posed the risk of sig-
nificant costs and consequences to the corporations
such that they could cooperate with the Department
of Justice's investigation without waiving the priv-
ilege.

Accordingly, we find no abuse of discretion in the
trial court's order denying plaintiff's motion to com-
pel disclosure of privileged documents which the
defendants produced during the course of the feder-
al government's regulatory and criminal investiga-
tions.

FACTUAL AND PROCEDURAL BACK-
GROUND

The plaintiffs [FN1] in this coordinated antitrust case
allege the defendants,[FN2] a group of energy suppli-
ers, unlawfully inflated the retail price of natural

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

gas in California between 1999 and 2002. In the course of discovery, the plaintiffs asked the defendants to produce attorney-client communications and attorney work product which the defendants had previously disclosed to participants in a federal Corporate Fraud Task Force. The task force, which had been investigating the defendants' conduct, was composed of the United States Department of Justice (DOJ), the Federal Energy Regulatory Commission (FERC), the Commodity Futures Trading Commission (CFTC) and the Securities & Exchange (SEC). In particular, the defendants produced to the federal agencies the results of investigations their respective outside counsel had conducted with respect to the defendants' compliance with federal regulations and antitrust law.

> FN1. The plaintiffs and petitioners are The Regents of the University of California; the City of Los Angeles, Department of Water and Power; City and County of San Francisco; County of Santa Clara; County of San Diego; School Project for Utility Rate Reform; Nurseryman's Exchange, Inc.; County of Alameda; Sacramento Municipal Utility District; ABAG Publicly Owned Energy Resources; City of San Diego, County of San Mateo; Owens-Brockway Glass Container, Inc.; Tamco; California Steel Industries, Inc.; Hanson Permanente Cement, Inc.; Vista Metals Corp.; Pabco Building Products; Basalite Concrete Products; and the Board of Trustees of the California State University.

> FN2. The defendants and real parties in interest are Aquila Merchant Services, Inc.; Coral Energy Resources; Duke Energy Corporation; Duke Energy Trading and Marketing; Dynegy Power Marketing and Trade; West Coast Power; The Williams Companies, Inc.; and Williams Marketing and Trading Co.

At the time the federal agencies obtained the privileged communications from the defendants, the

DOJ had adopted a policy under which, in determining whether it would indict a corporation, the department would consider the corporation's cooperation with the government. Under the department's policy, one important indicia of a corporation's cooperation was the corporation's willingness to waive the attorney-client and attorney work product privileges when responding to the government's subpoenas and requests for documents.

**\*2** All of the defendants received subpoenas or requests for documents from one or more of the federal agencies. After consulting counsel, each of the defendants waived the attorney-client and work product privileges. With one exception, each of the defendants obtained an agreement from the government under which the government agreed that disclosure of information to the government was not a waiver of the attorney-client and work product privileges. None of the defendants was indicted. However, the government reached plea agreements with employees of the defendants, and the factual basis for the employees' pleas was established in part based on facts disclosed in privileged documents, including in particular compliance reviews conducted by the defendants' counsel.

The plaintiffs in this action moved to compel production of the privileged documents. The plaintiffs argued that the defendants made a business decision to produce the documents to the respective federal agencies and therefore waived the privilege. The plaintiffs argued that having decided to waive the privilege with respect to one party's demand, the defendants could no longer assert the privileges in response to lawful demands from other parties. (See *McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1240-1241(*McKesson* ).)

In response to the plaintiffs' motion, the defendants argued their cooperation with the federal agencies was coerced within the meaning of Evidence Code FN3 section 912, subdivision (a), and that in providing the department with privileged documents they did not waive the privileges.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2008 WL 2908123 (Cal.App. 4 Dist.)
**2008 WL 2908123 (Cal.App. 4 Dist.)**

Page 3

> FN3. All further statutory references are to the Evidence Code unless otherwise specified.

The trial court denied the plaintiffs' motion. It found that the defendants' cooperation with the federal agencies did not waive the privileges.

The plaintiffs have challenged the trial court's order denying their motion to compel by way of a petition for a writ of mandate. Because the precise issue the plaintiffs have raised has not been previously considered by a court of record in this state, is of some public importance, and, in the absence of our consideration of the petition on the merits, is likely to escape review, we issued an order to show cause. (See *O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1439;*Roden v. AmerisourceBergen Corp.* (2005) 130 Cal.App.4th 211, 218.)

As we explain more fully below, we deny the petition.

I

As defendants note, on the basis of uncontradicted declarations [FN4] the defendants submitted in opposition to the motion to compel, the trial court found each defendant produced privileged documents to the government because each defendant believed there would be severe regulatory or criminal consequences if it was labeled as uncooperative by the government. We review that finding of fact for substantial evidence. (See *CenterPoint Energy, Inc. v.. Superior Court* (2007) 157 Cal.App.4th 1101, 1119.) We review the legal conclusions to be drawn from that finding de novo. (*Ibid.;* see also *McKesson, supra,* 115 Cal.App.4th at pp. 1235-1236.)

> FN4. We note the trial court allowed plaintiffs to conduct discovery with respect to the assertions made in the declarations submitted by defendants. Plaintiffs elected not to take any discovery and did not present any evidence contradicting defend-

ants' declarations.

II

**\*3** Section 912, subdivision (a), states in pertinent part: "(a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) ... is waived with respect to a communication protected by the privilege if any holder of the privilege, *without coercion,* has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."(Italics added.)

The term "coercion" is not defined in section 912. However, a related provision, section 919, provides: "(a) Evidence of a statement or other disclosure of privileged information is inadmissible against a holder of the privilege if:

"(1) A person authorized to claim the privilege claimed it but nevertheless disclosure erroneously was required to be made; or

"(2) The presiding officer did not exclude the privileged information as required by Section 916.

"(b) If a person authorized to claim the privilege claimed it, whether in the same or a prior proceeding, but nevertheless disclosure erroneously was required by the presiding officer to be made, neither the failure to refuse to disclose nor the failure to seek review of the order of the presiding officer requiring disclosure indicates consent to the disclosure or constitutes a waiver and, under these circumstances, the disclosure is one made under coercion."

Although its function is different than the attorney-client privilege, in this context the attorney work product privilege is subject to the same waiver principles applied to the attorney work product priv-

ilege. "Waiver of work product protection, though not expressly defined by statute, is generally found under the same set of circumstances as waiver of the attorney-client privilege-by failing to assert the protection, by tendering certain issues, and by conduct inconsistent with claiming the protection. [Citations.] Waiver also occurs by an attorney's 'voluntary disclosure or consent to disclosure of the writing to a person other than the client who has no interest in maintaining the confidentiality of the contents of the writing.' " (*McKesson, supra,* 115 Cal.App.4th at p. 1239; but see *Transamerica Computer v. Intern. Business Machines* (9th Cir.1978) 573 F.2d 646, 650, fn. 5(*Transamerica Computer* ).) Thus disclosure to a third party will waive the work product privilege unless the disclosure was coerced.

Dictionaries define "coerce" broadly as "[t]o force to act or think in a given manner; to compel by pressure or threat" (American Heritage Dict. of the English Language, 1971, p. 258) or "[c]onduct that constitutes the improper use of economic power to compel another to submit to the wishes of one who wields it."(Black's Law Dict. (8th ed.2004) p. 275.) In the trial court the defendants relied upon the impact of coercion in other legal contexts. For instance, a line of federal and state cases have found the Fifth Amendment is not waived when an employee is threatened with discharge if he or she asserts the privilege against self-incrimination in responding to an employer's investigation of alleged wrongdoing. (See *Garrity v. New Jersey* (1967) 385 U.S. 493, 500 [87 S.Ct. 616];*Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, 829;*TRW, Inc. v. Superior Court.*(1994) 25 Cal.App.4th 1834, 1853.) In *Lefkowitz v. Turley* (1973) 414 U.S. 70, 82-83 [94 S.Ct. 316], the court extended the coercion theory to contractors who were threatened with the loss of the ability to compete for municipal contracts unless they agreed to waive their Fifth Amendment privilege. The court stated: "A waiver secured under threat of substantial economic sanction cannot be termed voluntary."(*Ibid.*)

**\*4** The defendants also rely on cases that have discussed the circumstances under which *Miranda* rights may be validly waived (see *People v. Whitson* (1998) 17 Cal.4th 229, 247) and cases which discuss the elements of extortion. (See *People v. Goodman* (1958) 159 Cal.App.2d 54, 61.) As the defendants point out, these cases support the principle that an act may be volitional, but, because of the surrounding circumstances, involuntary.

The analogies the defendants point to are helpful, but not dispositive. While somewhat related, the constitutional privilege against self-incrimination serves interests distinctly different from the interests embodied in the attorney-client and work product privileges. The law of extortion also serves obviously distinct interests. In particular, we note that unlike the constitutional right against self-incrimination, the common law and statutory privileges are to be narrowly construed because they serve narrower interests. (Compare *Lybarger v. City of Los Angeles, supra,* 40 Cal.3d at p. 831, fn. 1 [privilege against self-incrimination broad]; *People v. Sinohui* (2002) 28 Cal.4th 205, 212 [evidentiary privileges narrow]; *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 396-397 [same].) FN5 Thus, in considering what level of compulsion will permit the holder of a privilege to disclose privileged information without waiving either the attorney-client or work product privileges, we have looked for authorities which have more directly discussed those privileges. Although there is not a great deal of case law in the area, our own research has disclosed federal authorities and at least one relatively recent California case which have considered whether particular disclosures of privileged information were voluntary.

> FN5."There can be no 'presumption against waiver' of the attorney-client privilege in view of the statement of policy adopted by the Fourth Circuit in *N.L.R.B. v. Harvey, supra,* 349 F.2d at 907:'the privilege remains an exception to the general duty to disclose. Its benefits are all indirect

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

and speculative; its obstruction is plain and concrete. It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle."(*Duplan Corp. v. Deering Milliken, Inc.* (DCSC 1975) 397 F.Supp. 1146, 1162.)

We begin with two trade cases. In *United States v. Insurance Board,* Trade Cas. P67,873 (N.D.Ohio 1954) and *United States v. New Wrinkle, Inc.,* Trade Cas. P67, 883 (S.D.Ohio 1954) the federal government requested access to the defendants' corporate files and records of defendants. Given those circumstances, the federal district courts held that the defendants' disclosure of privileged documents was not voluntary. In *United States v. New Wrinkle, Inc .,* the court stated: "If Government agents come into a place of business and ask or demand to see files and records, and in a spirit of cooperation, the files and records are turned over to the agents by the business, it does not, in the opinion of this Court, constitute a voluntary turning over of records which can be claimed by the Government as a waiver. There is at least an implied coercion in a request or demand made by Government agents."

The court in *Duplan Corp. v. Deering Milliken, Inc., supra,* 397 F.Supp. at page 1163, relied upon *United States v. New Wrinkle* in considering the impact of its *in-camera* review of documents which one party claimed were privileged. The court held that the privilege would not be waived "where the voluntary waiver of some communications was made upon *the suggestion* of the court during the course of the in-camera proceedings."(Italics added.)

**\*5** In *Transamerica Computer, supra,* 573 F.2d at pages 650-652, the Court of Appeals found coercion in an accelerated discovery order which caused the defendant, IBM, to inadvertently disclose privileged documents. "We have already described at length the extraordinary logistical difficulties with

which IBM was confronted in its efforts to comply, as it eventually did, with the demanding timetable Judge Neville had established for the document inspection program. We believe that there is merit in IBM's argument that that timetable deprived IBM of the opportunity to claim the privilege inasmuch as it was statistically inevitable that, despite the extraordinary precautions undertaken by IBM, some privileged documents would escape detection by the IBM reviewers."(*Id.* at p. 652.)In finding that under those circumstances no waiver occurred, the court stated: "Waiver cannot be directly compelled [and] neither can it be indirectly compelled."(*Ibid.*) Importantly for our purposes, the court approved a trial court order under which any inadvertent disclosure during discovery would not waive the privilege so long as IBM took reasonable steps to prevent disclosure. (*Ibid.*)

The court applied the "reasonable steps" standard suggested in *Transamerica Computer* in *U.S. v. De la Jara* (9th Cir.1992) 973 F.2d 746, 750(*de la Jara.*)In *De la Jara* the government executed a search warrant at the defendant's place of business and discovered some privileged documents. Over the defendant's objection, the government entered one of the privilege documents at trial. The court found that the defendant had not acted reasonably to protect the confidentiality of the document. "In determining whether the privilege should be deemed to be waived, the circumstances surrounding the disclosure are to be considered. [Citations.] We have previously held that the attorney-client privilege may be waived by implication, even when the disclosure of the privileged material was 'inadvertent' or involuntary. [Citation .] When the disclosure is involuntary, we will find the privilege preserved if the privilege holder has made efforts 'reasonably designed' to protect and preserve the privilege. [Citation.] Conversely, we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.

"De la Jara did nothing to recover the letter or pro-

tect its confidentiality during the six month interlude between its seizure and introduction into evidence. By immediately attempting to recover the letter, appellant could have minimized the damage caused by the breach of confidentiality. As a result of his failure to act, however, he allowed 'the mantle of confidentiality which once protected the document[ ]' to be 'irretrievably breached,' thereby waiving his privilege."(*De la Jara, supra,* 973 F.2d at pp. 749-750.)

More recently, the court in *Hynix Semiconductor, Inc. v. Rambus, Inc.* 2008 U.S. DIST LEXIS 11764 (ND Cal., Feb. 2, 2008, No. CV-00-20905 RMW) reached a similar conclusion with respect to documents it ordered disclosed in discovery subject to the defendant's right to assert the privilege at the time of trial: "The circumstances surrounding a disclosure of allegedly privileged documents determine whether the disclosure waived the attorney-client or work products privileges. [Citation.] In general, a disclosure compelled by a court order like the piercing orders in this case does not waive the attorney-client and work product privileges. [Citations.] The caveat to this general principle is that the party claiming privilege must take efforts 'reasonably designed' to protect the privilege. [Citation.]

\*6 "Rambus has strenuously objected every time it has been ordered to produce allegedly privileged documents. Furthermore, this court's most recent production order expressly recognized that Rambus could reassert any claim of privilege in the form of an evidentiary objection at trial. The court imagines such assurances prevented Rambus from further complicating these proceedings by appealing the court's production order. It would be perverse now for the court to hold that reliance on the court's order was not 'reasonably designed' to protect the asserted privileges. While a 'strenuous or Herculean efforts' rule may have required Rambus to file a peremptory motion in limine in those instances, the law only requires 'reasonable efforts.' [Citation.] Requiring more than what Rambus did to avoid

production would suggest that Rambus should have expanded and intensified this already over-litigated dispute despite everyone's knowledge that Rambus objects to production of the documents. The Ninth Circuit's rule in *de la Jara* requires reasonable efforts, and those were taken in this court."(*Ibid.*)

At least one California case appears to have confronted the related issues of inadvertent disclosure and coercion and reached a result consistent with the federal authorities we have discussed. In *O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal .App.4th 563, a discrimination case in which the plaintiff alleged he was laid off because of his age, the defendant's attorney had prepared a document which listed employees proposed for termination, including their birth dates. The document was inadvertently produced during discovery and the plaintiff attempted to introduce it at trial. The trial court excluded the document and on appeal the plaintiff argued that the disclosure, albeit inadvertent, was not coerced. The Court of Appeal rejected the plaintiff's argument. "O'Mary forgets that discovery *is* coercion. The force of law is being brought upon a person to turn over certain documents. Inadvertent disclosure during discovery by no stretch of the imagination shows *consent* to the disclosure: It merely demonstrates that the poor paralegal or junior associate who was lumbered with the tedious job of going through voluminous files and records in preparation for a document production may have missed something. O'Mary invites us to adopt a 'gotcha' theory of waiver, in which an underling's slip-up in a document production becomes the equivalent of actual consent. We decline. The substance of an inadvertent disclosure under such circumstances demonstrates that there was no *voluntary* release."(*Id.* at p. 577.)

In light of the foregoing authorities, it is clear that when privileged documents have been disclosed either in response to the request of a government agency or inadvertently in the course of civil discovery, no waiver of the privilege will occur if the holder of the privilege has taken reasonable steps

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

under the circumstances to prevent disclosure. The law does not require that the holder of the privilege take "strenuous or Herculean efforts" to resist disclosure. This standard is consistent with section 919, subdivision (b), which by its terms does not require that the holder of a privilege suffer a contempt finding in order to preserve the privilege or to appeal an order directing disclosure.[FN6]

> FN6. We reject plaintiffs' contention that section 919 sets forth the exclusive circumstances under which coercion arises. The terms of the statute are in no sense exclusive but rather exemplary.

### III

\*7 Turning to the circumstances presented here, we agree with the trial court that the disclosures the defendants made to the government agencies did not waive their attorney-client and attorney work product privileges. The means of coercion the government used here were, as a practical matter, more powerful than a court order. A court order can be challenged, without penalty, by way of extraordinary writ or appeal. In contrast here, the defendants here had no means of asserting the privileges without incurring the severe consequences threatened by the government agencies. Moreover, contrary to the plaintiffs' argument, the nature and fact or those penalties cannot be seriously doubted. In particular, the policy of the DOJ was well publicized, and counsel for each of the defendants was aware of the policy at the time counsel advised each of the defendants to comply with the government's requests.[FN7] (See *United States v. Stein* (2006) 435 F.Supp.2d 330, 337-338.)

> FN7. We hasten to note the DOJ has more recently amended its policy and significantly limited the circumstances under which disclosure of privileged materials will be requested from corporate defendants.

We are not the first court to conclude that the DOJ's

policy had coercive impacts. In *United States v. Stein, supra,* 435 F. Supp .2d at page 364, criminal defendants argued that the indictments against them should be dismissed because under the DOJ's policy, corporations were not only encouraged to waive available privileges, they were also discouraged from paying the attorney fees of individual officers and employees. The defendants argued that this unfairly interfered with their right to counsel. The trial court agreed with the defendants and restricted the DOJ's ability to apply its policy to the corporation that employed the defendants. In describing the impact the policy was likely to have on corporations, the court stated: "Few if any competent defense lawyers would advise a corporate client at risk of indictment that it should feel free to advance legal fees to individuals in the face of the language of the Thompson Memorandum itself. It would be irresponsible to take the chance that prosecutors might view it as 'protecting ... culpable employees and agents.' As KPMG's new chief legal officer, former U.S. District Judge Sven Erik Holmes, testified, he thought it indispensable (as would any defense lawyer) 'to be able to say at the right time with the right audience, we're in full compliance with the Thompson Memorandum.' " (*Id.* at p. 364.)

In sum, because of the dramatic impact failure to cooperate might have on the corporations and the absence of any cost-free redress, the trial court here correctly found that the defendants' cooperation with the government did not waive the attorney-client and attorney work product privileges. Under the circumstances existing at the time the cooperation took place, it would not have been reasonable for the defendants to resist or otherwise challenge the government's requests.

The coercion exerted by the federal government's polices takes this case well outside of the holdings in *McKesson, supra,* 115 Cal.App.4th at page1239, and the federal cases relied upon by plaintiffs. (See e.g. *In re Qwest Communications Intern. Inc.* (10th Cir.2006) 450 F.3d 1179, 1199;*In re Steinhardt*

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2008 WL 2908123 (Cal.App. 4 Dist.)
**2008 WL 2908123 (Cal.App. 4 Dist.)**

Page 8

*Partners, L.P.* (2d Cir.1993) 9 F.3d 230, 234;*SEC v. Forma* (SDNY 1987) 117 FRD 516;*In re John Doe Corp.* (2d Cir.1982**)** 675 F.2d 482;*Teachers Ins. and Annuity Assoc. of America v. Shamrock Broadcasting Co.* (SDNY 1981) 521 F.Supp. 638.) As the trial court noted, *McKesson* and the federal cases did not consider or discuss a claim that disclosure of privileged documents was coerced.

**\*8** Petition denied. Defendants and Real Parties in Interest to recover their costs.

WE CONCUR: McCONNELL, P.J., and HUFFMAN, J.
Cal.App. 4 Dist.,2008.
REGENTS OF UNIVERSITY OF CALIFORNIA V. SUPERIOR COURT
--- Cal.Rptr.3d ----, 2008 WL 2908123 (Cal.App. 4 Dist.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.