# TAB 11

# TAB 11



**U.S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General                                    *Washington, D.C. 20530*

## MEMORANDUM

TO:        Heads of Department Components
           United States Attorneys

FROM:      Paul J. McNulty
           Deputy Attorney General

SUBJECT:   Principles of Federal Prosecution of Business Organizations

The Department experienced unprecedented success in prosecuting corporate fraud during the last four years. We have aggressively rooted out corruption in financial markets and corporate board rooms across the country. Federal prosecutors should be justifiably proud that the information used by our nation's financial markets is more reliable, our retirement plans are more secure, and the investing public is better protected as a result of our efforts. The most significant result of this enforcement initiative is that corporations increasingly recognize the need for self-policing, self-reporting, and cooperation with law enforcement. Through their self-regulation efforts, fraud undoubtedly is being prevented, sparing shareholders from the financial harm accompanying corporate corruption. The Department must continue to encourage these efforts.

Though much has been accomplished, the work of protecting the integrity of the marketplace continues. As we press forward in our enforcement duties, it is appropriate that we consider carefully proposals which could make our efforts more effective. I remain convinced that the fundamental principles that have guided our enforcement practices are sound. In particular, our corporate charging principles are not only familiar, but they are welcomed by most corporations in our country because good corporate leadership shares many of our goals. Like federal prosecutors, corporate leaders must take action to protect shareholders, preserve corporate value, and promote honesty and fair dealing with the investing public.

We have heard from responsible corporate officials recently about the challenges they face in discharging their duties to the corporation while responding in a meaningful way to a government investigation. Many of those associated with the corporate legal community have expressed concern that our practices may be discouraging full and candid communications between corporate employees and legal counsel. To the extent this is happening, it was never the intention of the Department for our corporate charging principles to cause such a result.

-2-

Therefore, I have decided to adjust certain aspects of our policy in ways that will further promote public confidence in the Department, encourage corporate fraud prevention efforts, and clarify our goals without sacrificing our ability to prosecute these important cases effectively. The new language expands upon the Department's long-standing policies concerning how we evaluate the authenticity of a corporation's cooperation with a government investigation.

This memorandum supersedes and replaces guidance contained in the Memorandum from Deputy Attorney General Larry D. Thompson entitled Principles of Federal Prosecution of Business Organizations (January 20, 2003) (the "Thompson Memorandum") and the Memorandum from the Acting Deputy Attorney General Robert D. McCallum, Jr. entitled Waiver of Corporate Attorney-Client and Work Product Protections (October 21, 2005)(the "McCallum Memorandum").



**U.S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General                                    *Washington, D.C. 20530*

## MEMORANDUM

TO:       Heads of Department Components
          United States Attorneys

FROM:     Paul J. McNulty
          Deputy Attorney General

SUBJECT:  Principles of Federal Prosecution of Business Organizations

Federal Prosecution of Business Organizations[1]

I.    Duties of the Federal Prosecutor; Duties of Corporate Leaders

The prosecution of corporate crime is a high priority for the Department of Justice. By investigating wrongdoing and bringing charges for criminal conduct, the Department plays an important role in protecting investors and ensuring public confidence in business entities and in the investment markets in which those entities participate. In this respect, federal prosecutors and corporate leaders share a common goal. Directors and officers owe a fiduciary duty to a corporation's shareholders, the corporation's true owners, and they owe duties of honest dealing to the investing public in connection with the corporation's regulatory filings and public statements. The faithful execution of these duties by corporate leadership serves the same values in promoting public trust and confidence that our criminal prosecutions are designed to serve.

A prosecutor's duty to enforce the law requires the investigation and prosecution of criminal wrongdoing if it is discovered. In carrying out this mission with the diligence and resolve necessary to vindicate the important public interests discussed above, prosecutors should be mindful of the common cause we share with responsible corporate leaders. Prosecutors should also be mindful that confidence in the Department is affected both by the results we achieve and by the real and perceived ways in which we achieve them. Thus, the manner in

---

[1] While these guidelines refer to corporations, they apply to the consideration of the prosecution of all types of business organizations, including partnerships, sole proprietorships, government entities, and unincorporated associations.

-2-

which we do our job as prosecutors – the professionalism we demonstrate, our resourcefulness in seeking information, and our willingness to secure the facts in a manner that encourages corporate compliance and self-regulation – impacts public perception of our mission. Federal prosecutors recognize that they must maintain public confidence in the way in which they exercise their charging discretion, and that professionalism and civility have always played an important part in putting these principles into action.

II.    Charging a Corporation: General Principles

A. General Principle: Corporations should not be treated leniently because of their artificial nature nor should they be subject to harsher treatment. Vigorous enforcement of the criminal laws against corporate wrongdoers, where appropriate, results in great benefits for law enforcement and the public, particularly in the area of white collar crime. Indicting corporations for wrongdoing enables the government to address and be a force for positive change of corporate culture, alter corporate behavior, and prevent, discover, and punish white collar crime.

B. Comment: In all cases involving corporate wrongdoing, prosecutors should consider the factors discussed herein. First and foremost, prosecutors should be aware of the important public benefits that may flow from indicting a corporation in appropriate cases. For instance, corporations are likely to take immediate remedial steps when one is indicted for criminal conduct that is pervasive throughout a particular industry, and thus an indictment often provides a unique opportunity for deterrence on a massive scale. In addition, a corporate indictment may result in specific deterrence by changing the culture of the indicted corporation and the behavior of its employees. Finally, certain crimes that carry with them a substantial risk of great public harm, e.g., environmental crimes or financial frauds, are by their nature most likely to be committed by businesses, and there may, therefore, be a substantial federal interest in indicting the corporation.

Charging a corporation, however, does not mean that individual directors, officers, employees, or shareholders should not also be charged. Prosecution of a corporation is not a substitute for the prosecution of criminally culpable individuals within or without the corporation. Because a corporation can act only through individuals, imposition of individual criminal liability may provide the strongest deterrent against future corporate wrongdoing. Only rarely should provable individual culpability not be pursued, even in the face of an offer of a corporate guilty plea or some other disposition of the charges against the corporation.

Corporations are "legal persons," capable of suing and being sued, and capable of committing crimes. Under the doctrine of *respondeat superior*, a corporation may be held criminally liable for the illegal acts of its directors, officers, employees, and agents. To hold a corporation liable for these actions, the government must establish that the corporate agent's actions (I) were within the scope of his duties and (ii) were intended, at least in part, to benefit the corporation. In all cases involving wrongdoing by corporate agents, prosecutors should consider the corporation, as well as the responsible individuals, as potential criminal targets.

-3-

Agents, however, may act for mixed reasons -- both for self-aggrandizement (both direct and indirect) and for the benefit of the corporation, and a corporation may be held liable as long as one motivation of its agent is to benefit the corporation. *See United States v. Potter*, 463 F.3d 9, 25 (1st Cir. 2006) (stating that the test to determine whether an agent is acting within the scope of employment is whether the agent is performing acts of the kind which he is authorized to perform, and those acts are motivated--at least in part--by an intent to benefit the corporation ). In *United States v. Automated Medical Laboratories*, 770 F.2d 399 (4th Cir. 1985), the Fourth Circuit affirmed a corporation's conviction for the actions of a subsidiary's employee despite its claim that the employee was acting for his own benefit, namely his "ambitious nature and his desire to ascend the corporate ladder." The court stated, "*Partucci* was clearly acting in part to benefit AML since his advancement within the corporation depended on AML's well-being and its lack of difficulties with the FDA." Furthermore, in *United States v. Sun-Diamond Growers of California*, 138 F.3d 961, 969-70 (D.C. Cir. 1998), *aff'd on other grounds*, 526 U.S. 398 (1999), the D.C. Circuit rejected a corporation's argument that it should not be held criminally liable for the actions of its vice-president since the vice-president's "scheme was designed to -- and did in fact -- defraud [the corporation], not benefit it." According to the court, the fact that the vice-president deceived the corporation and used its money to contribute illegally to a congressional campaign did not preclude a valid finding that he acted to benefit the corporation. Part of the vice-president's job was to cultivate the corporation's relationship with the congressional candidate's brother, the Secretary of Agriculture. Therefore, the court held, the jury was entitled to conclude that the vice-president had acted with an intent, "however befuddled," to further the interests of his employer. *See also United States v. Cincotta*, 689 F.2d 238, 241-42 (1st Cir. 1982) (upholding a corporation's conviction, notwithstanding the substantial personal benefit reaped by its miscreant agents, because the fraudulent scheme required money to pass through the corporation's treasury and the fraudulently obtained goods were resold to the corporation's customers in the corporation's name).

Moreover, the corporation need not even necessarily profit from its agent's actions for it to be held liable. In *Automated Medical Laboratories*, the Fourth Circuit stated:

> [B]enefit is not a "touchstone of criminal corporate liability; benefit at best is an evidential, not an operative, fact." Thus, whether the agent's actions ultimately redounded to the benefit of the corporation is less significant than whether the agent acted with the intent to benefit the corporation. The basic purpose of requiring that an agent have acted with the intent to benefit the corporation, however, is to insulate the corporation from criminal liability for actions of its agents which may be inimical to the interests of the corporation or which may have been undertaken solely to advance the interests of that agent or of a party other than the corporation.

770 F.2d at 407 (emphasis added; *quoting Old Monastery Co. v. United States*, 147 F.2d 905, 908 (4th Cir.), *cert. denied*, 326 U.S. 734 (1945)).

-4-

III.   Charging a Corporation: Factors to Be Considered

A. General Principle: Generally, prosecutors apply the same factors in determining whether to charge a corporation as they do with respect to individuals. *See* USAM § 9-27.220, *et seq.* Thus, the prosecutor must weigh all of the factors normally considered in the sound exercise of prosecutorial judgment: the sufficiency of the evidence; the likelihood of success at trial; the probable deterrent, rehabilitative, and other consequences of conviction; and the adequacy of noncriminal approaches. *See id.* However, due to the nature of the corporate "person," some additional factors are present. In conducting an investigation, determining whether to bring charges, and negotiating plea agreements, prosecutors must consider the following factors in reaching a decision as to the proper treatment of a corporate target:

1.   the nature and seriousness of the offense, including the risk of harm to the public, and applicable policies and priorities, if any, governing the prosecution of corporations for particular categories of crime (see section IV, *infra*);

2.   the pervasiveness of wrongdoing within the corporation, including the complicity in, or condonation of, the wrongdoing by corporate management (see section V, *infra)*;

3.   the corporation's history of similar conduct, including prior criminal, civil, and regulatory enforcement actions against it (see section VI, *infra*);

4.   the corporation's timely and voluntary disclosure of wrongdoing and its willingness to cooperate in the investigation of its agents (see section VII, *infra*);

5.   the existence and adequacy of the corporation's pre-existing compliance program (see section VIII, *infra*);

6.   the corporation's remedial actions, including any efforts to implement an effective corporate compliance program or to improve an existing one, to replace responsible management, to discipline or terminate wrongdoers, to pay restitution, and to cooperate with the relevant government agencies (see section IX, *infra*);

7.   collateral consequences, including disproportionate harm to shareholders, pension holders and employees not proven personally culpable and impact on the public arising from the prosecution (see section X, *infra*);

8.   the adequacy of the prosecution of individuals responsible for the corporation's malfeasance; and

9.   the adequacy of remedies such as civil or regulatory enforcement actions (see section XI, *infra)*.

-5-

B. Comment: In determining whether to charge a corporation, the foregoing factors must be considered. The factors listed in this section are intended to be illustrative of those that should be considered and not a complete or exhaustive list. Some or all of these factors may or may not apply to specific cases, and in some cases one factor may override all others. For example, the nature and seriousness of the offense may be such as to warrant prosecution regardless of the other factors. In most cases, however, no single factor will be dispositive. Further, national law enforcement policies in various enforcement areas may require that more or less weight be given to certain of these factors than to others. Of course, prosecutors must exercise their judgment in applying and balancing these factors and this process does not mandate a particular result.

In making a decision to charge a corporation, the prosecutor generally has wide latitude in determining when, whom, how, and even whether to prosecute for violations of federal criminal law. In exercising that discretion, prosecutors should consider the following general statements of principles that summarize appropriate considerations to be weighed and desirable practices to be followed in discharging their prosecutorial responsibilities. In doing so, prosecutors should ensure that the general purposes of the criminal law -- assurance of warranted punishment, deterrence of further criminal conduct, protection of the public from dangerous and fraudulent conduct, rehabilitation of offenders, and restitution for victims and affected communities -- are adequately met, taking into account the special nature of the corporate "person."

IV.    Charging a Corporation: Special Policy Concerns

A. General Principle: The nature and seriousness of the crime, including the risk of harm to the public from the criminal conduct, are obviously primary factors in determining whether to charge a corporation. In addition, corporate conduct, particularly that of national and multi-national corporations, necessarily intersects with federal economic, taxation, and criminal law enforcement policies. In applying these principles, prosecutors must consider the practices and policies of the appropriate Division of the Department, and must comply with those policies to the extent required.

B. Comment: In determining whether to charge a corporation, prosecutors should take into account federal law enforcement priorities as discussed above. *See* USAM § 9-27-230. In addition, however, prosecutors must be aware of the specific policy goals and incentive programs established by the respective Divisions and regulatory agencies. Thus, whereas natural persons may be given incremental degrees of credit (ranging from immunity to lesser charges to sentencing considerations) for turning themselves in, making statements against their penal interest, and cooperating in the government's investigation of their own and others' wrongdoing, the same approach may not be appropriate in all circumstances with respect to corporations. As an example, it is entirely proper in many investigations for a prosecutor to consider the corporation's pre-indictment conduct, *e.g.,*voluntary disclosure, cooperation, remediation or restitution, in determining whether to seek an indictment. However, this would not necessarily be appropriate in an antitrust investigation, in which antitrust violations, by definition, go to the

-6-

heart of the corporation's business and for which the Antitrust Division has therefore established a firm policy, understood in the business community, that credit should not be given at the charging stage for a compliance program and that amnesty is available only to the first corporation to make full disclosure to the government. As another example, the Tax Division has a strong preference for prosecuting responsible individuals, rather than entities, for corporate tax offenses. Thus, in determining whether or not to charge a corporation, prosecutors must consult with the Criminal, Antitrust, Tax, and Environmental and Natural Resources Divisions, if appropriate or required.

V.      Charging a Corporation: Pervasiveness of Wrongdoing Within the Corporation

A. General Principle: A corporation can only act through natural persons, and it is therefore held responsible for the acts of such persons fairly attributable to it. Charging a corporation for even minor misconduct may be appropriate where the wrongdoing was pervasive and was undertaken by a large number of employees or by all the employees in a particular role within the corporation, *e.g.*, salesmen or procurement officers, or was condoned by upper management. On the other hand, in certain limited circumstances, it may not be appropriate to impose liability upon a corporation, particularly one with a compliance program in place, under a strict *respondeat superior* theory for the single isolated act of a rogue employee. There is, of course, a wide spectrum between these two extremes, and a prosecutor should exercise sound discretion in evaluating the pervasiveness of wrongdoing within a corporation.

B. Comment: Of these factors, the most important is the role of management. Although acts of even low-level employees may result in criminal liability, a corporation is directed by its management and management is responsible for a corporate culture in which criminal conduct is either discouraged or tacitly encouraged. As stated in commentary to the Sentencing Guidelines:

> Pervasiveness [is] case specific and [will] depend on the number, and degree of responsibility, of individuals [with] substantial authority ... who participated in, condoned, or were willfully ignorant of the offense. Fewer individuals need to be involved for a finding of pervasiveness if those individuals exercised a relatively high degree of authority. Pervasiveness can occur either within an organization as a whole or within a unit of an organization. *See* USSG §8C2.5, comment. (n. 4).

VI.     Charging a Corporation: The Corporation's Past History

A. General Principle: Prosecutors may consider a corporation's history of similar conduct, including prior criminal, civil, and regulatory enforcement actions against it, in determining whether to bring criminal charges.

B. Comment: A corporation, like a natural person, is expected to learn from its mistakes. A history of similar conduct may be probative of a corporate culture that encouraged, or at least condoned, such conduct, regardless of any compliance programs. Criminal prosecution of a

-7-

corporation may be particularly appropriate where the corporation previously had been subject to non-criminal guidance, warnings, or sanctions, or previous criminal charges, and it either had not taken adequate action to prevent future unlawful conduct or had continued to engage in the conduct in spite of the warnings or enforcement actions taken against it. In making this determination, the corporate structure itself, *e.g.*, subsidiaries or operating divisions, should be ignored, and enforcement actions taken against the corporation or any of its divisions, subsidiaries, and affiliates should be considered. *See* USSG § 8C2.5(c) & comment.(n. 6).

VII.    Charging a Corporation: The Value of Cooperation

A. General Principle: In determining whether to charge a corporation, that corporation's timely and voluntary disclosure of wrongdoing and its cooperation with the government's investigation may be relevant factors. In gauging the extent of the corporation's cooperation, the prosecutor may consider, among other things, whether the corporation made a voluntary and timely disclosure, and the corporation's willingness to provide relevant evidence and to identify the culprits within the corporation, including senior executives.

B. Comment: In investigating wrongdoing by or within a corporation, a prosecutor is likely to encounter several obstacles resulting from the nature of the corporation itself. It will often be difficult to determine which individual took which action on behalf of the corporation. Lines of authority and responsibility may be shared among operating divisions or departments, and records and personnel may be spread throughout the United States or even among several countries. Where the criminal conduct continued over an extended period of time, the culpable or knowledgeable personnel may have been promoted, transferred, or fired, or they may have quit or retired. Accordingly, a corporation's cooperation may be critical in identifying the culprits and locating relevant evidence. Relevant considerations in determining whether a corporation has cooperated are set forth below.

1. Qualifying for Immunity, Amnesty or Pretrial Diversion

In some circumstances, granting a corporation immunity or amnesty or pretrial diversion may be considered in the course of the government's investigation. In such circumstances, prosecutors should refer to the principles governing non-prosecution agreements generally. *See* USAM § 9-27.600-650. These principles permit a non-prosecution agreement in exchange for cooperation when a corporation's "timely cooperation appears to be necessary to the public interest and other means of obtaining the desired cooperation are unavailable or would not be effective." Prosecutors should note that in the case of national or multi-national corporations, multi-district or global agreements may be necessary. Such agreements may only be entered into with the approval of each affected district or the appropriate Department official. *See* USAM §9-27.641.

-8-

In addition, the Department, in conjunction with regulatory agencies and other executive branch departments, encourages corporations, as part of their compliance programs, to conduct internal investigations and to disclose their findings to the appropriate authorities. Some agencies, such as the Securities and Exchange Commission and the Environmental Protection Agency, as well as the Department's Environmental and Natural Resources Division, have formal voluntary disclosure programs in which self-reporting, coupled with remediation and additional criteria, may qualify the corporation for amnesty or reduced sanctions. Even in the absence of a formal program, prosecutors may consider a corporation's timely and voluntary disclosure in evaluating the adequacy of the corporation's compliance program and its management's commitment to the compliance program. However, prosecution and economic policies specific to the industry or statute may require prosecution notwithstanding a corporation's willingness to cooperate. For example, the Antitrust Division offers amnesty only to the first corporation to agree to cooperate. This creates a strong incentive for corporations participating in anti-competitive conduct to be the first to cooperate. In addition, amnesty, immunity, or reduced sanctions may not be appropriate where the corporation's business is permeated with fraud or other crimes.

2. Waiving Attorney-Client and Work Product Protections[2]

The attorney-client and work product protections serve an extremely important function in the U.S. legal system. The attorney-client privilege is one of the oldest and most sacrosanct privileges under U.S. law. *See Upjohn v. United States*, 449 U.S. 383, 389 (1976). As the Supreme Court has stated "its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The work product doctrine also serves similarly important interests.

Waiver of attorney-client and work product protections is not a prerequisite to a finding that a company has cooperated in the government's investigation. However, a company's disclosure of privileged information may permit the government to expedite its investigation. In addition, the disclosure of privileged information may be critical in enabling the government to evaluate the accuracy and completeness of the company's voluntary disclosure.

Prosecutors may only request waiver of attorney-client or work product protections when there is a legitimate need for the privileged information to fulfill their law enforcement obligations. A legitimate need for the information is not established by concluding it is merely

---

[2] The Sentencing Guidelines reward voluntary disclosure and cooperation with a reduction in the corporation's offense level. *See* USSG §8C2.5(g). The reference to consideration of a corporation's waiver of attorney-client and work product protections in reducing a corporation's culpability score in Application Note 12, was deleted effective November 1, 2006. *See* USSG §8C2.5(g), comment. (n.12).

-9-

desirable or convenient to obtain privileged information. The test requires a careful balancing of important policy considerations underlying the attorney-client privilege and work product doctrine and the law enforcement needs of the government's investigation.

Whether there is a legitimate need depends upon:

(1) the likelihood and degree to which the privileged information will benefit the government's investigation;

(2) whether the information sought can be obtained in a timely and complete fashion by using alternative means that do not require waiver;

(3) the completeness of the voluntary disclosure already provided; and

(4) the collateral consequences to a corporation of a waiver.

If a legitimate need exists, prosecutors should seek the least intrusive waiver necessary to conduct a complete and thorough investigation, and should follow a step-by-step approach to requesting information. Prosecutors should first request purely factual information, which may or may not be privileged, relating to the underlying misconduct ("Category I"). Examples of Category I information could include, without limitation, copies of key documents, witness statements, or purely factual interview memoranda regarding the underlying misconduct, organization charts created by company counsel, factual chronologies, factual summaries, or reports (or portions thereof) containing investigative facts documented by counsel.

Before requesting that a corporation waive the attorney-client or work product protections for Category I information, prosecutors must obtain written authorization from the United States Attorney who must provide a copy of the request to, and consult with, the Assistant Attorney General for the Criminal Division before granting or denying the request. A prosecutor's request to the United States Attorney for authorization to seek a waiver must set forth law enforcement's legitimate need for the information and identify the scope of the waiver sought. A copy of each waiver request and authorization for Category I information must be maintained in the files of the United States Attorney. If the request is authorized, the United States Attorney must communicate the request in writing to the corporation.

A corporation's response to the government's request for waiver of privilege for Category I information may be considered in determining whether a corporation has cooperated in the government's investigation.

-10-

Only if the purely factual information provides an incomplete basis to conduct a thorough investigation should prosecutors then request that the corporation provide attorney-client communications or non-factual attorney work product ("Category II"). This information includes legal advice given to the corporation before, during, and after the underlying misconduct occurred.

This category of privileged information might include the production of attorney notes, memoranda or reports (or portions thereof) containing counsel's mental impressions and conclusions, legal determinations reached as a result of an internal investigation, or legal advice given to the corporation.

Prosecutors are cautioned that Category II information should only be sought in rare circumstances.

Before requesting that a corporation waive the attorney-client or work product protections for Category II information, the United States Attorney must obtain written authorization from the Deputy Attorney General. A United States Attorney's request for authorization to seek a waiver must set forth law enforcement's legitimate need for the information and identify the scope of the waiver sought. A copy of each waiver request and authorization for Category II information must be maintained in the files of the Deputy Attorney General. If the request is authorized, the United States Attorney must communicate the request in writing to the corporation.

If a corporation declines to provide a waiver for Category II information after a written request from the United States Attorney, prosecutors must not consider this declination against the corporation in making a charging decision. Prosecutors may always favorably consider a corporation's acquiescence to the government's waiver request in determining whether a corporation has cooperated in the government's investigation.

Requests for Category II information requiring the approval of the Deputy Attorney General do not include:

(1) legal advice contemporaneous to the underlying misconduct when the corporation or one of its employees is relying upon an advice-of-counsel defense; and

(2) legal advice or communications in furtherance of a crime or fraud, coming within the crime-fraud exception to the attorney-client privilege.

In these two instances, prosecutors should follow the authorization process established for requesting waiver for Category I information.

-11-

For federal prosecutors in litigating Divisions within Main Justice, waiver requests for Category I information must be submitted for approval to the Assistant Attorney General of the Division and waiver requests for Category II information must be submitted by the Assistant Attorney General for approval to the Deputy Attorney General. If the request is authorized, the Assistant Attorney General must communicate the request in writing to the corporation.

Federal prosecutors are not required to obtain authorization if the corporation voluntarily offers privileged documents without a request by the government. However, voluntary waivers must be reported to the United States Attorney or the Assistant Attorney General in the Division where the case originated. A record of these reports must be maintained in the files of that office.

3. Shielding Culpable Employees and Agents

Another factor to be weighed by the prosecutor is whether the corporation appears to be protecting its culpable employees and agents. Thus, while cases will differ depending on the circumstances, a corporation's promise of support to culpable employees and agents, *e.g.,* through retaining the employees without sanction for their misconduct or through providing information to the employees about the government's investigation pursuant to a joint defense agreement, may be considered by the prosecutor in weighing the extent and value of a corporation's cooperation.

Prosecutors generally should not take into account whether a corporation is advancing attorneys' fees to employees or agents under investigation and indictment. Many state indemnification statutes grant corporations the power to advance the legal fees of officers under investigation prior to a formal determination of guilt. As a consequence, many corporations enter into contractual obligations to advance attorneys' fees through provisions contained in their corporate charters, bylaws or employment agreements. Therefore, a corporation's compliance with governing state law and its contractual obligations cannot be considered a failure to cooperate.[3] This prohibition is not meant to prevent a prosecutor from asking questions about an

_____

[3] In extremely rare cases, the advancement of attorneys' fees may be taken into account when the totality of the circumstances show that it was intended to impede a criminal investigation. In these cases, fee advancement is considered with many other telling facts to make a determination that the corporation is acting improperly to shield itself and its culpable employees from government scrutiny. *See discussion in* Brief of Appellant-United States, *United States v. Smith and Watson*, No. 06-3999-cr (2d Cir. Nov. 6, 2006). Where these circumstances exist, approval must be obtained from the Deputy Attorney General before prosecutors may consider this factor in their charging decisions. Prosecutors should follow the authorization process established for waiver requests of Category II information (see section VII-2, *infra*).

-12-

attorney's representation of a corporation or its employees.[4]

4. Obstructing the Investigation

Another factor to be weighed by the prosecutor is whether the corporation, while purporting to cooperate, has engaged in conduct intended to impede the investigation (whether or not rising to the level of criminal obstruction). Examples of such conduct include: overly broad assertions of corporate representation of employees or former employees; overly broad or frivolous assertions of privilege to withhold the disclosure of relevant, non-privileged documents; inappropriate directions to employees or their counsel, such as directions not to cooperate openly and fully with the investigation including, for example, the direction to decline to be interviewed; making presentations or submissions that contain misleading assertions or omissions; incomplete or delayed production of records; and failure to promptly disclose illegal conduct known to the corporation.

5. Offering Cooperation: No Entitlement to Immunity

Finally, a corporation's offer of cooperation does not automatically entitle it to immunity from prosecution. A corporation should not be able to escape liability merely by offering up its directors, officers, employees, or agents as in lieu of its own prosecution. Thus, a corporation's willingness to cooperate is merely one relevant factor, that needs to be considered in conjunction with the other factors, particularly those relating to the corporation's past history and the role of management in the wrongdoing.

VIII. Charging a Corporation: Corporate Compliance Programs

A. General Principle: Compliance programs are established by corporate management to prevent and to detect misconduct and to ensure that corporate activities are conducted in accordance with all applicable criminal and civil laws, regulations, and rules. The Department encourages such corporate self-policing, including voluntary disclosures to the government of any problems that a corporation discovers on its own. However, the existence of a compliance program is not sufficient, in and of itself, to justify not charging a corporation for criminal conduct undertaken by its officers, directors, employees, or agents. Indeed, the commission of such crimes in the face of a compliance program may suggest that the corporate management is

---

[4] Routine questions regarding the representation status of a corporation and its employees, including how and by whom attorneys' fees are paid, frequently arise in the course of an investigation. They may be necessary to assess other issues, such as conflict-of-interest. Such questions are appropriate and this guidance is not intended to prohibit such inquiry.

-13-

not adequately enforcing its program. In addition, the nature of some crimes, *e.g.*, antitrust violations, may be such that national law enforcement policies mandate prosecutions of corporations notwithstanding the existence of a compliance program.

B. Comment: A corporate compliance program, even one specifically prohibiting the very conduct in question, does not absolve the corporation from criminal liability under the doctrine of *respondeat superior*. *See United States v. Basic Construction Co.*, 711 F.2d 570 (4th Cir. 1983) ("[A] corporation may be held criminally responsible for antitrust violations committed by its employees if they were acting within the scope of their authority, or apparent authority, and for the benefit of the corporation, even if... such acts were against corporate policy or express instructions."). In *United States v. Potter*, 463 F.3d 9, 25-26 (1st Cir. According to the court, a corporation cannot "avoid liability by adopting abstract rules" that forbid its agents from engaging in illegal acts; "even a specific directive to an agent or employee or honest efforts to police such rules do not automatically free the company for the wrongful acts of agents." Similarly, in *United States v. Hilton Hotels Corp.*, 467 F.2d 1000 (9th Cir. 1972), *cert. denied*, 409 U.S. 1125 (1973), the Ninth Circuit affirmed antitrust liability based upon a purchasing agent for a single hotel threatening a single supplier with a boycott unless it paid dues to a local marketing association, even though the agent's actions were contrary to corporate policy and directly against express instructions from his superiors. The court reasoned that Congress, in enacting the Sherman Antitrust Act, "intended to impose liability upon business entities for the acts of those to whom they choose to delegate the conduct of their affairs, thus stimulating a maximum effort by owners and managers to assure adherence by such agents to the requirements of the Act.[5] It concluded that "general policy statements" and even direct instructions from the agent's superiors were not sufficient; "Appellant could not gain exculpation by issuing general instructions without undertaking to enforce those instructions by means commensurate with the obvious risks." *See also United States v. Beusch*, 596 F.2d 871, 878 (9th Cir. 1979) ("[A] corporation may be liable for the acts of its employees done contrary to express instructions and policies, but ... the existence of such instructions and policies may be considered in determining whether the employee in fact acted to benefit the corporation."); *United States v. American Radiator & Standard Sanitary Corp.*, 433 F.2d 174 (3rd Cir. 1970) (affirming conviction of corporation based upon its officer's participation in price-fixing scheme, despite corporation's defense that officer's conduct violated its "rigid anti-fraternization policy" against any socialization (and exchange of price information) with its competitors; "When the act of the agent is within the scope of his employment or his apparent authority, the corporation is held

---

[5] Although this case and *Basic Construction* are both antitrust cases, their reasoning applies to other criminal violations. In the *Hilton* case, for instance, the Ninth Circuit noted that Sherman Act violations are commercial offenses "usually motivated by a desire to enhance profits," thus, bringing the case within the normal rule that a "purpose to benefit the corporation is necessary to bring the agent's acts within the scope of his employment." 467 F.2d at 1006 & n4. In addition, in *United States v. Automated Medical Laboratories*, 770 F.2d 399, 406 n.5 (4th Cir. 1985), the Fourth Circuit stated "that Basic Construction states a generally applicable rule on corporate criminal liability despite the fact that it addresses violations of the antitrust laws."

-14-

legally responsible for it, although what he did may be contrary to his actual instructions and may be unlawful.").

While the Department recognizes that no compliance program can ever prevent all criminal activity by a corporation's employees, the critical factors in evaluating any program are whether the program is adequately designed for maximum effectiveness in preventing and detecting wrongdoing by employees and whether corporate management is enforcing the program or is tacitly encouraging or pressuring employees to engage in misconduct to achieve business objectives. The Department has no formal guidelines for corporate compliance programs. The fundamental questions any prosecutor should ask are: "Is the corporation's compliance program well designed?" and "Does the corporation's compliance program work?" In answering these questions, the prosecutor should consider the comprehensiveness of the compliance program; the extent and pervasiveness of the criminal conduct; the number and level of the corporate employees involved; the seriousness, duration, and frequency of the misconduct; and any remedial actions taken by the corporation, including restitution, disciplinary action, and revisions to corporate compliance programs.[6] Prosecutors should also consider the promptness of any disclosure of wrongdoing to the government and the corporation's cooperation in the government's investigation. In evaluating compliance programs, prosecutors may consider whether the corporation has established corporate governance mechanisms that can effectively detect and prevent misconduct. For example, do the corporation's directors exercise independent review over proposed corporate actions rather than unquestioningly ratifying officers' recommendations; are the directors provided with information sufficient to enable the exercise of independent judgment, are internal audit functions conducted at a level sufficient to ensure their independence and accuracy and have the directors established an information and reporting system in the organization reasonably designed to provide management and the board of directors with timely and accurate information sufficient to allow them to reach an informed decision regarding the organization's compliance with the law. *In re: Caremark*, 698 A.2d 959 (Del. Ct. Chan. 1996).

Prosecutors should therefore attempt to determine whether a corporation's compliance program is merely a "paper program" or whether it was designed and implemented in an effective manner. In addition, prosecutors should determine whether the corporation has provided for a staff sufficient to audit, document, analyze, and utilize the results of the corporation's compliance efforts. In addition, prosecutors should determine whether the corporation's employees are adequately informed about the compliance program and are convinced of the corporation's commitment to it. This will enable the prosecutor to make an informed decision as to whether the corporation has adopted and implemented a truly effective compliance program that, when consistent with other federal law enforcement policies, may result in a decision to charge only the corporation's employees and agents.

---

[6] For a detailed review of these and other factors concerning corporate compliance programs, *see* USSG §8B2.1.

Compliance programs should be designed to detect the particular types of misconduct most likely to occur in a particular corporation's line of business. Many corporations operate in complex regulatory environments outside the normal experience of criminal prosecutors. Accordingly, prosecutors should consult with relevant federal and state agencies with the expertise to evaluate the adequacy of a program's design and implementation. For instance, state and federal banking, insurance, and medical boards, the Department of Defense, the Department of Health and Human Services, the Environmental Protection Agency, and the Securities and Exchange Commission have considerable experience with compliance programs and can be very helpful to a prosecutor in evaluating such programs. In addition, the Fraud Section of the Criminal Division, the Commercial Litigation Branch of the Civil Division, and the Environmental Crimes Section of the Environment and Natural Resources Division can assist U.S. Attorneys' Offices in finding the appropriate agency office and in providing copies of compliance programs that were developed in previous cases.

IX.    Charging a Corporation: Restitution and Remediation

A. General Principle: Although neither a corporation nor an individual target may avoid prosecution merely by paying a sum of money, a prosecutor may consider the corporation's willingness to make restitution and steps already taken to do so. A prosecutor may also consider other remedial actions, such as implementing an effective corporate compliance program, improving an existing compliance program, and disciplining wrongdoers, in determining whether to charge the corporation.

B. Comment: In determining whether or not a corporation should be prosecuted, a prosecutor may consider whether meaningful remedial measures have been taken, including employee discipline and full restitution. A corporation's response to misconduct says much about its willingness to ensure that such misconduct does not recur. Thus, corporations that fully recognize the seriousness of their misconduct and accept responsibility for it should be taking steps to implement the personnel, operational, and organizational changes necessary to establish an awareness among employees that criminal conduct will not be tolerated. Among the factors prosecutors should consider and weigh are whether the corporation appropriately disciplined the wrongdoers and disclosed information concerning their illegal conduct to the government.

Employee discipline is a difficult task for many corporations because of the human element involved and sometimes because of the seniority of the employees concerned. While corporations need to be fair to their employees, they must also be unequivocally committed, at all levels of the corporation, to the highest standards of legal and ethical behavior. Effective internal discipline can be a powerful deterrent against improper behavior by a corporation's employees. In evaluating a corporation's response to wrongdoing, prosecutors may evaluate the willingness of the corporation to discipline culpable employees of all ranks and the adequacy of the discipline imposed. The prosecutor should be satisfied that the corporation's focus is on the integrity and credibility of its remedial and disciplinary measures rather than on the protection of the wrongdoers.

-16-

In addition to employee discipline, two other factors used in evaluating a corporation's remedial efforts are restitution and reform. As with natural persons, the decision whether or not to prosecute should not depend upon the target's ability to pay restitution. A corporation's efforts to pay restitution even in advance of any court order is, however, evidence of its "acceptance of responsibility" and, consistent with the practices and policies of the appropriate Division of the Department entrusted with enforcing specific criminal laws, may be considered in determining whether to bring criminal charges. Similarly, although the inadequacy of a corporate compliance program is a factor to consider when deciding whether to charge a corporation, that corporation's quick recognition of the flaws in the program and its efforts to improve the program are also factors to consider.

X.    Charging a Corporation: Collateral Consequences

A. General Principle: Prosecutors may consider the collateral consequences of a corporate criminal conviction in determining whether to charge the corporation with a criminal offense.

B. Comment: One of the factors in determining whether to charge a natural person or a corporation is whether the likely punishment is appropriate given the nature and seriousness of the crime. In the corporate context, prosecutors may take into account the possibly substantial consequences to a corporation's officers, directors, employees, and shareholders, many of whom may, depending on the size and nature (*e.g.,* publicly vs. closely held) of the corporation and their role in its operations, have played no role in the criminal conduct, have been completely unaware of it, or have been wholly unable to prevent it. Prosecutors should also be aware of non-penal sanctions that may accompany a criminal charge, such as potential suspension or debarment from eligibility for government contracts or federal funded programs such as health care. Whether or not such non-penal sanctions are appropriate or required in a particular case is the responsibility of the relevant agency, a decision that will be made based on the applicable statutes, regulations, and policies.

Virtually every conviction of a corporation, like virtually every conviction of an individual, will have an impact on innocent third parties, and the mere existence of such an effect is not sufficient to preclude prosecution of the corporation. Therefore, in evaluating the severity of collateral consequences, various factors already discussed, such as the pervasiveness of the criminal conduct and the adequacy of the corporation's compliance programs, should be considered in determining the weight to be given to this factor. For instance, the balance may tip in favor of prosecuting corporations in situations where the scope of the misconduct in a case is widespread and sustained within a corporate division (or spread throughout pockets of the corporate organization). In such cases, the possible unfairness of visiting punishment for the corporation's crimes upon shareholders may be of much less concern where those shareholders have substantially profited, even unknowingly, from widespread or pervasive criminal activity.

-17-

Similarly, where the top layers of the corporation's management or the shareholders of a closely-held corporation were engaged in or aware of the wrongdoing and the conduct at issue was accepted as a way of doing business for an extended period, debarment may be deemed not collateral, but a direct and entirely appropriate consequence of the corporation's wrongdoing.

The appropriateness of considering such collateral consequences and the weight to be given them may depend on the special policy concerns discussed in section III, *supra*.

XI.    Charging a Corporation: Non-Criminal Alternatives

A. General Principle: Non-criminal alternatives to prosecution often exist and prosecutors may consider whether such sanctions would adequately deter, punish, and rehabilitate a corporation that has engaged in wrongful conduct. In evaluating the adequacy of non-criminal alternatives to prosecution, *e.g.*, civil or regulatory enforcement actions, the prosecutor may consider all relevant factors, including:

1.    the sanctions available under the alternative means of disposition;

2.    the likelihood that an effective sanction will be imposed; and

3.    the effect of non-criminal disposition on federal law enforcement interests.

B. Comment: The primary goals of criminal law are deterrence, punishment, and rehabilitation. Non-criminal sanctions may not be an appropriate response to an egregious violation, a pattern of wrongdoing, or a history of non-criminal sanctions without proper remediation. In other cases, however, these goals may be satisfied without the necessity of instituting criminal proceedings. In determining whether federal criminal charges are appropriate, the prosecutor should consider the same factors (modified appropriately for the regulatory context) considered when determining whether to leave prosecution of a natural person to another jurisdiction or to seek non-criminal alternatives to prosecution. These factors include: the strength of the regulatory authority's interest; the regulatory authority's ability and willingness to take effective enforcement action; the probable sanction if the regulatory authority's enforcement action is upheld; and the effect of a non-criminal disposition on federal law enforcement interests. *See* USAM §§ 9-27.240, 9-27.250.

XII.    Charging a Corporation: Selecting Charges

A. General Principle: Once a prosecutor has decided to charge a corporation, the prosecutor should charge, or should recommend that the grand jury charge, the most serious offense that is consistent with the nature of the defendant's conduct and that is likely to result in a sustainable conviction.

-18-

B. Comment: Once the decision to charge is made, the same rules as govern charging natural persons apply. These rules require "a faithful and honest application of the Sentencing Guidelines" and an "individualized assessment of the extent to which particular charges fit the specific circumstances of the case, are consistent with the purposes of the federal criminal code, and maximize the impact of federal resources on crime." *See* USAM § 9-27.300. In making this determination, "it is appropriate that the attorney for the government consider, inter alia, such factors as the sentencing guideline range yielded by the charge, whether the penalty yielded by such sentencing range ... is proportional to the seriousness of the defendant's conduct, and whether the charge achieves such purposes of the criminal law as punishment, protection of the public, specific and general deterrence, and rehabilitation." *See* Attorney General's Memorandum, dated October 12, 1993.

XIII.   Plea Agreements with Corporations

A. General Principle: In negotiating plea agreements with corporations, prosecutors should seek a plea to the most serious, readily provable offense charged. In addition, the terms of the plea agreement should contain appropriate provisions to ensure punishment, deterrence, rehabilitation, and compliance with the plea agreement in the corporate context. Although special circumstances may mandate a different conclusion, prosecutors generally should not agree to accept a corporate guilty plea in exchange for non-prosecution or dismissal of charges against individual officers and employees.

B. Comment: Prosecutors may enter into plea agreements with corporations for the same reasons and under the same constraints as apply to plea agreements with natural persons. *See* USAM §§ 9-27.400-500. This means, *inter alia*, that the corporation should be required to plead guilty to the most serious, readily provable offense charged. As is the case with individuals, the attorney making this determination should do so "on the basis of an individualized assessment of the extent to which particular charges fit the specific circumstances of the case, are consistent with the purposes of the federal criminal code, and maximize the impact of federal resources on crime. In making this determination, the attorney for the government considers, *inter alia*, such factors as the sentencing guideline range yielded by the charge, whether the penalty yielded by such sentencing range ... is proportional to the seriousness of the defendant's conduct, and whether the charge achieves such purposes of the criminal law as punishment, protection of the public, specific and general deterrence, and rehabilitation." *See* Attorney General's Memorandum, dated October 12, 1993. In addition, any negotiated departures from the Sentencing Guidelines must be justifiable under the Guidelines and must be disclosed to the sentencing court. A corporation should be made to realize that pleading guilty to criminal charges constitutes an admission of guilt and not merely a resolution of an inconvenient distraction from its business. As with natural persons, pleas should be structured so that the corporation may not later "proclaim lack of culpability or even complete innocence." *See* USAM §§ 9-27.420(b)(4), 9-27.440, 9-27.500. Thus, for instance, there should be placed upon the record a sufficient factual basis for the plea to prevent later corporate assertions of innocence.

-19-

A corporate plea agreement should also contain provisions that recognize the nature of the corporate "person" and ensure that the principles of punishment, deterrence, and rehabilitation are met. In the corporate context, punishment and deterrence are generally accomplished by substantial fines, mandatory restitution, and institution of appropriate compliance measures, including, if necessary, continued judicial oversight or the use of special masters. *See* USSG §§ 8B1.1, 8C2.1, *et seq.* In addition, where the corporation is a government contractor, permanent or temporary debarment may be appropriate. Where the corporation was *engaged in government contracting fraud, a prosecutor may not negotiate away an agency's right* to debar or to list the corporate defendant.

In negotiating a plea agreement, prosecutors should also consider the deterrent value of prosecutions of individuals within the corporation. Therefore, one factor that a prosecutor may consider in determining whether to enter into a plea agreement is whether the corporation is seeking immunity for its employees and officers or whether the corporation is willing to cooperate in the investigation of culpable individuals. Prosecutors should rarely negotiate away individual criminal liability in a corporate plea.

Rehabilitation, of course, requires that the corporation undertake to be law-abiding in the future. It is, therefore, appropriate to require the corporation, as a condition of probation, to implement a compliance program or to reform an existing one. As discussed above, prosecutors may consult with the appropriate state and federal agencies and components of the Justice Department to ensure that a proposed compliance program is adequate and meets industry standards and best practices. See section VIII, *supra.*

In plea agreements in which the corporation agrees to cooperate, the prosecutor should ensure that the cooperation is complete and truthful. To do so, the prosecutor may request that the corporation waive attorney-client and work product protection, make employees and agents available for debriefing, disclose the results of its internal investigation, file appropriate certified financial statements, agree to governmental or third-party audits, and take whatever other steps are necessary to ensure that the full scope of the corporate wrongdoing is disclosed and that the responsible culprits are identified and, if appropriate, prosecuted. See generally section VII, *supra.*

This memorandum provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice.