# TAB 13

# TAB 13



**AMERICAN BAR ASSOCIATION**

GOVERNMENTAL AFFAIRS OFFICE   •   740 FIFTEENTH STREET, NW   •   WASHINGTON, DC 20005-1022   •   (202) 662-1760

STATEMENT OF

KAREN J. MATHIS

PRESIDENT OF THE AMERICAN BAR ASSOCIATION

before the

COMMITTEE ON THE JUDICIARY

of the

UNITED STATES SENATE

concerning

"THE THOMPSON MEMORANDUM'S EFFECT ON THE RIGHT TO COUNSEL IN CORPORATE INVESTIGATIONS"

SEPTEMBER 12, 2006

Mr. Chairman, Ranking Member Leahy and Members of the Committee:

My name is Karen J. Mathis. I am the President of the American Bar Association (ABA) and a practicing attorney with the firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP in Denver, Colorado. Thank you for the opportunity to testify before you today on behalf of the ABA and its more than 410,000 members on the critical issues surrounding "the Thompson Memorandum's Effect on the Right to Counsel in Corporate Investigations."

The ABA strongly supports preserving the attorney-client privilege and the work product doctrine. We are concerned about language in the Department of Justice's Thompson Memorandum—and other related federal governmental policies and practices—that have begun to seriously erode these fundamental rights.[1] We also are concerned about the separate provision in the Thompson Memorandum that erodes employees' constitutional and other legal rights, including the right to effective legal counsel and the right against self-incrimination.

### The Importance of the Attorney-Client Privilege and the Work Product Doctrine

The attorney-client privilege—which belongs not to the lawyer but to the client—historically has enabled both individual and corporate clients to communicate with their lawyer in confidence. As such, it is the bedrock of the client's rights to effective counsel and confidentiality in seeking legal advice. From a practical standpoint, the privilege also plays a key role in helping companies to act legally and properly by permitting corporate clients to seek out and obtain guidance in how to conform conduct to the law. In addition, the privilege facilitates self-

---

[1] On August 9, 2005, the ABA adopted a resolution, sponsored by the ABA Task Force on Attorney-Client Privilege, supporting the preservation of the attorney-client privilege and work product doctrine, opposing governmental actions that erode these protections, and opposing the routine practice by government officials of seeking the waiver of these protections through the granting or denial of any benefit or advantage. Previously, in August 2004, the ABA adopted a resolution supporting five specific changes to the then-proposed amendments to the Federal Sentencing Guidelines for Organizations, including amending the Commentary to Section 8C2.5 to state affirmatively that waiver of attorney-client and work product protections "should not be a factor in determining whether a sentencing reduction is warranted for cooperation with the government." Both ABA resolutions, and detailed background reports discussing the history and importance of the attorney-client privilege and work product doctrine and recent governmental assaults on these protections, are available at http://www.abanet.org/poladv/acprivilege.htm.

1

investigation into past conduct to identify shortcomings and remedy problems as soon as possible, to the benefit of corporate institutions, the investing community and society-at-large. The work product doctrine underpins our adversarial justice system and allows attorneys to prepare for litigation without fear that their work product and mental impressions will be revealed to adversaries.

### The Thompson Memorandum's Erosion of the Attorney-Client Privilege and the Work Product Doctrine

A number of federal governmental agencies—including the Department of Justice and the U.S. Sentencing Commission—have adopted policies in recent years that weaken the attorney-client privilege and work product doctrine in the corporate context by encouraging federal prosecutors to routinely pressure companies and other organizations to waive these legal protections as a condition for receiving credit for cooperation during investigations.

The Department of Justice's privilege waiver policy is set forth in a January 2003 memorandum written by then-Deputy Attorney General Larry Thompson entitled "Principles of Federal Prosecution of Business Organizations."[2] The so-called "Thompson Memorandum" instructs federal prosecutors to consider certain factors in determining whether corporations and other organizations should receive cooperation credit—and hence leniency—during government investigations. One of the key factors cited in the Thompson Memorandum is the organization's willingness to waive attorney-client and work product protections and provide this confidential information to government investigators. The Thompson Memorandum stated in pertinent part that:

> One factor the prosecutor may weigh in assessing the adequacy of a corporation's cooperation is the completeness of its disclosure including, if necessary, a waiver of the attorney-client and work product protections, both with respect to its internal investigation and with respect to communications between specific officers, directors,

---

[2] Memorandum from Larry D. Thompson, Deputy Attorney General, Department of Justice, to Heads of Department Components, U.S. Attorneys, Principles of Federal Prosecution of Business Organizations (January 20, 2003), at p. 7, available at http://www.usdoj.gov/dag/cftf/business_organizations.pdf.

2

and employees and counsel. Such waivers permit the government to obtain statements of possible witnesses, subjects and targets, without having to negotiate individual cooperation or immunity agreements. In addition, they are often critical in enabling the government to evaluate the completeness of a corporation's voluntary disclosure and cooperation. Prosecutors may, therefore, request a waiver in appropriate circumstances. The Department does not, however, consider waiver of a corporation's attorney-client and work product protection an absolute requirement, and prosecutors should consider the willingness of a corporation to waive such protection when necessary to provide timely and complete information as one factor in evaluating the corporation's cooperation.

The Thompson Memorandum expanded upon a similar directive that a previous Deputy Attorney General, Eric Holder, sent to federal prosecutors in 1999.[3]

Although the Thompson Memorandum, like the earlier Holder Memorandum, stated that waiver is not an absolute requirement, it nevertheless made it clear that waiver was a key factor for prosecutors to consider in evaluating an entity's cooperation. It relied on the prosecutor's discretion to determine whether waiver was necessary in the particular case.

While the Department's privilege waiver policy was established by the 1999 Holder Memorandum and expanded by the 2003 Thompson Memorandum, the issue of coerced waiver was further exacerbated in November 2004 when the U.S. Sentencing Commission added language to the Commentary to Section 8C2.5 of the Federal Sentencing Guidelines that, like the Department's policy, authorized and encouraged prosecutors to seek privilege waiver as a condition for cooperation.[4]

---

[3] *See* Memorandum from Eric Holder, Deputy Attorney General, Department of Justice, to Component Heads and United States Attorneys, Bringing Criminal Charges Against Corporations (June 16, 1999), available at http://www.usdoj.gov/criminal/fraud/policy/Chargingcorps.html. The so-called "Holder Memorandum" stated in pertinent part as follows:

> In gauging the extent of the corporation's cooperation, the prosecutor may consider the corporation's willingness to identify the culprits within the corporation, including senior executives, to make witnesses available, to disclose the complete results of its internal investigation, and to waive attorney-client and work product privileges.

[4] The 2004 amendment to the Sentencing Guidelines added the following language to the Commentary:

In an attempt to address the growing concerns expressed about government-coerced waiver, then-Acting Deputy Attorney General Robert McCallum sent a memorandum to all U.S. Attorneys and Department Heads in October 2005 instructing each of them to adopt "a written waiver review process for your district or component," and local U.S. Attorneys are now in the process of implementing this directive.[5] The McCallum Memorandum does not establish any minimum standards for, or require national uniformity regarding, privilege waiver demands by prosecutors. As a result, the McCallum Memorandum is likely to result in numerous different waiver policies throughout the country, many of which may impose only token restraints on the ability of federal prosecutors to demand waiver. More importantly, it fails to acknowledge and address the many problems arising from government-coerced waiver.

### Unintended Consequences of Prosecutor Demands for Privilege Waiver

The American Bar Association is concerned that the Department of Justice's privilege waiver policy—like the 2004 privilege waiver amendment to the Sentencing Guidelines—has brought about a number of profoundly negative, if unintended, consequences.

First, the ABA believes that these waiver policies adopted by the Department of Justice and the Sentencing Commission have resulted routinely in the compelled waiver of attorney-client privilege and work product protections. Although the Thompson Memorandum and the privilege waiver language in the Sentencing Guidelines state that waiver is not mandatory and should not be

---

> Waiver of attorney-client privilege and of work product protections is not a prerequisite to a reduction in culpability score [for cooperation with the government]…unless such waiver is necessary in order to provide timely and thorough disclosure of all pertinent information known to the organization.

While this language begins by stating a general rule that a waiver is "not a prerequisite" for a reduction in the culpability score—and leniency—under the Guidelines, that statement is followed by a very broad and subjective exception for situations where prosecutors contend that waiver "is necessary in order to provide timely and thorough disclosure of all pertinent information known to the organization." As a result, the exception essentially swallows the rule. Prior to the change, the Commentary was silent on the issue and contained no suggestion that such a waiver would ever be required. For a detailed discussion of the 2004 privilege waiver amendment, please see the ABA's March 28, 2006 written comments to the U.S. Sentencing Commission, available at www.abanet.org/poladv/abaussc32806.pdf.

[5] A copy of the McCallum Memorandum of October 21, 2005 is available online at http://www.abanet.org/poladv/mccallummemo212005.pdf.

4

required in every situation, these policies have led many prosecutors to pressure companies and other entities to waive their privileges on a regular basis as a condition for receiving cooperation credit during investigations. From a practical standpoint, companies have no choice but to waive when requested to do so, as the government's threat to label them as "uncooperative" will have a profound effect not just on charging and sentencing decisions, but on each company's public image, stock price, and credit worthiness as well.

The growing trend of government-coerced waiver was confirmed by a recent survey of over 1,200 in-house and outside corporate counsel that was completed by the Association of Corporate Counsel, the National Association of Criminal Defense Lawyers, and the ABA in March 2006.[6] According to the survey, almost 75% of corporate counsel respondents believe that a "culture of waiver" has evolved in which governmental agencies believe that it is reasonable and appropriate for them to expect a company under investigation to broadly waive attorney-client or work product protections. In addition, 52% of in-house respondents and 59% of outside respondents have indicated that there has been a marked increase in waiver requests as a condition of cooperation in recent years. Corporate counsel also indicated that when prosecutors give a reason for requesting privilege waiver, the Thompson/Holder/McCallum Memoranda and the 2004 amendment to the Sentencing Guidelines were among the reasons most frequently cited.

One example of this growing "culture of waiver" came to light last year when then-U.S. Attorney (and current Deputy Attorney General) Paul McNulty met with approximately fifty corporate general counsel to discuss the growing erosion of the attorney-client privilege. The former General Counsel of a now defunct steel company was one of those attending the meeting, and his story follows.

---

[6] The detailed Survey Results are available online at http://www.acca.com/Surveys/attyclient2.pdf.

When Bethlehem Steel was still in existence, a disgruntled former employee told authorities that the company was burying toxic waste at one of its sites in Texas. Fifty federal agents arrived at the company with a search warrant and backhoes and started digging up the yard. No buried drums were ever found, but, in the course of the search, the investigators found evidence of garden variety environmental violations that, in most circumstances, likely would have been pursued as civil violations. Perhaps understandably, the Department of Justice did not want to drop the matter altogether, and decided to pursue a criminal investigation.

At its very first meeting with the General Counsel, the Department of Justice demanded the privileged internal report prepared by outside counsel and sought cooperation from the company in pursuing charges against individual employees. No middle-ground alternative was entertained. Firmly believing that no knowing or intentional violation had occurred, the General Counsel declined the request, and the company prepared its defenses. In the end, the Department did not charge a single individual; the company negotiated a plea and paid a fine.

The Bethlehem Steel example exemplifies a situation where prosecutors—operating under an increasingly expansive interpretation of the Thompson Memorandum—do not wait for a company to volunteer waiver, but rather seek internal investigation reports and privilege waivers even in cases that arguably never should have been prosecuted. When the other general counsels in the room were asked if they had had similar experiences, 75% of the attendees said they had.

Second, the ABA believes that these governmental policies seriously weaken the confidential attorney-client relationship between companies and their lawyers, resulting in great harm both to companies and the investing public. Lawyers for companies and other organizations play a key role in helping these entities and their officials comply with the law and act in the entity's best interests. To fulfill this role, lawyers must enjoy the trust and confidence of the managers and the board, and must be provided with all relevant information necessary to properly

represent the entity. By requiring routine waiver of an entity's attorney-client and work product protections, these governmental policies discourage entities from consulting with their lawyers, thereby impeding the lawyers' ability to effectively counsel compliance with the law. This harms not only companies, but the investing public as well.

Third, while these waiver policies were intended to aid government prosecution of corporate criminals, they are likely to make detection of corporate misconduct more difficult by undermining companies' internal compliance programs and procedures. These mechanisms, which often include internal investigations conducted by the company's in-house or outside lawyers, are one of the most effective tools for detecting and flushing out malfeasance. Indeed, Congress recognized the value of these compliance tools when it enacted the Sarbanes-Oxley Act in 2002. Because the effectiveness of these internal mechanisms depends in large part on the ability of the individuals with knowledge to speak candidly and confidentially with lawyers, any attempt to require routine waiver of attorney-client and work product protections will seriously undermine systems that are crucial to compliance and have worked well.

For all these reasons, the ABA believes that the Department of Justice's privilege waiver policy and the 2004 privilege waiver amendment to the Sentencing Guidelines are counterproductive. They undermine rather than enhance compliance with the law, as well as the many other societal benefits that are advanced by the confidential attorney-client relationship.

### The ABA's Response to the Privilege Waiver Problem

The ABA is working to protect the attorney-client privilege and the work product doctrine in a number of ways. In 2004, the ABA Task Force on Attorney-Client Privilege was created to study and address the policies and practices of various federal agencies that have eroded attorney-client privilege and work product protections. The Chair of our Task Force, Bill Ide, is a prominent corporate attorney, a former president of the ABA, and the former senior vice president, general

7

counsel, and secretary of the Monsanto Corporation. The ABA Task Force has held a series of public hearings on the privilege waiver issue and received testimony from numerous legal, business, and public policy groups. The Task Force also crafted new ABA policy—unanimously adopted by our House of Delegates—supporting the attorney-client privilege and work product doctrine and opposing government policies that erode these protections.[7] The ABA's policy and other useful resources on this topic are available on our Task Force website at http://www.abanet.org/buslaw/attorneyclient/.

The ABA and our Task Force are also working in close cooperation with a broad and diverse coalition of influential legal and business groups—ranging from the U.S. Chamber of Commerce and the Association of Corporate Counsel to the American Civil Liberties Union and the National Association of Criminal Defense Lawyers—in an effort to modify both the Department of Justice's waiver policy and the 2004 privilege waiver amendment to the Sentencing Guidelines to clarify that waiver of attorney-client privilege and work product protections should not be a factor in determining cooperation.[8] The remarkable political and philosophical diversity of that coalition shows just how widespread these concerns have become in the business, legal, and public policy communities.

After receiving extensive written comments and testimony from the ABA, the coalition, numerous former senior Department of Justice officials, and other organizations,[9] the Sentencing Commission voted unanimously on April 5, 2006, to reverse the 2004 privilege waiver amendment

---

[7] *See* ABA resolution regarding privilege waiver approved in August 2005, discussed in note 1, *supra*.

[8] The Coalition to Preserve the Attorney-Client Privilege consists of the following entities: American Chemistry Council, American Civil Liberties Union, Association of Corporate Counsel, Business Civil Liberties, Inc., Business Roundtable, The Financial Services Roundtable, Frontiers of Freedom, National Association of Criminal Defense Lawyers, National Association of Manufacturers, National Defense Industrial Association, Retail Industry Leaders Association, U.S. Chamber of Commerce, and Washington Legal Foundation.

[9] These statements and other useful resources on the topic of privilege waiver are available at www.abanet.org/poladv/acprivilege.htm.

to the Sentencing Guidelines. The change was included in the package of amendments that the Commission sent to Congress on May 1, 2006. Unless Congress acts to modify or reverse the change, it will become effective on November 1, 2006.

While the Commission's vote to remove the privilege waiver language from the Guidelines is a very positive and encouraging development, the Department of Justice has not yet taken steps to reexamine and remedy its role in the growing problem of government-coerced waiver. As a result, many federal prosecutors continue to demand that companies waive their privileges on a routine basis as a condition for receiving cooperation credit. In addition, the McCallum Memorandum, which requires all 93 U.S. Attorneys around the country to adopt their own local privilege waiver review procedures, will further complicate this issue.

In an effort to address the problems created by the Department's waiver policies, the ABA sent a letter to Attorney General Alberto Gonzales on May 2, 2006. In that letter, which is attached to this written statement as <u>Appendix A</u>,[10] the ABA expressed its concerns over the Department's privilege waiver policy and urged it to adopt specific revisions to the Thompson Memorandum that were prepared by the ABA Task Force and the coalition.

These suggested revisions to the Department of Justice's policy would help remedy the problem of government-coerced waiver while preserving the ability of prosecutors to obtain the important factual information they need to effectively enforce the law. To accomplish this, our proposal would amend the Department's policy by prohibiting prosecutors from seeking privilege waiver during investigations, specifying the types of factual, non-privileged information that prosecutors may request from companies as a sign of cooperation, and clarifying that any voluntary waiver of privilege shall not be considered when assessing whether the entity provided effective

---

[10] The ABA's May 2, 2006 letter to Attorney General Gonzales also is available at www.abanet.org/poladv/acprivgonz5206.pdf.

cooperation. This new language would strike the proper balance between effective law enforcement and the preservation of essential attorney-client privilege and work product protections.

The Department of Justice formally responded to the ABA's May 2 letter on July 18, 2006, and a copy of that letter is attached to this written statement as <u>Appendix B</u>. This response failed to address many of the specific concerns raised by the ABA and simply reasserted the Department's existing policy of coerced waiver. The ABA and the coalition were very disappointed by the Department's response.

### Former Senior Justice Department Officials' Opposition to the Thompson Memorandum's Privilege Waiver Provisions

On September 5, 2006, a group of ten prominent former senior Department of Justice officials from both parties—including three former Attorneys General, three former Deputy Attorneys General, and four former Solicitors General—submitted a letter to Attorney General Gonzales expressing their opposition to the privilege waiver provisions of the Thompson Memorandum.[11] A copy of the correspondence is attached to this statement as <u>Appendix C</u>. In this letter, the former officials voiced many of the same concerns previously raised by the ABA and the coalition and urged the Department to amend the Thompson Memorandum "…to state affirmatively that waiver of attorney-client privilege and work product protections should not be a factor in determining whether an organization has cooperated with the government in an investigation."

This remarkable letter, coming from the very people who ran the Department of Justice a few short years ago, demonstrates just how widespread the concerns over the Department's privilege waiver policy have become. The fact that these individuals previously served as the nation's top law enforcement officials—and were able to convict wrongdoers without demanding the wholesale production of privileged materials—makes their comments even more credible.

---

[11] A similar comment letter was submitted to the U.S. Sentencing Commission by many of these former Department of Justice officials—and former Attorney General Edwin Meese—on August 15, 2005, and that letter is available at http://www.abanet.org/poladv/acpriv_formerdojofficialstletter8-15-05.pdf.

10

## Congressional Review of the Department's Waiver Policy and Suggested Reforms

In addition to the ABA, the coalition, and former Department of Justice officials, many Congressional leaders have also raised concerns over the privilege waiver provisions in the Department's Thompson Memorandum. On March 7, 2006, the House Judiciary Subcommittee on Crime, Terrorism, and Homeland Security held a hearing on the privilege waiver issue.[12] The Justice Department and several representatives of the coalition appeared and testified, while the ABA submitted a written statement for the record.[13] During the hearing, virtually all of the Subcommittee members from both political parties expressed strong support for preserving the attorney-client privilege and serious concerns regarding the Department's waiver policy.

Although the ABA and the coalition are very encouraged by the Sentencing Commission's recent decision to reconsider and reverse its 2004 privilege waiver amendment to the Federal Sentencing Guidelines, the Department of Justice has declined to modify its privilege waiver policy as stated in the Thompson Memorandum. As a result, many federal prosecutors continue to demand that companies waive their privileges as a condition for receiving cooperation credit. In addition, in response to the 2005 McCallum Memorandum, local U.S. Attorneys are now in the process of adopting local privilege waiver review procedures, which will likely result in numerous different waiver policies throughout the country.

For these reasons, the ABA urges the Committee, in the course of exercising its oversight authority, to send a strong message to the Department of Justice that the attorney-client privilege and the work product doctrine are fundamental principles of our legal system that must be protected, and that the Thompson Memorandum and other related Department directives to its prosecutors are improperly undermining those fundamental rights. The ABA urges the Committee

---

[12] An unofficial transcript of the March 7, 2006 hearing before the House Judiciary Subcommittee on Crime, Terrorism, and Homeland Security is available online at: http://www.abanet.org/poladv/attyp_transcript5706.pdf.

[13] The written statements of the ABA and the witnesses appearing at the hearing are available at http://www.abanet.org/poladv/testimony306.pdf

11

to encourage the Department to modify the Thompson Memorandum to: (1) prohibit federal prosecutors from demanding, requesting, or encouraging, directly or indirectly, that companies waive their attorney-client or work product protections during investigations, (2) specify the types of factual, non-privileged information that prosecutors may request from companies during investigations as a sign of cooperation, and (3) clarify that any voluntary decision by a company to waive the attorney-client privilege and the work product doctrine shall not be considered when assessing whether the entity provided effective cooperation.

### The Thompson Memorandum's Erosion of Employees' Constitutional and other Legal Rights and Suggested Reforms

While preserving the attorney-client privilege and the work product doctrine is critical to promoting effective corporate governance and compliance with the law, it is equally important to protect employees' constitutional and other legal rights—including the right to effective counsel and the right against self-incrimination—when a company or other organization is under investigation. In addition to its privilege waiver provisions, the Thompson Memorandum also contains language directing prosecutors, in determining cooperation, to consider an organization's willingness to take certain punitive actions against its own employees and agents during investigations. In particular, the Thompson Memorandum encourages prosecutors to deny cooperation credit to companies and other organizations that assist or support their so-called "culpable employees and agents" who are the subject of investigations by (1) providing or paying for their legal counsel, (2) participating in joint defense and information sharing agreements with them, (3) sharing corporate records and historical information about the conduct under investigation with them, or (4) declining to fire or otherwise sanction them for exercising their Fifth Amendment rights in response to government requests for information.[14]

---

[14] The Thompson Memorandum provided in pertinent part that:

> ...a corporation's promise of support to culpable employees and agents, either through the advancing of

The ABA strongly opposes these provisions in the Thompson Memorandum[15] for a number of reasons.

First, the Department of Justice's policy is inconsistent with the fundamental legal principle that all prospective defendants—including an organization's current and former employees, officers, directors and agents—are presumed to be innocent. When implementing the directives in the Thompson Memorandum, prosecutors often take the position that certain employees and other agents suspected of wrongdoing are "culpable" long before their guilt has been proven or the company has had an opportunity to complete its own internal investigation. In those cases, the prosecutors often pressure the company to fire the employees in question or refuse to provide them with legal representation or otherwise assist them with their legal defense as a condition for receiving cooperation credit. The Department's policy stands the presumption of innocence principle on its head. In addition, the policy overturns well-established corporate governance practices by forcing companies to abandon the traditional practice of indemnifying their employees and agents or otherwise assisting them with their legal defense for employment-related conduct until it has been determined that the employee or agent somehow acted improperly.

---

attorneys fees, through retaining the employees without sanction for their misconduct, or through providing information to the employees about the government's investigation pursuant to a joint defense agreement, may be considered by the prosecutor in weighing the extent and value of a corporation's cooperation.

See Thompson Memorandum, note 4 *supra*, at pgs. 7-8. The Thompson Memorandum does not provide any measure by which an organization is expected to determine whether an employee or agent is "culpable" for purposes of the government's assessment of cooperation and, in part as a consequence, an organization may feel compelled either to defer to the government investigators' initial judgment or to err on the side of caution.

[15] On August 8, 2006, the ABA approved a resolution, sponsored by the ABA Task Force on Attorney-Client Privilege and the New York State Bar Association, opposing government policies, practices and procedures that erode employees' constitutional and other legal rights by requiring, encouraging, or permitting prosecutors to consider certain factors in determining whether a company or other organization has been cooperative during an investigation. These factors include whether the organization (1) provided or funded legal representation for an employee, (2) participated in a joint defense and information sharing agreement with an employee, (3) shared its records or historical information about the conduct under investigation with an employee, or (4) declined to fire or otherwise sanction an employee who exercised his or her Fifth Amendment rights in response to government requests for information. The ABA resolution and a detailed background report are available at http://www.abanet.org/buslaw/attorneyclient/.

Second, it should be the prerogative of a company to make an independent decision as to whether an employee should be provided defense or not. The fiduciary duties of the directors in making such decisions are clear, and they are in the best position to decide what is in the best interest of the shareholders.

Third, these provisions of the Thompson Memorandum improperly weaken the entity's ability to help its employees to defend themselves in criminal actions. It is essential that employees, officers, directors and other agents of organizations have access to competent representation in criminal cases and in all other legal matters. In addition, competent representation in a criminal case requires that counsel investigate and uncover relevant information.[16] The Thompson Memorandum seeks to undermine the ability of employees and other personnel to defend themselves, by seeking to prevent companies from sharing records and other relevant information with them and their lawyers. However, subject to limited exceptions, lawyers should not interfere with an opposing party's access to such information.[17] The language in the Thompson Memorandum undermines these rights by encouraging prosecutors to penalize companies that provide legal counsel, information or other assistance to their employees and agents during investigations.

The costs associated with defending a government investigation involving complex corporate and financial transactions can often run into the hundreds of thousands of dollars.

---

[16] *See, e.g.*, ABA Standards Relating to the Administration of Criminal Justice, The Defense Function, Standard 4-4.1(a) (3d ed. 1992) ( "Defense counsel should conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.").

[17] *See, e.g.*, ABA Standards Relating to the Administration of Criminal Justice, The Prosecution Function, Standard 3-3.1(d) (3d ed. 1992) ( "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. A prosecutor should not advise any person or cause any person to be advised to decline to give to the defense information which such person has a right to give."); *id.*, The Defense Function, Standard 4-4.3(d) ("Defense counsel should not discourage or obstruct communication between prospective witnesses and the prosecutor. It is unprofessional conduct to advise any person other than a client, or cause such person to decline to give to the prosecutor or defense counsel for codefendants information which such person has a right to give."); ABA Model Rules of Professional Conduct, Rule 3..4(g) (providing that a lawyer may not "request a person other than the client [or a relative or employee of the client] to refrain from voluntarily giving relevant information to another party.").

Therefore when government prosecutors—citing the Thompson Memorandum's directives—succeed in pressuring a company not to pay for the employee's legal defense, the employee typically may be unable to afford effective legal representation. In addition, when prosecutors demand and receive a company's agreement to not assist employees with other aspects of their legal defense—such as participating in joint defense and information sharing agreements with the employees with whom the company has a common interest in defending against the investigation or by providing them with corporate records or other information that they need to prepare their defense—the employees' rights are undermined.

Fourth, several of these employee-related provisions of the Thompson Memorandum have been declared to be constitutionally suspect by the federal judge presiding over the pending case of *U.S. v. Stein*, also known as the "KPMG case." On June 26 of this year, U.S. District Court Judge Lewis A. Kaplan issued an extensive opinion suggesting that the provisions in the Thompson Memorandum making a company's advancement of attorneys' fees to employees a factor in assessing cooperation violated the employees' Fifth Amendment right to substantive due process and their Sixth Amendment right to counsel.[18] In addition, Judge Kaplan subsequently determined that certain KPMG employees' statements were improperly coerced in violation of their Fifth Amendment rights against self-incrimination as a result of the pressure that the government and KPMG placed on the employees to cooperate as a condition of continued employment and payment of legal fees.[19]

For all of these reasons, the ABA urges the Committee to encourage the Department of Justice to modify the Thompson Memorandum to prohibit prosecutors from demanding, requesting,

---

[18] *United States v. Stein*, No. S1 05 Crim. 0888 (LAK) (June 26, 2006). For a more detailed discussion of Judge Kaplan's rulings in the case, please see the background report accompanying the ABA's August 2006 resolution referenced in note 15, *supra*. The background report is available online at http://www.abanet.org/buslaw/attorneyclient/materials/hod/emprights_report_adopted.pdf.

[19] *See United States v. Stein*, July 25, 2006, Memorandum Opinion and Order at 36-37.

or encouraging that companies take any of these four types of punitive action against employees or other corporate agents as a condition for receiving cooperation credit.

The ABA believes that these changes, and the other proposed changes to the Thompson Memorandum discussed earlier in our testimony, would strike the proper balance between effective law enforcement and the preservation of essential attorney-client, work product, and employee legal protections.

We appreciate the opportunity to appear before the Committee and present our views on these subjects, which are of such vital importance to our system of justice, and I look forward to your questions.