1  MORGAN, LEWIS & BOCKIUS LLP
   JOHN H. HEMANN (SBN 165823)
2  JOSEPH E. FLOREN (SBN 168292)
   THOMAS R. GREEN (SBN 203480)
3  One Market, Spear Street Tower
   San Francisco, CA  94105-1126
4  Tel:  415.442.1000
   Fax:  415.442.1001
5
   Attorneys for Third Party KLA-Tencor Corporation
6

7

8                  UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  SECURITIES AND EXCHANGE          Case No. C-07-3798-JW
    COMMISSION,
12                                   **DECLARATION OF JOHN H. HEMANN**
                 Plaintiff,          **IN SUPPORT OF NON-PARTY KLA-**
13                                   **TENCOR CORPORATION'S**
         v.                          **OPPOSITION TO KENNETH L.**
14                                   **SCHROEDER'S MOTION TO COMPEL**
    KENNETH L. SCHROEDER,
15                                   Date:        September 9, 2008
                 Defendant.          Time:        10:00 a.m.
16                                   Dept.:       Courtroom 2, 5th Floor
                                     Judge:       Magistrate Judge Howard R. Lloyd
17
                                     Trial Date:
18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

I, John H. Hemann, declare under penalty of perjury as follows:

1.      I am an attorney licensed to practice before all the courts in the State of California, and a partner with the law firm of Morgan, Lewis & Bockius LLP, counsel of record for Non-Party KLA-Tencor Corporation ("KLA" or the "Company"), on whose behalf I make this declaration. If called as a witness I would competently testify to the following facts, all of which are within my own personal knowledge, or based on information and belief, as to those matters I believe to be true. I make this declaration in support of KLA's Opposition to the Motion of Kenneth L. Schroeder To Compel Further Responses To Discovery Requests (Testimony And Documents) By (1) KLA-Tencor Corporation and (2) Skadden, Arps, Slate, Meagher & Flom LLP, Attorneys For The Special Committee Of KLA's Board Of Directors (the "Motion to Compel").

2.      I was an Assistant U.S. Attorney for almost ten years prior to joining Morgan Lewis in 2005. From August 2003 through December 2004 I was assigned to the Department of Justice, Enron Task Force. During my tenure with the U.S. Attorney's Office ("USAO") and Enron Task Force I had experience in prosecuting securities fraud claims against corporations and their officers and directors. I have also served as defense counsel for numerous civil and criminal securities fraud investigations since joining Morgan Lewis. It has been my experience on both the prosecution and defense sides that corporations face enormous pressure to comply with requests for privileged and confidential materials made by government prosecutors. This was particularly the case between January 2003 and December 2006, during which time the "Thompson Memorandum" governed the federal prosecution of business organizations. A copy of the Thompson Memorandum is attached as **Exhibit 1** to this declaration.

3.      Among other things, the Thompson Memorandum made it mandatory for federal prosecutors tasked with determining whether or not to charge a corporation with a crime to consider "the willingness of a corporation to ['voluntarily'] waive such [attorney client and work product] protection when 'necessary' to provide timely and complete information as one factor in evaluating the corporation's cooperation." As such, any company that asserted the privilege over documents responsive to an investigation being conducted by the Department of Justice while the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20781855.4                                   1                    DECLARATION OF JOHN H. HEMANN
                                                                     CASE NO. C-07-3798-JW

1    Thompson Memorandum was in effect risked being viewed as uncooperative, and in turn, risked

2    the possibility of criminal indictment.

3           4.     During the effective duration of the Thompson Memorandum, the Securities and

4    Exchange Commission ("SEC") operated under the guidelines announced in the so-called

5    "Seaboard Report," formally known as the "Report of Investigation Pursuant to Section 21(a) of

6    the Securities Exchange Act of 1934 and Commission Statement on the Relationship of

7    Cooperation to Agency Enforcement Decisions."  The Seaboard Report similarly equated a

8    company's cooperation with its willingness to produce privileged materials that are responsive to

9    an SEC investigation.  A copy of the Seaboard Report is attached as **Exhibit 2** to this declaration.

10          5.     For more than two years I have represented KLA in connection with numerous

11   actions relating to the alleged retroactive pricing of KLA stock option grants, including the

12   USAO and SEC investigations.  When the SEC and USAO began their investigations in May

13   2006, the Thompson Memorandum was in full effect.  Both the SEC and USAO requested the

14   Company to produce all documents relating to KLA's historical stock option practices, including

15   privileged information.  In view of the requirements of the Thompson Memorandum, and

16   Seaboard Report, the Company determined that it was effectively required to produce documents

17   protected by the attorney-client privilege and attorney work product doctrine, or be deemed not to

18   be cooperating with the SEC and USAO investigations.  Accordingly, KLA agreed to produce

19   privileged and confidential documents to government investigators in order to comply with the

20   demands of the Thompson Memorandum and the Seaboard Report.

21          6.     In response to the USAO and the SEC requests for production, KLA agreed to

22   produce a number of privileged documents pursuant to separate confidentiality agreements KLA

23   negotiated with each entity.  Under these confidentiality agreements, the USAO and SEC agreed

24   to maintain the confidentiality of the privileged documents produced by KLA, except as

25   necessary to fulfill their prosecutorial duties.  I negotiated these confidentiality agreements and

26   signed them on behalf of KLA; I understood them to be the most effective means of protecting

27   the corporation's privileges while still cooperating with the USAO and SEC.  KLA received the

28   strongest assurances of confidentiality available under the circumstances.  True and correct copies

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20781855.4

2

DECLARATION OF JOHN H. HEMANN
CASE NO. C-07-3798-JW

of these confidentiality agreements are attached as **Exhibits 3 and 4** to this declaration.

7.      Pursuant to its cooperation obligations, KLA produced thousands of pages of documents to the USAO and SEC in response to the subpoenas, including some privileged communications subject to the confidentiality agreements.  KLA produced the same documents to the SEC that it produced to the USAO.

8.      In December 2006, shortly after KLA had produced its documents in response to the investigations, the Department of Justice superseded the Thompson Memorandum with "McNulty Memorandum," a copy of which is attached as **Exhibit 5** to this declaration.  The McNulty Memo was drafted largely for the purpose of addressing the Justice Department's position on privilege waivers and, in new policy pronouncements, significantly reduced the pressure on companies involved in investigations to produce privileged materials.  It implemented the following changes from the Thompson Memorandum: (1) it deleted the reference to the waiver of the attorney client privilege in the list of nine factors a prosecutor should consider in making a charging decision; (2) it affirmatively described the "extremely important function" of the attorney client privilege and work product protections "in the observance of law and administration of justice"; (3) it affirmatively stated that: "Waiver of attorney-client privilege and work product protection is not a prerequisite to a finding that a company has cooperated in the government's investigation; and (4) it required all local prosecutors to obtain written permission from the United States Attorney to even seek the production of privileged materials and required the United States Attorney to consult with the Assistant Attorney General for the Criminal Division before providing written authorization.

9.      The Department of Justice recently has further acknowledged, under pressure from the U.S. Senate, that the positions taken in the Thompson Memorandum with regard to waiver were unduly aggressive.  In a letter dated July 9, 2008, Deputy Attorney General Mark Filip informed the Senate Judiciary Committee that the Department of Justice expects to further revise its policy and make it explicit that no prosecutor may request a corporation to produce core privileged materials under any circumstances.  A true and correct copy of Deputy Attorney General Mark Filip's July 9, 2008 letter is attached as **Exhibit 6** to this declaration.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20781855.4                    3                    DECLARATION OF JOHN H. HEMANN
CASE NO. C-07-3798-JW

10. The SEC never filed an action alleging securities fraud against KLA. KLA and the SEC entered into a Consent to Entry of Final Judgment on July 25, 2007. In this agreement, KLA voluntarily entered into a permanent injunction prohibiting it from violating the books and record provisions of the federal securities laws. No findings of fact or conclusions of law were made against the Company.

11. The USAO never informed KLA that it was a target or a subject of the Grand Jury Subpoena the USAO served on KLA. The USAO recently informed KLA that it was not going to take action against any of KLA's current or former executives and was closing its case with regard to KLA's historical stock option practices.

12. I am familiar with the presentations that have been made by KLA and its Special Committee to the SEC in connection its historical stock option practices. I also am familiar with the allegations made in this lawsuit and in a lawsuit against KLA's former General Counsel Lisa Berry. Neither KLA nor the Special Committee made any recommendation to the SEC in connection with charges against either Mr. Schroeder or Ms. Berry. KLA's views were not solicited or offered in connection with the filing of civil claims by the SEC against Mr. Schroeder and Ms. Berry. In all of our communications with the SEC and USAO, neither I nor any of my co-counsel at Morgan Lewis ever received any specific commitment or guarantee from the USAO or SEC that KLA would receive any leniency or special treatment as a result of its 'cooperation. The SEC conducted an extensive investigation into KLA's historical stock options practices. I am aware that the SEC conducted numerous interviews and received over 50,000 pages in documents in connection with its investigation. Based on my participation in document and witness production, my communications with the SEC, and my understanding of the SEC's decision-making process, I believe that the SEC made independent decisions with regard to the charges against Mr. Schroeder and Ms. Berry.

13. I am familiar with the Initial Disclosures the SEC produced to Mr. Schroeder in this action. It is my understanding that, as part of its Initial Disclosures, the SEC produced all of the documents KLA had located regarding its option grants that it had previously produced to the SEC and USAO. Counsel for KLA obtained these disclosures from the SEC. A true and correct

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20781855.4

4

DECLARATION OF JOHN H. HEMANN
CASE NO. C-07-3798-JW

copy of the SEC's Initial Disclosures made on or about October 3, 2007 is attached hereto as **Exhibit 7**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and based on my personal knowledge, and that this declaration was executed on August 1, 2008, in Tokyo, Japan.

_____/s/ John H. Hemann_____
John H. Hemann

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

I, Thomas R. Green, am the ECF User whose ID and password are being used to file this DECLARATION OF JOHN H. HEMANN IN SUPPORT OF NON-PARTY KLA-TENCOR CORPORATION'S OPPOSITION TO KENNETH L. SCHROEDER'S MOTION TO COMPEL. In compliance with General Order 45, X.B., I hereby attest that the signatory above has concurred in this filing.

Executed on this 1st day of August 2008 at San Francisco, California.

MORGAN, LEWIS & BOCKIUS, LLP

_____/s/ Thomas R. Green_____
Thomas R. Green

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/20781855.4

5

DECLARATION OF JOHN H. HEMANN
CASE NO. C-07-3798-JW