1  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   RICHARD MARMARO (Cal. Bar No. 91387)
2  300 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  Email:    rmarmaro@skadden.com

5  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   JAMES E. LYONS (Cal. Bar No. 112582)
6  TIMOTHY A. MILLER (Cal. Bar No. 154744)
   Four Embarcadero Center, Suite 3800
7  San Francisco, California 94111-4144
   Telephone:  (415) 984-6400
8  Facsimile:  (415) 984-2698 (fax)
   Email:       jlyons@skadden.com
9               tmiller@skadden.com

10 Attorneys for Non-Parties Skadden, Arps, Slate, Meagher & Flom LLP
   and Individual Skadden Attorneys

11

12                     UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                           SAN JOSE DIVISION

15

16 SECURITIES AND EXCHANGE            )  CASE NO. C 07-3798 (JW) (HRL)
   COMMISSION,                        )
17                                    )  **MEMORANDUM OF POINTS &**
                      Plaintiff,      )  **AUTHORITIES IN SUPPORT OF**
18          vs.                       )  **SKADDEN, ARPS, SLATE, MEAGHER**
                                      )  **& FLOM LLP'S OPPOSITION TO**
19 KENNETH L. SCHROEDER,              )  **KENNETH L. SCHROEDER'S MOTION**
                                      )  **TO COMPEL**
20                    Defendant.      )
                                      )  Date:   September 23, 2008
21                                    )  Time:   10:00 a.m.
                                      )  Courtroom:    8
22                                    )  Judge:  Magistrate Judge Howard R. Lloyd
                                      )
23

24

25

26

27

28

---

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ................................................................................................ii

MEMORANDUM OF POINTS & AUTHORITIES ....................................................1

I.     PRELIMINARY STATEMENT ........................................................1

II.    STATEMENT OF FACTS ..................................................................4

    A.    The Special Committee Investigation ..........................................4

    B.    The Attorney Interview Notes And Draft Interview Memoranda At Issue On This Motion Were Not Produced To The Government ..............5

    C.    PwC's Role as KLA's Independent Auditor ..................................6

    D.    Schroeder's Request for Notes, Drafts and Testimony Related to the Interviews ..............................................................................7

III.   ARGUMENT ......................................................................................8

    A.    The Attorney Interview Notes And Draft Interview Memoranda Constitute Opinion Work Product Subject To Almost Absolute Protection. ......................................................................................8

    B.    Schroeder Concedes That The Production Of The Final Interview Memoranda to the SEC Did Not Waive Opinion Work Product Protection. ....................................................................................12

    C.    The Testimony Of Skadden Attorneys Regarding The Special Committee Interviews Is Protected Because It Would Reveal Opinion Work Product. ............................................................................16

    D.    Disclosure of Documents to PwC Did Not Constitute a Waiver of Work Product Protection ..........................................................17

    E.    Schroeder's Catch-All Request For All Communications Concerning The Investigation Violates Both The Attorney Client Privilege And Attorney Work Product Protections ............................................19

IV.    CONCLUSION ..................................................................................23

1

# TABLE OF AUTHORITIES

**PAGE(S)**

2

## CASES

3

4

*Akamai Techs., Inc. v. Digital Island, Inc.*,
   No. C-00-3508, 2002 WL 1285126 (N.D. Cal. May 30, 2002)...................................... 13

5

*B.H. ex rel. Holder v. Gold Fields Mining Corp.*,
   239 F.R.D. 652 (N.D. Okla. 2005)........................................................................ 13

6

7

*Baker v. GM Corp.*,
   209 F.3d 1051 (8th Cir. 2000) ......................................................................... 8, 11

8

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) ............................................................................. 20

9

10

*Bovis Lend Lease, LMB, Inc., v. Seasons Contracting Corp.*,
   No. 00 Civ. 9212, 2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002)................................ 13

11

*Canel v. Lincoln Nat'l Bank*,
   179 F.R.D. 224 (N.D. Ill. 1998)......................................................................... 12

12

*Coleman v. Ge*,
   Civ. A. No. 94-CV-4740, 1995 WL 358089 (E.D. Pa. June 8, 1995) ........................ 17

13

14

*Cox v. Adm'r U.S. Steel & Carnegie*,
   17 F.3d 1386 (11th Cir. 1994) .......................................................................... 12

15

*Duplan Corp. v. Derring Milliken Inc.*,
   540 F.2d 1215 (4th Cir. 1976) ....................................................................... 2, 12

16

17

*Frank Betz Assocs., Inc., v. Jim Walter Homes, Inc.*,
   226 F.R.D. 53 (D.S.C. 2005) ............................................................................ 18

18

*Handgards, Inc. v. Johnson & Johnson*,
   413 F. Supp. 926 (N.D. Cal. 1976) ..................................................................... 12

19

20

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ..........................................................................1, 8, 14, 16, 18

21

*In re Air Crash Disaster at Sioux City, Iowa*,
   133 F.R.D. 515 (N.D. Ill. 1990)........................................................................... 9

22

23

*In re Appeal of Hughes*,
   633 F.2d 282 (3d Cir. 1980) ............................................................................. 17

24

*In re Broadcom Corp. Sec. Litig.*,
   No. SACV01275GLTMLGX, 2005 WL 1403513 (C.D. Cal. Apr. 7, 2005)............12, 20, 22, 23

25

26

*In re Diasonics Sec. Litig.*,
   No. C-83-4584-RFP, 1986 WL 53402 (N.D. Cal. June 15, 1986) .......................... 191

27

*In re Grand Jury Investigation*,
   412 F. Supp. 943 (E.D. Pa. 1976) ...................................................................... 15

28

ii

*In re Grand Jury Investigation*,
  599 F.2d 1224 (3d Cir. 1979) ............................................................................... passim

*In re Grand Jury Proceedings*,
  473 F.2d 840 (8th Cir. 1973) .................................................................... 14, 15, 16

*In re Grand Jury Subpoena*,
  357 F.3d 900 (9th Cir. 2004) ................................................................................ 10

*In re JDS Uniphase Corp. Sec. Litig.*,
  No. C-02-1486, 2006 WL 2850049 (N.D. Cal. Oct. 5, 2006) ............................ 17, 18

*In re Leslie Fay Companies Securities Litigation*,
  161 F.R.D. 274 (S.D.N.Y. 1995) .......................................................................... 21, 22

*In re Linerboard Antitrust Litig.*,
  237 F.R.D. 373 (E.D. Pa. 2006).............................................................................. 14, 17

*In re McKesson HBOC, Inc. Sec. Litig.*,
  No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS 7098 (N.D.Cal. Mar. 31, 2005) ..................... 12

*In re Natural Gas Commodity Litig.*,
  No. 03 Civ. 6186 (VM)(AJP), 2005 WL 1457666 (S.D.N.Y. June 21, 2005) .......................... 12

*In re Pfizer Inc. Sec. Lit.*,
  No. 90 Civ. 1260 (SS), 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993)........................................ 18

*In re Royal Ahold N.V. Securities & ERISA Litigation*,
  230 F.R.D. 433 (D. Md. 2005)................................................................................ 21

*In re Sealed Case*,
  676 F.2d 793 (D.C. Cir. 1982) ................................................................................ 16

*In re Sealed Case*,
  856 F.2d 268 (D.C. Cir. 1988) ................................................................................ 17

*Kintera, Inc. v. Convio, Inc.*,
  219 F.R.D. 503 (S.D. Cal. 2003) ..................................................................... 8, 14, 15

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
  244 F.R.D. 412 (N.D. Ill. 2006)................................................................................ 12

*Maruzen Co. v. HSBC USA, Inc.*,
  No. 00 CIV 1079 (RO), 00 CIV 1512 (RO), 2002 WL 1628782 (S.D.N.Y. July 23, 2002)........ 12

*McIntyre v. Main Street & Main Co., Inc.*,
  No. C-99-5328, 2000 U.S. Dist. LEXIS 19617 (N.D. Cal. Sept. 29, 2000)................................. 9

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  229 F.R.D. 441 (S.D.N.Y. 2004) ......................................................................... 18, 19

*Nesse v. Pittman*,
  202 F.R.D. 344 (D.D.C. 2001)................................................................................ 9

*O'Connor v. Boeing N. Am., Inc.*,
  216 F.R.D. 640 (C.D. Cal. 2003) ......................................................................... 8, 14

iii

*Pittman v. Frazer*,
   129 F.3d 983 (8th Cir. 1997) ................................................................................... 12

*Ryan v. Gifford*,
   No. 2213-CC, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007) ...................................... 20

*United States v. Bergonzi*,
   216 F.R.D. 487 (N.D. Cal. 2003) ............................................................................. 11

*United States v. Graham*,
   No. Crim. 03-CR-089-RB, 2003 WL 23198792 (D. Colo. Dec. 2, 2003) ............................ 9, 10

*United States v. Higa*,
   55 F.3d 448 (9th Cir. 1995) ..................................................................................... 15

*United States v. Pollard (In re Martin Marietta Corp.)*,
   856 F.2d 619 (4th Cir. 1988) ...................................................................................... 9

*United States v. Textron Inc.*,
   507 F. Supp. 2d 138 (D.R.I. 2007)................................................................... 17, 18, 19

*United States v. Urban Health Network, Inc.*,
   No. 91-5976, 1993 WL 12811 (E.D. Pa. Jan. 19, 1993) ............................................... 9

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) .............................................................................. 1, 3, 8, 14

*Veeco Instruments, Inc. Sec. Litig.*,
   No. 05-MD-01695, 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) ................................ 14

*Weil v. Investment/Indicators, Research & Management, Inc.*,
   647 F.2d 18 (9th Cir. 1981) ...................................................................................... 22

## STATUTES

Fed. R. Civ. P. 26(b)(3) ...................................................................................... 10

Fed. R. Civ. P. 26(b)(3)(B)................................................................................. 3, 8, 14

Fed. R. Civ. P. 30(b)(6) ...................................................................................... 19

## OTHER AUTHORITY

8 Charles Alan Wright, et al.
   *Federal Practice and Procedure* § 2024 (2d ed. 1994) ........................................... 12

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

## I.    PRELIMINARY STATEMENT

3        On May 22, 2006, the Wall Street Journal published an article suggesting that certain large

4   stock option grants at KLA may have been retroactively priced and backdated.  Inquiries from the

5   United States Securities & Exchange Commission ("SEC"), the United States Attorney's Office

6   ("USAO") and the filing of civil lawsuits followed almost immediately.  The Board of Directors of

7   KLA-Tencor Corporation ("KLA" or the "Company") responded by forming a Special Committee

8   (the "Special Committee") to investigate KLA's historical option granting practices.  The Special

9   Committee retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to act as its

10  independent counsel in connection with the investigation.  Following that investigation, KLA

11  terminated its relationship with Defendant Kenneth Schroeder.  In full cooperation with

12  governmental authorities, the Special Committee provided information regarding its investigation

13  to the SEC and USAO, including, after a special request by the USAO, copies of interview

14  memoranda prepared by Skadden in connection with the investigation (Schroeder calls these the

15  "Final Interview Memoranda").  Schroeder concedes that all documents and Final Interview

16  Memoranda that were provided to the SEC by the Special Committee or KLA have been produced

17  to Schroeder by the SEC.  (Mot. at 21 n.20.)

18        In this Motion to Compel, Schroeder seeks an order compelling production of, among other

19  things, the notes taken by Skadden attorneys at Special Committee interviews and internal attorney

20  drafts of the Final Interview Memoranda, even though these documents have never been shared

21  with the SEC, the USAO or even the Special Committee.  Schroeder is not entitled to discovery of

22  these documents because they constitute opinion work product subject to almost absolute immunity

23  from discovery under decades of United States Supreme Court precedent.  *See Upjohn Co. v.*

24  *United States*, 449 U.S. 383, 399-400 (1981) ("Forcing an attorney to disclose notes and

25  memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the

26  attorney's mental processes.").  For the same reason, Schroeder is not entitled to examine Skadden

27  attorneys regarding their mental impressions and recollections of the interviews.  *Hickman v.*

28  *Taylor*, 329 U.S. 495, 513 (1947) (an attorney should not be compelled to "testify as to what he

1

1  remembers or what he saw fit to write down regarding witnesses' remarks").

2  Despite having received from the SEC all of the documents that the Special Committee

3  provided to the SEC, Schroeder seeks to rummage through Skadden's investigatory files on a

4  fishing expedition for prior inconsistent statements of the witnesses that he hopes can be used to

5  impeach those witnesses if they later testify in this action.  Schroeder's quest is misguided because

6  Skadden's interview notes and draft interview memoranda are not statements adopted by the

7  witnesses.  They are the Skadden attorneys' recollections and impressions of the information

8  learned at the interview.  Moreover, "the desire to impeach or corroborate a witness's testimony" is

9  not sufficient to overcome the near absolute work product protection afforded attorney interview

10  notes and memoranda.  *See In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979).

11  Schroeder contends that the Special Committee and Skadden have waived work product

12  protection with respect to the attorney interview notes and draft interview memoranda by

13  producing the Final Interview Memoranda to the SEC.[1]  (*See* Mot. at 30-31.)  As a matter of law,

14  such implied or "subject matter waiver" theories do not apply to opinion work product.  *See, e.g.,*

15  *Duplan Corp. v. Derring Milliken Inc.*, 540 F.2d 1215, 1222 (4th Cir. 1976).  Indeed, Schroeder

16  concedes as much, contending that Skadden "waived any '<u>fact</u>' work product protection."  (Mot. at

17  19:17-18 (emphasis added).)  Because the attorney interview notes and draft interview memoranda

18  constitute <u>opinion</u> work product, there has been no implied waiver.

19  Moreover, even where implied or "subject matter" waiver theories are applied in the work

20  product context, courts require a showing of unfairness or prejudice to the moving party from

21  partial disclosure of the work product.  Schroeder fails to demonstrate the requisite prejudice here

22  because he has received all of the Final Interview Memoranda that were produced to the SEC and

---

[1]  Schroeder argues at length that the production to the SEC of certain documents otherwise
subject to the attorney-client privilege or attorney work product doctrine waives those
protections with respect to those documents.  (*See e.g.* Mot. at 26-27.)  The Court need not
reach that issue because (i) Schroeder already has those documents; and (ii) as demonstrated
below, even if the attorney-client privilege and attorney work product protections were waived
with respect to the Final Interview Memoranda and other documents produced to the SEC, that
waiver would not effect a waiver with respect to the attorney interview notes and draft
interview memoranda sought in this Motion, much less the documents swept into Schroeder's
"catch-all" request for all files concerning the investigation.  *See infra* at 12, n.4.

1  Schroeder can depose all of the witnesses interviewed by the Special Committee to obtain

2  information relevant to his defense.

3      Schroeder contends that it is "vitally important for Mr. Schroeder to receive the original

4  notes, because they are more likely to reflect what witnesses actually said than the edited Final

5  Interview Memoranda." (Mot. at 19:22-24.)  This amounts to nothing more than a claim of need

6  based on unsupported speculation and conjecture.  The fact that the notes and drafts may be

7  "relevant" or may assist Schroeder in his defense does not justify the production of opinion work

8  product.  *See* Fed. R. Civ. P. 26(b)(3)(B) (the court "must protect against disclosure of the mental

9  impressions, conclusions, opinions, or legal theories of a party's attorney");  *Upjohn*, 449 U.S. at

10  401-02 (opinion work product "cannot be disclosed simply on a showing of substantial need and

11  inability to obtain the equivalent without undue hardship").

12      Schroeder contends that he needs the attorney notes and draft interview memoranda to

13  determine whether Skadden omitted statements made by the witnesses from the Final Interview

14  Memoranda.  (Mot. at 23:8-12.)  But Schroeder must provide more than rank speculation that

15  Skadden concealed material information from its own client (the Special Committee) or the SEC to

16  invade Skadden's opinion work product.  *See, e.g.*, *In re Grand Jury Investigation*, 599 F.2d at

17  1232 (rejecting argument by United States that interview memoranda should be compelled because

18  they might show a corporate cover-up because it was based solely on a "general, unsubstantiated

19  allegation" and "the government's naked assertion that it might discover such a cover-up if granted

20  access to these materials").

21      Schroeder also seeks to compel documents and communications between Skadden or the

22  Special Committee and PriceWaterhouseCoopers ("PwC") regarding the Special Committee's

23  investigation.  As KLA's outside auditor, PwC assisted in the restatement of KLA's financial

24  statements.  In connection with its audit and restatement work, PwC requested from the Company

25  certain information concerning the Special Committee's investigation, which was provided to PwC

26  by Skadden on behalf of the Special Committee.  To the extent that information included Skadden

27  work product, those materials remain protected by the work product doctrine because, under the

28  prevailing majority view, production to PwC did not constitute production to an "adversary" and

3

1  did not substantially increase the risk that Skadden's work product would fall into the hands of an

2  adversary.

3      Schroeder's Motion should accordingly be denied in its entirety.

4  **II.    STATEMENT OF FACTS**

5      **A.    The Special Committee Investigation.**

6      On the same day as the publication of the May 22, 2006, *Wall Street Journal* article, the

7  U.S. Attorney's Office ("USAO") for the Eastern District of New York served the Company with a

8  document subpoena requesting information related to KLA's historical stock option granting

9  practices from 1995 to the present.  Shortly thereafter, the USAO for the Northern District of

10  California and the United States Securities and Exchange Commission ("SEC") commenced

11  investigations into KLA's stock option granting practices.  (Miller Decl. ¶ 2.)

12      Several civil actions were filed against the Company and its current and former officers and

13  directors soon thereafter.  The first class action was filed on June 29, 2006, followed by numerous

14  similar class actions now pending in the Northern District of California under the consolidated

15  caption *In re KLA-Tencor Corporation Securities Litigation*.  (Miller Decl. ¶ 5.)  Shareholder

16  derivative complaints were filed in the Northern District of California, California Superior Court,

17  and Delaware Chancery Court.  (Miller Decl. ¶ 3.)

18      On May 23, 2006, the KLA Board of Directors formed a Special Committee to investigate

19  certain matters relating to the Company's historical stock option granting practices, including the

20  timing of past option grants and the related accounting documentation.  In conducting its

21  investigation, the Special Committee, through its counsel, Skadden, conducted interviews of 55

22  current and former directors, officers, employees and outside advisors of KLA.  (Miller Decl. ¶ 6.)

23  At least two Skadden attorneys attended each of the witness interviews.  (Miller Decl. ¶ 7.)

24      The attorneys who participated in the witness interviews were knowledgeable about the

25  facts and legal theories related to the investigation.  (Miller Decl. ¶¶ 1, 6, 11; Meidan Decl. ¶¶ 4-7;

26  Harlan Decl.¶¶ 4-5; Keable Decl. ¶¶ 4-5; Bellamy Decl. ¶¶ 4, 6; Gabbay Decl. ¶¶ 4-5; Holstein-

27  Childress Decl. ¶¶ 4-5; Lopez Decl. ¶ 4; Van Zandt Decl. ¶¶ 4, 6; Wu Decl. ¶¶ 4, 6.)  The attorneys'

28  knowledge of the facts learned in the investigation and their work in preparing for the interviews

4

provided background for each attorney to identify which facts and comments by the witnesses were important to the investigation.  (Miller Decl. ¶¶ 1, 6, 9, 11; Meidan Decl. ¶¶ 4-7; Harlan Decl.¶¶ 4-5; Keable Decl. ¶¶ 4-5; Bellamy Decl. ¶¶ 4, 6; Gabbay Decl. ¶¶ 4-5; Holstein-Childress Decl. ¶¶ 4-5; Lopez Decl. ¶ 4; Van Zandt Decl. ¶¶ 4, 6; Wu Decl. ¶¶ 4, 6.)

At the conclusion of each interview, the attorney assigned primary note-taking responsibility used his or her notes and recollections of the interview to create an interview memorandum.  (Miller Decl. ¶ 12; Meidan Decl. ¶ 8; Harlan Decl.¶ 8; Keable Decl. ¶ 8; Bellamy Decl. ¶ 8; Gabbay Decl. ¶ 8; Holstein-Childress Decl. ¶ 8; Lopez Decl. ¶ 7; Van Zandt Decl. ¶ 8; Wu Decl. ¶ 8.)  The initial draft of that memorandum was circulated to other attorneys who were present at the interview.  Those attorneys then provided their recollections and impressions of the interview in the form of suggested changes or modifications.  (Miller Decl. ¶ 12.)  Skadden provided the Final Interview Memoranda to the members of the Special Committee to assist it in reaching findings and conclusions regarding KLA's stock option granting process.  (Miller Decl. ¶ 14.)  Skadden's internal notes and draft interview memoranda were not shared with the Special Committee.  (Miller Decl. ¶15.)

**B.    The Attorney Interview Notes And Draft Interview Memoranda At Issue On This Motion Were Not Produced To The Government**

No decision was made by the Special Committee, KLA or Skadden prior to the conclusion of the Special Committee investigation to share the Final Interview Memoranda with the USAO or SEC.  By September 27, 2006, the Special Committee's investigation was substantially complete.  (Miller Decl. ¶ 16.)  On October 12, 2006, Skadden attorneys, with the Special Committee's authorization, met with representatives of the SEC and USAO.  (Miller Decl. ¶ 17.)  Skadden made an oral presentation with the aid of a PowerPoint presentation, but no documents were left with the Government at that time.  (*Id*.)  Skadden indicated at the October 12, 2006, meeting that the Special Committee would be providing the USAO and SEC with a collection of documents gathered from the Company during the investigation.  (Miller Decl. ¶ 18.)  Skadden provided those documents to the USAO and SEC shortly after the meeting pursuant to confidentiality agreements between the USAO/SEC and KLA.  (*Id*.)

5

1    At the October 12, 2006, meeting, counsel for the SEC and USAO asked whether the

2  Special Committee would be willing to provide them with copies of the Final Interview

3  Memoranda.  (Miller Decl. ¶ 20.)  Skadden informed counsel for the SEC and USAO that the

4  Special Committee would prefer not to share the interview memoranda with the Government, but

5  would consider such a request.  (*Id*.)  On November 21, 2006, counsel for the USAO requested

6  copies of the Final Interview Memoranda.  (Miller Decl. ¶ 21 Ex. A.)  Following conversations

7  between KLA, Skadden and the Special Committee, KLA produced the Final Interview

8  Memoranda to the SEC.  (Miller Decl. ¶ 22.)

9    The attorney notes used to prepare the Final Interview Memoranda and the drafts of those

10  memoranda have never been disclosed outside of Skadden.  (Miller Decl. ¶ 15.)  The notes and

11  drafts were not provided to the Special Committee, KLA, the KLA Board of Directors, the USAO

12  or the SEC.  (*Id*.)

13    **C.    PwC's Role as KLA's Independent Auditor**

14    According to KLA's public filings, PwC has acted as KLA's independent outside auditor

15  since as early as 1994.  (Miller Decl. ¶ 23.)  The Company announced in its Form 10-K filed with

16  the SEC on January 29, 2007, that it recorded additional pre-tax, non-cash, stock-based

17  compensation expense of (a) $348 million for the periods July 1, 1994, to June 30, 2005, and (b)

18  $22 million for the year ended June 30, 2006 (the "Restatement").  PwC acted as KLA's outside

19  auditor in connection with this Restatement.  (Miller Decl. ¶ 24.)

20    In connection with the Restatement, representatives from PwC requested information from

21  KLA about the Special Committee's investigation.  (*Id*.)  To this end, on October 18, 2006,

22  Skadden made an oral presentation to representatives of PwC regarding the investigation.  A

23  PowerPoint presentation was used during the discussion, but no documents were provided to PwC

24  at that time.  (Miller Decl. ¶ 25.)  As the Restatement progressed, Skadden provided PwC with

25  additional information about the Special Committee investigation.  (Miller Decl. ¶ 26.)  For

26  example, at PwC's request, Skadden attorneys discussed the information they learned in certain of

27  the interviews with representatives of PwC.  (*Id*.)  During this process, Skadden attorneys referred

28  to the Final Interview Memoranda to refresh their recollection as to the information provided in the

6

1    interviews, but did not provide copies of those memoranda to PwC.  (*Id.*)  Neither the attorney

2    interview notes nor the draft interview memoranda were discussed with or provided to PwC.  (*Id.*)

3        **D.    Schroeder's Request for Notes, Drafts and Testimony Related to the Interviews**

4        In November 2007, Schroeder served Elizabeth Harlan, one of the Skadden note-taking

5    attorneys, with a subpoena for documents and a subpoena for testimony.  Later, Schroeder sent

6    subpoenas for documents and testimony to the rest of the Skadden note-taking attorneys and a

7    separate subpoena for documents to Skadden itself.  (Miller Decl.¶ 27.)

8        During the negotiations regarding the subpoena for testimony sent to Elizabeth Harlan,

9    Skadden explained that it would provide certain information absent a confidentiality agreement,[2]

10   and more information with such an agreement in place, but under no circumstances would it allow

11   Ms. Harlan or any of the other note-takers to testify in a manner that revealed their mental

12   impressions, conclusions or thoughts about the investigation.  (Sloan Decl. ¶ 7.)  Schroeder

13   declined to enter the confidentiality agreement and no depositions have taken place.  (Sloan Decl.

14   ¶ 9, Ex. A.)

15       During these same negotiations, Skadden informed Schroeder that under no circumstances

16   would it produce the handwritten notes or drafts of the Final Interview Memoranda, as such

17   information was protected by the work product doctrine.  (Sloan Decl. ¶ 8.)  However, at

18   Schroeder's request, Skadden did produce certain electronic meta-data reflecting when the Final

19   Interview Memoranda were edited, created and printed, along with redacted versions of the note-

20   takers' billing records and personal calendars.  (Sloan Decl. ¶ 10.)

21       Schroeder's subpoenas for documents also requested communications among Skadden

22   attorneys, communications between Skadden and the Special Committee and documents that

23   reflect communications between and among Skadden, LECG, Company counsel and Company

24   personnel.  Skadden withheld those documents on the basis of the attorney-client privilege or the

25   work product doctrine (or both), and identified the documents on two privilege logs provided with

26

27   [2]   The proposed confidentiality agreement provided, among other things, that the testimony
     would not waive the attorney-client privilege, work product doctrine, or any other applicable

28   privilege or immunity and would not be provided to third parties.  (Sloan Decl. ¶ 6.)

7

1  the responses to Schroeder's subpoenas.  (Coopersmith Decl. Exs. 12, 13.)

2  **III.    ARGUMENT**

3          A.    **The Attorney Interview Notes And Draft Interview Memoranda Constitute Opinion Work Product Subject To Almost Absolute Protection.**

4

5          The work product doctrine is designed to allow attorneys to prepare their cases "with a

6  certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."

7  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  An attorney's work product is reflected in

8  "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs,

9  and countless other tangible and intangible ways."  *Id.* at 511.  As the Supreme Court has

10  recognized, "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into

11  the files and the mental impressions of an attorney."  *Id.* at 510.

12          Courts distinguish between "fact" work product and "opinion" work product.  Fact or

13  "[o]rdinary work product includes raw factual information."  *Baker v. GM Corp.*, 209 F.3d 1051,

14  1054 (8th Cir. 2000); *see also Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003)

15  (fact work product consists of "factual material that is prepared in anticipation of litigation or trial").

16  "Where the selection, organization, and characterization of facts reveals the theories, opinions, or

17  mental impressions of a party or the party's representative, that material qualifies as opinion work

18  product."  *Id.* (emphasis added); *see also id.* ("[T]he court shall protect against disclosure of the

19  mental impressions, conclusions, opinions, or legal theories of an attorney or other representative

20  of a party concerning the litigation."); Fed. R. Civ. P. 26(b)(3)(B) (same).

21          "Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are

22  opinion work product entitled to almost absolute immunity."  *Baker*, 209 F.3d at 1054 (denying

23  motion to compel attorney notes of interviews of company employees).  This is so because, as the

24  United States Supreme Court recognized, "[f]orcing an attorney to disclose notes and memoranda

25  of witnesses' oral statements . . . tends to reveal the attorney's mental processes."  *Upjohn*, 449 U.S.

26  at 399; *see also Hickman*, 329 U.S. at 512-14 (affirming Third Circuit's reversal of order

27  compelling production of counsel's interview memoranda because they constituted attorney work

28  product); *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642-43 (C.D. Cal. 2003) (denying

8

1  motion to compel production of interview notes and memoranda prepared by investigator hired by

2  plaintiff's counsel and finding that "'[n]otes and memoranda of an attorney, or an attorney's agent,

3  from a witness interview are opinion work product entitled to almost absolute immunity'") (citation

4  omitted); *McIntyre v. Main Street & Main Co., Inc.*, No. C-99-5328, 2000 U.S. Dist. LEXIS 19617,

5  at *6 (N.D. Cal. Sept. 29, 2000) (holding that legal assistant's interview notes likely contained

6  mental impressions and theories, and were absolutely protected under the work product doctrine);

7  *United States v. Urban Health Network, Inc*., No. 91-5976, 1993 WL 12811, at *3 (E.D. Pa. Jan. 19,

8  1993) ("There can be no doubt that notes prepared by an attorney or his agent of oral interviews

9  with witnesses are core work product . . .".) (footnote omitted).

10      Skadden's internal drafts of the Final Interview Memoranda also constitute opinion work

11  product.  *Nesse v. Pittman*, 202 F.R.D. 344, 351 (D.D.C. 2001) ("Since drafts can so obviously

12  reflect a lawyer's mental processes, it is hardly surprising that they have been accorded work-

13  product protection.").  Moreover, the drafts are still protected even if the final documents, in this

14  case the Final Interview Memoranda, are produced.  *In re Air Crash Disaster at Sioux City, Iowa*,

15  133 F.R.D. 515, 518 (N.D. Ill. 1990) ("Most courts have held . . . that simply because a final

16  product is disclosed to the public (or a third person), an underlying privilege attaching to drafts of

17  the final product is not destroyed.").

18      Recognizing that there can be no subject matter waiver of opinion work product (Mot. at

19  29:21-22.), Schroeder contends that the interview notes and draft memoranda at issue constitute

20  "fact" work product because they "are intended primarily, if not exclusively, to gather facts and

21  recount the witness' statements made during an interview."  (Mot. at 30:2-4.)  Schroeder relies on

22  *United States v. Pollard* (In re Martin Marietta Corp.), 856 F.2d 619 (4th Cir. 1988), and *United*

23  *States v. Graham*, No. Crim. 03-CR-089-RB, 2003 WL 23198792 (D. Colo. Dec. 2, 2003).  (Mot.

24  at 30.)  Those cases do not help Schroeder here because the Skadden attorneys who took notes at

25  Special Committee interviews were not mere "scriveners" assigned to record verbatim or

26  substantially verbatim the statements of the witnesses at those interviews.  In *Martin Marietta*, the

27  court distinguished between non-opinion work product contained in attorney interview memoranda

28  and "pure mental impressions" of the attorney, which constitute opinion work product.  856 F.2d at

9

625.  Picking up on that distinction, the court in *Graham* held that "where the attorney was acting as a scrivener, not as analyst, then the resulting recorded statement constitutes 'fact' work-product subject to subject matter waiver."  2003 WL 23198792, at *6.

Here, the Skadden attorneys did not act as "scriveners" and the attorney interview notes and draft interview memoranda are not "recorded statement[s]."  Indeed, the attorney interview notes and draft interview memoranda at issue in this motion are exactly the type of opinion work product that the United States Supreme Court and Federal Rule of Civil Procedure 26(b)(3) have singled out for special protection because the notes reflect the mental impressions and processes of the Skadden attorneys attending and participating in the witness interviews.[3]

The notes taken by the Skadden attorneys here are not transcripts or recordings of the interviews.  Rather, they are imbued with each attorney's understanding of the legal and factual issues raised by the investigation.  (Miller Decl. ¶¶ 9-11; Meidan Decl. ¶¶ 7, 9; Harlan Decl.7, 9; Keable Decl. ¶¶ 6-7; Bellamy Decl. ¶ 7; Gabbay Decl. ¶¶ 6-7; Holstein-Childress Decl. ¶¶ 6-7; Lopez Decl. ¶¶ 5-6; Van Zandt Decl. ¶ 7; Wu Decl. ¶ 7.)  The Skadden attorneys relied on their understanding of the important facts that had been learned in the Special Committee investigation and applicable legal theories, to determine, in their judgment, the relevant facts to be recorded.  (Miller Decl. ¶¶ 9, 11; Meidan Decl. ¶ 7; Harlan Decl. ¶ 7; Keable Decl. ¶ 7; Bellamy Decl. ¶ 7; Gabbay Decl. ¶ 7; Holstein-Childress Decl. ¶ 7; Lopez Decl. ¶ 6; Van Zandt Decl. ¶ 7; Wu Decl. ¶ 7.)  The attorneys' knowledge of the case facts and theories provided a filter through which the attorneys sifted the relevant facts conveyed and statements made during the interviews.  *Hickman*,

---

[3]    Schroeder does not dispute that the notes taken in connection with the Special Committee witness interviews were prepared in anticipation of litigation, as required by Federal Rule of Civil Procedure 26(b)(3).  *See, e.g., In re Grand Jury Subpoena*, 357 F.3d 900, 907, 909-10 (9th Cir. 2004) (holding that where documents were created in connection with a company's investigation conducted during the pendency of a related federal government investigation, their litigation purpose "permeate[d]" the documents and the documents were protected work product).  Here, before Skadden began interviewing witnesses on behalf of the Special Committee, the first derivative complaint alleging improprieties in the Company's stock option granting practices had already been filed, and the Department of Justice and Securities and Exchange Commission had initiated inquiries into the Company's stock option granting practices. (Miller Decl. ¶¶ 2-6.)  Thus, throughout the Special Committee investigation, the Company faced not only the threat of litigation, but actual litigation.

1   329 U.S. at 511 (to prepare his case, an attorney must "sift what he considers to be the relevant

2   from the irrelevant facts"); *Baker*, 209 F.3d at 1054 ("Attorney notes reveal an attorney's legal

3   conclusions because, when taking notes, an attorney often focuses on those facts that she deems

4   legally significant.  In this way, attorney notes are akin to an attorney's determination as to which

5   documents are important to a case -- the latter being something we have also held to be protected

6   work product.").

7       Similarly, the Skadden attorneys with primary note-taking responsibility at the interviews

8   drafted the interview memoranda based on their notes and recollections of the interviews.  (Miller

9   Decl. ¶ 12; Meidan Decl. ¶ 8; Harlan Decl. ¶ 8; Keable Decl. ¶ 8; Bellamy Decl. ¶ 8; Gabbay Decl.

10  ¶ 8; Holstein-Childress Decl. ¶ 8; Lopez Decl. ¶ 7; Van Zandt Decl. ¶ 8; Wu Decl. ¶ 8.)  In some

11  cases, the drafts withheld from production are annotated with handwritten comments from other

12  attorneys who provided input regarding the draft interview memoranda.  (Harlan Decl. ¶ 8.)  Thus,

13  the drafts of the interview memoranda reflect the mental impressions and thoughts of at least one

14  and in most cases more than one Skadden attorney, and therefore constitute class opinion work

15  product.  *In re Air Crash Disaster at Sioux City*, 133 F.R.D. at 518.

16      Finally, Schroeder contends that work product protection never applied to the attorney

17  interview notes or draft interview memoranda because KLA or the Special Committee intended

18  from the beginning of the investigation to share the Final Interview Memoranda with the SEC.

19  (Mot. at 24-25.)  Schroeder is wrong on the facts and law.  No decision was made to share the Final

20  Interview Memoranda with the SEC until after the substantial completion of the investigation.

21  Indeed, the Special Committee provided the Final Interview Memoranda to the SEC and USAO

22  only after the USAO made a specific request for them.  (Miller Decl. ¶ 19-22.)  As Schroeder's own

23  case recognizes, moreover, as a matter of law, "there is no requirement, when determining whether

24  the [work product] protection applies, that the attorney and client intend to maintain the material in

25  confidence." *United States v. Bergonzi*, 216 F.R.D. 487, 494 (N.D. Cal. 2003).  Thus, work

26  product protection attached to the interview notes and draft memoranda whether or not KLA

27  intended to share the Final Interview Memoranda with the SEC prior to the commencement of the

28  investigation.

**B.    Schroeder Concedes That The Production Of The Final Interview Memoranda to the SEC Did Not Waive Opinion Work Product Protection.**

Schroeder argues that the production of Final Interview Memoranda to the Government waived work product protection over the attorney notes taken at Special Committee interviews and the drafts leading to the Final Interview Memoranda.[4]  (Mot. at 28-29.)  Schroeder is wrong because the doctrine of implied or "subject matter" waiver does not apply to opinion work product. *See, e.g.*, *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) ("'[D]isclosure of some documents does not destroy work-product protection for other documents of the same character.'") (citation omitted); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) ("[T]he subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege."); *Canel v. Lincoln Nat'l Bank*, 179 F.R.D. 224, 226 (N.D. Ill. 1998) ("[S]ubject matter waiver is not applicable to . . . 'opinion' work product."); *Duplan Corp. v. Derring Milliken Inc.*, 540 F.2d 1215, 1222-23 (4th Cir. 1976) (holding that subject matter waiver does not apply to opinion work product); 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2024 at 367 (2d ed. 1994) ("[D]isclosure of some documents does not destroy work-product protection for

---

[4]    This opposition does not address Schroeder's contention that production of the Final Interview Memoranda to the SEC waived the attorney-client privilege with respect to the communications between Skadden and the interviewees in the Special Committee interviews and the work product protections that apply to those memoranda.  The Court need not reach that issue because the work product protection over those documents is independent of any protections under the attorney-client privilege and must be analyzed separately.  *In re Broadcom Corp. Sec. Litig.*, No. SACV01275GLTMLGX, 2005 WL 1403513, at *3 (C.D. Cal. Apr. 7, 2005) ("Since protections afforded work product and attorney-client communications address different goals, it does not follow that a waiver of one automatically results in a waiver of the other.") (citing *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929-30 (N.D. Cal. 1976)), *aff'd*, 2005 WL 3390052 (C.D. Cal. May 10, 2005).  Nonetheless, we note that several courts have held that production of documents to the government pursuant to a confidentiality agreement does *not* waive the attorney-client privilege or work product protection.  *In re McKesson HBOC, Inc. Sec. Litig.*, No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS 7098 (N.D.Cal. Mar. 31, 2005) (no waiver where production of documents to government was made pursuant to confidentiality agreement); *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186 (VM)(AJP), 2005 WL 1457666, at *8 (S.D.N.Y. June 21, 2005) (same); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, 244 F.R.D. 412, 433 (N.D. Ill. 2006) (same); *Maruzen Co. v. HSBC USA, Inc.*, No. 00 CIV 1079 (RO), 00 CIV 1512 (RO), 2002 WL 1628782, at *1 (S.D.N.Y. July 23, 2002).  If the Court is inclined to reach this issue, Skadden refers to the Court to the arguments made by the Company in its separate brief, and incorporates those arguments herein by reference.  Of course, if the Court does reach the issue and determines that the production of the Final Interview Memoranda to the government did *not* waive the attorney client privilege or work product protection, then there could not possibly be an "implied" or "subject matter" waiver with respect to the documents at issue in this motion.

---

**MEMO OF PTS AND AUTHORITIES ISO SKADDEN'S OPP TO MOT. TO COMPEL    CASE NO. C 07-3798 JW (HRL)**

1 | other documents of the same character.").

2 | Schroeder concedes this point, arguing that "any waiver of the work product protection also

3 | waives the protection for all <u>'fact'</u> work product relating to the same subject matter." (Mot. at

4 | 29:21-22 (emphasis added).)  As demonstrated *supra* at 8-11, the attorney notes and draft interview

5 | memoranda constitute opinion work product.  Therefore, there can be no "subject matter waiver"

6 | with respect to these documents.

7 | Even if the "subject matter waiver" doctrine applied here, which it does not, there is no

8 | subject matter waiver because Schroeder has not and cannot show that the withholding of the

9 | attorney interview notes or draft interview memoranda is "unfair" or causes him undue prejudice.

10 | *See, e.g., Akamai Techs., Inc. v. Digital Island, Inc.*, No. C-00-3508, 2002 WL 1285126, at *10

11 | (N.D. Cal. May 30, 2002) (refusing to address plaintiff's argument that subject mater waiver

12 | resulted from defendant's disclosure of work product because "no fairness consideration" warranted

13 | such an analysis); *B.H. ex rel. Holder  v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 658 (N.D.

14 | Okla. 2005) ("The doctrine of subject matter waiver is narrowly construed, but may be employed

15 | when unfairness is implicated."), *aff'd*, No. 04-CV-0564, 2006 WL 3757809 (N.D. Okla. Dec. 19,

16 | 2006); *Bovis Lend Lease, LMB, Inc., v. Seasons Contracting Corp.*, No. 00 Civ. 9212, 2002 WL

17 | 31729693, at *13 (S.D.N.Y. Dec. 5, 2002) ("'Because unfairness to the party seeking disclosure

18 | plays a central role in determination of the scope of the subject matter waiver, that party must

19 | demonstrate the specific prejudice it would suffer in the absence of the waiver.'") (citation

20 | omitted)).

21 | Schroeder fails to demonstrate any unfairness or prejudice because, as Schroeder admits,

22 | "the SEC has produced to Mr. Schroeder all of the documents that KLA has produced to it."  (Mot.

23 | at 21 n.20.)  The attorney interview notes and draft interview memoranda at issue on this motion

24 | have not been produced to the SEC and, in fact, were not provided to the Special Committee.

25 | (Miller Decl. ¶ 15.)  The SEC relied on the Final Interview Memoranda and its own investigation

26 | and review of Company documents in reaching the decision to bring charges against Schroeder.

27 | Thus, Schroeder is not prejudiced because he stands on a level playing field with the SEC.

28 |

**MEMO OF PTS AND AUTHORITIES ISO SKADDEN'S OPP TO MOT. TO COMPEL    CASE NO. C 07-3798 JW (HRL)**

1    In addition, Schroeder is not prejudiced because he can depose each of the witnesses that

2 was interviewed by Skadden in the course of the Special Committee's investigation.  *See Hickman*,

3 329 U.S. at 509, 513 (noting that the party seeking discovery of witness statements had not shown

4 necessity or undue prejudice because the information "is readily available to him direct from the

5 witnesses for the asking"); *In re Grand Jury Investigation*, 599 F.2d at 1232 (denying motion by

6 United States to compel production of interview memoranda pursuant to grand jury subpoena

7 because all the same witnesses, save one who was deceased, were available to testify before the

8 grand jury); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 387 (E.D. Pa. 2006) (denying

9 motion to compel Rule 30(b)(6) testimony of corporation regarding internal investigation

10 conducted by in-house counsel in part because the witnesses were available for deposition); *In re*

11 *Grand Jury Proceedings*, 473 F.2d 840, 849 (8th Cir. 1973) (reversing contempt against attorney

12 who refused to produce interview summaries to grand jury in part because "the persons whom [the

13 attorney] interviewed are known and accessible to the Grand Jury").[5]

14    Schroeder contends that it is "vitally important for Mr. Schroeder to receive the original

15 notes, because they are more likely to reflect what witnesses actually said than the edited Final

16 Interview Memoranda . . . ."  (Mot. at 19:22-24.)  Schroeder's speculation that Skadden's work

17 product may be "relevant" or helpful to his defense does not justify the production of opinion work

18 product.  *See* Fed. R. Civ. P. 26(b)(3)(B) (the court "must protect against disclosure of the mental

19 impressions, conclusions, opinions, or legal theories of a party's attorney");  *Upjohn*, 449 U.S. at

20 401-02 (opinion work product "cannot be disclosed simply on a showing of substantial need and

21 inability to obtain the equivalent without undue hardship").

22    Schroeder contends that he needs the attorney notes and draft interview memoranda

23 because they may contain prior statements of the witnesses which can be used to impeach those

---

24    [5]   *See also Veeco Instruments, Inc. Sec. Litig.*, No. 05-MD-01695, 2007 WL 724555, at *11

25 (S.D.N.Y. Mar. 9, 2007) ("Ordering production of attorney work product where the relevant
witnesses are available for deposition is exceedingly unusual."); *O'Connor*, 216 F.R.D. at 643

26 ("Discovery of a witness statement to an attorney is generally not allowed if that witness is
available to the other party."); *cf. Kintera*, 219 F.R.D. at 510 (holding under "fact" work

27 product doctrine that party failed to show "substantial need" for signed witness statements

28 because the party could depose all of the same witnesses).

1  witnesses' later testimony, if those witnesses ultimately testify to the contrary.  (Mot. at 22:21-23:5.)

2  But the attorney notes and draft interview memoranda at issue are not statements adopted by the

3  witnesses -- they reflect the Skadden attorneys' mental impressions and recollections of the witness

4  interviews.  *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979), is instructive here

5  because in that case the Third Circuit permitted discovery of answers to questionnaires that were

6  signed by the witnesses, but <u>denied</u> discovery of interview memoranda prepared by counsel in the

7  course of an investigation in part because "the testimonial quality of an attorney's memorandum

8  raises grave concerns not raised by a witness's written statement."  *Id.* at 1232-33.  The Third

9  Circuit held that it did not believe "that the desire to impeach or corroborate a witness's testimony,

10  by itself, would <u>ever</u> overcome the [work product] protection afforded the interview memoranda."

11  *Id.* at 1233 (emphasis added).  Similarly, Schroeder's desire to rummage through Skadden's

12  attorney notes and draft interview memoranda in the hopes of finding impeachment material is not

13  sufficient to overcome the nearly absolute protections of the opinion work product doctrine.  *See*

14  *Hickman*, 329 U.S. at 511-13 (distinguishing between written witness statements and an attorney's

15  recollection of witness interviews, court denied discovery of the latter in part because "forcing an

16  attorney to repeat or write out all that witnesses have told him and to deliver the account to his

17  adversary gives rise to grave dangers of inaccuracy and untrustworthiness").[6]

18       Schroeder's reliance on *United States v. Higa*, 55 F.3d 448 (9th Cir. 1995), is misplaced

19  because in that case a witness had given "two entirely different versions" of the relevant facts, first

20  in testimony before the grand jury and in statements to the police, and later at trial.  *Id.* at 450-51.

21

22  [6]    *See also In re Grand Jury Investigation*, 412 F. Supp. 943, 949 (E.D. Pa. 1976) (attorney's
     notes from a phone interview, which the witness never saw or approved, were absolutely
23     protected from disclosure under the work product doctrine —"Such notes are so much a
     product of the lawyer's thinking and so little probative of the witness's actual words that they
24     are absolutely protected from disclosure."); *In re Grand Jury Proceedings*, 473 F.2d at 849
     (reversing finding of contempt against attorney who refused to produce interview summaries to
25     grand jury despite argument by United States Attorney that the summaries might show that
     "something different" was said by the witnesses to the attorney); *Kintera*, 219 F.R.D. at 510
26     (denying discovery of signed witness statements under "fact" work product doctrine; "The mere
     possibility that these statements may have some impeachment value does not create a
27     substantial need for their production.").

28

1  Thus, the trial court permitted testimony from the witness' counsel and a customs agent regarding

2  prior inconsistent statements made to the grand jury. *Id.* at 451. Schroeder has presented no

3  evidence of any such inconsistent statements. Nothing in *Higa* permits Schroeder to pierce

4  Skadden's opinion work product protections in order to rummage around in Skadden's notes and

5  drafts in the hopes he will discover prior inconsistent statements of witnesses who have yet to

6  testify in this action.

7      Finally, Schroeder contends that he needs the attorney notes and draft interview memoranda

8  to "cross-examine" Skadden attorneys who took notes at the interviews in order to determine

9  "whether Skadden omitted any statements recorded in the original notes" from the Final Interview

10 Memoranda. (Mot. at 23:8-14.) If Schroeder contends that Skadden intentionally and fraudulently

11 concealed material information from its own client (the Special Committee) or the Government in

12 the editing of the Final Interview Memoranda, he must adduce more than his rank speculation as a

13 basis to invade Skadden's opinion work product. *See, e.g.*, *In re Grand Jury Investigation*, 599

14 F.2d at 1232 (rejecting argument by United States that interview memoranda should be compelled

15 because they might show a corporate cover-up because it was based solely on a "general,

16 unsubstantiated allegation" and "the government's naked assertion that it might discover such a

17 cover-up if granted access to these materials"). For this reason, Schroeder's reliance on *In re*

18 *Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982), is misplaced because that case involved evidence that

19 the company's in-house counsel had concealed the documents at issue from the SEC, and the

20 concealed documents revealed that highly suspicious facts had been omitted from the story the

21 company had told the SEC. *See id.* at 817. Schroeder has made no such showing here.

22      **C.    The Testimony Of Skadden Attorneys Regarding The Special Committee
              Interviews Is Protected Because It Would Reveal Opinion Work Product.**

23

24      In addition to the attorney interview notes and draft interview memoranda, Schroeder seeks

25 an order compelling Skadden attorneys to testify regarding the witness interviews. (Mot. at 2:2-4,

26 15 n.18, 22:27-23:5.) Schroeder is not entitled to the requested testimony because an attorney's

27 recollection of witness interviews constitutes opinion work product subject to almost absolute

28 protection. *Hickman v. Taylor*, 329 U.S. at 513 (attorney should not be compelled to "testify as to

16

1  what he remembers or what he saw fit to write down regarding witnesses' remarks"); *In re Appeal*

2  *of Hughes*, 633 F.2d 282, 290 (3d Cir. 1980) (private investigator would not be compelled to testify

3  about interviews he conducted because "examination into his recollection of the interview might

4  have indirectly revealed his, and [the attorney's], mental processes"); *In re Sealed Case*, 856 F.2d

5  268, 273 (D.C. Cir. 1988) (testimony from SEC attorneys about their mental impressions of

6  witness interviews conducted in connection with an insider trading investigation was considered

7  opinion work product); *Coleman v. Ge*, Civ. A. No. 94-CV-4740, 1995 WL 358089, at *2 (E.D. Pa.

8  June 8, 1995) ("facts which counsel considers significant, or any specific questions . . . about the

9  investigation . . . all fall under the category of questions about mental impressions").  As the court

10  in *In re Linerboard Antitrust Litigation*, 237 F.R.D. 373 (E.D. Pa. 2006), stated in denying a

11  motion to compel Federal Rule of Civil Procedure 30(b)(6) testimony of a corporation regarding an

12  internal investigation on the grounds that such testimony would circumvent the opinion work

13  product doctrine:  "It is hard to conceive of a circumstance in which an attorney's mental

14  impressions would be more 'thoroughly intertwined' with facts than in counsel's recollection of an

15  internal investigation."  *Id.* at 386.  Thus, Schroeder is not entitled to any testimony from Skadden

16  attorneys regarding their recollections of the Special Committee interviews.

17          **D.      Disclosure of Documents to PwC Did Not Constitute a Waiver of Work
                      Product Protection.**
18

19          Schroeder contends that disclosures of otherwise protected documents or communications

20  to independent outside auditors waives the attorney-client privilege and work product protection as

21  to any documents provided to PwC as well as to the subject matter of those disclosures.  (Mot. at

22  38:2-4; 39:3-5.)  Schroeder is incorrect because under the majority view, disclosure of work

23  product to an independent auditor does not constitute a waiver, and because PwC is not an

24  adversary to the Special Committee or Skadden.

25          Disclosure of work product to independent auditors does not result in waiver.  *In re JDS*

26  *Uniphase Corp. Sec. Litig.*, No. C-02-1486, 2006 WL 2850049, at *1 (N.D. Cal. Oct. 5, 2006)

27  (explaining that under the majority view, disclosure to an outside auditor does not waive the work

28  product protection).  *See also*, *United States v. Textron Inc.*, 507 F. Supp. 2d 138, 152 (D.R.I. 2007)

1  (noting that "[m]ost courts considering the question have held that disclosure of information to an

2  independent auditor does not waive the work product privilege" and citing cases, including *JDS*

3  *Uniphase*); *Frank Betz Assocs., Inc., v. Jim Walter Homes, Inc.*, 226 F.R.D. 533, 534-35 (D.S.C.

4  2005) (holding disclosure of work product to outside auditor did not waive the protection); *In re*

5  *Pfizer Inc. Sec. Lit.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)

6  (same).

7          Moreover, this standard is in keeping with the general principle that courts find a waiver of

8  the work product doctrine "*only if* [a] disclosure 'substantially increases the opportunity for

9  potential adversaries to obtain the information.'"  *In re Pfizer*, 1993 WL 56 1125, at *6 (emphasis

10  added) (citation omitted).  "[T]he critical inquiry . . . must be whether [the auditor] should be

11  conceived of as an adversary or a conduit to a potential adversary."  *Merrill Lynch & Co. v.*

12  *Allegheny Energy, Inc.*, 229 F.R.D. 441, 447 (S.D.N.Y. 2004).

13          Nothing about Skadden's or the Special Committee's relationships with PwC was

14  adversarial.  The mere fact that PwC was KLA's independent auditor is insufficient to create an

15  adversarial relationship.  *Id.* at 448 (holding that "any tension between an auditor and a corporation

16  that arises from an auditor's need to scrutinize and investigate a corporation's records and book-

17  keeping practices simply is not the equivalent of an adversarial relationship contemplated by the

18  work product doctrine").  Skadden and the Special Committee disclosed documents to PwC to

19  assist PwC in its audit of KLA and Restatement of historical KLA financial statements.  (Miller

20  Decl. ¶ 23-25.)

21          The purpose of Skadden's and the Special Committee's disclosures here, to assist with an

22  audit, are no different than those made in *Textron* or *Merrill Lynch* where the protection was

23  upheld.  In *Textron*, the IRS sought Textron's tax accrual papers, which Textron had disclosed to its

24  auditor, Ernst & Young ("E&Y"), so that E&Y could determine that "the corporation's contingent

25  tax liabilities satisfied the requirements of GAAP."  507 F. Supp. 2d at 154.  And in *Merrill Lynch*,

26  Merrill Lynch disclosed to its auditor, Deloitte & Touche ("D&T"), internal investigative reports

27  regarding the theft of $43 million by one of its employees so that D&T could "'identif[y] any

28  potential internal control, accounting or audit issues'" arising from the theft.  229 F.R.D. at 444

18

1  (alteration in original).  PwC inquired into the Special Committee's investigation for the purpose of

2  performing its audit duties – a purpose indistinguishable from E&Y's in *Textron* or D & T's in

3  *Merrill Lynch*.  In the words of Judge Baer in *Merrill Lynch*, these types of disclosures simply lack

4  the "tangible adversarial relationship" necessary to find waiver.  229 F.R.D at 447.

5        The best that Schroeder can muster in the face of these authorities -- and the majority of

6  cases on the subject -- is *Diasonics*, a one-and-a-half page case that is more than 20 years old and

7  that has limited analysis of disclosure of work product to auditors.  (Mot. at 38:10-15 (citing *In re*

8  *Diasonics Sec. Litig.*, No. C-83-4584-RFP, 1986 WL 53402 (N.D. Cal. June 15, 1986).)  Ironically,

9  Schroeder points the Court to *JDS Uniphase*, which, while thin on analysis, adopts the proper

10 standard governing disclosure of work product to independent auditors.  Schroeder criticizes *JDS*

11 *Uniphase*'s decision to adopt the majority view.  (*See* Mot. at 39:6-13.)  He does not, however,

12 address or attempt to controvert (no doubt because he cannot) the underlying principles that the

13 court found persuasive.

14       Because Skadden's and the Special Committee's disclosures to PwC were not to an

15 adversary or to a conduit to a potential adversary, and because Schroeder has offered no

16 compelling reason for the Court here to diverge from the majority rule, the Court should reject

17 Schroeder's claim of waiver.

18       **E.    Schroeder's Catch-All Request For All Communications Concerning The**
         **Investigation Violates Both The Attorney Client Privilege And Attorney Work**
19       **Product Protections.**

20       Finally, in addition to the attorney interview notes, draft interview memoranda and attorney

21 deposition testimony, Schroeder seeks production of a catch-all category of documents which he

22 characterizes as "all documents and communications concerning the Special Committee

23 investigation."  (Mot. at 2:7-9.)  Relying on a subject matter waiver theory, he argues that

24 Skadden's production of unspecified protected documents, memoranda and communications to the

25 SEC waived the attorney-client privilege and the work product protection as to the entire subject

26 matter of "the Special Committee investigation."  (Mot. at 28:10-14.)  As reflected on Skadden's

27 privilege logs, this "catch-all" request sweeps in numerous internal Skadden communications

28 revealing work product or attorney-client communications; attorney-client communications

MEMO OF PTS AND AUTHORITIES ISO SKADDEN'S OPP TO MOT. TO COMPEL    CASE NO. C 07-3798 JW (HRL)

1    between Skadden attorneys and the Special Committee members; and Skadden's communications

2    with LECG, Morgan Lewis or KLA that reveal attorney-client communications or work product

3    (collectively, the "Catch-All Communications"). (See Coopersmith Decl. Ex. 12 entries 49, 50, 51,

4    53; and Ex. 13 entries 60, 64.)

5                    1.    There Is No Basis For A Broad Waiver Of The Attorney-Client Privilege As
6                          To All Communications About The Investigation.

7            Schroeder contends that KLA's and the Special Committee's cooperation with the SEC

8    waived the attorney client privilege "as to the entire subject matter of the Special Committee

9    investigation." (Mot. at 28:10-13.) Although Schroeder does not specify the documents that he

10   claims trigger this broad waiver, it appears that he focuses on the Special Committee's production

11   of the Final Interview Memoranda to the SEC. (Mot. at 28:17-18 ("purportedly protected

12   documents, memoranda and communications from the internal investigation").) Even if the

13   production of the Final Interview Memoranda waived attorney-client privilege as to the

14   communications between Skadden and the interviewees, there is no basis for the broad waiver

15   asserted by Schroeder as to the Catch-All Communications.

16           The scope of subject matter waiver is guided by principles of fairness and should be

17   narrowly tailored: "While waiver extends to all communications on the same subject matter, it

18   should be 'no broader than needed to ensure the fairness of the proceedings.'" *In re Broadcom*

19   *Corp. Sec. Litig.*, No. SACV01275GLTMLGX, 2005 WL 1403513, at *2 (C.D. Cal. Apr. 7, 2005)

20   (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003), *aff'd*, 2005 WL 3390052 (C.D.

21   Cal. May 10, 2005). Schroeder has not and cannot show that fairness requires production of

22   communications between Skadden and the Special Committee about the investigation because

23   those communications were not disclosed to the SEC and, therefore, could not have been the basis

24   for the SEC's decision to charge Schroeder.

25           *Ryan v. Gifford*, No. 2213-CC, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007), does not

26   support the broad subject matter waiver sought by Schroeder because the Chancery Court rejected

27   the plaintiffs' contention in *Ryan* that disclosure of the Special Committee's final report to the

28   Maxim Board of directors effected a broad waiver as to all communications between the Special

                                                    20

1  Committee and its counsel. *Id.* at *3.  Instead, finding that disclosure of the Special Committee's

2  findings to the Board in the presence of directors potentially implicated in the conduct waived the

3  privilege as to the report, the Chancery Court limited the scope of the waiver to "those

4  communications relating to the final report, including any materials distributed or collected at

5  meetings between the Board members and the Special Committee." *Id.*  The SEC has already

6  produced to Schroeder the Final Interview Memoranda and KLA documents "distributed" to the

7  SEC underlying the Special Committee's presentation of its findings to the SEC.

8      Schroeder points to the Special Committee's cooperation with the SEC, arguing that

9  "[w]here a party makes . . . self-serving, selective use of allegedly privileged documents or

10  communications, fairness dictates that the party's waiver of privilege necessarily extends to the

11  subject matter of the documents or communications disclosed." (Mot. at 28:18-21, citing *In re*

12  *Royal Ahold N.V. Securities & ERISA Litigation*, 230 F.R.D. 433 (D. Md. 2005), and *In re Leslie*

13  *Fay Companies Securities Litigation*, 161 F.R.D. 274 (S.D.N.Y. 1995).)  Those cases do not

14  support the broad subject matter waiver asserted by Schroeder here.

15      *Royal Ahold* was a securities class action in which the company was a defendant.  The

16  company disclosed detailed findings of its internal investigation in a public SEC filing and

17  produced investigative reports to the class plaintiff, which relied heavily on and quoted from the

18  witness interview memoranda, but withheld the interview memoranda from production.  230 F.R.D.

19  at 436.  Based on these disclosures, the court held that the company had waived work product "as

20  to the underlying memoranda supporting its disclosures," and ordered the company to produce the

21  non-opinion work product portions of "the interview memoranda it already has disclosed to the

22  government." *Id.* at 438-39.  Here, by contrast, the SEC has already produced to Schroeder the

23  Final Interview Memoranda underlying KLA's and the Special Committee's disclosures to the SEC.

24  Neither the communications between Skadden and the Special Committee nor the internal Skadden

25  communications regarding the investigation were produced to the SEC and, therefore, could not

26  have been the basis for the SEC's decision to bring charges against Schroeder.

27      *Leslie Fay* is also inapposite because in that case the witnesses who had been interviewed in

28  the investigation were unavailable for testimony (because they were likely to assert their Fifth

1  Amendment rights).  161 F.R.D. at 283.  Here, Schroeder has not shown that any of the witnesses

2  are unavailable for deposition.  Moreover, in *Leslie Fay*, the Company, through a creditors'

3  committee in bankruptcy, affirmatively relied upon conclusions in the report of the internal

4  investigation exonerating senior management and implicating BDO Seidman, the company's

5  outside auditors, as support for claims on behalf of the company against BDO, but withheld

6  interview memoranda referenced in the report from production to BDO.  *Id.* at 283-84.  Here, KLA

7  has not used the findings of the Special Committee in any claims against Schroeder.  Indeed,

8  although the SEC has charged Schroeder in this action, the SEC is not relying on the findings and

9  conclusions of the Special Committee to prove its claims against Schroeder.  Those claims will rise

10 or fall based on the evidence—the historical company documents and the testimony of witnesses in

11 this action—not the determinations made by the Special Committee.  Schroeder has access to all of

12 the relevant historical documents and the witnesses with knowledge of the relevant historical

13 events.

14        Schroeder's reliance on *Broadcom* and *Weil v. Investment/Indicators, Research &*

15 *Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981), is misplaced because both of those cases

16 involved the assertion of a reliance on counsel defense, which effected an implied waiver with

17 respect to the subject matter of the advice.  *See Broadcom*, 2005 WL 1403513, at *2 (defendants

18 relied on advice of counsel regarding legality and accuracy of Broadcom's public statements;

19 waiver limited to communications related to those public statements); *Weil*, 647 F.2d at 23, 25

20 (defendant investment fund disclosed to plaintiff in securities fraud case alleging failure to comply

21 with Blue Sky laws the contents of a privileged communication advising the fund to register under

22 the Blue Sky laws in every state where it had a shareholder).  Neither KLA nor the Special

23 Committee has asserted an advice of counsel defense in this or any other action.

24        2.        There Is No Basis For A Broad Waiver Of Work Product Protection As To
                    All Communications Concerning The Investigation.
25

26        Finally, Schroeder argues that any waiver of the work product doctrine waives the

27 protection for all "fact" work product relating to the same subject matter.  (Mot. at 29:21-22.)  As

28 argued above in Section III.B, subject matter waiver does not apply to "opinion" work product.

22

1   Accordingly, to the extent that the Catch-All Communications constitute opinion work product,

2   they are not amenable to a subject matter waiver theory.  With respect to "fact" work product, the

3   same principles discussed above apply to the analysis—the Ninth Circuit is guided by the concept

4   of fairness and draws the scope of the waiver as narrowly as possible.  *See Broadcom*, 2005 WL

5   1403513, at *2-3.

6        As one would expect, the four month Special Committee investigation, which involved the

7   review of more than 2 million pages of documents and more than 70 interviews of 55 witnesses,

8   generated numerous communications between and among Skadden attorneys, between Skadden

9   and its consultants (LECG), Company counsel (Morgan Lewis) and Company personnel, and

10  between Skadden and the Special Committee.  (Miller Decl. ¶¶ 6, 30.)  Also as one would expect,

11  many of those internal communications contain opinion work product, including analyses of facts

12  learned in the investigation, discussion of key documents, advice as to how to conduct the

13  investigation and conversations with the Special Committee about how the investigation should

14  proceed.  (Miller Decl. ¶¶ 32-35.)  Schroeder's "catch-all" request recklessly wades into this mass

15  of opinion work product on a misdirected fishing expedition for information he hopes will assist in

16  his defense.  Schroeder fails to demonstrate any basis to invade Skadden's opinion or fact work

17  product in the catch-all category.

18  **IV.   CONCLUSION**

19       For the foregoing reasons, Schroeder's Motion to Compel further production by Skadden in

20  response to the subpoenas should be denied.

21  DATED:  August 1, 2008

22                                SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

23

24                                By:  _____/s/_____
                                                Timothy A. Miller
25

26                                      Attorneys for Non-Parties
                                  Skadden, Arps, Slate, Meagher & Flom LLP and
27                                     Individual Skadden Attorneys

28

**MEMO OF PTS AND AUTHORITIES ISO SKADDEN'S OPP TO MOT. TO COMPEL     CASE NO. C 07-3798 JW (HRL)**
207327 San Francisco Server 1A  MSW