SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
RICHARD MARMARO (Cal. Bar No. 91387)
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600
Email:       rmarmaro@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
JAMES E. LYONS (Cal. Bar No. 112582)
TIMOTHY A. MILLER (Cal. Bar No. 154744)
Four Embarcadero Center, Suite 3800
San Francisco, California 94111-4144
Telephone:  (415) 984-6400
Facsimile:   (415) 984-2698 (fax)
Email:       jlyons@skadden.com
             tmiller@skadden.com

Attorneys for Non-Parties Skadden, Arps, Slate, Meagher & Flom LLP
and Individual Skadden Attorneys

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        vs.<br><br>KENNETH L. SCHROEDER,<br><br>                    Defendant. | CASE NO. C 07-3798-JW (HRL)<br><br>**DECLARATION OF TIMOTHY A. MILLER IN SUPPORT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP'S OPPOSITION TO KENNETH L. SCHROEDER'S MOTION TO COMPEL**<br><br>Date:           September 9, 2008<br>Time:          10:00 a.m.<br>Courtroom:   8<br>Judge: Magistrate Judge Howard R. Lloyd |

### DECLARATION OF TIMOTHY A. MILLER

I, Timothy A. Miller, declare:

1.    I am an attorney duly licensed to practice law in the State of California and am a member of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden").  Skadden represents the Special Committee ("SC") of the Board of Directors of KLA-Tencor Corporation ("KLA" or the "Company").  I was one of the principal Skadden attorneys involved in the firm's representation of the SC.  Except where otherwise noted, I have personal knowledge of the facts set forth below and could testify competently thereto.

Formation of the Special Committee

2.    On May 22, 2006, the U.S. Attorney's Office ("USAO") for the Eastern District of New York sent the Company a document subpoena requesting information related to KLA's historical stock option granting practices from 1995 to the present.  Shortly thereafter, the USAO for the Northern District of California and the United States Securities and Exchange Commission ("SEC") commenced investigations into KLA's stock option granting practices.

3.    The first shareholder derivative lawsuit in connection with the Company's option granting practices was filed in the United States District Court for the Northern District of California on May 22, 2006.  Other derivative lawsuits followed in the Northern District of California, California state court, and Delaware state court.

4.    On May 23, 2006, KLA's Board of Directors appointed the SC to conduct an internal investigation relating to past stock option grants, the timing of such grants and related accounting and documentation.  The SC retained Skadden to advise it in connection with its internal investigation.

5.    The first class action against the Company and others, *Garber v. KLA-Tencor Corporation*, was filed on June 29, 2006, in the United States District Court for the Northern District of California.  Additional class actions were also filed in the Northern District of California, and those cases together with the *Garber* case are now pending under the consolidated caption *In re KLA-Tencor Corporation Securities Litigation*.

The SC's Investigation And Skadden's Practices For Memorializing Witness Interviews

6.      The SC investigation spanned approximately four months, and included the review by Skadden of over two million pages of documents.  In carrying out the SC investigation, the SC, through Skadden, also conducted interviews of 55 current and former directors, officers, employees, and outside advisors of KLA, some on multiple occasions.  The first SC interview occurred on June 8, 2006.

7.      At least two Skadden attorneys attended each of the witness interviews.

8.      I personally attended 34 SC interviews, and had responsibility for taking notes at an SC interview of a former senior KLA executive.

9.      The primary responsibility of the attorney taking notes at the SC interviews was to record information provided or observations made by the witness, which, in the attorney's judgment, were of importance to the investigation and relevant to a further understanding of the option granting practices at KLA.

10.     The interviews were not transcribed or recorded and the attorney notes taken at those interviews are not a verbatim account of everything said during the interviews.

11.     When I had responsibility for taking notes at a witness interview, I relied on my understanding of the facts that had been learned in the SC investigation and applicable legal theories to determine, in my judgment, the relevant facts to be recorded in my notes.

12.     After the interview, the attorney assigned primary note-taking responsibility used his or her notes and recollections of the interview to memorialize the interview in writing in the form of an "interview memorandum."  Our practice was for the attorney to circulate an initial draft of that memorandum to the other attorneys who were present at the interview.  Those attorneys then provided any additional recollections and impressions of the interview they may have had in the form of suggested changes or modifications.  These changes were then incorporated into the memoranda, which were finalized ("Final Interview Memoranda").

13.     Neither attorney notes nor any drafts of interview memoranda were shown to or adopted by witnesses who were interviewed in the course of the SC investigation.  The Final Interview Memoranda were never adopted by the witnesses.

14.    Skadden provided the Final Interview Memoranda to the members of the SC to assist them in reaching findings and conclusions regarding KLA's stock option granting process.

15.    Skadden did not disclose the interview notes taken by Skadden attorneys at SC interviews or drafts of SC interview memoranda to the members of the SC, KLA, the KLA Board of Directors, the United States Attorney's Office ("USAO") or the Securities and Exchange Commission ("SEC").  To my knowledge, the interview notes taken by Skadden attorneys at SC interviews and drafts of interview memoranda have never been disclosed to anyone outside of Skadden.

16.    By September 27, 2006, the SC investigation was substantially complete.

Communications with the Government

17.    On October 12, 2006, Skadden attorneys, with the SC's authorization, met with representatives of the SEC and USAO.  I attended this meeting.  Skadden made an oral presentation with the aid of a PowerPoint presentation, but no documents were left with the Government at that time.

18.    Skadden indicated at the October 12, 2006, meeting that the SC would be providing the USAO and SEC with a collection of documents gathered from the Company during the investigation.  Skadden provided those documents to the USAO and SEC shortly after the meeting pursuant to confidentiality agreements between the USAO/SEC and KLA.

19.    No decision was made by the SC, KLA or Skadden prior to the conclusion of the Special Committee investigation to share the Final Interview Memoranda with the USAO or SEC.

20.    At the October 12, 2006, meeting, counsel for the SEC and USAO asked whether the Special Committee would be willing to provide them with copies of the Final Interview Memoranda.  Skadden informed counsel for the SEC and USAO that the SC would prefer not to share the interview memoranda with the Government, but would consider such a request.

21.    On November 21, 2006, counsel for the USAO requested copies of the Final Interview Memoranda.  Attached hereto as Exhibit A is a true and correct copy of an email from Michael Wang of the USAO requesting the Final Interview Memoranda (redacted to remove attorney-client communications and internal communications among Skadden employees).

DECL. OF TIMOTHY A. MILLER ISO SKADDEN'S OPP. MOTION TO COMPEL        CASE NO. C 07-3798-JW (HRL)

22.     KLA produced the Final Interview Memoranda to the SEC and USAO in response to the request.

Communications with PwC

23.     According to KLA's public filings, the accounting firm of PricewaterhouseCoopers ("PwC") has acted as the Company's auditors as early as 1994. As disclosed in the Company's Form 10-K filed with the SEC on January 29, 2007, KLA recorded additional pre-tax, non-cash, stock-based compensation expense of (a) $348 million for the periods July 1, 1994, to June 30, 2005, and (b) $22 million for the year ended June 30, 2006 (the "Restatement").

24.     PwC acted as KLA's outside auditor in connection with this Restatement. In connection with the Restatement, representatives from PwC requested information from KLA about the Special Committee's investigation.

25.     On October 18, 2006, Skadden made an oral presentation to representatives of PwC regarding the investigation. I attended the meeting at which the presentation was given. A PowerPoint presentation was used during the discussion, but no documents were provided to PwC at that time.

26.     At PwC's request, Skadden attorneys also discussed the information they learned in certain of the interviews with representatives of PwC. I participated in and supervised these discussions. During this process, Skadden attorneys referred to the Final Interview Memoranda to refresh their recollection as to the information provided in the interviews, but did not provide copies of those memoranda to PwC. Neither the attorney interview notes nor the draft interview memoranda were discussed with or provided to PwC.

The Present Litigation

27.     From a review of Skadden's files, I understand that on November 1, 2007, defendant Kenneth Schroeder served Elizabeth Harlan, one of the attorneys who took notes at SC interviews, with a subpoena duces tecum. On November 7, 2007, Mr. Schroeder served Ms. Harlan with a separate subpoena for records. On November 12, 2007, Mr. Schroeder sent a subpoena for records to Skadden, and on November 13, 2007, Mr. Schroeder sent subpoenas for records to nine other Skadden attorneys who took notes at SC interviews.

28.    As explained in the accompanying declaration of Matthew Sloan, Skadden produced two privilege logs to Mr. Schroeder in connection with the subpoenas: one on behalf of Skadden attorney Elizabeth Harlan and one on behalf of Skadden and the other attorneys who received subpoenas.

29.    Entries 49-51 and 53 on the Skadden privilege log identify categories of documents withheld from production on the basis of the attorney-client privilege or work product doctrine. A true and correct copy of the log is attached to the Declaration of Jeffrey B. Coopersmith as Exhibit 12. These categories include internal communications between Skadden attorneys, communications between Skadden and the Special Committee, communications between Skadden and Morgan Lewis or KLA-Tencor, and communications between Skadden and LECG, Skadden's consultant in connection with the Special Committee investigation.

30.    During the course of the SC investigation, Skadden attorneys communicated with each other by email many times each day. In addition, Skadden attorneys regularly communicated with the Special Committee, by email and otherwise, sometimes on a daily basis.

31.    Thus, it is possible that Skadden's computer systems and attorney files contain numerous communications potentially falling within Kenneth Schroeder's request for all communications concerning the Special Committee investigation. Documents reflecting these communications were logged on Skadden's privilege logs on a categorical basis to avoid the cost and burden of searching for and identifying each such document.

32.    I have reviewed a sampling of documents reflecting communications between and among Skadden attorneys, and between Skadden attorneys and the Special Committee, concerning the Special Committee investigation. Just the sampling of documents I reviewed contained many documents that reflected the mental impressions and analyses of Skadden attorneys.

33.    For example, the communications between Skadden attorneys and the Special Committee that I reviewed included summaries of interview highlights, discussions of legal theories, discussions of key historic emails, and the Special Committee's requests for information to Skadden. The internal Skadden communications I reviewed included discussions of how to

1  conduct document review and document retention, communications about particular witness

2  interviews, and attorneys' legal and factual theories related to the investigation.

3      34.    With respect to communications between LECG and Skadden, I saw in my review

4  documents related to methods for document review and retention, discussions regarding how to

5  locate and interpret metadata, a collection of documents that LECG deemed important related to a

6  particular witness, and emails discussing special projects that LECG completed during the

7  investigation.

8      35.    With respect to communications between Skadden and Morgan Lewis, I saw in my

9  review documents reflecting numerous requests for information from the Company and discussions

10  of what Skadden did during the investigation.

11     36.    To the best of my knowledge, none of the documents reflecting communications

12  between Skadden and the Special Committee, internal Skadden communications, or conversations

13  with LECG, Morgan Lewis or KLA has been provided to the government.

14     I declare under penalty of perjury under the laws of the United States of America that the

15  foregoing is true and correct.  Executed this 1st day of August, 2008, in San Francisco, California.

16

17  _____
                    /s/
            Timothy A. Miller

18

19

20

21

22

23

24

25

26

27

28