SHIRLI FABBRI WEISS (Bar No. 079225)
DAVID PRIEBE (Bar No. 148679)
JEFFREY B. COOPERSMITH (Bar No. 252819)
**DLA PIPER US LLP**
2000 University Avenue
East Palo Alto, CA 94303-2248
Tel:  (650) 833-2000
Fax:  (650) 833-2001
Email:  shirli.weiss@dlapiper.com
Email:  david.priebe@dlapiper.com
Email:  jeff.coopersmith@dlapiper.com

ELLIOT R. PETERS (Bar No. 158708)
STUART L. GASNER (Bar No. 164675)
**KEKER & VAN NEST LLP**
710 Sansome Street
San Francisco, CA  94111
Tel:  (415) 391-5400
Fax:  (415) 397-7188
E-mail:  EPeters@KVN.com
E-mail:  SGasner@KVN.com

Attorneys for Defendant
KENNETH L. SCHROEDER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>_Plaintiff_,<br><br>v.<br><br>KENNETH L. SCHROEDER,<br><br>_Defendant_. | No. C 07 3798 JW<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF KENNETH L. SCHROEDER TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS (TESTIMONY AND DOCUMENTS) BY (1) KLA-TENCOR CORPORATION AND (2) SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, ATTORNEYS FOR THE SPECIAL COMMITTEE OF KLA'S BOARD OF DIRECTORS**<br><br>**Fed. R. Civ. P. 37(a)(3)(B) and 45(c)(2)(B)(i)**<br><br>Date:       September 23, 2008<br>Time:      10:00 a.m.<br>Courtroom: 2<br>Judge:     Magistrate Judge Howard R. Lloyd |

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

    A.    KLA's Opposition ................................................................................... 2

    B.    Skadden's Opposition ............................................................................. 3

II.    ARGUMENT .................................................................................................... 5

    A.    The Court Should Order KLA To Provide The Requested Discovery ................... 5

        1.    Mr. Schroeder's Motion To Compel Is Not Moot As To KLA ................ 5

        2.    Mr. Schroeder Fully Satisfied His Meet-And-Confer Obligations ............ 7

        3.    Any Qualified Right Of Access Does Not Provide Complete Relief ......... 8

        4.    KLA Waived Any Attorney-Client Privilege As To The Discovery
Sought ....................................................................................... 9

            a.    KLA's Voluntary Production To The Government ....................... 0

            b.    KLA Did Not Have A "Common Interest" With The
Government ......................................................................... 14

            c.    KLA Cannot Selectively Waive The Attorney-Client
Privilege ............................................................................. 15

    B.    The Court Should Order Skadden To Provide The Requested Discovery ........... 16

        1.    Skadden Has Not Established That The Discovery Sought Is
Protected By The Work Product Doctrine ................................................. 16

            a.    Skadden Cannot Claim Work Product Protection In This
Lawsuit ................................................................................ 17

            b.    Documents Created For Disclosure To The Government
Are Not Protected By The Work Product Doctrine ....................... 18

        2.    The Notes, Draft Interview Memoranda And Testimony That
Mr. Schroeder Seeks Are, If Anything, "Fact" Work Product ................. 19

        3.    Mr. Schroeder Is Entitled To All Of The Discovery That He Seeks
Under the Subject Matter Waiver Doctrine .............................................. 24

        4.    Skadden Must Also Produce Any Documents Shared With KLA's
Independent Auditors ................................................................. 26

III.   CONCLUSION ................................................................................................. 27

SEC v. Schroeder
C-07-3798 (JW)  -i-

DLA Piper US LLP
San Diego

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### CASES

4

*Ashker v. Alameida, No. C 05-03759 CW (EDL),*
    2007 WL 4287330 (N.D. Cal. Dec. 5, 2007) ...................................................... 5

*In re Cal. Pub. Util. Comm'n,*
    892 F.2d 778 (9th Cir. 1989)................................................................................ 17

*In re Cardinal Health, Inc. Sec. Litig.,*
    No C2 04 575 ALM, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007) ................................... 15

*Coleman v. General Electric Co.,*
    No. 94-C, 1995 WL 358089 (E.D. Pa. June 8, 1995) ....................................... 23

*Council of Ins. Agents & Brokers v. Molasky-Arman,*
    522 F.3d 925 (9th Cir. 2008).................................................................................. 5

*Diasonics Sec. Litig.,* No. C-83-4584-R 1986 WL 53402 (N.D. Cal. June 15, 1986)................. 27

*Diversified Industries, Inc. v. Meredith,*
    572 F.2d 596 (8th Cir. 1977) ............................................................................... 16

*Gottlieb v. Wiles,*
    143 F.R.D. 241 (D. Colo. 1992)............................................................................. 9

*In re Grand Jury Subpoena Dated July 6, 2005,*
    510 F.3d 180 (2d Cir. 2005)........................................................................... 20, 22

*In re Grand Jury Subpoena Dated July 13, 1979,*
    478 F. Supp. 368 (E.D. Wis. 1979)................................................................. 15-16

*In re Health S. Corp. Sec. Litig.,*
    250 F.R.D. 8 (D.D. C. 2008)................................................................................. 20

*Hickman v. Taylor,*
    329 U.S. 495 (1947)............................................................................................. 23

*Howard v. Rustin,*
    No. 06-00200, 2008 WL 2008937 (W.D. Pa. May 2, 2008)................................. 5

*In re Hughes,*
    633 F.2d 282 (1980)............................................................................................. 23

*In re Initial Public Offering Sec. Litig.,*
    249 F.R.D. 457 (S.D.N.Y. 2008) ..................................................................... 20-21

*In re Intel Corp. Microprocessor Antitrust Litig.,*
    No. 05-441-JJF, 2008 WL 2310288 (D. Del. June 4, 2008)............................. 22

# TABLE OF AUTHORITIES

**Page**

*Continued*

*In re John Doe Corp.,*
        675 F.2d 482 (2d Cir. 1982)...................................................................... 20

*In re Linerboard Antitrust Litig.,*
        237 F.R.D. 373 (E.D. Pa. 2003) ................................................................ 23

*Loustalet v. Refco, Inc.,*
        154 F.R.D. 243 (C.D. Cal. 1993) .............................................................. 18

*In re M & L Bus. Machine Co.,*
        161 B.R. 689 (D. Colo. 1993) ............................................................. 16, 17

*Medinol, Ltd. v. Boston Scientific Corp.,*
        214 F.R.D. 113 (S.D.N.Y. 2002) ........................................................26-27

*Modesto Irrigation Dist. v. Gutierrez,*
        No. 1:06-cv-00453 *OWW DLB*, 2007 WL 763370 (C.D. Cal. March 9, 2007)............... 15

*Office of Thrift Supervision v. Vinson & Elkins, LLP,*
        124 F.3d 1304 (D.C. Cir. 1997) ................................................................ 19

*People v. Greenberg,*
        851 N.Y.S. 2d 196 (N.Y. App. Div. 2008) ............................................... 9

*Pucket v. Hot Springs Sch. Dist. No. 23-2,*
        239 F.R.D. 572 (D.S.D. 2006) ................................................................... 5

*In re Qwest Commc'ns Int'l Inc.,*
        450 F.3d 1179 (10th Cir. 2006)................................................ 11, 13, 14, 16

*Regents of the Univ. of Cal. v. Superior Court,*
        81 Cal. Rptr. 3d 186, 2008 WL 2908123 (Cal. App. 2008).....................12,13

*Renda Marine, Inc. v. United States,*
        58 Fed. Cl. 57 (Fed. Cl. 2003) ................................................................... 5

*Ryan v. Gifford,*
        No. 2213-CC, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007) ......................... 25

*Ryan v. Gifford,*
        No. 2213-CC, 2008 WL 43699 (Del. Ch. Jan. 2, 2008)................................. 25

*Saito v. McKesson HBOC, Inc., No. Cir. 4 18553,*
        2002 WL 31657622 (Del. Ch. 2002) ..................................................... 16, 17

## TABLE OF AUTHORITIES

*Schmidt v. Levi Strauss & Co.,*
No C-04-01025, 2007 WL 518600 (N.D. Cal. Feb. 13, 2007) ......................................... 5

*In re Sealed Case,*
676 F.2d 793 (D.C. Cir. 1982) ...................................................................................... 10

*In re Sealed Case,*
856 F.2d 268 (D.C. Cir. 1988) ...................................................................................... 23

*In re Steinhardt Partners, L.P.,*
9 F.3d 230 (2d Cir. 1993) ................................................................................... 10, 11, 13

*In re Stone Energy Corp.,*
No. 05-2088, 2008 WL 3836657 (W.D. La. Aug. 14, 2008) .................................... 14, 15

*In re Subpoenas Duces Tecum,*
738 F.2d 1367 (D.C. Cir. 1984) .................................................................................... 10

*Tubar v. Clift,*
No. C05-1154JCC, 2007 WL 30872 (W.D. Wash. Jan. 4, 2007) .................................. 17

*United States v. AT&T,*
642 F.2d 1285 (D.C. Cir. 1980) .................................................................................... 14

*United States v. Arthur Young & Co.,*
465 U.S. 805 (1984) ...................................................................................................... 26

*United States v. Bergonzi,*
403 F.3d 1048 (9th Cir. 2005) ........................................................................................ 5

*United States v. Graham,*
555 F. Supp. 2d 1046 (N.D. Cal. 2008) ........................................................................ 17

*United States v. Nobles,*
422 U.S. 225 (1975) ...................................................................................................... 23

*United States v. Stein,*
435 F. Supp. 2d 330 (S.D.N.Y. 2006) ........................................................................... 13

## RULES

Fed. R. Civ. P. 26(b)(3) .................................................................................................. 17

1    Defendant Kenneth L. Schroeder respectfully submits this Reply Memorandum in support

2    of the Motion of Kenneth L. Schroeder to Compel Further Responses to Discovery Requests

3    (Testimony and Documents) By (1) KLA-Tencor Corporation and (2) Skadden, Arps, Slate,

4    Meagher & Flom LLP, Attorneys for the Special Committee of KLA's Board of Directors (the

5    "Motion to Compel").[1]

6    **I.    INTRODUCTION**

7          The two separate briefs filed by KLA and Skadden in opposition to Mr. Schroeder's

8    Motion to Compel discovery fail to justify any further withholding of the documents and

9    testimony that Mr. Schroeder has sought from them pursuant to subpoena.  In one opposition

10   brief, KLA seeks to avoid a ruling on what has clearly been a pervasive waiver of the attorney-

11   client privilege.  KLA's waiver of the attorney-client privilege results from its production of

12   purportedly privileged documents to the government and its authorizing the Company's former

13   General Counsel and others to submit to SEC interviews wherein they have disclosed privileged

14   communications without asserting any privilege.  In its opposition brief, Skadden attempts to

15   evade production of original interview notes and draft memoranda that formed the basis for the

16   Final Interview Memoranda that it produced to the government — based entirely on its self-

17   serving but unsupported and counterfactual assertions that the notes and drafts consist solely of

18   "opinion" work product not susceptible to subject matter waiver.  Both KLA and Skadden have

19   failed to carry their burden of demonstrating privilege and non-waiver.  The Court should grant

20   the Motion to Compel in its entirety.

21   _____

22   [1]  As explained in detail in the Motion to Compel, Mr. Schroeder seeks an order compelling
     KLA-Tencor Corporation ("KLA" or "the Company") and Skadden, Arps, Slate, Meagher &
23   Flom LLP ("Skadden") to provide Mr. Schroeder with documents and testimony that they have so
     far refused to provide him based on claims of attorney-client privilege and/or work product
24   protection.  The documents and testimony that Mr. Schroeder seeks fall into five general
     categories: (1) all documents and communications concerning historical attorney communications
25   about KLA's stock option granting and accounting practices; (2) all original notes and draft
     interview memoranda from, as well as testimony about, Special Committee witness interviews;
26   (3) all documents and communications relating to the Special Committee investigation shown to
     or discussed with any government or regulatory agencies; (4) all other documents and
27   communications relating to the Special Committee investigation; and (5) all documents and
     communications shared with KLA's outside auditors.

28

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
                                           PRODUCTION OF DOCUMENTS & TESTIMONY

1

**A.    KLA's Opposition**

2      In its opposition brief,[2] KLA takes pains to try to avoid a decision on the merits of the

3  Motion to Compel and on Mr. Schroeder's claim that it has broadly waived the attorney-client

4  privilege regarding option-related communications.  KLA's attempts to prevent a ruling on the

5  validity of its privilege claims should be rejected.

6      First, KLA argues that the Motion to Compel is moot as to it because KLA has offered to

7  permit Mr. Schroeder to obtain the testimony he seeks about historical attorney communications

8  concerning KLA's stock option grant practices, on the condition that Mr. Schroeder enter into a

9  broad and restrictive confidentiality agreement and protective order.  But KLA's attempt to

10  condition Mr. Schroeder's access to the discovery to which he is entitled on his stipulating to an

11  overreaching confidentiality agreement and protective order that would severely restrict

12  Mr. Schroeder's use of that discovery is unacceptable and does not moot any part of the Motion

13  to Compel.

14      Second, KLA urges the Court to deny the Motion to Compel because it contends

15  Mr. Schroeder did not meet-and-confer to the extent KLA thinks he should have before filing the

16  Motion.  This argument is a red herring. Mr. Schroeder's counsel conferred extensively with KLA

17  and Skadden on their pervasive subpoena objections and also gave KLA almost two weeks'

18  notice before filing the Motion to Compel.  KLA informed Mr. Schroeder only *after* he filed the

19  Motion to Compel that it believed that further meet-and-confer sessions were required.  In all

20  events, contrary to KLA's claims, additional meet-and-confer discussions would not have avoided

21  this Motion.  KLA and Skadden have brought discovery to a halt with their pervasive privilege

22  objections.  The parties have fundamental differences on the issues and require a ruling, not

23  endless conferences.

24      Third, KLA claims that the Court can avoid ruling on attorney-client privilege issues

25  because Mr. Schroeder, as a former KLA officer and director, has a qualified right of access to

26

27  ───────────────

[2]  *See* Non Party KLA-Tencor Corporation's Opposition to Kenneth L. Schroeder's Motion to
28  Compel ("KLA Opp.") (docket no. 84).

SEC v. Schroeder
C-07-3798 (JW)
Page 2

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  the communications even if they are subject to a valid claim of privilege.  But Mr. Schroeder

2  contends that KLA has broadly waived the attorney-client privilege, and a determination of

3  waiver once and for all would provide him with an unfettered, not qualified, right to discover and

4  use the information he seeks to defend himself.  Unless and until this Court rules that KLA has

5  carried its burden of proving that it has a valid, unwaived privilege precluding the discovery that

6  Mr. Schroeder seeks, KLA should not be allowed to place conditions on providing that discovery.

7  *        *        *

8      On the merits, KLA claims, for the first time, that its production of documents to the

9  government was "involuntary" and "coerced" because, at the time KLA produced documents to

10 the government, federal regulators considered a company's willingness to waive the attorney-

11 client privilege as one of a number of factors in determining whether the company had given the

12 government its cooperation, which was, in turn, one among a multitude of factors that informed

13 charging and enforcement decisions.  KLA's argument fails as a matter of both law and fact.  The

14 government has for many years considered a corporation's willingness to waive privilege as one

15 of many factors in determining whether the corporation fully cooperated with a federal

16 investigation.  KLA cannot point to a single federal case holding that production of privileged

17 documents to the government was "coerced" as a result of those policies.  Moreover, there are

18 simply no facts in the record to suggest that KLA was coerced in any way when it hastened to

19 volunteer production of documents to the government on which it now claims privilege.[3]

20 **B.    Skadden's Opposition**

21     In its opposition brief,[4] Skadden adds nothing to KLA's non-waiver arguments.  Skadden

22

23 [3]  KLA's substantive non-waiver arguments are little more than an afterthought in its opposition
   brief.  KLA argues briefly that its voluntary production to the SEC and the DOJ did not constitute
24 a waiver of the attorney-client privilege as to Mr. Schroeder (1) because KLA shared a "common
   interest" with the government, and (2) because its production to the government was merely a
25 limited, "selective waiver."  But, as Mr. Schroeder explained at length in the Motion to Compel,
   federal courts throughout the country (including many courts in this district) have persuasively
26 rejected both of KLA's arguments on similar facts.

27 [4]  *See* Memorandum of Points and Authorities in Support of Skadden, Arps, Slate, Meagher &
   Flom LLP's Opposition to Kenneth L. Schroeder's Motion to Compel ("Skadden Opp.") (docket
28 no. 88).

SEC v. Schroeder
C-07-3798 (JW)
Page 3

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    instead devotes its brief to arguing that, even if KLA and the Special Committee broadly waived

2    the attorney-client privilege and work product protection by voluntarily producing documents to

3    the government, Skadden is entitled to withhold from Mr. Schroeder the notes of its Special

4    Committee interviews, draft interview memoranda, and testimony about the notes and

5    memoranda, because they are "opinion" work product to which the doctrine of subject matter

6    waiver cannot apply.

7        As an initial matter, the Court need not reach Skadden's "opinion" work product

8    arguments, because Skadden has failed to meet its initial burden of showing that any of the

9    discovery that it has withheld from Mr. Schroeder is entitled to protection as work product in this

10   lawsuit.  Because KLA, the Special Committee, and Skadden are not parties to this litigation,

11   Ninth Circuit law does not permit them to use the work product doctrine to withhold discovery in

12   this case.  Moreover, as Mr. Schroeder explained in his opening brief, documents created with the

13   purpose of disclosure to the government, such as Skadden's documents relating to the Special

14   Committee investigation, are not entitled to work product protection.

15       Skadden has also failed to make the required showing that the withheld notes, draft

16   interview memoranda and testimony — if work product at all — are "opinion" work product, and

17   not mere "fact" work product.  Attorney notes and memoranda are not, as Skadden hopefully

18   suggests, categorically classified as "opinion" work product.  Notes and memoranda created by an

19   attorney acting as scrivener to memorialize a witness' statements do not contain the note-taker's

20   "mental impressions," and boilerplate, *ipse dixit* assertions that the note-taker relied on his or her

21   understanding of "legal and factual issues" when writing down what the witness said do not

22   transform factual summaries into opinion work product.

23       Skadden also argues that the doctrine of subject matter waiver does not require it to

24   produce the notes, draft memoranda, and testimony Mr. Schroeder requests in any event, because

25   Mr. Schroeder has not shown any "unfairness" resulting from its failure to produce them.  To the

26   contrary, fairness requires that Mr. Schroeder be entitled to see the interview notes and draft

27   memoranda, which are indisputably the closest to what the witnesses actually said, where (1) the

28   SEC plans to take the deposition of a Skadden note-taker to discover precisely what

SEC v. Schroeder
C-07-3798 (JW)
Page 4

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  Mr. Schroeder said in an interview, and Mr. Schroeder needs to be in a position to fully cross-

2  examine her; (2) Mr. Schroeder needs the notes to cross-examine other percipient witnesses; (3)

3  the memory and credibility of many witnesses are key factors; (4) the government had

4  contemporaneous, unfettered access to witnesses and supposedly privileged information; and (5)

5  the government relied heavily on the edited, Final Interview Memoranda in making its allegations

6  in the case.

7       The Court should grant Mr. Schroeder's Motion to Compel in its entirety.

8  **II.    ARGUMENT**

9       **A.    The Court Should Order KLA To Provide The Requested Discovery**

10           **1.    Mr. Schroeder's Motion To Compel Is Not Moot As To KLA**

11       A claim or issue is moot only if the party alleging mootness shows that there is no present

12  controversy as to which a court can grant effective relief. *See Council of Ins. Agents & Brokers v.*

13  *Molasky-Arman*, 522 F.3d 925, 933 (9th Cir. 2008).  Incomplete responses and other half-

14  measures that do not fully resolve discovery disputes do not render a motion to compel moot. *See*

15  *Ashker v. Alameida*, No. C 05-03759 CW (EDL), 2007 WL 4287330, *1 (N.D. Cal. Dec. 5, 2007)

16  (rejecting claim that motion to compel was moot where defendant had attempted to place

17  "unilateral limitation" on plaintiff's discovery requests).[5]

18

19

20  [5]  The cases that KLA cites in its opposition brief to support its mootness claim wholly fail to support KLA's position.  At most, those cases stand for the basic proposition that a motion to

21  compel may become moot where the parties voluntarily resolve their discovery dispute, or where the withholding party withdraws its objections or provides all of the discovery requested on the terms requested.  *See Schmidt v. Levi Strauss & Co.*, No C-04-01025, 2007 WL 518600, *1 (N.D.

22  Cal. Feb. 13, 2007) (designated not for citation) (finding motion to compel moot only as to issues on which "[t]he parties reached agreement"); *United States v. Bergonzi*, 403 F.3d 1048, 1049-50

23  (9th Cir. 2005) (dismissing company's appeal of order granting motion to compel as moot, and declining to consider company's request for protective order, where company dropped challenge

24  to district court ruling ordering disclosure); *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 64 n.10 (Fed. Cl. 2003) (motion to compel partially moot where withholding party agreed that

25  withheld document "isn't privileged" and produced document); *Howard v. Rustin*, No. 06-00200, 2008 WL 2008937, *2 (W.D. Pa. May 2, 2008) (motion to compel partially moot where

26  withholding party agreed to provide discovery requested).  In *Pucket v. Hot Springs School District No. 23-2*, 239 F.R.D. 572, 579 n.1 (D.S.D. 2006), upon which KLA also relies, the court

27  simply declined to rule on a privilege issue because the party arguing waiver had not moved to compel any discovery about the purportedly privileged communications.

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 5

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    KLA claims that the Motion to Compel is moot as to it because Mr. Schroeder already

2    received all of the documents reflecting historical attorney communications concerning KLA's

3    stock option grant process that KLA is withholding under a claim of privilege,[6] and because

4    "KLA has repeatedly assured counsel for [Mr.] Schroeder that it will not assert attorney client

5    privilege objections should he attempt to elicit testimony from current and former KLA witnesses

6    regarding KLA's option practices."  KLA Opp. at 10.  In fact, KLA has given Mr. Schroeder no

7    such assurances.  Rather, KLA has informed Mr. Schroeder that it will permit him to question

8    KLA witnesses about attorney communications concerning KLA's option grant processes *only* if

9    Mr. Schroeder agrees to a sweeping confidentiality agreement and protective order.  KLA's

10   counsel has provided Mr. Schroeder's counsel with drafts of proposed confidentiality agreements

11   setting out the terms on which KLA would permit Mr. Schroeder to obtain the deposition

12   testimony that he seeks, but those drafts contained numerous restrictions that were not acceptable

13   to Mr. Schroeder.  *See* Declaration of Shirli F. Weiss ("Weiss Decl.") ¶ 7.

14   KLA volunteered purportedly privileged communications to the SEC, which published

15   selected portions of them out of context to change their meaning and commented upon them

16   publicly against Mr. Schroeder,[7] but KLA now insists that Mr. Schroeder be required to agree to

17   heavy restrictions, including that he would effectively have to defend himself under seal, shielded

18   from public view.  Mr. Schroeder is not required to participate in KLA's fiction that anything

19

20   [6]  As Mr. Schroeder explained in the Motion to Compel, Mr. Schroeder does not seek to require
     KLA to re-produce any documents that Mr. Schroeder has already received from the SEC.  *See*
21   Motion to Compel at 21 n.20.

22   [7]  *See, e.g.*, Siobhan Hughes, *3rd UPDATE: SEC CHARGES Former KLA-Tencor CEO In
     Backdating*, Wall Street Journal Online, July 25, 2007 (attached as Exhibit 1 to the June 9, 2008
23   Declaration of Jeffrey B. Coopersmith ("Coopersmith Decl.") (docket no. 76) (quoting SEC
     assistant regional director as stating: "At least here, the CEO was correctly advised not to
24   backdate, and how to properly disclose the company's stock options practices.  He chose to
     ignore that advice."); *see also SEC Charges Former KLA-Tencor CEO With Fraud For Improper
25   Stock Options Backdating: Commission Also Settles Claims Against KLA-Tencor*, SEC Litig.
     Release No. 2007-143 (July 25, 2007) (Coopersmith Decl. Ex. 2) (quoting Director of
26   Enforcement Linda Chatman Thompson, following references to alleged communications from
     KLA's General Counsel, as stating:  "KLA dramatically overstated its reported financial results,
27   depriving investors of accurate information about the company's compensation costs and
     financial performance.  It is especially troubling for a public company to engage in such
28   misconduct even after being cautioned that these practices were impermissible.").

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 6

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    relating to KLA's stock option granting processes remains privileged in this case or to indulge

2    KLA's charade that placing things under seal at this point somehow cures its massive waiver of

3    privilege.

4        Because KLA and Mr. Schroeder have a continuing dispute over the discovery

5    Mr. Schroeder seeks, no part of the Motion to Compel is moot.

6        **2.    Mr. Schroeder Fully Satisfied His Meet-And-Confer Obligations**

7        KLA claims that the Court should deny the Motion to Compel because the months-long

8    meet-and-confer process that preceded the Motion to Compel was somehow insufficient to satisfy

9    the meet-and-confer obligations imposed by Federal Rule of Civil Procedure 37 and Civil L.R.

10   37-1. KLA's argument is simply an attempt to forever avoid a ruling on its privilege waiver.

11       As set forth in the Rule 37 certification filed by Mr. Schroeder's lead counsel with the

12   Motion to Compel, counsel for Mr. Schroeder met and conferred extensively with both Skadden

13   and counsel for KLA from November 2007 through January 2008 about their pervasive

14   objections to discovery based on privilege. *See* Certification of Shirli F. Weiss, dated June 9,

15   2008 (attached to the Motion to Compel). After KLA and Skadden rebuffed Mr. Schroeder's

16   repeated efforts to obtain necessary discovery, Mr. Schroeder's counsel concluded, upon a review

17   of applicable law, that KLA's selective use of the attorney-client privilege and work product

18   protection against Mr. Schroeder worked to deprive Mr. Schroeder of his constitutional right to

19   due process, and Mr. Schroeder accordingly moved to dismiss the SEC's Complaint on February

20   1, 2008. As explained in greater detail in the Motion to Compel, Judge Ware denied the Motion

21   to Dismiss without prejudice on May 22, 2008, on the ground that Mr. Schroeder should file a

22   motion to compel before seeking dismissal of the Complaint. *See* Order Denying Defendant's

23   Motion to Dismiss (May 22, 2008) ("May 22 Order") (docket no. 73), at 8-9. Mr. Schroeder filed

24   the Motion to Compel on June 9, 2008.

25       KLA does not claim that Mr. Schroeder's meet-and-confer efforts were inadequate *per se*,

26   nor could it. KLA instead argues that several significant events — the settlement of shareholder

27   class action litigation and the filing of a motion to terminate and approve settlements by KLA's

28   Special Litigation Committee in the federal derivative litigation — caused KLA to significantly

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 7

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    change its position concerning Mr. Schroeder's discovery requests.  Although it is not surprising

2    that KLA has largely abandoned the indefensible privilege position it took previously, *see, e.g.*,

3    Motion to Compel at 10-14, KLA is incorrect that Mr. Schroeder failed to meet and confer on

4    those issues.  Mr. Schroeder's counsel told KLA counsel well in advance that the Motion to

5    Compel would be filed and negotiated the hearing date with them, but KLA approached

6    Mr. Schroeder with its proposal to produce privileged communications under a restrictive

7    protective order only ***after*** Mr. Schroeder filed the Motion to Compel.  *See* Weiss Decl. ¶¶ 3-6.

8    Moreover, Mr. Schroeder and KLA have conferred extensively on numerous occasions since the

9    Motion to Compel was filed, yet they remain unable to resolve their disputes.  Weiss Decl. ¶ 7.

10             **3.    Any Qualified Right Of Access Does Not Provide Complete Relief**

11            KLA also asserts that the Court can avoid ruling on its privilege claims because, as a

12   former KLA officer and director, Mr. Schroeder has a qualified right of access relating to

13   historical communications concerning KLA's stock option grant processes that were created

14   during Mr. Schroeder's tenure at KLA.  *See* KLA Opp. at 15-17.  In addition, KLA asserts that

15   Mr. Schroeder has a concomitant obligation to protect the confidentiality of any such discovery

16   that he receives from KLA.  KLA Opp. at 17.

17            Although Mr. Schroeder does not disagree that he a right to access all attorney

18   communications created during his tenure (as well as to testimony about those communications),

19   especially here, where KLA has precipitated this lawsuit against him by distorting those

20   privileged communications to the SEC, that qualified right does not permit KLA to avoid a ruling

21   on whether the discovery that it has withheld from Mr. Schroeder is subject to a valid, unwaived

22   privilege claim, for the same reasons that KLA's mootness argument fails.  Allegedly privileged

23   communications were provided to the government and were publicly and selectively used to

24   condemn Mr. Schroeder in connection with this lawsuit.  KLA thus waived any privilege that may

25   have attached to those communications, and absent a legitimate, unwaived basis for protecting

26   those communications from disclosure, KLA cannot prevent Mr. Schroeder from conducting his

27   defense — and rebutting erroneous interpretations of those communications — in the public

28   record.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 8

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    The cases that KLA cites do not support its claim that recognition of a qualified right of

2    access obviates the need to rule on KLA's privilege claims.  Those cases addressed only whether

3    a former officer or director was entitled to *access* allegedly privileged documents and

4    communications; they did not resolve questions concerning the *use* of those documents and

5    communications.  *See People v. Greenberg*, 851 N.Y.S.2d 196, 205 (N.Y. App. Div. 2008)

6    (Friedman, J., concurring) ("It should be noted that, at this juncture, we are called upon to

7    determine only whether Greenberg and Smith are entitled to production of the documents in

8    question.  What use, if any, the former directors may make of such documents, or of the legal

9    advice reflected therein, in defending this action, is a question for another day."); *Gottlieb v.*

10   *Wiles*, 143 F.R.D. 241, 247 (D. Colo. 1992) (discussing former officers' and directors' right to

11   "inspect[] documents generated during their tenure").  Accordingly, even if the Court granted Mr.

12   Schroeder access to discovery about historical KLA attorney communications on this basis, the

13   parties would be back before the Court shortly to litigate KLA's proposed restrictions on

14   Mr. Schroeder's use of the documents to cross-examine witnesses and, inevitably, whether KLA

15   waived any privilege.

16   **4.    KLA Waived Any Attorney-Client Privilege As To The Discovery Sought**[8]

17

18   **a.    KLA's Voluntary Production To The Government**

19       KLA claims that it should not be found to have waived any applicable attorney-client

20   privilege or work product protection based on its production of privileged documents to the SEC

21   and the DOJ because its disclosures to the government were "involuntary" disclosures.  *See KLA*

22   Opp. at 18-22.  It may be that truly compelled or involuntary disclosure does not waive the

23   attorney-client privilege or the work product protection, but that general principle does not help

24   KLA here because its disclosures to the SEC and the DOJ were voluntary; they were the product

25

---

26   [8]  Because only KLA makes substantive arguments concerning whether the production of
     documents to the government in this case waived any applicable privilege, Mr. Schroeder
27   addresses his waiver arguments exclusively to KLA in this reply brief.  All such arguments apply
     with equal force to Skadden's assertions of the work product protection, however.

28

DLA Piper US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 9

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   of the KLA's calculated, self-interested, and ultimately successful strategy to trade cooperation

2   for indulgence from the government.  KLA has provided absolutely no evidence that would

3   support its claim that the government coerced KLA in any way to provide it with privileged

4   documents and testimony.  In fact, KLA publicly disclosed that it was fully cooperating with the

5   government in its investigations and never so much as hinted that its cooperation with the

6   government was anything less than voluntary until very recently, in its opposition to the Motion

7   to Compel.  KLA's claim of involuntary production has no basis in law or fact, and the Court

8   should reject KLA's belated, opportunistic attempt at revisionist history.

9          Corporations facing government investigations and their potential consequences have long

10  grappled with difficult decisions concerning the extent to which they cooperate with the

11  government by, for example, sharing with the government documents or communications that

12  might otherwise be shielded from disclosure by the attorney-client privilege or the work product

13  doctrine.  As federal courts have long recognized, when a corporation elects to waive the

14  attorney-client privilege and work product protection as part of its cooperation with a government

15  investigation, it does so in the hope of obtaining something in return — favorable treatment by

16  the government.  *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) ("Voluntary

17  cooperation offers a corporation an opportunity to avoid extended formal investigation and

18  enforcement litigation by the SEC, the possibility of leniency for prior misdeeds, and an

19  opportunity to narrow the issues in any resulting litigation."); *In re Subpoenas Duces Tecum*, 738

20  F.2d 1367, 1372 (D.C. Cir. 1984) ("[The company] independently and voluntarily chose to

21  participate in a thorough disclosure program, in return for which it received the *quid pro quo* of

22  lenient punishment for any wrongdoings exposed in the process.  That decision was obviously

23  motivated by self-interest."); *In re Sealed Case*, 676 F.2d 793, 822-23 (D.C. Cir. 1982)

24  (cooperating corporation "necessarily decides that the benefits . . . outweigh the benefits of

25  confidentiality for all files necessary to a full evaluation of its disclosures.  It forgoes some of the

26  traditional protections of the adversary system in order to avoid some of the traditional burdens

27  that accompany adversary resolution of disputes, especially disputes with such formidable

28  adversaries as the SEC.").

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 10

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    That a corporation's self-interested decision to share otherwise privileged materials with

2    the government carries with it well-known consequences, such as a waiver of privilege in other

3    litigation, does not make the company's decision to cooperate involuntary.  *See In re Qwest*

4    *Commc'ns Int'l Inc. Sec. Litig.*, 450 F.3d 1179, 1199 (10th Cir. 2006) (declining to adopt

5    selective waiver theory; rejecting argument that in current regulatory environment "companies

6    facing federal investigations do not choose to waive their privileges"); *Steinhardt Partners*,

7    9 F.3d at 236 ("An allegation that a party facing a federal investigation and the prospect of a civil

8    fraud suit must make difficult choices is insufficient justification for carving a substantial

9    exception to the waiver doctrine.").

10    Despite this unwavering authority, KLA claims that the so-called "Thompson

11    Memorandum,"[9] which dates from early 2003 and was in force at the time that KLA agreed to

12    hand over purportedly privileged documents to the SEC and the DOJ, somehow fundamentally

13    changed the nature of a corporation's decision whether to waive privilege by providing protected

14    materials to the government.  The Thompson Memorandum provided that federal prosecutors

15    could consider a company's willingness to waive the attorney-client privilege and the work

16    product protection as one factor in determining whether the corporation had cooperated with a

17    government inquiry.[10]  The Thompson Memorandum, however, was not novel in permitting the

18    government to consider a corporation's willingness to voluntarily waive privilege in connection

19    with evaluating the corporation's cooperation.  The language in the Thompson Memorandum

20

21

22    [9]  *See* Memorandum from Larry D. Thompson, Deputy Attorney General, to Heads of Department

23    Components and United States Attorneys, dated January 20, 2003 (attached as exhibit 1 to the Declaration of John H. Hemann in support of Non-Party KLA-Tencor Corporation's Opposition

24    to Kenneth L. Schroeder's Motion to Compel, dated August 1, 2008 ("Hemann Decl.") (docket no. 87)).

25    [10]  Section VI.B of the Thompson Memorandum provides, in pertinent part:  "One factor the

26    prosecutor may weigh in assessing the adequacy of a corporation's cooperation is the completeness of its disclosure, including, if necessary, a waiver of the attorney-client and work

27    product protections . . . .").  The corporation's cooperation was, in turn, one of nine factors to be considered under the Thompson Memorandum in evaluating whether to charge a corporation with

28    wrongdoing.  *See* Thompson Mem. § II.A.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 11

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  concerning waivers of privilege was taken almost verbatim from the "Holder Memorandum,"[11] its

2  predecessor, which dates back to June 1999.  Nor does the Thompson Memorandum's discussion

3  of waiver indicate that a waiver is necessary to a finding of cooperation.  To the contrary, it

4  expressly disclaims any such requirement.[12]  As the above-cited cases demonstrate, federal courts

5  had recognized, long before the Thompson Memorandum, the cost-benefit analysis inherent in a

6  corporation's decision about whether to waive privilege.  Accordingly, the Thompson

7  Memorandum was not, as KLA would have the Court believe, a sweeping, unprecedented shift in

8  the DOJ's position on privilege waivers, and federal law provides no precedent for KLA's

9  position that a government request for privileged documents is inherently coercive.  Notably,

10  KLA is unable to cite to a single federal case holding that a corporation's agreement to waive

11  privilege in connection with a government investigation was coerced or involuntary.

12         KLA's position was apparently born when drafting its opposition brief.  Throughout its

13  meet-and-confer discussions with Mr. Schroeder, KLA took the seemingly contrary position —

14  which it paradoxically continues to press in its opposition to the Motion to Compel — that KLA

15  produced documents to the SEC in furtherance of its "common interest" with the agency.  *See*

16  Coopersmith Decl. Ex. 14.  KLA's coercion argument rests entirely on a California state case,

17  *Regents of the University of California v. Superior Court*, 81 Cal. Rptr. 3d 186, 2008 WL

18  2908123 (Cal. App. 2008), which was (not coincidentally) decided just two days before KLA

19  filed its opposition to the Motion to Compel.  In *Regents*, the court ruled that certain disclosures

20  made by a group of energy suppliers to a joint task force composed of the DOJ and other agencies

21  did not waive the attorney-client privilege and work product protection under California's

22  Evidence Code because, in light of the Thompson Memorandum, the disclosures were "coerced"

---

[11] *See* Memorandum from Eric Holder, Deputy Attorney General, to All Component Heads and United States Attorneys, dated June 16, 1999, *available at*: http://www.usdoj.gov/criminal /fraud/docs/reports/1999/chargingcorps.html.

[12] *See* Thompson Mem. § VI.B ("The Department does not, however, consider waiver of a corporation's attorney-client and work product protection an absolute requirement, and prosecutors should consider the willingness of a corporation to waive such protection when necessary to provide timely and complete information as one factor in evaluating a corporation's cooperation.").

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 12

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   within the meaning of the California Evidence Code. *Id.* In finding the production involuntary,

2   the Court focused in particular on the fact that the companies did not have a "cost-free" decision

3   about whether to waive the privilege by providing the government agencies with requested

4   documents. *Id.*

5       Regardless of whether *Regents* represents an accurate statement of California law, that

6   case is demonstrably at odds with longstanding federal law. As explained above, federal law has

7   long recognized that corporations facing investigations may be required to make difficult

8   decisions, including whether to waive privilege in order to secure favorable treatment from the

9   government. That such decisions are not "cost-free" does not, as a matter of law, render them

10  involuntary. *Steinhardt Partners*, 9 F.3d at 236. Thus, KLA's reliance on *Regents* is misplaced.

11      Moreover, KLA has provided the Court with no factual record that could establish that the

12  SEC or the DOJ in any way coerced it to produce privileged documents. KLA submits only its

13  counsel's generic declaration that: (1) the Thompson Memorandum and the SEC's Seaboard

14  Report were in effect in 2006; (2) the SEC and the DOJ each asked KLA to produce categories of

15  documents that included privileged information; and (3) KLA therefore "determined that it was

16  effectively required" to produce privileged documents. Hemann Decl. ¶ 5.[13] The Tenth Circuit

17  has previously rejected similar arguments, unsupported by evidence of *actual* coercive conduct,

18  that the Thompson Memorandum was somehow inherently coercive. *See Qwest Commc'ns*, 450

19  F.3d at 1199. Indeed, a ruling that KLA's production of documents to the government was

20  involuntary based on the non-existent factual record that KLA has provided the Court would

21  mean that no production of privileged documents at the request of government investigators could

22  ever amount to a waiver. In effect, KLA is inviting the Court to create a broad selective waiver

23

24  [13] The total absence of *any* facts to support KLA's claim that it had "no effective choice" but to
    provide privileged documents to the SEC and the DOJ is one of several reasons that KLA's
25  citation to *United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006), is completely inapposite.
    In *Stein*, the court relied on an extensive factual record of heavy-handed, coercive tactics on the
26  part of the government attorneys investigating the case. *See id.* at 340-52. *Stein* is also
    distinguishable from this case because it did not deal at all with privilege and waiver issues, but
27  was instead concerned with the defendant individuals' rights to due process and assistance of
    counsel.
28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 13

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  doctrine through the back door.  This is precisely what the *Qwest Communications* court refused

2  to do.  *See id.* ("Even though common sense and human nature suggest there is some level of

3  pressure for companies to satisfy the government by disclosing as much as possible, including

4  even privileged and protected material, this court cannot rely on such a sparse record to recognize

5  a new doctrine of selective waiver or to create a new privilege for government investigations.").[14]

6  The Court should reject KLA's claim that it did not voluntarily produce privileged documents to

7  the SEC.

8          **b.**      **KLA Did Not Have A "Common Interest" With The Government**

9          KLA continues to claim — notwithstanding its new argument that it had no choice but to

10  produce purportedly privileged documents to the SEC and the DOJ — that its production did not

11  waive the attorney-client privilege or work product protection because it had a "common interest"

12  with the government that it apparently wanted to further (despite coercion) in identifying

13  wrongdoers at the Company.  KLA fails to address, let alone distinguish, the numerous cases —

14  including three cases from this district — cited in the Motion to Compel that unequivocally

15  establish that a company under investigation by federal investigators does not have a common

16  interest with the investigating agency that would allow it to disclose privileged information to the

17  government without waiving the privilege.  *See* Motion to Compel at 31-32; *see also In re Stone*

18  *Energy Corp.*, No. 05-2088, 2008 WL 3836657, *7 (W.D. La. Aug. 14, 2008) (holding that SEC

19  was adverse to company when conducting informal inquiry; "Even though the SEC inquiry did

20  not result in any formal proceedings against Stone, the presence of their adversarial relationship

21  does not depend on the existence of litigation.").

22          The authorities on which KLA relies for its common interest claim are, for the most part,

23  irrelevant to this case.  *United States v. AT&T*, 642 F.2d 1285 (D.C. Cir. 1980), involved the

---

24

25  [14]  KLA additionally claims that the facts (1) that the DOJ has changed its policies and (2) that
26  proposed legislation would bar federal agencies from seeking privilege waivers, validate its
   argument that its production of documents in this case was coerced.  *See* KLA Opp. at 20-22.  As
27  the *Qwest Communications* court found, however, that a legislative "fix" may be in the works
   counsels *against* the creation of sweeping judicial exceptions to the ordinary rules of waiver.  450
28  F.3d at 1200-01.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 14

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    sharing of documents between MCI and the government, where they were both pursuing antitrust

2    actions against a common adversary, AT&T.  *Id.* at 1300.  No governmental investigation into

3    MCI's conduct was involved.  *Modesto Irrigation District v. Gutierrez*, No. 1:06-cv-00453 OWW

4    DLB, 2007 WL 763370, *15-18 (E.D. Cal. March 9, 2007), is even more inapposite, as that case

5    involved communications *among* government agencies.  KLA also relies on *In re Cardinal*

6    *Health, Inc. Sec. Litig.*, No C2 04 575 ALM, 2007 WL 495150, *9 (S.D.N.Y. Jan. 26, 2007).

7    *Cardinal Health*'s minority position has been rejected by nearly all federal courts that have

8    considered the issue.[15]

9                            **c.    KLA Cannot Selectively Waive The Attorney-Client Privilege**

10           As with its "common interest" argument, KLA devotes little space to its argument that this

11   Court should recognize the so-called "selective waiver" doctrine and hold that KLA's disclosures

12   to the SEC and the DOJ did not waive any applicable privilege as to third-parties.  *See* KLA Opp.

13   at 23-25.  Although KLA cursorily claims that the law on selective waiver is "unsettled," and a

14   "mixed bag," KLA Opp. at 18, KLA cites to almost no authority that actually supports its

15   selective waiver argument, while it simply ignores the many cases that have rejected the selective

16   waiver doctrine on indistinguishable facts.  *See* Motion to Compel at 32-37.  In addition, since

17   Mr. Schroeder filed his Motion to Compel, additional federal district courts have rejected the

18   doctrine of selective waiver.  *See Stone Energy*, 2008 WL 3836657 at *6, 8 (rejecting selective

19   waiver and noting that "it is clear that the doctrine of selective waiver has been roundly rejected

20   by most courts which have considered it").

21           The primary cases that KLA relies upon do not support its claim that this Court should

22   disregard the broad federal consensus rejecting selective waiver.  In *In re Grand Jury Subpoena*

23   _____

24   [15]  In addition, *Cardinal Health* is distinguishable from this case.  The *Cardinal Health* court
     recognized a distinction between the Company and its Audit Committee, which was conducting

25   the internal investigation.  *See id.* at *9.  In this case, however, KLA's agreement to produce
     documents to the SEC was made by Company counsel (not counsel for KLA's Special

26   Committee) on behalf of both the Company and the Special Committee, and Skadden has stated
     that the Company, not the Special Committee, produced documents to the SEC in this case.  *See*

27   Confidentiality Agreement between KLA and the SEC, dated October 12, 2006 (Coopersmith
     Decl. Ex. 6); letter from Matthew Sloan to Shirli F. Weiss, dated December 27, 2007

28   (Coopersmith Decl. Ex. 19).

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 15

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  *Dated July 13, 1979*, 478 F. Supp. 368, 372-73 (E.D. Wis. 1979) the issue decided by the court

2  was actually one of *subject matter* waiver.[16]  *In re M & L Business Machine Co.*, 161 B.R. 689

3  (D. Colo. 1993), to the extent it supports KLA's position, is no longer good law in light of the

4  Tenth Circuit's decision rejecting selective waiver in *Qwest Communications*.[17]  *Saito v.*

5  *McKesson HBOC, Inc.*, No. Civ. A 18553, 2002 WL 31657622 (Del. Ch. 2002), is an

6  unpublished decision applying state, not federal, law, and its reasoning conflicts with the great

7  weight of federal authority.[18]  Finally, Judge Whyte's decision in *In re McKesson HBOC, Inc.*

8  *Securities Litigation*, No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS 7098 (N.D. Cal. Mar. 31,

9  2005), is distinguishable and, for the reasons stated in the Motion to Compel, the Court should

10  not follow that decision.  *See* Motion to Compel at 35-36.

11  **B.    The Court Should Order Skadden To Provide The Requested Discovery**

12  **1.    Skadden Has Not Established That The Discovery Sought Is Protected By The Work Product Doctrine**

13  As explained in Mr. Schroeder's opening brief, KLA and Skadden, as the parties seeking

14  to avoid disclosure, bear the burden of establishing ***both*** that the discovery withheld qualifies for

15  protection under the attorney-client privilege or the work product doctrine, and that any

16  applicable privilege or protection has not been waived.  *See* Motion to Compel at 23-24.  Skadden

17  has failed to demonstrate that the discovery that Mr. Schroeder seeks from it relating to the

18  Special Committee investigation is privileged or otherwise protected from disclosure in this

19  lawsuit, and the Court should therefore grant Mr. Schroeder's Motion to Compel as to the

20  documents and testimony sought from Skadden.

21

---

22  [16]  In any event, the *In re Grand Jury Subpoena* court relied almost exclusively on the Eighth

23  Circuit's decision in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977), which has been widely rejected by other courts.

24  [17]  The *Qwest Communications* court distinguished the peculiar facts of *M & L Business Machine*,

25  which involved documents produced by a bank to the U.S. Attorney in connection with an investigation into one of the bank's clients.  *See* 450 F.3d at 1182, 1189.  If read as a broad endorsement of selective waiver, *M & L Business Machine* is inconsistent with, and implicitly

26  overruled by, *Qwest Communications*.

27  [18]  In addition, two of the cases that KLA relies on for its selective waiver claim expressly rejected application of the common interest exception to waiver.  *See Saito*, 2002 WL 31657622

28  at *4-5; *In re M & L Bus. Mach. Co.*, 161 B.R. at 694.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 16

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1

2

### a.    Skadden Cannot Claim Work Product Protection In This Lawsuit

3    Because KLA, the Special Committee, and Skadden are not parties to this lawsuit,

4    Skadden cannot establish that *any* of the discovery that Mr. Schroeder requests from it is shielded

5    from disclosure by the work product doctrine.

6    The work product protection recognized in the federal courts, codified at Federal Rule of

7    Civil Procedure 26(b)(3), provides, in pertinent part, that a party may not discover materials

8    "prepared in anticipation of litigation or for trial *by or for another party or its representative*,"

9    unless the requesting party shows that it has a substantial need for the materials and cannot obtain

10    their equivalent without undue hardship.  Fed. R. Civ. P. 26(b)(3) (emphasis added).  The plain,

11    unambiguous text of Rule 26(b)(3) thus limits the application of the work product doctrine to

12    persons who are *parties* to the litigation in which the discovery is sought.  The Ninth Circuit has

13    adopted this plain language reading of Rule 26(b)(3), and has rejected non-party attempts to claim

14    work product protection:

15

16

17

18

19

> Westinghouse argues that Rule 26(b)(3) does not protect materials
> prepared by CPUC attorneys from discovery in the present
> litigation, because the CPUC is not a party to the litigation between
> Edison and Westinghouse.  We agree.  Although some courts have
> extended the work product privilege outside the literal bounds of
> the rule, we conclude that *the rule, on its face, limits its protection
> to one who is a party (or a party's representative) to the litigation
> in which discovery is sought.*

20    *In re Cal. Pub. Util. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) (emphasis added).  District

21    courts in this circuit have repeatedly followed *California Public Utilities Commission* and have

22    found that federal law does not extend work product protection to non-parties.  *See United States*

23    *v. Graham*, 555 F. Supp. 2d 1046, 1049-50 (N.D. Cal. 2008) ("[T]he Court declines to create a

24    new rule expanding the work-product doctrine to cover non-parties;" rejecting claim that federal

25    common law provides work product protection to non-parties); *Tubar v. Clift*, No. C05-1154JCC,

26    2007 WL 30872, *4 (W.D. Wash. Jan. 4, 2007) ("[T]he fact that the [withholding party] does not

27    now — nor did it in the past — represent a party to this litigation makes the work product

28

SEC v. Schroeder
C-07-3798 (JW)
Page 17

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  protection inapplicable."); *Loustalet v. Refco, Inc.*, 154 F.R.D. 243, 247 (C.D. Cal. 1993) ("[T]he

2  fact that Wymer, a non-party to the present litigation, anticipated being named in the litigation

3  affords him no protection under 26(b)(3).").

4         There is no dispute that KLA, its Special Committee, and Skadden are not, and have never

5  been, parties to this litigation, and, accordingly, there is no basis under Ninth Circuit law for

6  Skadden to assert the work product protection to block Mr. Schroeder's discovery in this action.

7  For this reason alone, Skadden cannot carry its burden of proof, and the Court need not even

8  consider any of Skadden's arguments concerning work product protection.

9                     **b.    Documents Created For Disclosure To The Government
                              Are Not Protected By The Work Product Doctrine**

10

11        In the opening brief,  Mr. Schroeder explained that, because KLA and the Special

12  Committee at all times intended to share the results of the Special Committee investigation with

13  the government, the Special Committee documents, including all notes and draft interview

14  memoranda, could not be protected by the work product doctrine.  In its opposition, Skadden

15  claims that the Special Committee documents — and, specifically, the interview notes and draft

16  interview memoranda — are protected work product because KLA and the Special Committee

17  did not decide to produce the Final Interview Memoranda to the SEC and the DOJ until the

18  Special Committee investigation was substantially complete.  *See* Skadden Opp. at 11.[19]  For the

19  reasons stated in the Motion to Compel, Mr. Schroeder respectfully suggests that the only

20  reasonable inference is that KLA and the Special Committee fully intended to share the results of

21  the Special Committee investigation, including the interview memoranda, with the government

22  from the beginning of the investigation.  *See* Motion to Compel at 24-25.[20]  KLA's new argument

23  that it felt "coerced" by the government certainly adds to its admission, along with its public

24

25  [19]  Skadden earlier states that the Special Committee was substantially complete no later than
     September 27, 2006.  Skadden Opp. at 5.

26

27  [20]  In any event, even accepting Skadden's assertions, the work product protection would not
     apply to any notes or draft interview memoranda created after September 27, 2006, and the Court
     should order Skadden to produce all such documents immediately.

28

SEC v. Schroeder
C-07-3798 (JW)
Page 18

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  disclosures of full cooperation, that it always intended to turn over the results of its investigation

2  to the government.  Certainly the fact that the SEC took little testimony in the case before filing

3  and waited to receive the results of KLA's investigation indicates that KLA led the SEC to

4  believe it would turn the results of its interviews over to it.

### 2.  The Notes, Draft Interview Memoranda And Testimony That Mr. Schroeder Seeks Are, If Anything, "Fact" Work Product

Neither KLA nor Skadden disputes the well-established principle that where there is a

waiver of the attorney-client privilege or "fact" work product protection through disclosure, the

waiver extends beyond the documents and communications actually disclosed to encompass the

entire subject matter of the disclosures.[21]  Skadden argues, however, that the subject matter

waiver doctrine does not require it to produce to Mr. Schroeder the notes of its interviews with

current and former KLA employees, officers, and directors and the draft interview memoranda

based on those notes, or to permit its attorneys to testify about the notes and memoranda.

Skadden claims that the notes, draft interview memoranda, and testimony that Mr. Schroeder

seeks are not subject to disclosure because they represent, in their entirety, "opinion" work

product that is not susceptible to subject matter waiver.

Although Skadden makes sweeping statements in its opposition brief that attorney notes

and drafts are *always* entitled to protection as opinion work product, Skadden later appears to

recognize, as it must, the unremarkable proposition that factual material does not become opinion

work product simply because it is in the form of attorney notes.  *See* Skadden Opp. at 9-10; *Office

of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307-08 (D.C. Cir. 1997)

("Appellees argue . . . that a lawyer's interview notes are *always* opinion work product . . . .  But

this proposition goes too far.  We recently observed that under certain circumstances purely

factual material embedded in attorney notes may not deserve the super-protection afforded to a

lawyer's mental impressions.").  Skadden has failed in this case to meet its burden of establishing

(even assuming the notes, draft memoranda, and testimony that Mr. Schroeder seeks qualify as

---

[21]  KLA makes no arguments concerning subject matter waiver in its opposition to the Motion to Compel.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 19

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

work product) that these materials fall within the category of opinion work product.  *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2005) (party seeking protection must meet "heavy burden" of showing that opinion work product protection applies). A party claiming that materials qualify as opinion work product "must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes," and "conclusory or ipse dixit assertions" are insufficient to make the required showing.  *Id.* at 183-84.

In support of its claim that the interview notes and draft memoranda are opinion work product, Skadden has submitted ten declarations from Skadden attorneys who took notes of Special Committee interviews.  The declarations contain identical statements that the notes were "not verbatim transcriptions" of the interviews, but they also concede that the note-taker's responsibility at the interviews was to "record the information provided or observations made by the witness."[22]  Obviously, the context of the note-taking gives rise to the only reasonable inference that the job of the Skadden note-takers was to record questions and answers.  Although Skadden note-takers did not transcribe the interviews verbatim, their responsibility was simply to write down what the witness said.  Thus, contrary to Skadden's claim in its opposition, the note-takers were, in fact, "scriveners," and their notes are, at most, fact work product.  *See In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982) (ordering production of attorney interview notes; "The notes recite in a paraphrased, abbreviated form, statements by Employee A . . . To the extent that the statements imply the attorney's questions from which inferences might be drawn as to his thinking, those inferences . . . in no way reveal anything worthy of the description 'legal theory.'"); *In re Health S. Corp. Sec. Litig.*, 250 F.R.D. 8, 11-13 (D.D.C. 2008) (ordering production of interview notes where notes were merely "complete summaries" of the interviews and therefore contained only fact work product); *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D.

---

[22]  *See, e.g.*, Declaration of Galen D. Bellamy in support of Skadden, Arps, Slate, Meagher & Flom LLP's Opposition to Kenneth L. Schroeder's Motion to Compel ¶¶ 7, 9; Declaration of Elizabeth A. Harlan in support of Skadden, Arps, Slate, Meagher & Flom LLP's Opposition to Kenneth L. Schroeder's Motion to Compel ¶¶ 7, 9; Declaration of Lanelle K. Meidan in support of Skadden, Arps, Slate, Meagher & Flom LLP's Opposition to Kenneth L. Schroeder's Motion to Compel ¶¶ 7, 9.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 20

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

457, 465 & n.64 (S.D.N.Y. 2008) (finding interview memoranda fact work product where memoranda "were not intended to be verbatim recitals of the interviewees' statements, but [we]re factual summaries of those statements as memorialized by outside counsel"); *see also* Motion to Compel at 30. Exhibit 1 to the Weiss Declaration. is an example of one of Skadden's interview memoranda, and, although it contains "boilerplate"[23] about opinions and mental impressions, upon reading the memorandum it is clear that this is untrue and the memorandum actually contains only factual information about what the witness said. The notes underlying the memoranda are even less likely to contain opinion work product, as they were prepared in real time by the Skadden note-taker during the interviews.

In addition, if the notes did not record questions and answers, how was it that the Final Interview Memoranda purport to relay a summary of statements the witnesses made? Skadden further claims that, even though the note-takers were charged with "record[ing] the information provided or observations made by" the interviewees, the notes nevertheless qualify as opinion work product because the note-takers used their background knowledge of the facts and "legal theories" of the investigation as a "filter" and "sifted" through the statements made during the interview to record only those statements that, "in their judgment," they deemed to be sufficiently important to write down. Skadden Opp. at 10. This appears to be an admission that the Skadden lawyers selected which answers they wanted to record. If Skadden's statements that its note-takers selectively recorded the witness's statements in light of Skadden's "legal theories" are true and are not (as is more likely the case) mere "puffing" intended to elevate notes that simply summarize what an interviewee said to the level of opinion work product, then Skadden's investigatory process would appear to be deeply flawed, and this is useful impeachment should the government decide to call Skadden lawyers as witnesses. (The SEC noticed a Skadden lawyer who took notes at Mr. Schroeder's interview as its first witness.) Moreover, if the mere

---

[23] Skadden does not appear to dispute the argument from Mr. Schroeder's Motion to Compel that the boilerplate recitals appended to each of the Final Interview Memoranda are irrelevant to the determination of whether the notes and memoranda qualify as "opinion" work product. *See* Motion to Compel at 30 n.23.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 21

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    fact that a lawyer-scrivener knew something about the case were enough to transform notes into

2    opinion work product, it is hard to see how any attorney notes could ever be fact work product.

3    　　　　Regardless of how Skadden attempts to characterize the interview notes and draft

4    interview memoranda, however, the Court cannot be required to simply accept on faith Skadden's

5    claims that the entirety of the notes and draft interview memoranda contain nothing but the

6    opinions and mental impressions of its associates.  Skadden, as the party that bears the burden of

7    establishing the applicability of the "opinion" work product protection, should, at a minimum, be

8    required to submit the notes and drafts that it is withholding to the Court for *in camera* review.  *In*

9    *re Grand Jury Subpoena*, 510 F.3d at 184 (stating that party should have submitted claimed work

10   product for *in camera* review — "a practice both long-standing and routine in cases involving

11   claims of privilege" — so that district court could have determined whether material contained

12   opinion work product and whether any opinion work product could be separated from pure fact

13   work product) (quotation omitted); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-441-

14   JJF, 2008 WL 2310288, *15 (D. Del. June 4, 2008) (adopting opinion of Special Master who

15   determined, after *in camera* review, that opinion work product could be "easily separated" from

16   fact work product subject to production).  As Mr. Schroeder has previously informed Skadden,

17   Mr. Schroeder really has no interest in the mental impressions of Skadden's attorneys, and

18   Mr. Schroeder will not object if the Court causes to be redacted after its (or a Special Master's)

19   review, any actual mental impressions or opinion work product from the notes and draft interview

20   memoranda before production, although on the present record it does not appear that there would

21   be anything to redact.

22   　　　　Skadden also asserts that Mr. Schroeder should not be permitted to obtain any testimony

23   from the Skadden attorneys who took notes at the Special Committee interviews and who drafted

24   the interview memoranda that were eventually produced to the government.  Having waived any

25   work product protection as to the subject matter of the Final Interview Memoranda produced to

26   the government, including the interview notes and draft interview memoranda, Skadden cannot

27   now block Mr. Schroeder from questioning the note-takers about the statements written in the

28   notes, drafts and Final Interview Memoranda.

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 22

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   *United States v. Nobles*, 422 U.S. 225 (1975), is instructive.  In that case, the district court

2   barred a defense investigator from testifying as to statements that several prosecution witnesses

3   had made to him during his investigation (the witnesses denied at trial having made the

4   statements in question) when defense counsel refused to provide the prosecution with a copy of

5   the investigator's contemporaneous report.  The Supreme Court held that the district court

6   correctly barred the testimony because the defense waived any work product protection for all

7   matters relating to the investigator's testimony.  *See id.* at 239-40 ("Respondent, by electing to

8   present the investigator as a witness, waived the privilege with respect to matters covered in his

9   testimony.  Respondent can[not] . . . advance the work-product doctrine to sustain a unilateral

10  testimonial use of work-product materials . . . .").  The same principle requires that Mr. Schroeder

11  be permitted to examine the authors of the Final Interview Memoranda that were produced to the

12  government, if necessary.  Those memoranda are affirmative representations by Skadden about

13  what the witnesses said in the Special Committee interviews, and Mr. Schroeder must be

14  permitted to inquire into the statements contained therein.

15      None of the cases that Skadden cites for its claim that its attorneys cannot be required to

16  provide testimony are remotely similar to this case.  Indeed, almost none of Skadden's cases even

17  addressed claims that the work product protection had been waived.[24]  The lone case that did

18  involve waiver arguments, *In re Linerboard Antitrust Litigation*, 237 F.R.D. 373 (E.D. Pa. 2003),

19  did not involve a situation, like here, where work product protection had already been waived

20  through the production of attorney memoranda concerning the very subject about which

21  testimony was sought.  Accordingly, Skadden cannot refuse to permit to permit Mr. Schroeder to

22  obtain the testimony of the Skadden attorneys concerning the statements in the interview

23  memoranda that they authored.

24          **3.      Mr. Schroeder Is Entitled To All Of The Discovery That He Seeks
                Under the Subject Matter Waiver Doctrine**

25

26  _____

27  [24]  For that reason, *Hickman v. Taylor*, 329 U.S. 495 (1947), *In re Sealed Case*, 856 F.2d 268
    (D.C. Cir. 1988), *In re Hughes*, 633 F.2d 282 (1980), and *Coleman v. General Electric Co.*, No.
    94-CV-4740, 1995 WL 358089 (E.D. Pa. June 8, 1995), are inapposite.

28

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 23

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    As noted above, Skadden does not appear to dispute that principles of subject matter

2  waiver apply to "fact" work product.  Skadden claims, however, that the Court should decline to

3  find a subject matter waiver in this case because no unfairness will result from denying

4  Mr. Schroeder the additional discovery that he seeks, even accounting for the massive waiver of

5  privilege that has occurred in this case.  Skadden asserts that because Mr. Schroeder has copies of

6  the documents that it produced to the SEC, Mr. Schroeder stands on a "level playing field" with

7  the SEC.  Skadden Opp. at 13.

8    Mr. Schroeder has most certainly not been placed on a level playing field with the SEC

9  simply because he now has copies of the documents that KLA and the Special Committee

10 produced to the government.  KLA gave the SEC unfettered access to interview at least one key

11 witness (and likely numerous others[25]), whom the Company affirmatively instructed not to invoke

12 the attorney-client privilege or the work product doctrine when speaking with the SEC,[26] nearly

13 two years ago, very near the time of the Special Committee investigation and when there was far

14 less risk of faded memories.[27]  The Special Committee also made numerous presentations to the

15 SEC and the DOJ, during which the Special Committee certainly shared additional work product

16 with the government.[28]  Mr. Schroeder, of course, had no such access, and principles of fairness

17 require that Mr. Schroeder now be permitted access to the source of information that most closely

18 reflects what the witnesses actually said at the time of their interviews — the interview notes —

19

20

---

21 [25]  In September 2007, counsel for the SEC informed counsel for Mr. Schroeder that the SEC and
   the DOJ had jointly interviewed a number of witnesses in this case.  There is no reason to believe
22 that KLA instructed any of those witnesses to withhold information from the SEC and DOJ on the
   basis of privilege.  *See* Motion to Compel at 8-9 (excerpting June 2007 KLA PowerPoint
23 presentation to SEC describing KLA's broad waiver of privilege in connection with SEC
   investigation).

24 [26]  KLA told counsel for Mr. Nichols that he "should not" invoke the attorney-client privilege or
   work product protection during Mr. Nichols' interview with the SEC and the DOJ.  *See* Motion to
25 Compel at 6-7 & n.8.

26 [27]  Because of the amount of time that has elapsed since witnesses were interviewed by the
   Special Committee — over two years in many cases — it is no answer to claim that
27 Mr. Schroeder's ability to depose those witnesses in the future cures the unfairness in this case.

28 [28]  *See* Motion to Compel at 9.

SEC v. Schroeder
C-07-3798 (JW)
Page 24

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1   and not be limited to the edited, "polished," Final Interview Memoranda.[29]  Thus, to the extent

2   that fairness considerations are relevant for determining the scope of a subject matter waiver of

3   the work product protection, they weigh heavily in favor of disclosure in this case.  Because KLA

4   and its Special Committee broadly disclosed to the government purportedly privileged

5   information relating both to KLA's historical stock option granting practices and to the Special

6   Committee's investigation into those practices, the subject matter waiver extends to *all* attorney-

7   client communications and "fact" work product relating to the Special Committee investigation.

8   *See* Motion to Compel at 28-31.

9       Skadden attempts to distinguish *Ryan v. Gifford*, No. 2213-CC, 2007 WL 4259557 (Del.

10  Ch. Nov. 30, 2007), by claiming that the *Ryan* court actually rejected the application of subject

11  matter waiver to all communications about a special committee investigation and found instead

12  only a very limited subject matter waiver.  *See* Skadden Opp. at 20-21.  *Ryan* itself affirmatively

13  contradicts Skadden's claim.  The *Ryan* court specifically held that, based on the Company's

14  privilege waiver, plaintiffs were "entitled to all communications between Orrick and the Special

15  Committee *related to the investigation and final report*."  *Id.* at *3 (emphasis added); *see also*

16  *Ryan v. Gifford*, No. 2213-CC, 2008 WL 43699, *4 (Del. Ch. Jan. 2, 2008) (denying request to

17  certify interlocutory appeal and summarizing earlier decision; "[T]he Court ruled that Maxim, its

18  Special Committee, and Orrick must produce all material related to the Special Committee's

19  investigation that were withheld on grounds of attorney-client privilege.").

20      Further, it is crucial in the circumstances of this case that Mr. Schroeder be provided with

21  the Special Committee interview notes that Skadden is withholding.  As previously noted, the

22  SEC plans to take the deposition of Skadden note-taker Elizabeth Harlan to testify as to what

23  Mr. Schroeder purportedly said at this Special Committee interview.  *See* Motion to Compel at

24  22.  Skadden has stated it is not planning to block the SEC's inquiry.  In cross-examining

25

26  [29]  In addition, the SEC took no investigative testimony in this case, likely because the SEC relied
27  so heavily on KLA's own investigation.  In the ordinary case where the SEC takes such
    testimony, the defendant has access to the transcripts of that testimony, the record of what the
28  witness actually said.

SEC v. Schroeder
C-07-3798 (JW)
Page 25

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1    Ms. Harlan, Mr. Schroeder must have Ms. Harlan's own statement (the notes), not just the final,

2    edited versions of the interview memoranda that Skadden produced to the government.  The same

3    is true for Skadden's interviews of percipient witnesses other than Mr. Schroeder.  To prepare for

4    the upcoming depositions of current and former KLA directorsofficers, and employees,

5    Mr. Schroeder must have the versions of their statements that are closest to what these witnesses

6    actually said.  Moreover, in developing impeachment evidence, Mr. Schroeder must have access

7    to the notes so that, if necessary, he could call Skadden note-takers under Federal Rule of

8    Evidence 613, and be certain that the note-takers could testify or be refreshed as to what actually

9    was said.  Only the notes are useful and adequate for this clearly legitimate purpose.

10        **4.    Skadden Must Also Produce Any Documents Shared With KLA's
              Independent Auditors**

11

12        KLA's disclosure of documents to its outside auditor, PwC, provides an additional and

13   independent waiver of the attorney-client privilege and work product protection as to the subject

14   matter of any documents so disclosed.  *See* Motion to Compel at 37-39.  Skadden and KLA do

15   not dispute that KLA has waived any claim of attorney-client privilege by providing documents

16   to PwC.  Skadden argues, however, that production of documents to PwC does not waive the

17   work product protection because PwC was not adversarial to KLA.  *See* Skadden Opp. at 17-20.

18   Although federal courts are divided on this question, the better view, particularly in the current

19   regulatory environment, is as the cases cited in the Motion to Compel make clear, that the

20   relationship between a corporation and its independent auditor is such that the work product

21   protection is waived upon disclosure to the auditor.  As the United States Supreme Court has

22   stated,

23            the independent auditor assumes a *public* responsibility
              transcending any employment relationship with the client.  The
24            independent public accountant performing this special function
              owes ultimate allegiance to the corporation's . . . stockholders, as
25            well as to [the] investing public.  This "public watchdog" function
              demands that the accountant maintain total independence from the
26            client at all times and requires complete fidelity to the public trust.

27   *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984).  The independent auditor thus

28   shares no common interest with, and indeed may be adversarial to, the corporation.  *See Medinol,*

DLA PIPER US LLP
SAN DIEGO

SEC v. Schroeder
C-07-3798 (JW)
Page 26

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY

1  *Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002) ("[A]s has become crystal

2  clear in the face of the many accounting scandals that have arisen as of late, in order for auditors

3  to properly do their job, they *must* not share common interests with the company they audit.");

4  *Diasonics Sec. Litig.*, No. C-83-4584-RFP (FW), 1986 WL 53402, *1 (N.D. Cal. June 15, 1986).

5          Accordingly, KLA and the Special Committee waived any privilege or protection over all

6  documents shared with PwC, and the Court should order them produced to Mr. Schroeder.

7  **III.    CONCLUSION**

8          For all of the reasons stated above, and for the reasons stated in his opening brief,

9  Defendant Kenneth L. Schroeder respectfully requests that the Court grant the Motion to Compel

10  in its entirety.

11

12

13  Dated:  August 26, 2008                          Respectfully submitted,

14                                                   DLA PIPER US LLP

15                                                   By:  */s/Jeffrey B. Coopersmith*
                                                     _____

16                                                   SHIRLI FABBRI WEISS (Bar No. 079225)
17                                                   DAVID PRIEBE (Bar No. 148679)
                                                     JEFFREY B. COOPERSMITH (Bar No. 252819)
18                                                   **DLA PIPER US LLP**

19                                                   ELLIOT R. PETERS (Bar No. 15808)
                                                     STUART L. GASNER (Bar No. 164675)
20                                                   **KEKER & VAN NEST LLP**

21                                                   Attorneys for Defendant
                                                     KENNETH L. SCHROEDER

22  WEST\21493835.4

23

24

25

26

27

28

SEC v. Schroeder
C-07-3798 (JW)
Page 27

REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & TESTIMONY