**\*E-FILED 4/27/2009\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. C07-03798 JW (HRL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS** |
| v. | |
| KENNETH L. SCHROEDER, | |
| Defendant. | **[Re: Docket No. 75]** |

Defendant Kenneth L. Schroeder moves for an order compelling non-parties KLA-Tencor Corporation ("KLA"), as well as the Skadden, Arps, Slate, Meagher & Flom law firm and individual Skadden attorneys (collectively "Skadden") to produce documents and deposition discovery. KLA and Skadden oppose the motion. Upon consideration of the moving and responding papers, as well as the arguments of counsel, this court grants the motion in part and denies it in part.

**I.   BACKGROUND**

The Securities and Exchange Commission ("SEC") filed this civil enforcement action for alleged improper stock option backdating at KLA. Defendant Schroeder worked at KLA in various leadership positions for approximately 22 years, serving ultimately as its Chief Executive Officer from mid-1999 until his retirement in January 2006. The SEC contends that he was a key participant in a fraudulent scheme to backdate stock options, resulting in the

1  concealment of millions of dollars in executive and employee compensation and significant
2  overstatement of the company's income.

3        In May 2006, following news reports suggesting that there may have been retroactive
4  pricing and backdating of certain large stock option grants at KLA, the SEC and the Department
5  of Justice ("DOJ") began investigating KLA's option granting practices. KLA says that on May
6  23, 2006, it formed a Special Committee to investigate the Company's historic stock option
7  granting practices, including the timing of past option grants and related accounting
8  documentation. The Special Committee retained Skadden to act as its independent counsel in
9  the investigation. The Special Committee, through Skadden, interviewed 55 current and former
10 officers, directors, employees and outside advisors of KLA. Skadden prepared what the parties
11 refer to as "Final Interview Memoranda," copies of which were provided to the SEC.

12       The SEC filed the instant action in July 2007. There is no apparent dispute that through
13 the SEC's initial disclosures, Schroeder has received all the documents that KLA gave to the
14 SEC. Reportedly, the SEC's initial disclosures comprise some 60,000 pages of documents
15 including:

16     •     KLA and Special Committee documents that had been given to the SEC,
           including the Final Interview Memoranda;
17
18     •     documents the SEC received from KLA's auditor, Pricewaterhouse Coopers
           ("PwC");

19     •     external and electronic working papers for the fiscal years 1998 through 2005;
           and
20
    •     emails from various KLA employees.
21

22 (KLA Opp. at 6; Hemann Decl. ¶ 13, Ex. 7).

23       In October 2007, Schroeder served KLA with a subpoena seeking the production of all
24 documents pertaining to KLA's option granting practices, including all documents KLA
25 produced to the SEC, documents concerning the Special Committee's investigation and KLA's
26 subsequent restatement, as well as KLA's communications with the Special Committee and
27 PwC. (Coopersmith Decl., Ex. 9). The following month, in November 2007, Schroeder served
28 subpoenas on several Skadden attorneys, seeking the production of documents relating to the

Special Committee's investigation, its witness interviews and KLA's restatement. (Coopersmith Decl., Ex. 15).

KLA and Skadden objected to many of the requests on the ground that Schroeder had already received documents pertaining to KLA stock option grants and processes through the SEC's initial disclosures. KLA and Skadden also objected on the ground that the requested information was protected by the attorney-client privilege and the attorney work product doctrine.

Schroeder later deposed Stuart Nichols, who served as KLA's General Counsel from Fall 1999 through Fall 2006. Defendant says that his efforts to obtain substantive information from Nichols was hampered by KLA's assertion of the attorney-client privilege and the work product doctrine.

In the meantime, the SEC noticed the deposition of Skadden attorney Elizabeth Harlan. However, it agreed to postpone that deposition because Schroeder indicated that he would soon be filing a motion to compel challenging KLA's and Skadden's privilege and work product assertions.

No motion to compel was filed, however. And, when the parties, KLA and Skadden appeared before this court on KLA's motion for protective order, it became apparent that Schroeder had changed his strategy and decided to pursue a motion to dismiss instead. As noted in this court's February 20, 2008 order granting KLA's motion for protective order:

> [Schroeder] has the ability to move the court now to clarify the privilege issues which impact these depositions. (At a recent discovery conference, Schroeder indicated to the court that he would be filing such a motion shortly. According to the SEC, Schroeder has stated since December [2007] that he would be bringing such a motion, and the SEC says that it agreed to postpone the deposition of Skadden attorney Elizabeth Harlan for that reason.) But Schroeder has now changed his mind. He just told this court at oral argument that he has no intention of seeking relief as to KLA's asserted privilege until after his motion to dismiss is resolved. Indeed, he indicated that he made a deliberate and conscious decision *not* to challenge KLA's asserted privilege now so that he could pursue that request for dismissal.

(Docket # 65 at 4).

3

Claiming that KLA's and Skadden's privilege assertions prevented him from accessing information necessary to defend against the SEC's claims, Schroeder then moved to dismiss. Judge Ware denied the motion without prejudice. His order states, in relevant part:

> Upon review, the Court finds that KLA's assertions of privilege regarding the communications between Defendant and Nichols may have prevented Defendant from receiving discovery which may tend to show that he did not have the requisite knowledge for securities laws violations. If KLA asserts the same broad privilege with respect to Berry as it has regarding Nichols, the assertion may prevent Defendant from being able to fully present Berry's role in the backdating at the Company. This evidence may tend to show that Berry was solely responsible for the conduct of which the SEC complains.
>
> Further, the agreement with KLA, which allowed the SEC to receive production of materials from the Company, does not permit the SEC to argue waiver of any privilege with respect to those materials. Specifically, the agreement provides that the SEC will not "assert that the production of the [materials] to the [SEC] constitutes a waiver of the protection of the attorney work product doctrine, the attorney-client privilege, or any other privilege applicable as to any third-party." (Id., Ex. 14). While this agreement lets the SEC . . . use privileged communications against Defendant, it also appears to allow KLA to assert privilege in a way that may prevent the Defendant from defending against the SEC's allegations.
>
> Accordingly, the Court finds that KLA's assertion of privilege, if later confirmed by the Court, may prevent Defendant from asserting potentially viable defenses.
>
> \*\*\*\*\*
>
> With respect to this case, the validity of KLA's assertion of privilege remains untested, and it remains plausible that the assertion of privilege may be deemed waived. . . . Further, in discovery disputes, Defendant has repeatedly represented that he intends to file a motion to compel, which would challenge the privilege assertions of KLA and its attorneys. . . . If Judge Lloyd's understanding of Defendant's representations is correct, then it appears that Defendant is purposely postponing its motion to compel. Dismissal of a case with prejudice is a remedy of last resort, even when privilege bars access to information necessary for the Defendant to maintain a defense. . . . The record reflects that Defendant has not fully explored all of the less drastic remedies which are available to him. Additionally, Defendant has not established that KLA and its lawyers have asserted a valid privilege. Until he has done these things, the Court cannot reach a final determination of whether the Complaint should be dismissed.

4

(Docket # 73 at 5-6, 8-9).

The instant motion to compel discovery from KLA and Skadden then followed. In it, Schroeder seeks an order compelling:

(1) KLA to (a) produce documents about communications with or involving the Company's inside and outside attorneys relating to KLA's option granting and accounting practices, (b) permit its current and former attorneys, officers, directors, and employees to testify as to the same, and (c) refrain from instructing the deponents not to answer or from otherwise preventing the discovery on the grounds of attorney-client privilege and/or work product protection;

(2) Skadden to (a) produce the original attorneys' notes and all versions of memoranda they prepared based on witness interviews they conducted on behalf of the Special Committee and (b) testify as to the same;

(3) KLA and Skadden to produce documents and provide testimony about all communications with government agencies, including documents orally referenced or discussed, but not left with those agencies;

(4) KLA and Skadden to produce all documents and communications shared with KLA's outside auditors relating to KLA's option granting practices and the Special Committee investigation; and

(5) Skadden to produce all documents and communications concerning the Special Committee investigation.

(Mot. at 1-2). He contends that, by virtue of the disclosure of certain documents and information to the government, any privilege or other protection as to the requested discovery has been waived.

## II. DISCUSSION

Preliminarily, this court notes that the instant motion is not a focused inquiry. It seeks rulings on the existence of any privilege or work product (and the scope of any waiver) with respect to extensive and somewhat amorphous categories of information and testimony – which essentially encompass all documents and information pertaining to KLA's stock option grants, the Special Committee's investigation and KLA's financial restatement – whether or not those documents were given to the government. Some specific documents have been raised illustratively. But with a few exceptions, this court does not know exactly what documents may be out there.

**A.     Discovery Sought from KLA**[1]

With respect to KLA, Schroeder essentially seeks so-called historic (i.e., pre-Special Committee) documents and testimony concerning, relating, or pertaining to the option grants at issue. There was some confusion as to precisely what documents or testimony are at issue in the instant motion, but this court sees no need to belabor the point.[2] As discussed above, the instant discovery dispute arose out of Schroeder's stated need to access certain information, claimed to be attorney-client privileged or attorney work product, so as to be able to defend himself against the SEC's claims. In the year or so since the parties appeared before this court on KLA's motion for protective order, and following Judge Ware's order on defendant's motion to dismiss, KLA has had a change of heart. It now says that it has no desire to prevent Schroeder from defending himself in this action and will produce historic documents and allow Schroeder to obtain testimony about them – without objections as to privilege or work product – subject only to an appropriate protective order limiting the dissemination of the information.

Although at this juncture KLA offers the very discovery Schroeder wants (and moves to compel), he now argues that KLA cannot properly seek to limit his use of it. In his view, whatever information he obtains from KLA can never appropriately be subject to a protective order because any privilege or work product protection has been waived. Here, he says that the SEC selected portions of certain information and publicly disclosed

---

[1] KLA's opposition focuses upon the so-called historic documents pertaining to KLA's option grants and practices, while Skadden has taken the laboring oar on addressing the remaining categories of documents and information in dispute. Schroeder's reply papers essentially followed suit. The instant order has been structured accordingly.

[2] At the motion hearing, Schroeder indicated that he seeks KLA's communications with its auditors both during the so-called historic period as well as during the period when KLA's financials were restated. KLA indicated that it did not understand KLA's historic communications with its auditors to be a subject of the instant motion or of prior meet-and-confer negotiations. Schroeder pointed out that historic auditor documents were requested in his subpoena to KLA, (see Coopersmith Decl., Ex. 9, Request No. 24), but acknowledged that the request for such documents was not mentioned in his papers. KLA's counsel indicated that he believed such documents have already been produced to Schroeder in the SEC's initial disclosures, but did not know whether there were any that may have fallen through the cracks. Nevertheless, KLA stated that it is willing to meet-and-confer with Schroeder about them and, assuming there is no tremendous burden involved, KLA would probably be willing to produce them to him.

6

it, out of context, in its complaint and to the media in a reported effort to smear his reputation.

In essence, Schroeder wants to use whatever discovery he obtains from KLA in the court of public opinion because he says that the SEC used the information in that forum. But whether or not the documents and testimony in question are privileged or otherwise protected from discovery, the information might nevertheless still be subject to safeguards against public disclosure.

The terms of any protective order that may be entered are not before this court on the instant motion. Without knowing precisely what these documents say, but based upon representations as to their nature, this court sees no reason to allow Schroeder to have unfettered use of the information in question. Here, KLA says that the subject information comprises sensitive company and employee personal financial information – information that the court often does seal upon a proper showing as to the need for confidentiality. At oral argument, KLA stated that the only dispute now is whether documents produced by KLA to the government should be covered by a protective order. On a going forward basis, the SEC has agreed to enter into a protective order that would apply to documents that KLA produced to the SEC. As to any past public disclosure of claimed confidential information, the SEC presumably will not do that any more since it has agreed to enter a protective order preventing such disclosures. Defendant may make an application to this court to use in the court of public opinion any information that he says has been publicly disclosed or that he "needs" to refute something previously publicly disclosed by the SEC.

In sum, there is no longer any issue as to Schroeder's access to the KLA information he says he needs; and, as far as this court is concerned, a protective order would present no legal impediment to Schroeder's ability to properly defend himself in this litigation. His motion to compel as to KLA is denied as moot.

**B.    Discovery Sought from Skadden**[3]

As for Skadden, Schroeder seeks an order compelling the following discovery:

- The Skadden attorneys' witness interview notes and all drafts of the interview memoranda (as well as testimony about the same);

- Documents and testimony concerning all of Skadden's communications with the government or NASD, including documents that were not given to the government, but which nonetheless were read or referenced in oral discussions;

- All documents and communications shared with KLA's outside auditors relating to KLA's option granting practices and the Special Committee investigation; and

- All documents and communications concerning the Special Committee investigation.

**1.    Interview Notes and Draft Memoranda**

According to Skadden, at least two of its attorneys attended each of the witness interviews. (Miller Decl. ¶ 7). The attorney with primary note-taking responsibility would then prepare an interview memorandum. (Bellamy Decl. ¶ 8; Gabbay Decl. ¶ 8; Harlan Decl.¶ 8; Holstein-Childress Decl. ¶ 8; Keable Decl. ¶ 8; Lopez Decl. ¶ 7; Meidan Decl. ¶ 8; Miller Decl. ¶ 12; Van Zandt Decl. ¶ 8; Wu Decl. ¶ 8). A draft of that memorandum

---

[3]    For the first time in his reply brief, Schroeder argued that Skadden, as a non-party to this action, cannot properly assert the attorney work product doctrine as to the discovery sought. See Fed.R.Civ.P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . .."); see also In re California Public Utilities Comm'n, 892 F.2d 778, 781 (9th Cir. 1989) ("Although some courts have extended the work product privilege outside the literal bounds of the rule, we conclude that the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought."). Nevertheless, the parties subsequently stipulated that Skadden's and KLA's objections based on the work product doctrine would not be affected in any way on the ground that they did not move for a protective order. And, this court subsequently approved the parties' stipulation permitting Skadden to file a surreply that would be deemed an application for protective order by which Skadden may seek to protect its claimed work product. (See Docket #95). See San Francisco Bay Area Rapid Transit Dist. v. Spencer, No. C04-04632 SI, 2006 WL 2734284 at *3 (N.D. Cal., Sept. 25, 2006) ("The inapplicability of the work-product protection against discovery of non-party documents, of course, does not preclude the Court from issuing a protective order under Rule 26(c). . . The City may choose, therefore, to file a motion for an appropriate protective order under Rule 26(c)."); see also In re Student Finance Corp., No. 02-11620, 2006 WL 3484387, at *11 (E.D. Pa., Nov. 29, 2006) ("Indeed, even many of those decisions which refuse to protect third party work product under Rule 26(b)(3) recognize that a protective order could issue under Rule 26(c) to prevent disclosure of the material.").

8

1  would be given to other attorneys who were present at the interview, and those attorneys
2  would suggest changes or modifications. (Id.) Skadden gave the Final Interview
3  Memoranda to the members of the Special Committee, as well as to the SEC. The SEC, in
4  turn, produced them to Schroeder. Skadden says that its internal notes and draft
5  memoranda, however, have never been disclosed to the government or even to the Special
6  Committee. Indeed, Skadden says that those notes and drafts have never been disclosed to
7  anyone outside Skadden. (Miller Decl. ¶ 15). Skadden maintains that its internal notes and
8  drafts are opinion work product entitled to nearly absolute protection from discovery.

9  "The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3),
10 protects 'from discovery documents and tangible things prepared by a party or his
11 representative in anticipation of litigation.'" In re Grand Jury Subpoena, 357 F.3d 900, 906
12 (9th Cir.2004) (quoting Admiral Ins. Co. v. U.S. Dist. Court, 881 F.2d 1486, 1494 (9th
13 Cir.1989)). Nevertheless, the protection afforded by the doctrine is qualified and may be
14 overcome if the party seeking disclosure shows that the materials are otherwise
15 discoverable under Fed. R. Civ. P. 26(b)(1) and that "it has substantial need for the
16 materials to prepare its case and cannot, without undue hardship, obtain their substantial
17 equivalent by other means." FED.R.CIV.P. 26(b)(3)(A)(i), (ii).

18  Work product protection is not waived by any disclosure to third parties.
19 Determination as to whether there has been a waiver "requires a court to balance
20 competing interests: 'the need for discovery' with 'the right of an attorney to retain the
21 benefits of his own research.'" SNK Corp. of America v. Atlus Dream Entertainment Co.,
22 Ltd., 188 F.R.D. 566, 571 (N.D. Cal. 1999) (quoting Handguards, Inc. v. Johnson &
23 Johnson, 413 F. Supp. 926, 932 (N.D. Cal. 1976)). However, courts must protect against
24 the disclosure of "opinion work product" – that is, "the mental impressions, conclusions,
25 opinions, or legal theories of a party's attorney or other representative concerning the
26 litigation." FED.R.CIV.P. 26(b)(3)(B). "Under Ninth Circuit law, such opinion work
27 product is discoverable only if it is '*at issue* in the case and the need for the material is
28 compelling.'" SEC v. Roberts, 254 F.R.D. 371, 375 (N.D. Cal. 2008) (quoting Holmgren,

9

1  976 F.2d at 577)).  Additionally, the determination whether there has been any waiver is
2  rooted in principles of fairness.  SNK Corp., 188 F.R.D. at 571 ("Like with waiver of the
3  attorney-client privilege . . . fairness principles should be applied in considering whether
4  work product immunity has been waived.").

5  Preliminarily, Schroeder argues that the work product doctrine does not apply on
6  the ground that Skadden and the Special Committee intended from the outset that Final
7  Interview Memoranda would be produced to the government.  Skadden says that there was
8  no decision to produce interview memoranda to the government at any time before the
9  investigation was substantially complete – and even then, only after the government
10 specifically requested them.  (Miller Decl., ¶¶ 19-22).  Nothing in the record presented
11 compels a contrary conclusion.  In any event, "there is no requirement, when determining
12 whether the [work product] protection applies, that the attorney and client intend to
13 maintain the material in confidence."  U.S. v. Bergonzi, 216 F.R.D. 487, 494 (N.D. Cal.
14 2003) (citing McMorgan & Co. v. First California Mortgage Co., 931 F. Supp. 703, 709
15 (N.D. Cal. 1996)).  "The work product doctrine extends beyond confidential
16 communications between the attorney and client to 'any document prepared in anticipation
17 of litigation by or for the attorney'"  Id. 494-95 (quoting In re Columbia/HCA Healthcare
18 Billing Practices Litig., 293 F.3d 289, 304 (6th Cir. 2002)).  This court finds that the notes
19 and drafts sought fall within the ambit of the work product doctrine.

20 Schroeder nonetheless maintains that production of the Final Interview Memoranda
21 effected a broad waiver as to the entire subject matter of the disclosures, including the
22 underlying attorney notes and drafts.  Schroeder says he has no interest in whatever opinion
23 work product may be contained in those documents.  However, he claims that he is entitled
24 to any facts that are disclosed in them.

25 This court concludes that Skadden's internal notes and drafts need not be produced.
26 "Most courts have held . . . that simply because a final product is disclosed to the public (or
27 a third person), an underlying privilege attaching to drafts of the final product is not
28 destroyed."  In re Air Crash Disaster at Sioux City, Iowa, 133 F.R.D. 515, 518 (N.D. Ill.

10

1   1990) (concluding that draft reports prepared in connection with an accident investigation
2   did not lose work product immunity by virtue of the fact that the final report was made
3   public); see also In re Linerboard Antitrust Litig., 237 F.R.D. 373, 388-390 (E.D. Pa. 2006)
4   (concluding that production of a "White paper" report did not effect a subject matter
5   waiver as to an attorney's opinion work product or commingled fact and opinion work
6   product).

7       Moreover, this court is unpersuaded that the Skadden attorneys were mere
8   "scriveners," as Schroeder suggests. Schroeder argues that the attorneys could not possibly
9   have done much more than record questions and answers and that their notes and drafts
10  merely are fact work product. Nevertheless, each of the individual Skadden attorneys who
11  participated in the interviews has submitted a declaration attesting that they did not merely
12  record verbatim (or substantially verbatim) the witnesses' statements. Rather, they used
13  their knowledge about the facts and theories of the case to identify and filter which facts
14  and comments by the witnesses were important to the investigation. (See Bellamy Decl. ¶¶
15  7, 9; Gabbay Decl. ¶¶ 6-7; Harlan Decl.7, 9; Holstein-Childress Decl. ¶¶ 6-7, 9; Keable
16  Decl. ¶¶ 6-7; Lopez Decl. ¶¶ 5-6, 8; Meidan Decl. ¶¶ 7, 9; Miller Decl. ¶¶ 9-11; Van Zandt
17  Decl. ¶¶ 7, 9; Wu Decl. ¶¶ 7, 9.) Schroeder protests that these are merely "cookie cutter"
18  declarations; but this court finds no reason to doubt their veracity and further concludes
19  that the internal notes and drafts sought contain, at the very least, commingled fact and
20  opinion work product.

21      In any event, Schroeder has not shown that Skadden's internal notes and draft
22  memoranda, which were never to disclosed to anyone other than its own attorneys, are
23  crucial to his defense. He argues that he needs the attorneys' notes and draft memoranda
24  for cross-checking purposes – i.e., to find possible inconsistencies in a witness' testimony
25  or potential evidence that Skadden improperly concealed, altered or withheld information
26  disclosed during the interviews. Other than Schroeder's conjecture, however, there is
27  nothing in the record to suggest that there has been any impropriety; and, Schroeder has not
28  managed to persuade that he is entitled to discovery of Skadden's notes and drafts on the

11

speculative theory that such information might be unearthed. Nor has he demonstrated why he cannot depose the witnesses himself and obtain testimony from them directly as to what they knew, when they knew it, and what they told the Skadden attorneys during the interviews. In sum:

> Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

Hickman v. Taylor, 329 U.S. 495, 510 (1947); see also Roberts, 254 F.R.D. at 383 (concluding that defendant was not entitled to discovery of all facts contained within the Special Committee's counsel's interview notes where those notes likely contained facts inextricably intertwined with attorneys' thoughts and mental impressions).

### 2. Communications with Government Entities

Schroeder seeks discovery of all documents which were not given to the government, but which nonetheless were orally read, referenced or discussed. The only identified document falling into this category are PowerPoint presentations that Skadden says were made to the SEC, DOJ and NASD. At the motion hearing, Skadden said it is willing to produce those PowerPoint slides to Schroeder, subject to a suitable protective order. For the reasons stated above in connection with KLA, Schroeder's motion as to this category of documents is denied as moot.

### 3. Documents and communications shared with KLA's outside auditors

Schroeder seeks the production of documents and communications between the Special Committee and KLA's outside auditors. The only auditor that has been identified here is PwC. Reportedly, PwC has been KLA's auditor since at least 1994 and was KLA's auditor with respect to the restatement of the options in question. (Miller Decl., ¶¶ 23-24). Skadden says that, in connection with that restatement, PwC requested information about the Special Committee's investigation. On October 18, 2006, Skadden made an oral presentation to PwC, including a PowerPoint presentation. No documents were provided to PwC at that time. (Id. ¶

12

25). According to Skadden, at PwC's request, Skadden attorneys also later discussed information learned from certain witness interviews, using the Final Interview Memoranda to refresh their recollection. The Final Interview Memoranda were not provided to PwC. (Id. ¶ 26). Skadden's opposition brief states that Skadden and the Special Committee disclosed certain documents to PwC to assist in the audit of KLA and the restatement of the company's historical financial statements. (Skadden Opp. at 18). On the record presented, it is not clear precisely what those documents are, save for the PowerPoint presentation that was made. (See Miller Decl. ¶¶ 23-26).

Schroeder argues that these disclosures effected a broad subject matter waiver as to any documents that were so disclosed. Skadden maintains that the information that was disclosed is attorney work product. It contends that there was no waiver because PwC is not adversarial to KLA. See Bergonzi, 216 F.R.D. at 497 ("Work product protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information.").

Courts are split over the question whether disclosure to an independent auditor waives protection. Some courts find a waiver on the ground that the auditor acts as a "public watchdog" with interests that are not necessarily aligned with those of the company being audited. See, e.g., Medinol, Ltd. v. Boston Scientific Corp., 214 F.R.D. 113, 116 (S.D.N.Y. 2002) (concluding that work product protection as to the special litigation committee's materials was waived when the information was disclosed to an outside auditor); Diasonics Securities Litig., No. C83-4584, 1986 WL 53402 (N.D. Cal., June 15, 1986) (concluding that the work product protection did not apply to documents disclosed to an auditor acting as a public accountant rather than as a consultant). Cf. Samuels v. Mitchell, 155 F.R.D. 195, 200-201 (N.D. Cal. 1994) (finding no waiver where documents were disclosed to an auditor that acted as a consultant rather than as a public accountant).

Nevertheless, under the circumstances presented here, this court finds that the better view, recently followed by another court in this district in a different stock option backdating case, is that espoused by Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441

13

(S.D.N.Y. 2004). That court concluded that disclosures to outside auditors do not have the "tangible adversarial relationship" requisite for waiver. Id. at 447. The court reasoned:

> [A]ny tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine. Nor should it be. A business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud. Indeed, this is precisely the type of limited alliance that courts should encourage. For example, here Merrill Lynch complied with Deloitte & Touche's request for copies of the internal investigation reports so that the auditors could further assess Merrill Lynch's internal controls, both to inform its audit work and to notify the corporation if there was a deficiency.

Id. at 448. As noted by the court in Roberts, this view "furthers the strong public policy of encouraging critical self-policing by corporations. Indeed, sanctioning a broad waiver here would have a chilling effect on the corporation's efforts to root out and prevent corporate fraud and disclose the results as necessary to its auditors." 254 F.R.D. at 381-82.

Schroeder's motion as to these documents is denied.

### 4. Documents and Communications concerning the Special Committee's Investigation

Arguing that there has been a broad subject matter waiver of any privilege or protection, Schroeder seeks every document having any bearing on the Special Committee's investigation, including all documents reflecting, embodying or comprising communications between and among Skadden, the Special Committee, KLA, KLA's counsel, and LECG (Skadden's forensic accounting consultant in connection with the investigation).

#### a. Communications between and among Skadden and the Special Committee[4]

The attorney-client privilege applies to communications between Skadden and the Special Committee, and Skadden contends that its internal communications are work product. Schroeder argues that these protections were waived because "KLA and the Special Committee produced both historical attorney-client communications and purportedly protected documents, memoranda and communications from the internal investigation to the SEC, seeking leniency from the SEC." (Mot. at 28). As such, he contends that all communications between Skadden

---

[4] The pertinent withheld documents appear to be described in entries 49-50 on Skadden's privilege log. (See Coopersmith Decl., Ex. 12).

14

and the Special Committee relating to the investigation are open to discovery. It is not clear precisely what protected documents Schroeder claims the Special Committee disclosed. On the record presented, this court assumes that he is focusing here on Skadden's PowerPoint presentation and the production of the Final Interview Memoranda. This court concludes that communications between Skadden and the Special Committee need not be produced.

Ryan v. Gifford, an unpublished decision by the Delaware Chancery Court relied upon by Schroeder, does not compel a different conclusion. No. 2213-CC, 2007 WL 4259557 (Del. Ch., Nov. 30, 2007). There, the court found that (a) the privilege as to communications between the Special Committee and its counsel relating to its final report (and any joint privilege the Special Committee may have held with the company) was waived when the Special Committee presented its final report on its investigation and (b) the waiver extended to all communications between the Special Committee and its counsel relating to the investigation. Unlike the instant case, however, in Gifford, the Special Committee's counsel apparently disclosed detailed privileged communications relating to the investigation when they presented the final report at a meeting attended not only by the Special Committee, but also the company's board of directors as well as individual defendants and their attorneys. Id. at *3. Nothing before this court indicates that any privileged communications between Skadden and the Special Committee or any internal Skadden communications were so disclosed.

Schroeder's other cited cases do not support the broad waiver he seeks here. In Royal Ahold N.V. Securities Litig., 230 F.R.D. 433 (D. Md. 2005), a securities class action, the defendant company disclosed the details of its internal investigation in a public SEC filing and produced investigative reports (which quoted from witness interview memoranda) to the lead plaintiffs, but nonetheless withheld the majority of the underlying interview memoranda. The court found that because the company publicly disclosed details of its internal investigation "in order to improve its position with investors, financial institutions, and the regulatory agencies, it also implicitly has waived its right to assert work product privilege as to the underlying memoranda supporting its disclosures." Id. at 437. Here, by contrast, Schroeder already has the interview memoranda underlying the Special Committee's disclosure to the SEC.

15

In <u>In re the Leslie Fay Companies, Inc. Securities Litig.</u>, 161 F.R.D. 274 (S.D.N.Y. 1995), a securities fraud class action, the court held that the production of the audit committee's report to the SEC waived any protection as to the report itself and that subsequent events in the litigation would make it "manifestly unfair" to maintain the privilege as to interview notes and financial documents summarized in that report. There, the company affirmatively sought to use the investigative report to incriminate an outside auditor, and there was indication that key witnesses would not be available to testify because they would exercise their Fifth Amendment rights. <u>Id</u>. at 283-84. Here, Schroeder has access to all of the witnesses, historical documents and memoranda that have been given to the SEC.

Other cases cited by Schroeder – <u>Weil v. Investment/Indicators, Research & Mgmt., Inc.</u>, 647 F.2d 18 (9th Cir. 1981) and <u>In re Broadcom Corp. Securities Litig.</u>, No. SACV 01275GLTMLGX, 2005 WL 1403513 (C.D. Cal., Apr. 7, 2005) – are inapposite as there is no indication that KLA or the Special Committee are asserting an advice of counsel defense, such that any privilege would be waived.

Schroeder's motion as to this category of documents is denied.

### b. Communications between and among Skadden, the Special Committee, KLA, Morgan Lewis & Bockius, and LECG

Schroeder seeks an order compelling the production of all communications between and among Skadden and the Special Committee and KLA, KLA's counsel, the Morgan Lewis & Bockius law firm ("Morgan Lewis") and LECG (Skadden's forensic accounting consultant retained to assist in the investigation). Skadden and KLA contend that the requested communications comprise opinion work product. Schroeder says that he has no interest in opinion work product, but nonetheless maintains that any protection as to any facts has been waived.

Skadden says that numerous communications were generated over the course of the Special Committee's four-month investigation. It is not clear exactly what documents are at issue. Review of Skadden's privilege log, which describes groups of documents in a

16

generalized manner rather than on a document-by-document basis, indicates that the universe of documents in question includes:

- "Communications to/from Skadden, Morgan Lewis or KLA-Tencor re Special Committee investigation."

- "Communications to/from Skadden and LECG re Special Committee investigation."

- "Powerpoint presentation and draft presentations to Board of Directors of KLA-Tencor re Special Committee investigation."

- "Powerpoint presentations by LECG re Special Committee investigation."

(Coopersmith Decl. Ex. 12 (Skadden's Privilege Log, Entries 51, 53, 56 and 57).

Additionally, although KLA did not address this issue squarely in its opposition papers, at the motion hearing it informed the court that there are individual grant binders containing the company's analysis of approximately 300 stock option grants to determine what grants needed to be restated. According to KLA, this analysis was undertaken with the understanding that litigation (which reportedly had already been filed) would follow the determination as to what grants needed to be restated. Skadden's consultant, LECG, prepared summaries of each option grant. Morgan Lewis reportedly prepared memoranda with analysis as to whether, from a legal perspective, a particular grant needed to be restated. These binders reportedly include (a) Morgan Lewis' memoranda, (b) the LECG summaries, and (c) the underlying source documents. The binders have not been produced to the SEC. Skadden says that the LECG summaries are its work product. KLA is willing to give Schroeder all the underlying source documents for a particular grant. However, KLA maintains that its internal analysis and discussions as to these options are irrelevant. In any event, it claims that the grant binders contain an amalgam of fact and opinion work product that has not been waived.

As to these general categories of documents at issue, this court rules as follows:

Communications between Skadden and its consultant, LECG, need not be produced. The withheld communications reportedly contain "documents related to methods for document review and retention, discussions regarding how to locate and interpret metadata, a collection of documents that LECG deemed important related to a particular witness, and emails discussing

17

special projects that LECG completed during the investigation." (Miller Decl. ¶ 34). It is not apparent that any of those communications were disclosed beyond Skadden and LECG. Further, it appears that these communications comprise opinion work product, and Schroeder has not demonstrated a substantial need for any facts that might be contained in them. Schroeder's motion as to these documents is denied.

With respect to the communications between and among Skadden/the Special Committee and KLA/Morgan Lewis, it is not clear exactly what this universe of documents includes. However, the withheld communications reportedly comprise "documents reflecting numerous requests for information from the Company and discussions of what Skadden did during the investigation." (Miller Decl. ¶ 35). This court finds that any factual information contained in these documents should be produced. However, drafts and other documents that contain or reflect an attorney's mental impressions (if any) need not be produced (or, if feasible, such information may be redacted). See Roberts, 254 F.R.D. at 383 (ordering production of attorney notes reflecting communications with the company's board of directors, with opinion work product redacted).

As for the KLA option grant binders, on the record presented, it appears that the option summaries and legal memoranda comprise facts that are inextricably intertwined with opinion work product. Moreover, defendant has not managed to convince that he needs those internal analyses. At oral argument, Schroeder said that he needs the internal analyses because he believes that certain options were not properly remeasured (i.e., that the restatements may have been inflated). He theorizes that if an option was improperly remeasured, then he cannot be blamed for a restatement that should not have been made. But he acknowledged that he has some information (i.e., the documents produced by the SEC and the Final Interview Memoranda) by which to challenge those restatement decisions. He also acknowledged that the underlying source documents for the grants (which KLA says it is willing to produce) will tell him whether they were wrong. He simply feels that having the internal analyses will save him time in cross-examining witnesses in deposition. In other words, having the information will be convenient for Schroeder. That does not strike this court as a substantial need sufficient to

18

compel the production of these documents. Nevertheless, there being no objection by KLA, KLA shall produce the underlying source documents with respect to the grants at issue. It appears (although it is not clear) that Schroeder would only be interested in the 20 or so grants identified in Appendix A to the SEC's complaint, rather than all 300 options that KLA said it examined. But the court will leave it to Schroeder and KLA to meet-and-confer as to the underlying documents for whatever grants he believes are problematic.

### III.  ORDER

Based on the foregoing, IT IS ORDERED THAT defendant's motion to compel is granted in part and denied in part. The SEC, Schroeder, KLA and Skadden shall forthwith meet-and-confer and enter into a confidentiality agreement by no later May 8, 2009. Thereafter, KLA and Skadden shall promptly produce all documents that they have agreed to produce, as well as those documents ordered produced in Section II.B.4.b. This court trusts that the parties should be able to agree upon a suitable protective order on their own. However, if they cannot, appropriate relief may be sought in this court (on shortened time, if necessary) to resolve any disputes as to the terms of any protective order to be entered here.

Dated:   April 27, 2009

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:07-cv-3798 Notice has been electronically mailed to:**

Alice L. Jensen ajensen@fenwick.com, cprocida@fenwick.com

Arlena Victoria Carrozzi arlena.carrozzi@dlapiper.com

David Allen Priebe david.priebe@dlapiper.com, margaret.austin@dlapiper.com, stacy.murray@dlapiper.com

Elena Ro roe@sec.gov

Elliot Remsen Peters epeters@kvn.com, aap@kvn.com, efiling@kvn.com

James Elliot Lyons jlyons@skadden.com, btravagl@skadden.com, kvirdone@skadden.com, wacampbe@skadden.com

Jeffrey Bruce Coopersmith jeff.coopersmith@dlapiper.com, bradley.meissner@dlapiper.com

Jeffrey S. Facter jfacter@shearman.com, rcheatham@shearman.com

Jonathan B. Gaskin jgaskin@orrick.com, mticzon@orrick.com

Joni L. Ostler jostler@wsgr.com, pbaird@wsgr.com

Judith L. Anderson andersonju@sec.gov, alcairoe@sec.gov, johnstonj@sec.gov

Lanelle Kay Meidan lanelle.meidan@skadden.com

Marc J. Fagel fagelm@sec.gov

Mark Philip Fickes fickesm@sec.gov

Matthew Eric Sloan Matthew.Sloan@skadden.com, eaviad@skadden.com, jlyons@skadden.com, mtroost@skadden.com, rcho@skadden.com

Richard Marmaro rmarmaro@skadden.com, kcooley@skadden.com, ljohnsto@skadden.com, rmckaig@skadden.com

Shirli Fabbri Weiss shirli.weiss@dlapiper.com

Steven Keeley Taylor skt@kvn.com, efiling@kvn.com, nsn@kvn.com

Stuart L. Gasner slg@kvn.com, dxc@kvn.com, efiling@kvn.com, mcianfrani@kvn.com

Susan F. LaMarca lamarcas@sec.gov, alcairoe@sec.gov, johnstonj@sec.gov

Thomas R. Green tgreen@morganlewis.com, lbuda@morganlewis.com, mchiu@morganlewis.com

Timothy Alan Miller tmiller@skadden.com, elanders@skadden.com, kvirdone@skadden.com, mborden@skadden.com, wacampbe@skadden.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.